MEREDITH R. DEARBORN (SBN 268312)
mdearborn@paulweiss.com
RANDALL SCOTT LUSKEY (SBN 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: 628-432-5100
Facsimile: 628-232-3101

KRISTINA A. BUNTING (NY SBN: 5510847; *pro hac vice*)
kbunting@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3503
Facsimile: (212) 757-3990

Attorneys for Defendants
COINBASE GLOBAL, INC. and COINBASE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KENNETH DONOVAN, HUSSIEN KASSFY, and JOHN BRAMBL, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GMO-Z.COM TRUST COMPANY, INC.; COINBASE GLOBAL, INC.; and COINBASE, INC.<br><br>Defendants. | Case No. 3:22-cv-02826-TLT<br><br>**DEFENDANTS COINBASE GLOBAL, INC.'S AND COINBASE, INC.'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: January 10, 2023<br>Time: 2:00 p.m.<br>Dept.: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

## TABLE OF CONTENTS


Notice Of Motion And Motion To Dismiss ..... 1
Statement Of Relief Sought ..... 1
Statement Of Issues To Be Decided..... 1
I. INTRODUCTION ..... 2
II. RELEVANT ALLEGATIONS ..... 4
A. Coinbase Explained the Risks of Trading in Digital Assets and Other Terms of Use to Kassfy and Brambl ..... 4
B. GYEN Lost Parity With the Yen for Three Days In November 2021 ..... 5
C. After GYEN Returned to Parity, Coinbase Experienced Unrelated Technical Issues ..... 8
III. LEGAL STANDARD ..... 8
IV. ARGUMENT ..... 9
A. All Claims Against Coinbase Global, Inc. Should be Dismissed ..... 9
B. Plaintiffs' Negligence Claims (Count II, III, IV) Should Be Dismissed ..... 9
1. Coinbase Did Not Owe Plaintiffs Any of the Alleged Duties of Care ..... 10
a. Coinbase Had a Direct Business Relationship with Plaintiffs and Thus Owes Them No Duty to Prevent Financial Loss..... 10
b. The Coinbase User Agreement, Not A Common Law Duty, Alone Governs the Parties' Duties to Each Other ..... 12
c. Plaintiffs Were Not in a "Special Relationship" with Coinbase ..... 14
d. The Inapposite Statutes Cited in Plaintiffs' Complaint Fail to Establish a Duty of Care ..... 15
2. Plaintiffs Fail to Plead that Coinbase's Actions Caused Their Losses ..... 16
C. Plaintiffs' Negligence Per Se Claim (Count III) Is Not A Standalone Claim And Should Be Dismissed ..... 18
D. Plaintiffs' Negligent Misrepresentation Claim (Count IV) Should Be Dismissed On Additional Independent Grounds..... 18
1. Plaintiffs Fail to Plead a Misrepresentation of Material Fact ..... 19
2. Plaintiffs Fail to Plead Justifiable Reliance ..... 19
3. Plaintiffs Fail to Plead that Coinbase's Alleged Misrepresentation Proximately Caused Their Losses ..... 21
E. Plaintiffs Fail To Plead Conversion (Count V)..... 22
F. Plaintiffs Fail To Plead Any Violation Of The Securities Act Of 1933 (Counts VIII And IX)..... 23
1. Plaintiffs Fail to Plead that Coinbase Passed Title in GYEN to Plaintiffs ..... 23
2. Plaintiffs Fail to Plead that Coinbase Solicited Plaintiffs' GYEN Purchases..... 24

3. Plaintiffs' Section 12(a)(2) Claim Should be Dismissed for the Additional Reason That They Fail to Adequately Plead that Coinbase Made Any Untrue Statement of Material Fact or Omitted to State A Material Fact ..... 25

G. Plaintiffs Fail To Plead Any Violation Of The California Unfair Competition Law (Count VII) ..... 25

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews* v. *Plains All Am. Pipeline LP*,
2020 WL 3105423 (C.D. Cal. May 21, 2020) .......... 15

*Archer* v. *Coinbase, Inc.*,
53 Cal. App. 5th 266 (2020) .......... 10, 14, 22

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) .......... 9, 17, 23

*Atari Corp.* v. *Ernst & Whinney*,
981 F.2d 1025 (9th Cir. 1992) .......... 20

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007) .......... 8

*Berk* v. *Coinbase, Inc.*,
840 F. Appx. 914 (9th Cir. 2020) .......... 10, 11, 13

*Biakanja* v. *Irving*,
49 Cal. 2d 647 (1958) .......... 14

*In re Big Heart Pet Brands Litig.*,
2019 WL 8266869 (N.D. Cal. Oct. 4, 2019) .......... 19

*BMA LLC* v. *HDR Global Trading Ltd.*,
2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) .......... 17, 21

*BMA LLC* v. *HDR Global Trading Ltd.*,
2021 WL 949371 (N.D. Cal. 2021) .......... 15

*Butler-Rupp* v. *Lourdeaux*,
134 Cal. App. 4th 1220 (2005) .......... 12

*Corales* v. *Bennett*,
567 F.3d 554 (9th Cir. 2009) .......... 16

*Coury* v. *Caliber Home Loans, Inc.*,
2017 WL 476411 (N.D. Cal. Feb. 6, 2017) .......... 16

*DeBons* v. *Globus Med., Inc.*,
668 F. App'x 258 (9th Cir. 2016) .......... 18

*Elsayed* v. *Maserati N. Am., Inc.*,
215 F. Supp. 3d 949 (C.D. Cal. 2016) .......... 12

*Erlich* v. *Menezes*,
21 Cal. 4th 543 (1999) .......... 12

*Freeman* v. *United States*,
2013 WL 5958144 (N.D. Cal. Nov. 7, 2013) .......... 18

*Goldsmith* v. *Allergan, Inc.*,
2011 WL 147714 (C.D. Cal. Jan. 13, 2011) .......... 25

*Goodman Food Prods., Inc.* v. *Sunrise Foods Int'l Inc.*,
2022 WL 2784396 (C.D. Cal. June 1, 2022) .......... 14

*Griffin v. PaineWebber, Inc.*,
2001 WL 740764 (S.D.N.Y. 2001) .......... 24

*Grimes* v. *A1-Auto Care*,
2022 WL 959273 (S.D. Cal. March 30, 2022) .......... 17

*Holden* v. *Fluent, Inc.*,
2020 WL 6822914 (N.D. Cal. Nov. 20, 2020) .......... 19

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) .......... 24

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) .......... 20, 21

*In re Jan. 2021 Short Squeeze Trading Litig.*,
584 F. Supp. 3d 1161 (S.D. Fla. 2022) .......... 15

*Jianhong Zhai* v. *Ning Liu*,
2017 WL 7201871 (C.D. Cal. May 4, 2017) .......... 22

*Johnson* v. *Bank of Am.*,
2015 WL 7776808 (C.D. Cal. Nov. 30, 2015) .......... 15

*Johnson* v. *Kinney*,
2022 WL 959825 (S.D. Cal. Mar. 30, 2022) .......... 4

*Kwang Tae Kim* v. *JPMorgan Chase Bank, N.A.*,
2017 WL 8186672 (C.D. Cal. July 27, 2017) .......... 21

*Lewis* v. *Mossbrock*,
2017 WL 11558251 (C.D. Cal. March 3, 2017) .......... 17

*In re Lyft Inc. Sec. Litig.*,
484 F. Supp. 3d 758 (N.D. Cal. 2020) .......... 7

*Maeve Inv. Co. Ltd. P'ship* v. *Teekay Corp.*,
2017 WL 5158059 (W.D. Wash. Nov. 7, 2017) .......... 19

*Maine State Ret. Sys.* v. *Countrywide Fin. Corp.*, 2011 WL 4389689 (C.D. Cal. May 5, 2011) ........ 23, 24

*McCaughey* v. *Liberty Mut. Ins. Co.*, 2020 WL 2568303 (C.D. Cal. Jan. 30, 2020) ........ 17

*McPhail* v. *First Command Fin. Planning, Inc.*, 2006 WL 8455142 (S.D. Cal. Apr. 10, 2006) ........ 23

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA* v. *Cambridge Integrated Servs. Grp, Inc.*, 171 Cal. App. 4th 35 (2009) ........ 18

*Neilson* v. *Union Bank of CA, N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........ 18

*Pacific Select Fund* v. *Bank of N.Y. Mellon*, 2010 WL 11468787 (C.D. Cal. Sept. 20, 2010) ........ 18

*Patrico* v. *Voya Fin., Inc.*, 2017 WL 2684065 (S.D.N.Y. June 20, 2017) ........ 9

*Pegasus Trucking, LLC* v. *Asset Redeployment Grp., Inc.*, 2021 WL 1234879 (C.D. Cal. Feb. 16, 2021) ........ 12

*Pica* v. *Delta Air Lines, Inc.*, 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) ........ 16

*Pinter* v. *Dahl*, 486 U.S. 622 (1988) ........ 23, 24

*Plastino* v. *Wells Fargo Bank*, 2012 WL 2061515 (N.D. Cal. June 7, 2012) ........ 18

*Prostar Wireless Grp., LLC* v. *Domino's Pizza, Inc.*, 360 F. Supp. 3d 994 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020) ........ 19

*Quelimaine* v. *Stewart Title Guaranty Co.*, 19 Cal. 4th 26 (1998) ........ *passim*

*Quintara Biosciences, Inc.* v. *Ruifeng Biztech Inc.*, 2020 WL 6118494 (N.D. Cal. Oct. 16, 2020) ........ 20

*Roper* v. *Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903 (E.D. Cal. 2020) ........ 25

*S. California Gas Leak Cases* v. *Superior Court of L.A. Cnty.*, 7 Cal. 5th 391 (2019) ........ 10

*Seeger* v. *Odell*, 18 Cal.2d 409 (1941) ........ 20

*Sheen* v. *Wells Fargo Bank, N.A.*,
12 Cal. 5th 905 (2022) ........ *passim*

*Spates* v. *Dameron Hosp. Assn.*,
114 Cal. App. 4th 208 (2003) ........ 22

*Steinle* v. *United States*,
17 F.4th 819 (9th Cir. 2021) ........ 16, 17

*Tarob M & C Invs., LLC* v. *Herbert*,
2015 WL 5728426 (N.D. Cal. Sept. 30, 2015) ........ 18

*In re Tezos Sec. Litig.*,
2018 WL 4293341 ........ 24

*Trombley Enterp., LLC* v. *Sauer, Inc.*,
2019 WL 452044 (N.D. Cal. Feb. 5, 2019) ........ 9

*UMG Recordings, Inc.* v. *Glob. Eagle Ent., Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........ 18

*Whitesides* v. *E*TRADE Sec., LLC*,
2021 WL 930794 (N.D. Cal. Mar. 11, 2021) ........ 15

*Williams* v. *Nat'l Western Life Ins. Co.*,
279 Cal. Rptr. 3d 620 (2021) ........ 16

*Wolfson* v. *Bank of Am. Nat'l Ass'n*,
2018 WL 6571180 (W.D. Wash. Dec. 13, 2018), aff'd, 2021 WL 6101355 (9th Cir. Dec. 21, 2021) ........ 9

*Woods* v. *Google, Inc.*,
889 F. Supp. 2d 1182 (N.D. Cal. 2012) ........ 21

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........ 20

*Youngers* v. *Virtus Inv. Partners, Inc.*,
195 F. Supp. 3d 499 (S.D.N.Y. 2016) ........ 24

*Zeiger* v. *WellPet LLC*,
526 F. Supp. 3d 652 (N.D. Cal. 2021) ........ 19

**Statutes**

15 U.S.C. § 77l(a)(2) ........ 25

Cal. Bus & Prof. Code § 17200 et. seq. ........ 25

Cal. Civ. Code § 3336 ........ 22

Federal Trade Commission Act Section 5 ........ 15

**Other Authorities**


Fed. R. Civ. P. 9(b) .......... 1, 3, 9, 18

Fed. R. Civ. P. 12(b)(6) .......... 1, 3, 8

N.Y. Comp. Codes R. & Regs. Tit. 23 § 200.18(d) .......... 15

N.Y. Comp. Codes R. & Regs. Tit. 23 § § 200.6(c) .......... 15

N.Y. Comp. Codes R. & Regs. Tit. 23 § § 200.6(e) .......... 15

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on January 10, 2023 at 2:00 pm, in the courtroom of the Honorable Trina L. Thompson, located in Courtroom 9, 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Coinbase Global, Inc. and Coinbase, Inc. will and hereby do move this Court to dismiss the Amended Complaint (Dkt. 46) in its entirety.

This Motion is made in the alternative, in the event the Court does not grant Coinbase Global, Inc. and Coinbase, Inc.'s Motion to Compel Arbitration.

This Motion is based the following Memorandum of Points and Authorities, the Declaration of Meredith R. Dearborn and exhibits, the Declaration of Suellen Black and exhibits, the pleadings and other documents on file, all matters of which the Court may take judicial notice, and any other argument or evidence that may be received by the Court.

## STATEMENT OF RELIEF SOUGHT

In the event the Court does not grant the Motion to Compel Arbitration, Coinbase Global, Inc. and Coinbase, Inc. respectfully seek an order dismissing the Complaint under Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6) on the grounds that it fails to state a claim against them.

## STATEMENT OF ISSUES TO BE DECIDED

1. Should all claims against Coinbase Global, Inc. be dismissed because it is a legally distinct entity that does not provide any of the trading services from which Plaintiffs claims arise?

2. Should all claims against both parties be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6)?

# # #

## I. INTRODUCTION

During three days in November 2021, the digital asset GYEN—a "stablecoin running on Ethereum that's intended to maintain a value of" one Japanese yen, ¶ 58[1]—saw its price rise steeply before falling steeply back to par with the yen. Plaintiffs Kassfy and Brambl,[2] two apparent "daredevil investors" in search of "opportunities to amass fortunes overnight," ¶ 13, purchased (and in Kassfy's case, sold) GYEN on Coinbase, a platform for buying and selling digital assets, at rising prices. They were likely looking to take advantage of the unusual market activity and sell their GYEN for a profit. When their bet did not pay off, Plaintiffs filed this putative class action lawsuit in the hopes that Coinbase, Inc. and Coinbase Global, Inc. ("Coinbase")[3] would foot the bill.

None of their claims for relief meet the pleading standards of Federal Rules of Civil Procedure 8, 9, and 12. Plaintiffs' Amended Complaint should be dismissed.

Plaintiffs principally rely on negligence-based tort claims (Counts II, III, and IV). Their theory would impose never-before-seen legal duties on the operator of an online marketplace to prevent economic losses resulting from users' own speculative trading activity. This theory is contrary to the economic loss rule, a bedrock principle of California law. That rule provides that, with "rare exceptions, a business entity has no duty to prevent financial loss to others with whom it deals directly." *Quelimaine Co.* v. *Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 59 (1998). Just as tort law does not apply in direct economic relationships, particularly where (as here) a contract governs the parties' rights and duties to one another, it would be "unprecedented to impose a duty on one actor to operate its business in a manner that would ensure the financial success of transactions between third parties." *Id.* The absence of a tort duty is a question that the Court can resolve as a matter of law. Here, Coinbase had none of the arbitrary legal duties Plaintiffs now seek to impose.

---

[1] References to ¶ refer to paragraphs in the Amended Complaint, Dkt. 46, unless otherwise noted.

[2] Plaintiff Kenneth Donovan does not allege that he transacted through Coinbase and thus has no claims against Coinbase. *See* ¶¶ 65, 75.

[3] For convenience, we use the term "Coinbase," but these entities are separate legal entities and only Coinbase, Inc. operates the trading platform on which GYEN was traded by Plaintiffs. This provides an independent basis to dismiss all claims against Coinbase Global, Inc. *Infra* **IV.A.**

Plaintiffs also allege that Coinbase negligently represented the price stability of GYEN (Count IV). But Plaintiffs also fail to allege any affirmative misrepresentation. The only statement that Plaintiffs allege that Coinbase made on that score is that the asset was "intended to" maintain the value of one Japanese yen. Plaintiffs do not allege that either one of them saw or relied on that statement. But even setting that fatal defect aside, Coinbase's statement was and remains true. Plaintiffs could not have reasonably construed those words as an inflexible promise that GYEN would at all times maintain parity with the yen. Any inference to the contrary is also unreasonable in light of allegations on the face of the Amended Complaint, and of which the Court may take judicial notice, that demonstrate that (a) the difference in value between GYEN and the yen was obvious to any reasonable investor; (b) Coinbase expressly made no warranties or representations about any asset listed by third parties; and (c) as "with any asset, the value of" digital assets purchased or sold on Coinbase "can go up and down and there can be a substantial risk that you lose money buying, selling, holding, or investing in" them.

Plaintiffs' remaining claims fare no better. They do not state a claim for conversion (Count V) because, among other flaws, there are no well-pleaded allegations that plausibly suggest that Coinbase attempted to deprive Plaintiffs of their GYEN by temporarily suspending trading, or that Plaintiffs suffered any damages as a result of Coinbase's suspension, which they allege happened after GYEN returned to parity with the yen and thus after they had incurred every penny of their alleged losses. The Court should dismiss their Securities Act claims (Count VIII and IX) at the threshold: There are no well-pleaded allegations that Coinbase ever had title to or sold any digital asset, or that it actively solicited any purchases of GYEN. And their derivative Unfair Competition Law claims (Count VII) fail for the same reasons that their core claims fail.

In the event that the Court does not grant Coinbase's separately filed motion to compel arbitration (and it should), the Court should dismiss Plaintiffs' Amended Complaint in its entirety for failure to state a claim on which relief can be granted. FED. R. CIV. P. 9(b), 12(b)(6).

## II. RELEVANT ALLEGATIONS[4]

Plaintiffs allege that Coinbase operates an online platform for buying, selling, and transferring digital assets like bitcoin. *See* ¶¶ 40, 70, 71. The Amended Complaint concerns a new digital asset, GYEN, that was allegedly issued in early 2021 by a third party, co-defendant GMO-Z.com Trust Company, Inc. ("GMO Trust"), and that Coinbase first listed for trading in November 2021. ¶¶ 2, 45–46.

The gravamen of Plaintiffs' complaint, described in more detail below, is as follows. GMO Trust marketed GYEN as a "stablecoin," which Plaintiffs describe as a digital asset backed by a traditional asset—in this case, the Japanese yen. ¶¶ 2, 14. Plaintiffs allege that, for three days in November 2021—November 16, 17, and 18—the price of GYEN on Coinbase lost parity with the price of the yen. ¶¶ 46–48. They claim that they purchased GYEN when the price was higher than that of the yen, and lost money when the value of GYEN returned, as intended, to the value of the yen. ¶¶ 66–67. After the price of GYEN returned to the yen, on November 19, they allege that Coinbase suspended GYEN trading activity for a period of time. ¶¶ 48, 50.

### A. Coinbase Explained the Risks of Trading in Digital Assets and Other Terms of Use to Kassfy and Brambl

Plaintiffs Kassfy and Brambl allege that they purchased GYEN tokens through Coinbase's website. ¶¶ 66–67, 75. Plaintiffs' use of that website to trade digital assets like GYEN was governed by Coinbase's User Agreement. Declaration of Suellen Black ("Black Decl.") ¶ 7, Ex. E, preamble (the User Agreement "governs your use of the services provided by Coinbase described below").[5] Plaintiffs certified that, by signing up for an account, they "read, underst[ood], and accept[ed] all the terms and conditions contained in this Agreement." Black Decl. ¶ 11, Ex. E, preamble. The User Agreement was at all relevant times publicly available on Coinbase's website. Black Decl. ¶

[4] Coinbase does not admit the truth of any of the allegations in Plaintiffs' Amended Complaint.

[5] As explained in the Request for Judicial Notice, the Court should consider the referenced exhibits to the Dearborn and Black Declarations under Federal Rule of Evidence 201 and other doctrines in deciding this Motion to Dismiss. *Johnson* v. *Kinney*, 2022 WL 959825, at *3 (S.D. Cal. Mar. 30, 2022) (court need not accept as true allegations that contradict judicially noticed facts on motion to dismiss).

14.

The User Agreement explained to Plaintiffs the risks of transacting in digital assets. The first section cautioned that, as "with any asset, the value of Digital Currencies can go up or down and there can be a substantial risk that you lose money buying, selling, holding, or investing in digital currencies," and warned them to "carefully consider whether trading or holding Digital Currencies is suitable for you." Black Decl. Ex. E, preamble.

In addition, the User Agreement explained to Plaintiffs that they were not "buying Digital Currency from Coinbase or selling Digital Currency to Coinbase" and that instead "Coinbase acts as the agent, transacting on your behalf to facilitate that purchase or sale between you and other Coinbase customers." *Id.* at § 3.2.

It also expressly cautioned Plaintiffs against relying on certain categories of information:

- "[Y]ou should verify all information [on Coinbase's website] before relying on it, and all decisions based on information contained on the Coinbase Site are your sole responsibility and we shall have no liability for such decisions." *Id.* at § 7.2.
- "Information provided by third parties, including historical price and supply data for Digital Currencies, is for informational purposes only and Coinbase makes no representations or warranties to its accuracy." *Id.*
- "Links to third-party materials (including without limitation websites) may be provided as a convenience but are not controlled by us. You acknowledge and agree that we are not responsible for any aspect of the information, content, or services contained in any third-party materials or on any third-party sites accessible or linked to the Coinbase Site." *Id.*

The User Agreement also warned Plaintiffs that "[a]ccess to Coinbase Services may become . . . unavailable during times of significant volatility or volume" which "could result in the inability to buy or sell for periods of time" and that Coinbase would "not be liable for any losses resulting from or arising out of transaction delays." *Id.* at § 1.5. Plaintiffs also agreed that Coinbase would only be liable for damages beyond the value of digital asset deposits for "gross negligence, fraud, willful misconduct, or an intentional violation of law"—none of which is asserted here. *Id.* at § 9.3.

**B. GYEN Lost Parity With the Yen for Three Days In November 2021**

GYEN is a cryptocurrency issued by GMO Trust and launched on March 1, 2021. ¶¶ 2, 39. GMO Trust explained, in a document that Plaintiffs quote in their Amended Complaint (¶¶ 31, 32, 34), that it would issue GYEN only after ensuring that there was one corresponding yen deposited

in its bank accounts. ¶ 2; Declaration of Meredith R. Dearborn ("Dearborn Decl.") Ex. 1, at 5–6. By issuing one GYEN when the corresponding fiat currency—one yen—is placed in custody, and always permitting users to redeem one GYEN for one yen with GMO Trust, the goal was for GYEN's value to maintain parity with the price of the yen. *Id*. at 4–6.

Plaintiffs allege that, in May 2021—before GYEN was listed on Coinbase—"low liquidity caused the peg to break and the price of GYEN to rise dramatically." ¶ 56. Plaintiffs do not allege that Coinbase was involved in this incident in any way, nor do Plaintiffs allege that they were unaware of this prior incident.

Several months later, Coinbase decided to list GYEN on its online trading platform. ¶¶ 45–46. According to Plaintiffs, Coinbase represented on its website at that time that "GYEN is a stablecoin running on Ethereum that's <u>intended</u> to maintain a value of one Japanese Yen. The Company behind GYEN, GMO-Z.com Trust Company, claims to hold reserves that fully back each GYEN." ¶ 58 (emphasis added). Plaintiffs point to <u>no other representations</u> that Coinbase made regarding GYEN's parity with the yen or its overall "stability."

On November 10, 2021, only certain customers were allowed to transfer GYEN tokens they already owned into their Coinbase accounts; they could not buy or sell the asset on the exchange. ¶ 45. On November 16, 2021, Coinbase permitted full trading of GYEN on its platform. ¶ 46.

GYEN's price experienced unusual price action during the next three days. In the period leading up to November 16, 2021, the GYEN price stayed relatively constant at around $0.009. *Id*. But between November 16, 2021 and November 18, 2021, the price "rose sharply in value" and reached as high as $0.34, about seven times that of the yen. ¶¶ 6, 46. All the while, as Plaintiffs acknowledge, the yen "was completely stable, never rising above a value of 0.87 cents [i.e., $0.0087]" against the U.S. dollar ("USD"). ¶ 46. During this period of "turbulence," Coinbase warned its customers that GYEN was undergoing a period of "unusual market activity." ¶ 49 (quoting Dearborn Decl. Ex. 2, at 4 (alert in place from Nov. 17 through 19)).

Plaintiffs must have known that GYEN's parity had broken because they bought and sold GYEN during this three-day period at <u>widely varying prices</u>. Kassfy made 32 purchases of or conversions to GYEN when the GYEN price ranged from $0.011 to $0.039 USD—well off the

$0.009 value of the yen and at prices varying by ~3.5x from high to low. Dkt. 50.[6] Brambl made three purchases of or conversions to GYEN when GYEN's price ranged from $0.010 to $0.042—prices varying by ~4.2x from high to low. Dkt. 46-3. Moreover, Plaintiffs never allege that, at any time during their trading activity, they were unaware of the price of one GYEN against the yen, nor do they allege that they were unaware of the price of the yen against the U.S. dollar (the metrics used in the Amended Complaint to measure parity). That information was publicly available to them, as the Amended Complaint demonstrates. ¶ 44 ("When Coinbase offers trading of a cryptocurrency," it "provides historical pricing on its website); ¶ 46; Dearborn Decl. Ex. 3; *see also* Request for Judicial Notice.

Kassfy actually profited from the break in parity during one large trade, selling 1,737,284 GYEN on November 17 when GYEN's price was at or near its height. In this single trade, Kassfy netted $75,259. He proceeded to buy further GYEN. If the price had risen again, he would have made a windfall.

Despite the change in value of GYEN against the USD, despite the fact that Plaintiffs purchased and sold GYEN multiple times during this period at different and varying prices and profited on certain purchases and sales made while the GYEN price rose, and despite Coinbase's warning that GYEN was subject to "unusual market activity" during the relevant three days in November, Plaintiffs now assert that it was "unknown" to them at the time of their purchases that "the GYEN's value was not pegged to the Japanese yen." ¶¶ 66–67.

Over the course of November 18, 2021, GYEN returned to parity, settling back down to $0.009. ¶ 48 (price had returned to parity with the yen by Nov. 19). Coinbase later explained that the break in parity was caused by "market conditions specific to the GYEN digital asset unrelated to Coinbase operations." ¶ 52. Specifically, when Coinbase listed GYEN, there was "significant demand for GYEN that could not be matched by supply," and the "surge in buyer demand for GYEN, coupled with the insufficient supply of GYEN across all markets (not just Coinbase),

---

6 The Court may consider Plaintiffs' PSLRA certifications on motion to dismiss. *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 764 (N.D. Cal. 2020). Plaintiff Kassfy amended his certification to correct certain deficiencies on October 5, 2022. (Dkt. 50.) Plaintiffs and Coinbase are continuing to confer regarding certain deficiencies in Plaintiff Brambl's certification.

ultimately caused the break in parity." Dearborn Decl. Ex. 2, at 4.

In short, Plaintiffs allege that they lost money because they purchased GYEN in the brief window when the value of GYEN exceeded the value of yen, and thus too high—and that they sold when the value of GYEN returned to its intended price—that of the yen. ¶¶ 48, 66–67. There are no allegations in the Amended Complaint that the value of GYEN has become displaced from parity with the yen since November 18, 2021.

### C. After GYEN Returned to Parity, Coinbase Experienced Unrelated Technical Issues

At 4:00 pm EST on November 19, 2021—after Plaintiffs allege GYEN had returned to parity with the yen—Coinbase temporarily restricted trading in GYEN. ¶¶ 48, 50–51. Coinbase explained that the reason for this suspension in trading was an unrelated technical issue. Specifically, Coinbase had erroneously credited some customers transacting in GYEN and another digital asset, POWR, either 100x or 1/100th the amount they purchased. This incident affected approximately 0.0072% of Coinbase's users. Dearborn Decl. Ex. 2, at 3. Plaintiffs claim that anonymous "purchasers refused to believe Coinbase's claim," but they admit that Coinbase suspended trading only after GYEN had returned parity with the yen. ¶ 48 (price of GYEN had "plummeted" by November 19, 2021); ¶ 50 (Coinbase suspended trading at 4:00pm ET on November 19, 2021); ¶¶ 51–52; Dearborn Decl. Ex. 2, at 4 ("By the time the data rollout error occurred, on November 19, GYEN's price stability had recovered and GYEN was trading at approximately ¥ 0.96–0.98. When Coinbase unrestricted impacted customers' accounts, GYEN was trading at approximately ¥ 0.98. In other words, the break in parity occurred before the data rollout error and the two issues had nothing to do with each other.").

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint should be dismissed when it fails to state a claim upon which relief can be granted. To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "factual allegations"—as opposed to legal conclusions—sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555, 570 (2007). Dismissal is thus appropriate where the complaint does not contain—as to each claim and each defendant—"factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). That is, a complaint must do more than tender "naked assertions devoid of further factual enhancement." *Id.* at 678 (internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Plaintiffs' negligent misrepresentation claim sounds in fraud and is subject to a heightened pleading standard; it must be pleaded with particularity under Federal Rule of Civil Procedure Rule 9(b). *See Trombley Enterp., LLC* v. *Sauer, Inc.*, 2019 WL 452044, at *3 (N.D. Cal. Feb. 5, 2019) ("Claims for negligent misrepresentation must meet the particularity requirement of Rule 9(b)").

## IV. ARGUMENT

### A. All Claims Against Coinbase Global, Inc. Should be Dismissed

Plaintiffs assert claims against two legally distinct Coinbase entities: Coinbase Global, Inc. and Coinbase, Inc. ¶¶ 69–72. Plaintiffs' claims arise solely from the provision of trading services—all of which were provided by Coinbase, Inc., under the terms of the User Agreement. Black Decl. Ex. E, preamble, § 3.2. There are no facts alleged to support Plaintiffs' conclusory allegation that the two legally separate entities should be conflated. *Wolfson* v. *Bank of Am. Nat'l Ass'n*, 2018 WL 6571180, at *2 (W.D. Wash. Dec. 13, 2018), *aff'd*, 2021 WL 6101355 (9th Cir. Dec. 21, 2021) (noting a "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries" and dismissing claims against the parent company where the allegations were insufficient to pierce the corporate veil). Because Plaintiffs allege no facts against Coinbase Global, Inc. sufficient to state a claim to relief that is plausible on its face, all Plaintiffs' claims against Coinbase Global, Inc. should be dismissed. *Patrico* v. *Voya Fin., Inc.*, 2017 WL 2684065, at *5 (S.D.N.Y. June 20, 2017) (dismissing claim against related companies that were not parties to agreement underlying dispute).

### B. Plaintiffs' Negligence Claims (Count II, III, IV) Should Be Dismissed

To plead a claim for negligence, a plaintiff must adequately allege that "the defendant owed a legal duty, the defendant breached that duty, and the breach proximately caused the plaintiff's

damages." *Archer* v. *Coinbase, Inc.*, 53 Cal. App. 5th 266, 278 (2020). Whether a duty exists is a question of law to be resolved by the Court. *Sheen* v. *Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 920 (2022). Plaintiffs' negligence claims should be dismissed because Coinbase does not owe Plaintiffs any of the duties alleged, and Plaintiffs fail to allege that Coinbase's actions caused their losses.

**1. Coinbase Did Not Owe Plaintiffs Any of the Alleged Duties of Care**

Plaintiffs allege that Coinbase had an array of arbitrarily defined duties to Plaintiffs with respect to GYEN, including to "conduct due diligence" on GMO Trust and GYEN and to "ensur[e] its customers had the ability to transact and access their digital assets, including GYEN." ¶ 94. But it is well established, including under recent California Supreme Court and Ninth Circuit precedent, that Coinbase owed no duty to Plaintiffs to prevent financial losses on its platform, and the parties' business relationship to each other is subsumed by contract—namely, the User Agreement between each Plaintiff and Coinbase, which expressly disclaims the theories of loss that Plaintiffs are now advancing. *See Sheen*, 12 Cal. 5th at 922; *Berk* v. *Coinbase, Inc.*, 840 F. Appx. 914 (9th Cir. 2020). This principle is known as  the "economic loss rule."

**a. Coinbase Had a Direct Business Relationship with Plaintiffs and Thus Owes Them No Duty to Prevent Financial Loss**

Under California law, there is no tort duty to guard against another's pure economic loss. *S. Cal. Gas Leak Cases* v. *Superior Court of L.A. Cnty.*, 7 Cal. 5th 391, 398, 400 (2019). As the California Supreme Court stated in *Quelimane Company* v. *Stewart Title Guaranty Co.*, with "rare exceptions, a business entity has no duty to prevent financial loss to others with whom it deals directly." 19 Cal. 4th. at 59 (1998). Just as it "would be unprecedented to impose a duty on one actor to operate its business in a manner that would ensure the financial success of transactions between third parties," a business has "no . . . duty to prevent financial losses to third parties who may be affected by its operations." *Id.* Instead, tort duties are usually limited to preventing physical injury or property damage. *Sheen*, 12 Cal. 5th at 922 ("In general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage").

Plaintiffs attempt to hold Coinbase liable for unintentionally inflicted economic loss. They

allege that the GYEN tokens that they bought in 2021 have lost around 66 and 70 percent of their value. ¶¶ 66–67. These financial losses are not recoverable in tort because Coinbase had no duty to prevent them. *Sheen*, 12 Cal. 5th at 922; *Quelimaine*, 19 Cal. 4th at 59.

Plaintiffs' claims are squarely of the type that California courts reject under the economic loss rule. Plaintiffs claim that Coinbase, an entity with whom Plaintiffs had a direct business relationship, owed Plaintiffs duties that they arbitrarily define. ¶¶ 94–103. But Coinbase's relationship with Plaintiffs was limited to an arms-length business arrangement whereby Coinbase provided a platform for Plaintiffs to buy and sell digital assets, including GYEN, from others. ¶ 40. Under these circumstances, Coinbase had "no duty to prevent financial loss" to Plaintiffs, through these arbitrarily defined duties or otherwise. *Quelimane*, 19 Cal. 4th at 59.

It would be "unprecedented" to impose a responsibility on Coinbase to "operate its business in a manner that would ensure the financial success of transactions <u>between third parties</u>," namely, individuals who buy digital assets from, and sell digital assets to, each other on the Coinbase platform. *Quelimaine*, 19 Cal. 4th at 59 (emphasis added); ¶ 40 (describing Coinbase as a "centralized online marketplace for cryptocurrency traders"); Black Decl. Ex. E, § 3.2 (Coinbase is not the seller of digital assets on the platform). As the *Quelimaine* court stated in rejecting a duty to members of the public to use "legal, actuarial, and statutory criteria to determine the legal status of parcels of land to be insured," "we decline to recognize a duty to avoid business decisions that may affect the financial interests of third parties." *Quelimaine*, 19 Cal. 4th at 57–58.

This "unprecedented" responsibility is exactly what Plaintiffs try to impose. They ask the Court to force Coinbase conduct "diligence" on third parties GMO Trust, "test" digital assets like GYEN before allowing them for purchase on the Coinbase website, "act" on "warnings" of unusual price movements, and allow uninterrupted access to the platform. ¶ 94. These imagined "duties" are no different in kind from an alleged duty to perform due diligence on land parcels to determine whether they were or were not encumbered by a cloud on title: a duty that the *Quelimaine* court rejected. 19 Cal. 4th at 59. Put simply, Coinbase had no duty to Plaintiffs to "ensure a functioning marketplace." *See Berk*, 840 F. App'x at 915 (disagreeing that Coinbase had an "independent duty of care to ensure a functioning marketplace").

In an apparent attempt to circumvent the economic loss rule, Plaintiffs allege that they experienced "stress, anxiety, and other forms of physical and emotional distress." ¶¶ 66–67. These conclusory allegations are insufficient to evade the application of the economic loss rule. *See Pegasus Trucking, LLC* v. *Asset Redeployment Grp., Inc.*, 2021 WL 1234879, at *7 (C.D. Cal. Feb. 16, 2021) ("conclusory statement" that Plaintiff suffered "emotional distress" from economic losses not sufficient to defeat economic loss rule); *see also Butler-Rupp* v. *Lourdeaux*, 134 Cal. App. 4th 1220, 1229 (2005) (reversing damages award for emotional distress because they were "predicated on economic injury to plaintiff" and would therefore violate "the policy underlying the economic loss rule"); *Elsayed* v. *Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 962 (C.D. Cal. 2016) (requiring plausible emotional distress tort claim before precluding application of the economic loss rule).

**b. The Coinbase User Agreement, Not A Common Law Duty, Alone Governs the Parties' Duties to Each Other**

While not limited to circumstances where parties are in privity of contract, the economic loss rule has particular application where the parties have chosen to define the duties they owe each other by contract. *Sheen*, 12 Cal. 5th at 922–26. All tort claims for economic losses that are "not independent" of the parties' contract are barred. *Id*. at 923–24 (there is "no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties") (citing the Restatement of Torts § 3 (2020)).

There are sound reasons for this. Allowing contracts to govern commercial transactions lets parties "know where they stand and what they can expect to follow legally from the words they have written. But if a disappointed buyer has the option of abandoning the contract and suing in tort, the significance of the contract is diminished and the doctrines that protect the integrity of the contractual process are reduced in importance." *Id.* at 923. In other words, parties to a contract in essence create "a mini-universe for themselves" in which "they agree upon the rules and regulations which will govern their relationship" and "the risks inherent in the agreement." *Erlich* v. *Menezes*, 21 Cal. 4th 543, 558 (1999) (citing *Applied Equip. Corp.* v. *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 517, 869 P.2d 454, 461 (1994)). Tort law will not disrupt this bargain.

The test for whether a claim is "not independent" of a contract is whether imposition of

additional duties would "impede" the parties' bargain. *Sheen*, 12 Cal. 5th at 915 (the economic loss rule "bars recovery in negligence for pure economic losses when such claims would disrupt the parties' private ordering, render contracts less reliable as a means of organizing commercial relationships, and stifle the development of contract law."); *see also id*. (breach not required).

Here, Plaintiffs' negligence claims would interfere with the parties' contract in just the way that *Sheen* prohibits. The parties' entire relationship—Plaintiffs' use of the Coinbase platform—was governed by a contract, which spelled out all the rules, procedures, and obligations bearing on Plaintiffs' activities on the platform. *See generally* Black Decl. Ex. E, preamble; § 3.2 (purchases and sales); § 4 (transfers); § 7 (general obligations and termination); § 9.3 (limitation of liability). Plaintiffs' negligence claim relates to Coinbase's provision of services to Plaintiffs, Coinbase's facilitation of transactions in a digital asset GYEN, and communications that Coinbase allegedly made about that digital asset. The User Agreement between each Plaintiff and Coinbase covers all of these activities, expressly defining the parties' rights and responsibilities to each other. ¶¶ 94–103. In particular, the User Agreement states that Plaintiffs were transacting at their own risk; were expected to do their own diligence; were not buying assets from Coinbase; may not rely on information on Coinbase's website, including from third parties, for investment advice or any other reason; and warned them that access to Coinbase's exchange could be unavailable. *See generally* Black Decl. Ex. E, preamble, §§ 1.5, 2.6.1, 3.2, 7.2. And it released Coinbase from all claims sounding in negligence. § 9.

Under these circumstances, Plaintiffs' negligence claims fall "within the ambit of the economic loss doctrine" because they attempt to impose fresh, un-bargained for duties on Coinbase. *Sheen*, 12 Cal. 5th at 915. To impose a tort duty when the parties expressly disclaimed the same theories Plaintiffs are now advancing would "go further than creating obligations unnegotiated or agreed to by the parties; it would dictate terms that are contrary to the parties' allocation of rights and responsibilities." *Id.* at 925.

There is nothing novel about these legal principles. Every time courts have faced this issue, they have held that the economic loss doctrine bars similar negligence claims against Coinbase arising out of its User Agreement. *E.g.*, *Berk*, 840 F. App'x. at 916 (finding that negligence claim

was founded in contract because "Coinbase and the plaintiffs are not strangers—they are in privity via the User Agreement" and "[p]laintiffs' alleged injuries resulted from their direct, arms-length dealings with Coinbase"); *Archer* v. *Coinbase*, *Inc.*, 53 Cal. App. 5th 266, 278 (2020) (dismissing negligence claim where plaintiff failed to identify any duty independent of user agreement). The Court should reach the same result here.

### c. Plaintiffs Were Not in a "Special Relationship" with Coinbase

Plaintiffs appear to claim that the economic loss rule should not apply because they were in a "special relationship" with Coinbase, which they claim arises because Coinbase is one of the largest third-party exchanges to offer GYEN and because of its "critical role within the cryptocurrency exchange market." ¶ 99. This sleight-of-hand to evade the economic loss rule is unavailing.[7]

Under California law, one of the "rare exceptions" to the economic loss rule arises when the parties are in specified kinds of "special relationships" with one another. *Quelimaine*, 19 Cal. 4th at 59–60. The "special relationship" line of cases, beginning with *Biakanja* v. *Irving*, 49 Cal. 2d 647 (1958), applies only when the plaintiff is not in privity of contract with the defendant. *Sheen*, 12 Cal. 5th at 642 ("Under its terms, *Biakanja* does not apply when the plaintiff and defendant are in contractual privity . . . we have never done what plaintiff now asks us to do: rely on *Biakanja* to impose a tort duty on a contracting party to avoid negligently causing monetary harm to another party to that contract."). Here, Plaintiffs and Coinbase were not "economic strangers," and thus there is no special relationship between them as a matter of law. *Id.*; *see also Goodman Food Prods., Inc.* v. *Sunrise Foods Int'l Inc.*, 2022 WL 2784396, at *9 (C.D. Cal. June 1, 2022) (finding "special relationship" exception did not apply where parties in privity of contract).

Even if the existence of a "special relationship" is not precluded by Coinbase's contract with Plaintiffs (and it is), Plaintiffs do not aver facts that would demonstrate any actionable "special relationship" with Coinbase. *Biakanja*, 49 Cal. 2d at 650 (identifying factors to be balanced).

[7] Coinbase denies that it is a "broker-dealer" or "unregistered exchange" under the securities laws or any other regime, contrary to Plaintiffs' wholly conclusory allegations. The Court need not reach these issues in dismissing the Amended Complaint in Coinbase's favor.

Plaintiffs fail to allege the first, "most important" factor—that Coinbase's actions were intended to affect them, as opposed to everyone transacting on the Coinbase platform. *Whitesides* v. *E*TRADE Sec., LLC*, 2021 WL 930794, at *6 (N.D. Cal. Mar. 11, 2021).[8] And as described elsewhere in this Motion, Plaintiffs have failed to show any of the other factors, either—they fail to plead facts demonstrating Coinbase's moral culpability; they fail to plausibly allege that their losses were unforeseeable, given all of the warnings Coinbase gave them and the information at their fingertips; and they fail to show that Coinbase's misconduct—as opposed to market factors—was the cause of their loss. *See BMA LLC* v. *HDR Global Trading Ltd.*, 2021 WL 949371, at *16–17 (N.D. Cal. 2021) (no "special relationship" between exchange and traders); *In re Jan. 2021 Short Squeeze Trading Litig*., 584 F. Supp. 3d 1161, 1186 (S.D. Fla. 2022) (applying California law; broker had no special relationship to prevent losses from "risky" investments in volatile market).

#### d. The Inapposite Statutes Cited in Plaintiffs' Complaint Fail to Establish a Duty of Care

As a fallback, Plaintiffs allege that Coinbase's duty arose from either Section 5 of the Federal Trade Commission Act or Section 200.18(d) of the State of New York Department of Financial Services' Virtual Currency Law. ¶¶ 97–98. Those inapposite statutes cannot save Plaintiffs' negligence claim because they do not impose a duty on Coinbase as a matter of law.

As an initial matter, negligence based on a violation of a statute "is not an exception to the economic loss rule." *See Andrews* v. *Plains All Am. Pipeline LP*, 2020 WL 3105423, at *11 (C.D. Cal. May 21, 2020). Moreover, these statutes do not create a private right of action, and as a result a negligence claim cannot be predicated upon them. There is no private right of action under Section 5; the FTC is the only entity charged with its enforcement. *See Johnson* v. *Bank of Am.*, 2015 WL 7776808, at *4 (C.D. Cal. Nov. 30, 2015). Similarly, any violation of Section 200.18(d) is redressable only by the New York Superintendent of Financial Services. *See* § 200.6(c) and (e). The absence of a private right of action precludes any negligence claim predicated on these statutes.

[8] *Whitesides* and *In re January 2021 Short Squeeze Trading Litigation* were decided before the California Supreme Court's decision in *Sheen*. Their discussions of the extent to which a "special relationship" can exist where parties are in contractual privity have thus been abrogated by *Sheen*, which held that no special relationship can exist between contractual partners as a matter of law.

*See Pica* v. *Delta Air Lines, Inc.*, 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (barring claim for negligence predicated on FTC Act because it creates no private right of action); *see also Williams* v. *Nat'l Western Life Ins. Co.*, 279 Cal. Rptr. 3d 620, 641 (2021) (no duty created by statute that had no private right of action). In short, state tort law cannot bootstrap federal regulation into a private cause of action for damages.

Even if these statutes could give rise to a duty of care (which they cannot), Coinbase has not violated them. *Coury* v. *Caliber Home Loans, Inc.*, 2017 WL 476411, at *3 (N.D. Cal. Feb. 6, 2017) (violation required to state a claim). As shown *infra* **IV.B.2 & IV.D**, Coinbase made no false or misleading statements or omissions, and any violation did not proximately cause Plaintiffs losses, precluding any liability based on these statutes.

### 2. Plaintiffs Fail to Plead that Coinbase's Actions Caused Their Losses

Under California law, Plaintiffs must allege "a reasonably close connection between the defendant's conduct and resulting injuries." *Corales* v. *Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). Where "the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact." *Steinle* v. *United States*, 17 F.4th 819, 822 (9th Cir. 2021).

Even if Coinbase owed the alleged duties to Plaintiffs (it did not), Plaintiffs fail to allege that Coinbase's purported breach of those duties was either a cause in fact or proximate cause of Plaintiffs' losses, because they fail to allege facts that would plausibly show that their losses would not have happened had Coinbase taken the actions they identify, particularly in light of the express warnings Coinbase gave them. Black Decl. Ex. E, preamble, §§ 3.2, 7.2. Plaintiffs invent three kinds of duties, but none is plausibly alleged to have caused their losses.

The first "bucket" of alleged duties that Plaintiffs seek to foist on Coinbase relates to diligence they allege should have happened in advance of listing GYEN. This includes, Plaintiffs imagine, an alleged duty to (a) conduct unspecified "due diligence" on GMO Trust and GYEN, (b) unspecified "tests" of GYEN to "ensure" that its value remained stable, (c) put in place unspecified "processes" to detect if GYEN broke parity; and (d) to "timely" act on alerts. ¶¶ 94, 100. All fail.

***First***, these alleged duties are insufficiently precise to allow the Court to assess the plausibility of their claims. *Quelimaine*, 19 Cal. 4th at 60 ("The complaint must indicate the acts or

omissions which the plaintiff claims were negligently performed."); *Iqbal*, 556 U.S. at 678.

***Second***, Plaintiffs fail to allege that GYEN would not have lost parity to the yen, or that they would not have purchased GYEN, even if Coinbase had done what they think that it should have done. Instead, Plaintiffs merely allege that "Coinbase's wrongful actions resulted in" their "damages." ¶ 102. This conclusory allegation is insufficient. *Steinle*, 17 F. 4th at 822; *McCaughey* v. *Liberty Mut. Ins. Co.*, 2020 WL 2568303, at *3–4 (C.D. Cal. Jan. 30, 2020) (granting motion to dismiss negligence claim for failure to allege causation); *Lewis* v. *Mossbrock*, 2017 WL 11558251, at *6 (C.D. Cal. March 3, 2017) (same); *Grimes* v. *A1-Auto Care*, 2022 WL 959273, at *5–6 (S.D. Cal. March 30, 2022) (same).

The next "bucket" of duties Plaintiffs rely on is one that allegedly required Coinbase to "ensur[e] its customers had the ability to transact and access their digital assets, including GYEN." ¶¶ 94, 101. This allegation relates to Coinbase's brief suspension in trading in GYEN on November 19, 2021. ¶¶ 50–52. But the value of GYEN had already returned to parity at the time Coinbase allegedly suspended trading. ¶¶ 48–50; Dearborn Decl. Ex. 2, at 4. Plaintiffs allege that, by the time GYEN had returned to parity, they had already incurred their losses. ¶ 59. Thus, this alleged breach could not possibly have caused any of Plaintiffs' losses, and Plaintiffs' allegation to the contrary—that there was a risk that "such restrictions would cause harm"—is insufficient to demonstrate any causal connection.

The last "bucket" of duties Plaintiffs refer to is a duty to "ensur[e] the truthfulness of its statements made to its customers." ¶ 94. Plaintiffs fail to allege that, but for Coinbase's statements, they would not have suffered losses, particularly in circumstances where Plaintiffs do not even claim to have seen Coinbase's statements. *See infra* **IV.D.**

In short, Plaintiffs cannot plausibly show that Coinbase's actions, as opposed to their own decision to assume risk in the hopes of reward and "inherent market forces," caused any of their damages. *Cf. BMA LLC* v. *HDR Global Trading Ltd.*, 2021 WL 4061698, at *11 (N.D. Cal. Sept. 7, 2021) (dismissing for lack of standing where losses may be due to "inherent market forces").

### C. Plaintiffs' Negligence Per Se Claim (Count III) Is Not A Standalone Claim And Should Be Dismissed

Negligence *per se*—Plaintiffs' third claim, *see* ¶¶ 104–114— "is not an independent cause of action and does not provide a right of action for violation of a statute" in California. *Tarob M & C Invs., LLC* v. *Herbert*, 2015 WL 5728426, at *4 (N.D. Cal. Sept. 30, 2015) (dismissing negligence *per se* claim with prejudice on the basis it is not an independent cause of action); *see also Freeman* v. *United States*, 2013 WL 5958144, at *3 (N.D. Cal. Nov. 7, 2013) (dismissing negligence *per se* claim on the basis that "under California law, negligence *per se* is an evidentiary presumption rather than an independent right of action" (citing *Quiroz* v. *Seventh Ave. Ctr.*, 14 Cal. App. 4th 1256, 1286 (2006)); *see also DeBons* v. *Globus Med., Inc.*, 668 F. App'x 258, 260 (9th Cir. 2016) ("[T]he district court properly dismissed DeBons's negligence *per se* claim on the grounds that negligence *per se* is not a recognized independent claim under California law."). In any event, for the reasons described *supra* **IV.B**, these claims fail to state a cause of action for negligence under any standard.

### D. Plaintiffs' Negligent Misrepresentation Claim (Count IV) Should Be Dismissed On Additional Independent Grounds

Negligent misrepresentation requires, among other elements, (1) "a positive assertion to show a misrepresentation of material fact" as opposed to an "omission or an implied assertion," *see UMG Recordings, Inc.* v. *Glob. Eagle Ent., Inc.,* 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015); (2) that plaintiff "justifiably" relied on the misrepresentation, *see Nat'l Union Fire Ins. Co. of Pittsburgh, PA* v. *Cambridge Integrated Servs. Grp, Inc.*, 171 Cal. App. 4th 35, 50 (2009); and (3) proximate causation. *See Pacific Select Fund* v. *Bank of N.Y. Mellon*, 2010 WL 11468787, at *4 (C.D. Cal. Sept. 20, 2010). It also requires a duty of care. *See Plastino* v. *Wells Fargo Bank*, 2012 WL 2061515, at *8 (N.D. Cal. June 7, 2012) (citing *Eddy* v. *Sharp*, 199 Cal. App. 3d 858, 864 (1988) ("As with any negligence claim, the tort of negligent misrepresentation requires that a plaintiff allege a duty of care"). As noted above, this claim is a species of fraud that must be pleaded with particularity. *Neilson* v. *Union Bank of CA, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."). To meet Rule 9(b)'s heightened pleading

requirement, Plaintiffs must allege "the who, what, when where, and how of the misconduct charged." *Holden* v. *Fluent, Inc.*, 2020 WL 6822914, at *9 (N.D. Cal. Nov. 20, 2020) (quoting *Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Here, Plaintiffs not only fail for the reasons described *supra* **IV.B**, *see Zeiger* v. *WellPet LLC*, 526 F. Supp. 3d 652, 689 (N.D. Cal. 2021) (negligent misrepresentation subject to economic loss doctrine), but they fail plausibly to allege with particularity any of the other three elements.

**1. Plaintiffs Fail to Plead a Misrepresentation of Material Fact**

The sole allegation in Plaintiffs' Complaint as to any "positive assertion" that Coinbase made about GYEN is that Coinbase stated that "GYEN is a stablecoin running on Ethereum that's intended to maintain a value of one Japanese Yen." ¶ 58 (emphasis added). Plaintiffs do not claim that Coinbase said that GYEN would maintain a value of one yen, nor do they claim that Coinbase made any other representations about its stability. Coinbase's qualified statement—which is not a promise—is insufficient to state a claim for negligent misrepresentation as a matter of law. *See Maeve Inv. Co. Ltd. P'ship* v. *Teekay Corp.*, 2017 WL 5158059, at *3 (W.D. Wash. Nov. 7, 2017) (statement that defendant was "targeting" future dividend growth not an actionable misrepresentation because it was not a guarantee or promise).

**2. Plaintiffs Fail to Plead Justifiable Reliance**

To plead justifiable reliance, plaintiffs must allege "actual reliance and that the reliance was reasonable." *Prostar Wireless Grp., LLC* v. *Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1018 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020). Plaintiffs' allegations fail to do so.

***First***, Plaintiffs fail to allege what they actually read or relied on. Plaintiffs also fail to allege that Coinbase made the "claims" that they relied on. Plaintiffs quote a statement that Coinbase made, but they do not claim that they saw, read, were aware of, or relied on this statement. ¶ 58. They do not even allege that they went to Coinbase's website, reviewed the page cited in the Complaint, or clicked on the links to GMO Trust's white paper or website. This fatal omission defeats any claim of justifiable reliance. *See In re Big Heart Pet Brands Litig.*, 2019 WL 8266869, at *15 (N.D. Cal. Oct. 4, 2019) (finding no actual reliance where "none of the Plaintiffs allege they visited or viewed the statements on Defendant's website or that they viewed the statement on [a third

party's] website."); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *28 (N.D. Cal. Aug. 30, 2017) (finding no actual reliance where "Plaintiffs do not allege that they 'actually read' [the misrepresentation], which was accessible . . . via an additional hyperlink."); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013) (finding no Article III standing because "Plaintiffs must have seen the misrepresentations and taken some action based on what they saw—that is, Plaintiffs must have actually relied on the misrepresentations").

***Second***, even if Plaintiffs had pleaded that they read and relied on anything Coinbase said, they fail to allege that any reliance was reasonable. California courts do not "merely wink at this requirement, but rather take it quite seriously." *Atari Corp.* v. *Ernst & Whinney*, 981 F.2d 1025, 1031 (9th Cir. 1992). Here, it was obvious when Plaintiffs bought the coin that GYEN had lost parity. This was plain from (1) the fact that Plaintiffs engaged in multiple transactions over the three-day period at varying prices, which demonstrated to them that the price was moving, including in Kassfy's case to sell GYEN at its highest price; (2) publicly available information demonstrating the relative prices of the assets, which was as available to them as it was to any reasonable purchaser; and (3) Coinbase's express warnings of unusual market activity. ¶¶ 46, 49; Dkt. 46-3, 50 (Plaintiffs' certifications, showing trades during three-day window); Dearborn Decl. ¶ 5 & Ex. 3; *Seeger* v. *Odell*, 18 Cal.2d 409, 415 (1941) ("If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable . . . he will be denied recovery . . . He may not put faith in representations which are preposterous, or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth."); *Quintara Biosciences, Inc.* v. *Ruifeng Biztech Inc.*, 2020 WL 6118494, at *2 (N.D. Cal. Oct. 16, 2020) (plaintiff's "willful blindness to the circumstances shining a spotlight on the alleged misconduct forecloses its justifiable reliance."). Here, Plaintiffs voluntarily assumed the risk of the very losses they now complain about, and appear to have turned a blind eye to information available to any speculator. They cannot recover in tort.

***Third***, Coinbase expressly warned Plaintiffs not to rely on the information that they now claim that they relied on. Coinbase explained, and Plaintiffs each agreed, that "[i]nformation provided by third parties, including historical price and supply data for Digital Currencies, is for

informational purposes only and Coinbase makes no representations or warranties to its accuracy." Black Decl. Ex. E, § 7.2. Coinbase further stated that links to third-party materials, including GMO Trust's, "may be provided as a convenience but are not controlled by us. You acknowledge and agree that we are not responsible for any aspect of the information, content, or services contained in any third-party materials or on any third-party sites accessible or linked to the Coinbase Site." *Id.* These disclaimers are fatal to any claim that Plaintiffs' reliance on information linked on Coinbase's website was "reasonable." *Woods* v. *Google*, *Inc*., 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (plaintiff could not have reasonably relied on alleged misstatements that contradicted the plain language of applicable contract).

#### 3. Plaintiffs Fail to Plead that Coinbase's Alleged Misrepresentation Proximately Caused Their Losses

Plaintiffs also fail to plead in a non-conclusory fashion that Coinbase's activities caused them any losses. Their sole conclusory allegation (¶ 125) is wholly deficient and Plaintiffs' negligent misrepresentation claim should be dismissed on this basis alone. *Kwang Tae Kim* v. *JPMorgan Chase Bank, N.A.*, 2017 WL 8186672, at *3 (C.D. Cal. July 27, 2017) (finding that plaintiff's "conclusory statement that he suffered damages '[a]s a direct and proximate result of the negligent misrepresentation of defendants'" was insufficient to "plausibly allege causation").

In any event, the facts on the face of the Amended Complaint negate any inference of causation. As explained above, it was obvious to Plaintiffs at the time that they purchased GYEN that it had lost parity to the yen, and there is no allegation that Plaintiffs actually read and relied on Coinbase's statement about GYEN. These allegations prevent any plausible inference of causation. *See In re iPhone Application Litig.*, 6 F. Supp. 3d at 1015 (finding no Article III standing because "[p]laintiffs must have seen the misrepresentations and taken some action based on what they saw—that is, Plaintiffs must have actually relied on the misrepresentations to have been harmed by them"); *BMA LLC*, 2021 WL 4061698 at *11 (dismissing for lack of standing where "[plaintiffs] have not adequately connected the misrepresentations to their alleged damages because their damages only occurred once their positions were liquidated, which . . . could have been due to the

acts by third parties or inherent market forces").[9]

### E. Plaintiffs Fail To Plead Conversion (Count V)

Plaintiffs allege that Coinbase is liable for conversion because Coinbase prevented Plaintiffs "from trading their GYEN" and Plaintiffs "did not consent to or authorize Coinbase's restrictions." ¶¶ 126–130. This allegation is premised entirely on Coinbase's restriction of trading after November 19, 2021. This claim fails for multiple reasons.

***First***, to plead a conversion claim, Plaintiffs must allege facts showing that Coinbase had "an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of the property." *Spates* v. *Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 222 (2003); *see also Archer*, 53 Cal. App. 5th at 276 ("Conversion requires the defendant to take some affirmative action to exercise dominion over or deprive a plaintiff of his or her property."). Here, Plaintiffs plead no facts showing that Plaintiffs lost their GYEN, as opposed to merely being temporarily unable to trade it. Nor do they plead any facts that would suggest that Coinbase intended to exercise dominion over their GYEN or take possession of it.

***Second***, independently, when "a plaintiff seeks damages for conversion against a defendant who was originally in lawful possession of the property, the plaintiff must first show that they demanded the return of the property and the defendant refused." *Jianhong Zhai* v. *Ning Liu*, 2017 WL 7201871, at *3 (C.D. Cal. May 4, 2017). Plaintiffs nowhere allege that they demanded the return of their GYEN and that Coinbase refused to return the GYEN to Plaintiffs.

***Third***, Plaintiffs did not suffer any damages from Coinbase's alleged suspension of trading of GYEN on November 19, 2021. As described above, at the time that Coinbase suspended GYEN trading, the price of GYEN had already returned to parity with the yen. Plaintiffs suffered no losses in the value of GYEN as a result of the conversion—the only monetary relief they claim. *See* Cal. Civ. Code § 3336 (defining damages for conversion as "an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate cause of the wrongful act complained of and which a proper degree of prudence on his part would not have averted.").

[9] Plaintiffs' claim that they were in a "special relationship" with Coinbase, thus imposing upon Coinbase a duty to "speak with care," fails for the same reasons described above. *Supra* **IV.B.1**.

### F. Plaintiffs Fail To Plead Any Violation Of The Securities Act Of 1933 (Counts VIII And IX)

To plead both a Section 12(a)(1) and 12(a)(2) claim, Plaintiff must allege that Coinbase was a "statutory seller." To do this, Plaintiffs must allege either (1) that Coinbase passed title in GYEN to Plaintiffs as the "immediate seller" of the alleged security or (2) that Coinbase actually solicited purchases of GYEN. *See Pinter* v. *Dahl*, 486 U.S. 622, 643–44, n.21 (1988);[10] *see also Maine State Ret. Sys.* v. *Countrywide Fin. Corp.*, 2011 WL 4389689, at *9 (C.D. Cal. May 5, 2011) (a party only passes title when they are the "immediate seller"). While Plaintiffs' securities law claims fail for a plethora of reasons—including their failure to plausibly allege that GYEN should be considered a security at all under the case-specific *Howey* test (¶¶ 19–22)—the Court need not reach these issues, because Plaintiffs' Securities Act claims fail this first threshold step.[11]

#### 1. Plaintiffs Fail to Plead that Coinbase Passed Title in GYEN to Plaintiffs

There are no well-pleaded allegations that Coinbase passed title in GYEN to Plaintiffs. The Amended Complaint does not allege that Coinbase ever had title to GYEN at all. Instead, Plaintiffs allege in a conclusory fashion that customers on Coinbase "transact with Coinbase itself, and Coinbase is thus a seller of the GYEN stablecoin." ¶ 160. These "naked assertion[s] devoid of further factual enhancement" do not "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up).

Any suggestion that Coinbase had title or passed title to GYEN are also belied by Plaintiffs' allegations and judicially noticeable facts. In their Amended Complaint, Plaintiffs describe Coinbase as "a centralized online marketplace for cryptocurrency traders," that "create[d] markets where GYEN could be traded." ¶¶ 2, 4, 6, 40, 45, 52, 57. A marketplace is not itself a seller—it is a place where sellers and purchasers can interact. It is well established that those "participants'

[10] *Pinter* addresses the definition of "seller" under Section 12(a)(1); the same formulation applies to the definition of "seller" under Section 12(a)(2). *See McPhail* v. *First Command Fin. Planning, Inc.*, 2006 WL 8455142, at *7 n.4 (S.D. Cal. Apr. 10, 2006).

[11] While the Court need not reach this issue to decide that there are no cognizable claims against Coinbase, Plaintiffs' threadbare allegations hardly suffice to demonstrate the elements of the *Howey* test are met here. ¶¶ 18–21. Coinbase maintains that GYEN is not a security.

collateral to the offer or sale," including platforms like Coinbase, are not statutory sellers pursuant to Section 12(a)(1) and (2). *See Pinter*, 486 U.S. at 650. In any event, the User Agreement states that when users "purchase (buy) or sell Digital Currency on the Coinbase Site, you are not buying Digital Currency from Coinbase or selling Digital Currency to Coinbase." Black Decl. Ex. E, § 3.2; *see also id.* at § 2.6.1. Allegations contradicted by judicially noticeable facts are insufficient to survive a motion to dismiss. *Johnson*, 2022 WL 959825, at *3.

**2. Plaintiffs Fail to Plead that Coinbase Solicited Plaintiffs' GYEN Purchases**

To plead a claim based on active solicitation, Plaintiffs must "include very specific allegations of solicitation, including direct communication with Plaintiffs" to allege a Section 12(a)(1) or (2) claim. *See Maine State Ret. Sys.*, 2011 WL 4389689, at *10. But at best, Plaintiffs conclusorily state that Coinbase "solicited [Plaintiffs' purchases], and in doing so were motivated at least in part by a desire to serve its own financial interests." ¶ 161. This allegation says nothing about whether Coinbase was "directly involved" in the actual solicitation of Plaintiffs' GYEN purchases. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005). There are no facts alleged in the Amended Complaint suggesting that Coinbase solicited Plaintiffs' purchases, let alone had "direct communication" with Plaintiffs, and those "who merely assist in another's solicitation efforts" or are "collateral participants" are not liable under Section 12(a)(1). *See Pinter*, 486 U.S. at 650–51 n.26, n.27; *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9–10 (dismissing Section 12(a)(1) claim against defendant which provided intermediary services to certain initial coin offering contributors); *see also Youngers* v. *Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d 499, 522–23 (S.D.N.Y. 2016) (dismissing Section 12(a)(2) claim because alleged distribution of marketing materials through company's website and other channels was insufficient as a matter of law). Moreover, there is no allegation that any solicitation by Coinbase <u>resulted</u> in Plaintiffs' GYEN purchases, which is an independent reason to disregard any Section 12(a) claim based on solicitation. *See Pinter*, 486 U.S. at 643-647 (cabining solicitation to "successful[]" solicitation); see *Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. 2001) ("[Plaintiff] must allege not only that [defendant] actively solicited investors with respect to this transaction but that he purchased securities as a result of [the] solicitation").

**3. Plaintiffs' Section 12(a)(2) Claim Should be Dismissed for the Additional Reason That They Fail to Adequately Plead that Coinbase Made Any Untrue Statement of Material Fact or Omitted to State A Material Fact**

With respect to their Section 12(a)(2) claim, Plaintiffs fail to adequately plead that Coinbase made any "untrue statement of material fact or omit[ted] to state a material fact necessary in order to make the statements." 15 U.S.C. § 77l(a)(2); *see supra* **IV.D.** In addition, Section 12(a)(2) requires misrepresentations in a "prospectus or oral communication." 15 U.S.C. § 77l(a)(2). In its broadest terms, a "prospectus" means a "communication . . . which offers any security for sale." Here, Plaintiffs fails to allege how Coinbase's website offers GYEN for sale.

## G. Plaintiffs Fail To Plead Any Violation Of The California Unfair Competition Law (Count VII)

California's Unfair Competition Law prohibits "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus & Prof. Code § 17200 et. seq. Under the "unlawful" prong, Plaintiffs' claim borrows from their other claims, ¶ 146, and fail for the same reasons. Plaintiffs have also not stated a claim under the "unfairness" prong, under any test. *Roper* v. *Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 919–20 (E.D. Cal. 2020) (describing tests for unfairness). There is nothing immoral, unscrupulous, oppressive, or substantially injurious in allowing investors, at their own risk, to purchase digital assets, particularly when all of the information they allegedly needed to prevent their losses was readily available to them. And for the reasons described *supra* **IV.D**, Plaintiffs have failed to allege that Coinbase made any actionably false statement, or that any reasonable consumer was likely to be deceived given the information that was readily available, and thus their claims under the "fraudulent" prong fail as well. *Goldsmith* v. *Allergan, Inc.*, 2011 WL 147714, at *7 (C.D. Cal. Jan. 13, 2011).

# V. CONCLUSION

In the event that the Court does not grant Coinbase's separately filed motion to compel arbitration, the Court should dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

Dated: October 6, 2022

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: /s/ *Meredith R. Dearborn*
Randall S. Luskey
Meredith R. Dearborn
Kristina A. Bunting

Attorneys for Defendants
COINBASE GLOBAL, INC. AND COINBASE, INC.