**Cleary Gottlieb Steen & Hamilton LLP**
Heather S. Nyong'o (SBN 222202)
hnyongo@cgsh.com
Nowell Bamberger (Admitted *Pro Hac Vice*)
Samuel Levander (Admitted *Pro Hac Vice*)
Nicole Tatz (Admitted *Pro Hac Vice*)

650 California Street Suite 2000
San Francisco, CA 94108

[*additional addresses on signature page*]

Attorneys for Defendant
GMO-Z.COM TRUST
COMPANY, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Kenneth Donovan, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GMO-Z.com Trust Company, Inc. et al.,<br><br>Defendants. | Case No. 3:22-cv-02826-TLT<br><br>**GMO-Z.COM TRUST COMPANY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: January 10, 2023<br>Time: 2:00pm<br>Courtroom: Courtroom 9<br>Before: Hon. Trina L. Thompson |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on January 10, 2023, at 2:00pm, or at such other date as may be agreed upon or ordered, at the courtroom of the Honorable Trina L. Thompson, Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant GMO-Z.Com Trust Company, Inc. ("GMO Trust") will and hereby does move the Court, pursuant to Rules 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice Plaintiffs' Amended Complaint ("AC") (ECF No. 46). The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the arguments of counsel, and all other matters properly considered by the Court. This motion to dismiss is brought on the grounds that the Complaint fails to state a claim against Defendant upon which relief can be granted and lack of personal jurisdiction.

## REQUEST FOR RELIEF

GMO Trust respectfully requests that the Court dismiss the Complaint with prejudice under Federal Rules of Civil Procedure 9(b), 12(b)(2), and 12(b)(6).

Dated: October 6, 2022

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Heather S. Nyong'o*

Heather S. Nyong'o (SBN 222202)
hnyongo@cgsh.com
650 California Street Suite 2000
San Francisco, CA 94108

Nowell Bamberger (Admitted *Pro Hac Vice*)
Nicole Tatz (Admitted *Pro Hac Vice*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037

Samuel Levander (Admitted *Pro Hac Vice*)
One Liberty Plaza
New York, NY 10006

Attorneys for Defendant
GMO-Z.COM TRUST COMPANY, INC.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iii

STATEMENT OF ISSUES .......... 1

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 9

I. PLAINTIFFS' FEDERAL SECURITIES CLAIMS FAIL BECAUSE PLAINTIFFS DID NOT PURCHASE THEIR GYEN FROM GMO TRUST AND GMO TRUST DID NOT DIRECTLY SOLICIT PLAINTIFFS' PURCHASES. .......... 10

A. Plaintiffs' Section 12 Claims Fail Because They Did Not Purchase GYEN Directly From GMO Trust. .......... 10

B. Plaintiffs Fail to Allege Any Misstatements In A "Prospectus." .......... 13

II. PLAINTIFFS' STATE LAW CLAIMS FAIL FOR LACK OF PERSONAL JURISDICTION AND ON THEIR ELEMENTS. .......... 14

A. Without Their Federal Securities Claims, Plaintiffs Cannot Establish Personal Jurisdiction Over GMO Trust. .......... 14

1. GMO Trust Is Not Subject To General Jurisdiction In California. .......... 15

2. GMO Trust Is Not Subject To Specific Personal Jurisdiction With Respect To Plaintiffs' Claims. .......... 16

B. Plaintiffs' State Law Claims Also Fail On Their Elements. .......... 20

1. Negligence *Per Se* Is Not a Standalone Cause of Action. .......... 20

2. Plaintiffs' Negligence and Negligent Misrepresentation Claims Fail Because GMO Trust Owed No Duty to Any of the Plaintiffs. .......... 20

3. Plaintiffs Fail to Allege That GMO Trust Engaged in Consumer-Oriented Conduct, as Required to State a Claim Under NY GBL § 349. ................................. 23

CONCLUSION ........................................................................................................ 24

## TABLE OF AUTHORITIES


Page(s)

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280 (2001) .................... 20

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004).................... 15

*Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-cv-02991-JST, 2015 WL 5834135 (N.D. Cal. Oct. 7, 2015).................... 15

*Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758 (S.D.N.Y. 2011).................... 20

*Andrade-Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 WL 3817948 (S.D. Cal. Aug. 14, 2019).................... 15

*Andrews v. Plains All Am. Pipeline, LP*, No. CV154113PSGJEMX, 2020 WL 3105423 (C.D. Cal. May 21, 2020) .................... 21-22

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98 (2d. Cir. 2012).................... 20, 23

*Apex Directional Drilling, LLC v. SHN Consulting Engineers & Geologists, Inc.*, 119 F. Supp. 3d 1117 (N.D. Cal. 2015) .................... 20

*Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102 (1987) .................... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................... 9

*Baton v. Ledger SAS*, No. 21-cv-02470-EMC, 2021 WL 5226315 (N.D. Cal. Nov. 9, 2021) .................... 17, 18, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................... 9

*Calder v. Jones*, 465 U.S. 783 (1984) .................... 17

*Cybersell Inc. v. Cybersell Inc.*,
130 F.3d 414 (9th Cir. 1997) .......... 17-18

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 15-16

*DeAngelis v. Corzine*,
17 F. Supp. 3d 270 (S.D.N.Y. 2014) .......... 23

*Dent v. Nat'l Football League*,
968 F.3d 1126 (9th Cir. 2020) .......... 20

*Ellicott Mach. Corp. v. John Holland Party Ltd.*,
995 F.2d 474 (4th Cir. 1993) .......... 19

*Forsberg v. Always Consulting Inc.*,
No. 06–CV–13488 (CS), 2008 WL 5449003 (S.D.N.Y. Dec. 31, 2008) .......... 11

*Gardiner v. Walmart, Inc.*,
No. 20-CV-04618-JSW, 2021 WL 4992539 (N.D. Cal. July 28, 2021) .......... 22

*Gustafson v. Alloyd Co., Inc.*,
513 U.S. 561 (1995) .......... 13, 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) .......... 18

*In re Bare Escentuals, Inc. Secs. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) .......... 12

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009) .......... 11

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
No. CV 11-2768 PSG (SSX), 2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) .......... 10-11

*In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig.*,
No. 2:11-ML-02265-MRP, 2012 WL 1322884 (C.D. Cal. April 16, 2012) .......... 12

*In re Evergreen Mut. Funds Fee Litig.*,
423 F. Supp. 2d 249 (S.D.N.Y. 2006) .......... 23, 24

*In re Interlink Elecs., Inc., Sec. Litig.*,
No. CV 05-8133AG (SHX), 2007 WL 9857528 (C.D. Cal. Sept. 26, 2007) .......... 9

*In re Levi Strauss & Co. Sec. Litig.*,
527 F. Supp. 2d 965 (N.D. Cal. 2007) .................................................................. 12, 14

*In re Tether & Bitfinex Crypto Asset Litig.*,
576 F. Supp. 3d 55 (S.D.N.Y. 2021)...................................................................... 23, 24

*In re Tezos Secs. Litig.*,
Case No. 17-cv-06779-RS, 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) .................. 12

*In re Ultrafem Inc. Sec. Litig.*,
91 F. Supp. 2d 678 (S.D.N.Y. 2000)...................................................................... 14

*Janus v. Freeman*,
840 F. App'x 928 (9th Cir. 2020) ......................................................................... 18-19

*Labajo v. Best Buy Stores, L.P.*,
478 F. Supp. 2d 523 (S.D.N.Y. 2007)..................................................................... 21

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
No. 2:10–CV–0302 MRP, 2011 WL 4389689 (N.D. Cal. May 5, 2021) .................... 11, 12, 13

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
244 F.R.D. 204 (S.D.N.Y. 2007) ........................................................................... 21

*Marani v. Cramer*,
No. 19-cv-05538-YGR, 2021 WL 5865517 (N.D. Cal. Dec. 10, 2021)...................... 15, 16

*Pebble Beach Inv. Grp., LLC v. Square One Starts, LLC*,
No. 21-CV-00522-VC, 2021 WL 2531150 (N.D. Cal. June 21, 2021) ....................... 23

*Pegasus Trucking, LLC v. Asset Redeployment Grp.*,
No. CV 19-10339 PSG, 2021 WL 1234879 (C.D. Cal. Feb. 16, 2021)....................... 21

*Pica v. Delta Air Lines, Inc.*,
No. CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018)............ 22

*Pino v. Cardone Cap., LLC*,
Case No. CV 20-8499-JFW(KSx), 2021 WL 3502493 (C.D. Cal. Apr. 27, 2021) ...... 13

*Pinter v. Dahl*,
486 U.S. 622 (1988)............................................................................................... 11

*Primo v. Pac. Biosciences of Cal., Inc.*,
940 F. Supp. 2d 1105 (N.D. Cal. 2013) ................................................................. 11-12

*Quelimane Co. v. Stewart Title Guar. Co.*,
19 Cal. 4th 26 (1998), *as modified* (Sept. 23, 1998) .................................................... 20, 21

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009)............................................................................................ 9

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)......................................................................................... 16, 18, 19

*SEC v. Phan*,
500 F.3d 895 (9th Cir. 2007).............................................................................................. 11

*S. Cal. Gas Leak Cases*,
7 Cal. 5th 391 (2019) ......................................................................................................... 20, 21

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)................................................................................................ 9

*Toretto v. Donnelley Fin. Solutions, Inc.*,
583 F. Supp. 3d 570 (S.D.N.Y. 2022)................................................................................ 22

*Toretto v. Mediant Communic'ns, Inc.*,
No. 19-cv-05208-EMC, 2020 WL 1288478 (N.D. Cal. March 18, 2020)................... 17

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002)................................................................................................ 4

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003).............................................................................................. 9

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................................................... 18

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021).............................................................................................. 9

*Whitesides v. E*TRADE Sec., LLC*,
No. 20-CV-05803-JSC, 2021 WL 930794 (N.D. Cal. Mar. 11, 2021)......................... 22-23

*XOMA Corp. Secs. Litig.*,
No. C–91–2252 TEH, 1990 WL 357807 (N.D. Cal. Dec. 27, 1991)........................... 13

*Yen v. Buchholz*,
No. C–08–03535 RMW, 2010 WL 1758623 (N.D. Cal. Apr. 30, 2010)...................... 16

*Yung v. Lee*,
432 F.3d 142 (2d Cir. 2005) .......... 13, 14

**Rules and Statutes**

15 U.S.C. § 77l(a)(2) .......... *passim*

15 U.S.C. § 77b(10) .......... 13

Fed. R. Civ. P. 8(a)(1) .......... 15

Fed. R. Civ. P. 9(b) .......... 1, 9

Fed. R. Civ. P. 12(b)(6) .......... 1, 14

Fed. R. Civ. P. 12(b)(2) .......... 1, 14

**Administrative Decisions**

*In the Matter of Tether Holdings Ltd.*,
CFTC Docket No. 22-04 (Oct. 15, 2021) .......... 4

## STATEMENT OF ISSUES

1. Whether Plaintiffs' claims under Section 12 of the Securities Act of 1933 (Claims VIII and IX) should be dismissed pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim because Plaintiffs purchased the purported securities in the secondary market from third parties – not directly from GMO Trust – and Plaintiffs therefore fail to plead that GMO Trust was a statutory seller.

2. Whether Plaintiffs' remaining claims (Claims I, III, IV, and VI) should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction because GMO Trust lacks the necessary contacts with California.

3. Whether Plaintiffs' state common law and statutory claims (Claims I, III, IV, and VI) should be dismissed pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim because Plaintiffs fail to adequately plead the necessary elements of each claim.

## PRELIMINARY STATEMENT

This is a case about Plaintiffs' purchases of the GYEN, a stablecoin cryptocurrency that is designed to maintain 1:1 parity with the Japanese Yen ("JPY"). The GYEN maintains this 1:1 equivalency by backing each GYEN token with an equivalent amount of actual JPY held on deposit by GYEN's issuer, GMO Trust, and allowing token holders to redeem at a 1:1 ratio through GMO Trust. GMO Trust is a New York-based limited purpose trust company that was established pursuant to a charter from the New York Department of Financial Services ("NYDFS"), which is also its primary prudential regulator. GMO Trust is a subsidiary of a large Japanese technology company called the GMO Internet Group.

In November 2021, GYEN was listed for sale in the secondary trading market by one of the largest cryptocurrency platforms in the world, Coinbase. Following that listing, the price of the GYEN became temporarily displaced from the JPY on Coinbase because the supply of GYEN on that platform was outstripped by the intense and sudden demand for it. The result was that, for a period of time, the price at which one could convert U.S. dollars into GYEN on that platform

was higher than the USD/JPY currency exchange rate. Importantly, however, the trading price on Coinbase never dropped *below* the USD/JPY currency exchange rate (meaning that one GYEN was always worth an equivalent number of JPY or *more*), GYEN continued to be backed by a 1:1 deposit of JPY held by GMO Trust, and GMO Trust continued to both sell and redeem GYEN directly to the market at parity.

Plaintiffs allege that they purchased GYEN in the secondary market (*i.e.*, not from GMO Trust itself) during the period when the GYEN's price was displaced from parity with the JPY. They further allege that they suffered a loss when the price of GYEN dropped as it returned to parity. But despite having purchased their GYEN at a price that actually *was* displaced from 1:1 parity with JPY, Plaintiffs contend that GMO Trust somehow misled them into believing that such a break in parity was impossible.

Plaintiffs' entire theory of this case is hopelessly at odds with itself. Nobody who purchased the GYEN at 1:1 parity with the JPY could possibly assert having lost any money: those purchasers either held their GYEN until parity was restored, or sold their GYEN on the secondary market at higher prices and profited. And nobody who purchased GYEN at a price that exceeded 1:1 parity with the JPY could assert having been misled into believing that such a break in parity was impossible: At best, if that is true, such individuals were seeking to take advantage of the intense demand for GYEN to earn a quick profit *because* of the break in parity; if they believed GMO Trust's alleged statements that the GYEN was designed to maintain parity with the JPY, then they should have recognized that the break in parity was bound to correct.

Even setting aside this core defect, however, Plaintiffs' claims fail and should be dismissed.

*First*, GYEN is not a security, but even if one assumes that it is for purposes of this motion, Section 12 of the Securities Act of 1933 – on which Plaintiffs' federal securities claims are premised – affords a private right of action *only* to those who purchase in the primary market (*e.g.*, directly from the issuer) and not those who purchase in the secondary market like Plaintiffs.

*Second*, if Plaintiffs' federal securities claims are dismissed, as they should be, then their remaining state law claims against GMO Trust cannot go forward because GMO Trust is not subject to personal jurisdiction in California. While Plaintiffs' federal claims arguably would provide a "hook" to assert pendant personal jurisdiction over GMO Trust under Ninth Circuit precedent, once the federal claims are dismissed that "hook" is no longer available.

*Third*, Plaintiffs fail to satisfy the most basic elements of their claims: They fail to allege any duty that GMO Trust owed them directly, much less the sort of "special relationship" that is necessary to overcome the ordinary rule that a claim for negligence cannot be predicated solely on an economic loss (which is all that Plaintiffs allege). Nor, having characterized their entire case as one based on a supposed securities investment, are Plaintiffs permitted to invoke consumer protection statutes like New York's General Business Law Section 349, which do not apply to investment-related transactions.

Accordingly, Plaintiffs' claims should be dismissed, and because the defects in their claims are fundamental and could not be overcome by more detailed pleading, leave to replead should be denied.

## STATEMENT OF FACTS

GMO Internet Group, based in Tokyo, Japan, is one of the world's largest internet services conglomerates. AC ¶ 29.[1] GMO Internet Group owns or operates over 100 companies across the globe, employing over 7,000 people. *Id*. These companies include some of the most prominent financial services businesses in Japan, such as GMO Click Securities (the world's largest online foreign exchange trading platform), GMO Payment Gateway (the largest payment gateway business in Japan), and GMO Aozora Net Bank (a bank regulated by the Japanese Financial Services Authority). *Id.*; GMO-Z.com Trust Company, Inc., *WhitePaper* (Jan. 14,

[1] GMO Trust's statement of facts is drawn from the AC and documents that the Court may take judicial notice of on a motion to dismiss. GMO Trust does not admit the truth of the allegations in the AC.

2021), Request for Incorporation by Reference in Support of GMO-Z.com Trust Company, Inc.'s Motion to Dismiss, Exhibit 1 (the "GYEN White Paper") at 3.[2]

GMO Trust is a wholly-owned subsidiary of GMO Internet Group founded in 2020. AC ¶¶ 30, 68. GMO Trust is incorporated in New York, with its only office located in New York City. *Id.* ¶ 68. On December 29, 2020, the NYDFS granted GMO Trust a charter to operate as a limited purpose trust company under New York's Virtual Currency Law. *Id.* ¶ 30. GMO Trust was the seventh company to be granted this charter, and the first company chartered by NYDFS to issue a stablecoin pegged to the Japanese yen, known as the GYEN. *Id.* ¶¶ 30-31.

Stablecoins are digital assets that are intended to maintain a value equal to a fiat currency or other reference asset – most commonly the U.S. dollar. *Id.* ¶ 14. Issuers of many stablecoins – including GMO Trust – maintain the value of stablecoins by holding in reserve an equal amount of the underlying reference asset. *Id.* Many stablecoins – including GYEN – are redeemable at par (*i.e.*, one GYEN for one Japanese yen) upon request. *Id.* Various stablecoins are backed by different types of reserve assets. Some stablecoin issuers, such as GMO Trust, hold an equal amount of fiat currency in reserve, such that each GYEN in circulation can be redeemed for a Japanese yen held by GMO Trust. *Id.*; GYEN White Paper at 4-5. Other stablecoin issuers hold riskier and less liquid reserve assets, including commercial paper, corporate and municipal bonds, and other digital assets. *See, e.g.*, *In the Matter of Tether Holdings Ltd.*, CFTC Docket No. 22-04, at 6-7 (Oct. 15, 2021) ("Tether Reserves were held in non-fiat financial products and other less-liquid assets including commercial paper, and bank repurchase agreements.").

Plaintiffs allege that it is "unclear whether cryptocurrencies generally, and stablecoin assets specifically, are legally regarded as securities, currencies, or some other type of financial instrument." AC ¶ 17. Plaintiffs further allege that guidance from the Securities and Exchange Commission suggests that some stablecoins with certain characteristics, including that they "are

---

[2] The GYEN White Paper is quoted extensively in and therefore incorporated by reference in the Amended Complaint. AC ¶¶ 31-32, 34; *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (allowing courts to "consider documents that were referenced extensively in the complaint and were accepted by all parties as authentic" on a motion to dismiss).

issued with an expectation of profit," "are likely to be considered securities." *Id.* ¶ 20. The Commodity Futures Trading Commission has "taken a different tack than the SEC" and has labeled certain stablecoins as commodities. *Id.* ¶¶ 23-25. Regulation of cryptocurrencies also varies by state. *Id.* ¶¶ 26-27. To date, no government agency or court has claimed jurisdiction over GYEN as a security or commodity. *Id.* ¶ 28.

In January 2021, GMO Trust published the GYEN White Paper, which provides background information on stablecoins, GMO Internet Group, and GMO Trust, as well as a summary of the oversight, features, and technology of GYEN. *Id.* ¶ 31; GYEN White Paper. The GYEN White Paper explains that GYEN could reduce the high fees and slow speeds involved in traditional foreign currency trading when traders use GYEN as an equivalent to the Japanese yen in their currency trading strategies. AC ¶¶ 31-32 (quoting GYEN White Paper at 8). The GYEN White Paper also lists potential short- and long-term use cases for GYEN, including as a means of payment, a substitute for riskier unregulated stablecoins, a money transfer solution, and a store of value. GYEN White Paper at 7-8.

Individuals or entities may acquire GYEN in two ways: (i) by purchasing directly from GMO Trust through its official process, or (ii) by purchasing from third parties on the secondary market, including on third-party exchanges. *Id.* at 5-6; AC ¶ 36. The GYEN White Paper explains that holders of GYEN "can always redeem 1 GYEN for 1 JPY . . . directly with GMO Trust." GYEN White Paper at 5. In the alternative, the GYEN White Paper explains that holders can trade GYEN for "other digital assets on exchanges that list the stablecoins." *Id.* The GYEN White Paper does not make any representations about the price or volatility of GYEN when traded on third party exchanges.

Plaintiffs allege that GMO Trust made the following misrepresentations and omissions:

- GMO Trust stated in its White Paper that "GYEN anchors its value to the price of the Japanese Yen [. . .] [P]egged 1-to-1 with fiat currency, we can virtually eliminate volatility, while still benefitting from the advantages of digital assets,

such as high transaction speeds matched with low costs." AC ¶ 34; GYEN White Paper at 4.

- GMO Trust also distributed "promotional videos" on LinkedIn and YouTube, which stated that "GYEN is the first stablecoin pegged 1:1 to the Japanese YEN and is fully regulated by the New York Department of Financial Services (NYDFS)." AC ¶ 35.
- GMO Trust's website's referred to GMO Trust as "the World's First Regulated JPY-Pegged Stablecoin Issuer." *Id.* ¶ 36.
- GMO Trust's website's FAQ page stated that "the exchange rate for GYEN/JPY [. . .] will always be 1:1 through GMO-Z.com Trust Company's official Purchase/Redemption process." *Id.* ¶ 36.
- GMO Trust's website also contained a "carousel of linked articles," with titles such as "New York Regulator Licenses GMO Internet to Issue the First JPY-Pegged Stablecoin" and "Japanese Internet Giant Licensed to Issue First JPY-Pegged Stablecoin in New York." *Id.* ¶ 36.
- Finally, GMO Trust's website "posted several 'independent accountant report' documents from May 2021 through April 2022 stating GYEN is 'the world's first regulated Japanese yen-pegged stablecoin,' and is 'pegged 1:1 to the Japanese yen.'" *Id.* ¶ 36.

GMO Trust launched the initial sale of GYEN on March 1, 2021. AC ¶ 39. GYEN was sold both directly by GMO Trust and on third-party digital asset exchanges. *Id.* In November 2021, GYEN was introduced for sale on Coinbase, the largest digital asset platform in the United States. *Id.* ¶¶ 42, 45. Coinbase operates two digital asset trading platforms – Coinbase and Coinbase Pro – where its customers can buy and sell digital assets. *Id.* ¶ 40.

On November 16, 2021, Coinbase listed the GYEN for trading, and the GYEN-USD exchange rate on Coinbase allegedly "almost immediately . . . rose" to more than seven times the JPY-USD exchange rate. *Id.* ¶ 46. While the JPY-USD exchange rate remained stable at or

below $0.0087, the GYEN-USD exchange rate on Coinbase allegedly rose to "an all-time high" of either $0.34 or $5,353.87. *Id.* Plaintiffs do not allege that the GYEN-USD exchange rate on Coinbase ever sunk below the JPY-USD exchange rate. *See id*. (displaying Yahoo! Finance chart that shows a spike in the price of GYEN in November 2021 followed by a return to parity). By November 19, 2021, the GYEN-USD exchange rate on Coinbase had returned to parity with the JPY-USD exchange rate. *Id.* ¶ 48. At some point, Coinbase "restrict[ed] its customers' ability to trade GYEN." *Id.* ¶ 49. At 4:00pm on November 19, 2021, after the return to parity, Coinbase "suspended all GYEN trading activity." *Id.* ¶ 50.

Plaintiffs allege they lost money from buying GYEN at different and varying prices on exchanges when the GYEN-USD exchange rate exceeded the JPY-USD exchange rate, and selling GYEN on exchanges at a lower price. *Id.* ¶¶ 65-67. Plaintiffs do not allege that they purchased or redeemed GYEN directly from GMO Trust. Plaintiffs do not allege that they were restricted at any point from buying or selling GYEN directly from GMO Trust. Plaintiffs do not and cannot allege that the exchange rate for GYEN/JPY ever deviated from 1:1 through GMO Trust's official purchase or redemption processes.

Plaintiff Kenneth Donovan, a resident of New York, allegedly entered into several GYEN transactions on May 12, 2021 when the GYEN-USD exchange rate on a third-party exchange exceeded the JPY-USD exchange rate. On information and belief, Donovan's May 2021 transactions occurred on another major cryptocurrency exchange, Binance. *Id*. ¶¶ 56-57; ECF No. 46-1. Donovan bought 115,546 GYEN at a price of $0.728, and made a quick profit when the GYEN-USD exchange rate continued to increase, selling 34,886 GYEN at a price of $0.847. ECF No. 46-1. Donovan then bought more GYEN as the exchange rate began to decline – to move back toward parity with the JPY-USD exchange rate – later that day. *Id.* Donovan sold his remaining GYEN at a loss on September 7, 2021, after the GYEN-USD exchange rate on the third-party exchange had returned to parity with the JPY-USD exchange rate. *Id.* Donovan does not allege that he made any GYEN transactions in November 2021 nor any purchases on Coinbase. *Id.* Donovan does not allege that he bought any GYEN directly from GMO Trust. *Id.*

Donovan alleges that he paid more than $335,000 to purchase GYEN and that the coins he purchased lost more than 90% of their value within hours. AC ¶ 65.

Plaintiff Hussien Kassfy, a resident of California, allegedly made 32 purchases of GYEN on Coinbase between November 17 and November 19, 2021, when the GYEN-USD exchange rate on Coinbase exceeded the JPY-USD exchange rate. ECF No. 50 at 2-3. On November 17, Kassfy sold 1,737,284 GYEN for a quick profit, and then continued purchasing GYEN as the exchange rate began to decline – to move back toward parity with the JPY-USD exchange rate. *Id.* Kassfy sold his remaining GYEN at a loss in December 2021 after the GYEN-USD exchange rate had returned to parity with the JPY-USD exchange rate. *Id.* Kassfy does not allege that he bought any GYEN directly from GMO Trust. *Id.* Kassfy alleges that he paid approximately $113,000 to order GYEN through Coinbase, and that the coins he purchased lost more than 70% of their value within hours. AC ¶ 66. Both Donovan and Kassfy allegedly did not know that "at the time [their] order[s] [were] placed, the GYEN's value was not pegged to the Japanese yen." *Id.* ¶¶ 65-66.

Plaintiff John Brambl, a resident of New Mexico, allegedly purchased 5,831,534 GYEN on Coinbase on November 16 and 17, 2021 at prices ranging from $0.030 to $0.042, when the GYEN-USD exchange rate on Coinbase exceeded the JPY-USD exchange rate. ECF No. 46-3. Brambl sold his GYEN at a loss at a price of $0.010 on November 18, 2021. *Id.* Brambl then purchased 5,117,795 more GYEN at a price of $0.011 on November 19, 2021, which he subsequently sold at a price of $0.009 on December 11, 2021. *Id.* Brambl does not allege that he bought any GYEN directly from GMO Trust. *Id.* Brambl alleges that he paid approximately $175,000 to order GYEN through Coinbase, and that the coins he purchased lost more than 66% of their value soon after his order was filled. AC ¶ 67.

Plaintiffs allege that as a result of their purchases of GYEN, they suffered financial loss, stress, anxiety, and other forms of physical and emotional distress. *Id.* ¶¶ 65-67. Plaintiffs assert claims on behalf of themselves and on behalf of a putative class of others purportedly similarly situated against GMO Trust for negligence, negligence *per se*, negligent misrepresentation,

violation of New York General Business Law § 349, and violations of §§ 5, 12(a)(1), and 12(a)(2) of the Securities Act of 1933 (the "Securities Act"). AC ¶¶ 84-92, 104-25, 131-41, 154-75.

**ARGUMENT**

Plaintiffs have the burden to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To do so, "[t]he plaintiff must allege sufficient facts to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citing *Iqbal*, 556 U.S. at 679-80). While the Court must credit a plaintiff's well-pleaded allegations on a motion to dismiss, it "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," nor must the Court "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Moreover, because Plaintiffs' allegations "sound in fraud," they must be pled with particularity under Rule 9(b). *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009). It is irrelevant that fraud is not a required element of their claims; instead, the applicability of Rule 9(b) depends on the facts pleaded in the complaint and whether they allege the elements of fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("When a . . . claim . . . is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim."). Thus, Plaintiffs' claims that allege knowledge of falsity on the part of the defendants are subject to the heightened pleading standard. *See In re Interlink Elecs., Inc., Sec. Litig.*, No. CV 05-8133AG (SHX), 2007 WL 9857528, at *3 (C.D. Cal. Sept. 26, 2007) (subjecting Section 12 claim to heightened pleading standard where plaintiff "implicitly incorporate[d]" knowledge allegations).

## I. PLAINTIFFS' FEDERAL SECURITIES CLAIMS FAIL BECAUSE PLAINTIFFS DID NOT PURCHASE THEIR GYEN FROM GMO TRUST AND GMO TRUST DID NOT DIRECTLY SOLICIT PLAINTIFFS' PURCHASES.

The core of Plaintiffs' lawsuit, and the only basis they have for asserting any claims against GMO Trust in California, *see infra* at 15, are claims under Sections 12(a)(1) and 12(a)(2) of the Securities Act of 1933, 15 U.S.C.§ 77l (Claims VIII and IX). Section 12(a)(1) provides a narrow private right of action for purchasers of securities against issuers who sell unregistered securities, while Section 12(a)(2) does the same for purchasers against issuers who make a material misstatement or omission in a prospectus or oral communication. 15 U.S.C. § 77l. In both cases, the claim arises only if (a) the instrument sold is actually a "security" within the meaning of the federal securities laws, and (b) the person asserting the claim "purchas[ed] such security from" the defendant. *Id.*

The GYEN is a stablecoin, the value of which derives from the value of the JPY. It is not a security, and GMO Trust would establish as much if this case proceeded past the motion to dismiss stage. The Court need not reach that question on this motion, however, because *these* Plaintiffs cannot satisfy this second "statutory seller" element.

### A. Plaintiffs' Section 12 Claims Fail Because They Did Not Purchase GYEN Directly From GMO Trust.

All of the named Plaintiffs in this case purchased the GYEN at issue in the secondary market – that is, from third parties – and *not* from GMO Trust. Plaintiffs Kassfy and Brambl both allege purchasing from third parties on the cryptocurrency platform Coinbase. AC ¶¶ 66, 67. Plaintiff Donovan also does not allege that he purchased GYEN directly from GMO Trust. *Id.* ¶ 65.[3] The fact that Plaintiffs purchased from third parties rather than GMO Trust is not happenstance, it is integral to their claim: Plaintiffs do not allege that GMO Trust ever deviated from offering GYEN at parity with the JPY; the displacement they allege occurred *only* in the

---

[3] On information and belief, Plaintiff Donovan's May 2021 transactions occurred on another major cryptocurrency exchange, Binance. *Id.* ¶¶ 56-57; ECF No. 46-1.

secondary market.[4]

The fact that Plaintiffs did not purchase GYEN from GMO Trust is fatal to both of their claims under Section 12 of the Securities Act, because that Act only confers a private right of action on purchasers in the *primary* offering market – that is, with respect to an issuer of securities, "the person purchasing such security *from him*." 15 U.S.C. § 77l. Put differently, to be liable under Section 12 of the Securities Act, the defendant must be a "statutory seller." *Pinter v. Dahl*, 486 U.S. 622, 641-42 (1988) (12(a)(1) claim); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 548 (N.D. Cal. 2009) (12(a)(2) claim). The Supreme Court has narrowly defined statutory sellers as those who either (1) sell directly to the plaintiff, or (2) actively solicit the sale to the plaintiff to serve its own financial interests or those of the security owner. *Pinter*, 486 U.S. at 642. While the SEC has broad authority to bring claims under Section 5 of the Securities Act against any issuers of unregistered securities, the private right of action under Section 12 is considerably narrower and limited to those who buy from "statutory sellers." *SEC v. Phan*, 500 F.3d 895, 906 n.13 (9th Cir. 2007).[5]

Liability under the first prong is limited to "immediate sellers." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10–CV–0302 MRP (MANx), 2011 WL 4389689, at *9 (N.D. Cal. May 5, 2021). Plaintiffs do not contend that GMO Trust sold "directly" to them, nor could they, given that each Plaintiff purchased in the secondary market. *Pinter*, 486 U.S. at 644 n.21 ("[R]emote purchasers are precluded from bringing actions against remote sellers" and "a buyer cannot recover against his seller's seller."); *Maine State Ret. Sys.*, 2011 WL 4389689, at *9

[4] In any event, "Lead Plaintiffs may not assert claims because there are potential members of the proposed class who could assert those claims." *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSX), 2012 WL 12893520, at *5 (C.D. Cal. Feb. 16, 2012) (dismissing on statutory seller grounds where plaintiffs alleged "some members of the proposed Class purchased shares directly from [defendants]") (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

[5] Plaintiffs cite both Sections 5 and 12(a)(1) in the Eighth Cause of Action. AC ¶ 164. To the extent Plaintiffs are asserting a Section 5 claim, that claim must be dismissed because there is no private right of action under Section 5. *See, e.g.*, *Forsberg v. Always Consulting Inc.*, No. 06–CV–13488 (CS), 2008 WL 5449003, at *2 (S.D.N.Y. Dec. 31, 2008) ("Although Section 5 does not provide for a private right of action, claims brought pursuant to Section 5 have been construed as claims arising under Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l, which does provide for a private right of action.").

(dismissing Section 12 claims against issuer defendants where the issuers did not sell directly to plaintiffs); *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1123-25 (N.D. Cal. 2013) (dismissing Section 12 claims where plaintiffs purchased in the secondary market rather than as part of an issuer's initial offering); *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 982-83 (N.D. Cal. 2007) (holding that Section 12 "does not extend to after market transactions" against the issuer).

To plead the second prong, a plaintiff must plausibly allege that a defendant was "directly involved in the actual solicitation of a securities purchase." *In re Tezos Secs. Litig.*, Case No. 17-cv-06779-RS, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (citing *In re Dauo Systems, Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005)). Moreover, this actual solicitation must take place in the context of "a direct relationship between the purchaser and the defendant." *Maine State Ret. Sys.*, 2011 WL 4389689, at *9.

While Plaintiffs appear to recognize their obligation to plead such a direct solicitation, their mere recitation of the statutory requirements does not get them there. All Plaintiffs allege is boilerplate: "by offering GYEN to Plaintiffs and members of the Class, GMO Trust solicited these purchases." AC ¶ 159. Besides being nothing more than a legal conclusion, *In re Bare Escentuals, Inc. Secs. Litig.*, 745 F. Supp. 2d 1052, 1073 (N.D. Cal. 2010) ("[A] mere assertion that defendants are solicitors or sellers is a legal conclusion and therefore insufficient to withstand a motion to dismiss."), this allegation – if accepted – would eviscerate the "statutory seller" requirement altogether by imposing liability in favor of anyone in the market, not just those who "purchased such security .. from [the issuer]," 15 U.S.C. § 77l. Not surprisingly, courts have uniformly rejected such abstract pleading. Rather, solicitation within the meaning of Section 12 requires "active participation in the solicitation of the immediate sale, a direct relationship between the purchaser and the defendant." *Maine State Ret. Sys.*, 2011 WL 4389689, at *9; *see also In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig.*, No. 2:11-ML-02265-MRP (MANx), 2012 WL 1322884, at *5 (C.D. Cal. April 16, 2012) (dismissing complaint that failed to "allege that [defendants] had any direct contact with [plaintiff] or otherwise directly solicited

[plaintiff]"); *Pino v. Cardone Cap., LLC*, Case No. CV 20-8499-JFW(KSx), 2021 WL 3502493, *17 (C.D. Cal. Apr. 27, 2021) (dismissing complaint where plaintiff failed to allege that a defendant was "directly and actively involved in soliciting Plaintiff's investment, or that Plaintiff relied on such a solicitation when investing"); *XOMA Corp. Secs. Litig.*, No. C–91–2252 TEH, 1990 WL 357807, *8 (N.D. Cal. Dec. 27, 1991) (dismissing complaint that failed to allege "that any particular defendants solicited any particular plaintiff").

Here, Plaintiffs allege no direct contact with GMO Trust prior to their purchases of GYEN in the secondary market. GMO Trust's general public statements about GYEN in the GYEN White Paper and in the media do not qualify as *direct* solicitation of any *particular* individual purchasers, as the law requires. *See, e.g., Maine State Ret. Sys.*, 2011 WL 4389689, at *9 (preparing a prospectus and conducting a road show do not constitute direct solicitation) (citing cases); *Pino*, 2021 WL 3502493, at *17 (defendants could not be statutory sellers based on posts on social media highlighting the benefits of an investment). Plaintiffs' failure to allege direct contact in the solicitation of the immediate sale defeats the second prong of the statutory seller definition. *Pino*, 2021 WL 3502493, at *17; *Maine State Ret. Sys.*, 2011 WL 4389689, at *10 ("Plaintiffs must include very specific allegations of solicitation, including direct communication with Plaintiffs.").

### B. Plaintiffs Fail to Allege Any Misstatements In A "Prospectus."

In addition to Plaintiffs' inability to plead that GMO Trust is a statutory seller of the GYEN they allege to have purchased, their claims arising from alleged misstatements "by means of a prospectus or oral communication," Section 12(a)(2), 15 U.S.C. § 77l(a)(2), fail because Plaintiffs do not identify any "prospectus" or "oral communication" on which their claims are predicated.

The Supreme Court has held that "prospectus," as used in Section 12(a)(2), "is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 584 (1995); *see* 15 U.S.C. § 77b(10) (defining prospectus as a document "which offers any security for sale or confirms the sale of any

security"). "Oral communications" are only actionable under Section 12(a)(2) if they "relate to a prospectus." *Gustafson*, 513 U.S. at 567-68; *Yung v. Lee*, 432 F.3d 142, 147 n.5 (2d Cir. 2005) (holding the same). Setting aside that GYEN is not a security, and accordingly GMO Trust never issued a prospectus in connection with its offering or sale, the law is crystal clear that Section 12(a)(2) liability does not arise for sales in the *secondary* market because an issuer has no obligation to deliver a prospectus in connection with secondary market sales. *See Gustafson*, 513 U.S. at 571 (holding that Section 12(a)(2) liability "cannot attach unless there is an obligation to distribute the prospectus in the first place"); *Yung*, 432 F.3d at 147-50 (2d Cir. 2005) ("No such obligation arises with respect to . . . secondary sales of securities . . . ."); *In re Levi Strauss*, 527 F. Supp. 2d at 983 ("The court concludes that based on *Gustafson*, § 12(a)(2) does not extend to after market transactions."); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 693 (S.D.N.Y. 2000) ("Purchasers in . . . secondary market offerings do not have standing to bring actions under Section [12(a)(2)]."); *see also Gustafson*, 513 U.S. at 580 ("The House Report [for the Securities Act] stated: 'The bill affects only new offerings of securities. . . . It does not affect the ordinary redistribution of securities unless such redistribution takes on the characteristics of a new offering.'"). Again, Plaintiffs purchased their GYEN not from GMO Trust but rather from third parties through trading in secondary markets, and accordingly – whether or not there were alleged misstatements in any document they reviewed – they are not entitled to bring a claim under Section 12(a)(2).

## II. PLAINTIFFS' STATE LAW CLAIMS FAIL FOR LACK OF PERSONAL JURISDICTION AND ON THEIR ELEMENTS.

Plaintiffs join to their defective federal claims a variety of state law causes of action, none of which fare any better. Plaintiffs' state law claims should be dismissed pursuant to Rules 12(b)(2) and 12(b)(6).

### A. Without Their Federal Securities Claims, Plaintiffs Cannot Establish Personal Jurisdiction Over GMO Trust.

Plaintiffs' assertion of personal jurisdiction over GMO Trust, a company with no

established presence in California and which performed no relevant act in or directed at California, is entirely predicated on having joined their claims with federal securities claims that provide for nationwide service of process. *See Yen v. Buchholz*, No. C–08–03535 RMW, 2010 WL 1758623, at *2 (N.D. Cal. Apr. 30, 2010). Without their federal securities claims, their state law claims must be dismissed. *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004) ("Pendant personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction."); *Andrade-Heymsfield v. Danone US, Inc.,* No. 19-CV-589-CAB-WVG, 2019 WL 3817948, at *5 (S.D. Cal. Aug. 14, 2019) (dismissing for lack of personal jurisdiction absent any "federal claim upon which Plaintiffs can hook their state law claims to trigger pendent personal jurisdiction"). It is Plaintiffs' burden to adequately plead facts that support either general jurisdiction or specific jurisdiction over a nonresident defendant. Fed. R. Civ. P. 8(a)(1); *Marani v. Cramer*, No. 19-cv-05538-YGR, 2021 WL 5865517, at *2 (N.D. Cal. Dec. 10, 2021). Plaintiffs include just two boilerplate jurisdictional allegations which fail to distinguish between Defendants: (i) "Each engages in substantial business in the state of California, maintains substantial contacts, or committed overt acts in furtherance of the alleged unlawful conduct in California"; and (ii) "The conduct by each Defendant giving rise to this litigation has been directed at, and has had the intended effect of, causing injury to persons residing or located in California." AC ¶ 63. This boilerplate fails to carry Plaintiffs' burden. *See Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-cv-02991-JST, 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) (finding conclusory jurisdictional allegations insufficient). For the following reasons, Plaintiffs' jurisdictional allegations fail to carry Plaintiffs' burden.

**1. GMO Trust Is Not Subject To General Jurisdiction In California.**

Plaintiffs concede that GMO Trust is established in and maintains its principal place of business in New York. AC ¶ 30 ("GMO Trust is a limited purpose trust company formed in the State of New York."); ¶ 68 ("GMO Trust['s] . . . principal place of business [is] located at 150

East 52nd Street, Suite 7003, New York City, New York."). GMO Trust is therefore not amenable to general personal jurisdiction in California because it is not "essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *see also Yen v. Buchholz*, 2010 WL 1758623, at *6 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (general jurisdiction found only where defendants "engage in continuous and systematic general business contacts that approximate physical presence in the forum state"). Plaintiffs do not allege otherwise.

**2. GMO Trust Is Not Subject To Specific Personal Jurisdiction With Respect To Plaintiffs' Claims.**

Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Marani*, 2021 WL 5865517, at *2 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiffs cannot satisfy the Ninth Circuit's three-part test, which requires that: (1) GMO Trust purposefully directed its activities at California or a resident thereof; or purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws; (2) Plaintiff's claims arise out of or relate to GMO Trust's California-related activities; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice, *i.e.*, it must be reasonable. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004) (requiring "sufficient 'minimum contacts' with California arising from, or related to, its actions" underlying the claims).

***Part One: No Purposeful Direction***. A defendant has "purposefully directed his conduct toward a forum state" if his "actions outside the forum state . . . are directed at the forum." *Schwarzenegger*, 374 F.3d at 803. This standard requires three indispensable elements: that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Plaintiffs fail to allege any of these elements.

As to the first element of the purposeful direction test, Plaintiffs' state law claims are not based on any intentional acts, but rather on allegations of negligence. *See* AC ¶¶ 84-92, 104-125, 169 (asserting that the AC "expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct" but rather is based on "strict liability and/or negligence"). Such allegations cannot, by definition, satisfy the requirement of intentionality. *See Toretto v. Mediant Communic'ns, Inc.*, No. 19-cv-05208-EMC, 2020 WL 1288478, at *6 (N.D. Cal. March 18, 2020) (finding "[m]ere untargeted negligence" not enough to demonstrate an intentional act under *Calder v. Jones*, 465 U.S. 783 (1984) and that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state.").

The second element of the purposeful direction test likewise fails because Plaintiffs do not even attempt to suggest that GMO Trust "expressly aimed" any relevant conduct at California. To the contrary, Plaintiffs specifically assert that GMO Trust's "alleged deceptive acts and practices occurred in New York, where GMO Trust operates its principal place of business." AC ¶ 138. GMO Trust is a limited purpose trust company formed in New York and licensed by the New York DFS to issue digital assets. *Id.* ¶¶ 28, 30, 121, 138. Two of the three named Plaintiffs do not even assert that *they* were present in California at any relevant time, AC ¶¶ 65-67 (Plaintiffs are residents of New York, California, and New Mexico), and they seek to represent a nationwide class of people many or most of whom presumably have no connection to California whatsoever, AC ¶ 74 (seeking to define a class of "All persons who purchased or acquired GYEN in the United States or its territories . . . .").

That GYEN is available for trading on online trading platforms accessible by people all over the United States – including those in California – does not establish that GMO Trust specifically directed any activity at California. *Baton v. Ledger SAS*, No. 21-cv-02470-EMC, 2021 WL 5226315, at *6 (N.D. Cal. Nov. 9, 2021) (holding that "purposeful direction 'cannot be based on the mere fact that [a company] provides services to customers nationwide, including but not limited to California'"). Indeed, the 9th Circuit has repeatedly rejected claims of personal

jurisdiction founded on merely maintaining a presence on the internet that is accessible to everyone with an internet connection. *See e.g., Cybersell Inc. v. Cybersell Inc.*, 130 F.3d 414, 415 (9th Cir. 1997) ("[A]pplying our normal 'minimum contacts' analysis, we conclude that it would not comport with 'traditional notions of fair play and substantial justice . . . for Arizona to exercise personal jurisdiction over an allegedly infringing Florida web site advertiser who has no contacts with Arizona other than maintaining a home page that is accessible to Arizonans, and everyone else, over the Internet."); *see also Schwarzenegger*, 374 F.3d at 799 (finding no personal jurisdiction based on "an Internet website that is available for viewing in California and, for that matter, from any Internet café in Istanbul, Bangkok, or anywhere else in the world").

To the extent that Plaintiffs would try to shoehorn their claim against GMO Trust into California based on the fact that Coinbase has contacts with the State, their effort fails under controlling authority. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state."); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *see also Baton*, 2021 WL 5226315, at *6 (explaining that the contacts supporting purposeful direction must be the defendant's own choice). That GYEN was listed on Coinbase's platform and available to trade nationally does not establish that GMO Trust chose to "expressly aim" activity into California. *Baton*, 2021 WL 5226315, at *5-6 (rejecting the argument "that Shopify, Inc. provided 'a software product' to Ledger that 'allow[ed] Ledger to easily operate [an] online store[] . . . to sell to 'consumers worldwide' . . . shows that Shopify, Inc. made a choice to direct acts towards California").

Finally, as to the third element of the purposeful direction test, beyond the conclusory allegation that "[t]he conduct by each Defendant . . . has had the intended effect of[] causing injury to persons residing or located in California," AC ¶ 63, Plaintiffs do not attempt to allege that GMO Trust expressly aimed its conduct at a specific individual or entity in California, or

knew that its actions would likely cause harm in California. *See Janus v. Freeman*, 840 F. App'x 928, 931 (9th Cir. 2020) (finding *Calder*'s "effects" test unsatisfied where plaintiff's allegations "do not sufficiently connect Freeman's conduct to California, as opposed to a person (Janus) who happens to live there."). To the contrary, Plaintiffs allege that GMO Trust's actions "had a broad impact on investors at large," and were "aimed at a robust consumer and investor base and the marketplace in general." AC ¶ 137.

***Part Two: Plaintiffs' Claims Do Not Arise Out Of Any California Contact.*** Plaintiffs also fail to satisfy the second prong of the specific personal jurisdiction test, which requires them to show that their claims arise out of GMO Trust's California-related activities. *Schwarzenegger*, 374 F.3d at 801-02. The Amended Complaint "is deficient for the same reasons it was unable to adequately allege[] that [the defendant] *caused harm* in California nor harm that [the defendant] knew was likely to be suffered there." *Baton*, 2021 WL 5226315, at *12 (emphasis in original). Plaintiffs assert that GMO Trust's "alleged deceptive acts and practices occurred in New York, where GMO Trust operates its principal place of business." AC ¶ 138. The AC does not identify any specific California-related actions taken by GMO Trust.

***Part Three: Inconsistent With Fair Play and Substantial Justice.*** Even if Plaintiffs demonstrated sufficient contacts with California to establish personal jurisdiction – and for the reasons listed above, they do not – exercising personal jurisdiction in this case would not "comport with fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 802. Where a defendant's contacts with the forum state are limited, courts undertake "a more concerned focus on the [fair play and substantial justice] prong of the due process analysis." *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 479 (4th Cir. 1993). Plaintiffs concede that New York State – where GMO Trust is incorporated and where it operates its principal place of business – "has a significant interest" in regulating the conduct of entities licensed with the NYDFS such as GMO Trust. AC ¶ 138. And California's interest in adjudicating this dispute is limited given that GMO Trust and two of the three plaintiffs are based outside the state. *See Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 114 (1987) (recognizing that the court's interest in asserting

jurisdiction was "slight" where plaintiff was based outside the forum).

**B. Plaintiffs' State Law Claims Also Fail On Their Elements.**

**1. Negligence *Per Se* Is Not a Standalone Cause of Action.**

Plaintiffs' claim for negligence *per se* (Claim III) fails because "the doctrine of negligence per se is not a separate cause of action" in California. *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020). Rather, it is an "evidentiary presumption that affects the standard of care in a cause of action for negligence." *Id.* (quoting *Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549, 555 (2009)).

**2. Plaintiffs' Negligence and Negligent Misrepresentation Claims Fail Because GMO Trust Owed No Duty to Any of the Plaintiffs.**

Plaintiffs' negligence and negligent misrepresentation claims (Claims I and IV) fail because Plaintiffs do not plead that GMO Trust owed them any duty – an essential element of any claim of negligence. *See S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 397 (2019) (negligence claim under California law); *Apex Directional Drilling, LLC v. SHN Consulting Engineers & Geologists, Inc.*, 119 F. Supp. 3d 1117, 1122 (N.D. Cal. 2015) (negligent misrepresentation claim under California law).[6]

It is Plaintiffs' burden to plead that GMO Trust owed them "a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 57 (1998), *as modified* (Sept. 23, 1998) (quoting Restatement (Second) of Torts § 281). Here, Plaintiffs allege three potential sources of such duties of care: (i) a supposed common law duty to prevent foreseeable harm to others (AC ¶ 87); (ii) statutory duties that arise under Section 5 of the Federal Trade Commission Act and Section 200.18(d) of the NYDFS's Virtual Currency law (*id.* ¶¶ 88-89); and (iii) a so-called "special

---

[6] *See also 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 288 (2001) (negligence claim under New York law); *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011) (negligent misrepresentation claim under New York law). In the absence of any "true conflict" between California and New York law on the elements of Plaintiffs' claims, the Court need not conduct a choice of law analysis. *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 113 (2d. Cir. 2012).

relationship" between GMO Trust and Plaintiffs arising from NYDFS's granting a special purpose charter to GMO Trust allowing it to issue GYEN (*id.* ¶ 90). Each theory fails under the economic loss rule.

*First*, the economic loss rule provides that the common law duty to prevent foreseeable harm does not impose a duty to prevent third parties from suffering exclusively economic losses. *Quelimane*, 19 Cal. 4th 26 at 58 ("Recognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law."); *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 400 (2019) (same).[7] To recover for economic losses under a negligence theory, the plaintiff must plead the existence of a "special relationship" between the parties – the basic duty to prevent foreseeable harm does not suffice. *Quelimane*, 19 Cal. 4th at 58-60 ("In the business arena it would be unprecedented to impose a duty on one actor to operate its business in a manner that would ensure the financial success of transactions between third parties. With rare exceptions, a business entity has no duty to prevent financial loss to others with whom it deals directly. A fortiori, it has no greater duty to prevent financial losses to third parties who may be affected by its operations."); *see also S. Cal. Gas Leak Cases*, 7 Cal. 5th at 400. Plaintiffs here allege only economic losses and therefore cannot rely on the basic common law duty to prevent foreseeable harm.[8]

*Second*, Plaintiffs cannot avoid the economic loss rule simply by alleging that GMO Trust's conduct violated a statute such as the Federal Trade Commission Act or New York's Virtual Currency Law ("VCL") because, even if those allegations had merit, "negligence *per se* is

---

[7] *See also Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (duty to prevent purely economic harm not recognized in negligent misrepresentation case); *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 532 (S.D.N.Y. 2007) ("There is a longstanding New York rule . . . that economic loss is not recoverable under a theory of negligence.").

[8] Plaintiffs' conclusory allegations that they suffered "stress, anxiety, and other forms of physical and emotional distress," AC ¶¶ 65-67, are insufficient to escape the economic loss rule. *See Pegasus Trucking, LLC v. Asset Redeployment Grp.*, No. CV 19-10339 PSG (JEMx), 2021 WL 1234879, at *7 (C.D. Cal. Feb. 16, 2021) (holding that the economic loss rule barred plaintiff's claim where a "conclusory statement" alleging emotional distress "offer[ed] no explanation, let alone a plausible one, describing the emotional distress that [plaintiff] suffered from the failed business arrangement").

not an exception to the economic loss rule." *Andrews v. Plains All Am. Pipeline, LP*, No. CV154113PSGJEMX, 2020 WL 3105423, at *11 (C.D. Cal. May 21, 2020). This is particularly the case given that the statutes Plaintiffs cite do not provide a private right of action. A contrary rule would effectively engraft a right to privately enforce statutes where Congress or the New York Legislature have not so provided, and Courts routinely reject such efforts. *See Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (rejecting plaintiffs' negligence *per se* theory "because the FTC Act creates no private right of action.");[9] *Toretto v. Donnelley Fin. Solutions, Inc.*, 583 F. Supp. 3d 570, 598 (S.D.N.Y. 2022) (allowing a duty on the basis of a violation of a statutory provision with no private right of action would be "inconsistent with the legislative scheme").

*Third*, Plaintiffs fail to identify any "special relationship" between themselves and GMO Trust, a party with whom they allege no direct dealings whatsoever. To allege a "special relationship," Plaintiffs must show that they were owed some duty "intended to specifically benefit [them] in a way separate from other consumers." *Gardiner v. Walmart, Inc.*, No. 20-CV-04618-JSW, 2021 WL 4992539, at *6 (N.D. Cal. July 28, 2021). Plaintiffs' allegations that they somehow enjoy a "special relationship" with GMO Trust because GMO Trust received a "special purpose charter"[10] from the NYDFS, AC ¶ 90, fails to establish such a relationship. Nothing about GMO Trust's charter from the New York banking regulator creates any unique relationship between GMO Trust and Plaintiffs; it is a charter authorizing GMO Trust to issue GYEN to the market as a whole. AC ¶ 121. Plaintiffs have no basis to allege that by granting GMO Trust a charter to conduct its business, NYDFS established any kind of "special relationship" between GMO Trust and any specific purchaser of GYEN – particularly those who had no direct contractual relationship with GMO Trust. *See Whitesides v. E*TRADE Sec., LLC*, No. 20-CV-

[9] Section 200.18(d) of the VCL, enacted in 2015, similarly creates no private cause of action, and GMO Trust is unaware of any plaintiff who has even attempted to bring a private claim to enforce this provision.

[10] In fact, as Plaintiffs correctly allege elsewhere in their complaint, GMO Trust holds a "limited purpose trust company" charter from NYDFS – there is no such thing as a NYDFS "special purpose charter." *See* AC ¶ 30.

05803-JSC, 2021 WL 930794, at *6 (N.D. Cal. Mar. 11, 2021) (rejecting claim of a "special relationship" for customers of an electronic trading platform where the "trading platform was not intended to affect Plaintiffs in any way particular to Plaintiffs"); *Pebble Beach Inv. Grp., LLC v. Square One Starts, LLC*, No. 21-CV-00522-VC, 2021 WL 2531150, at *1 (N.D. Cal. June 21, 2021) (dismissing negligence claim given plaintiffs' conclusory allegations of a special relationship).

*Finally*, Plaintiffs' negligent misrepresentation claim (Fourth Cause of Action) would also fail under New York law because "New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity."[11] *Anschutz*, 690 F.3d at 114 (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). Plaintiffs do not, and cannot, allege any contractual relationship between themselves and GMO Trust – to the contrary, they acquired their GYEN on third party platforms on the secondary market. *See supra* at 7-8.

**3. Plaintiffs Fail to Allege That GMO Trust Engaged in Consumer-Oriented Conduct, as Required to State a Claim Under NY GBL § 349.**

Finally, having structured this entire case as an investment-related claim under the federal securities laws, Plaintiffs cannot also simultaneously maintain a claim under Section 349 of New York's consumer protection law[12] because Section 349 does not apply to assets "purchased as investments" as opposed to "goods to be 'consumed' or used.'" *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006) (quoting *Morris v. Gilbert*, 649 F. Supp. 1491, 1497 (E.D.N.Y. 1986)); *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 284-85 (S.D.N.Y. 2014) (Section 349 does not apply to purchases of commodities because they are "investments, not . . . a

[11] Under a conflict of laws analysis, these claims should be governed by New York law because New York has a greater interest in this dispute. *See supra* at 14-19; *Anschutz*, 690 F.3d at 114.

[12] "To state a claim under GBL § 349, a plaintiff must allege [i] that the defendant . . . engaged in consumer-oriented conduct; [ii] that the conduct was materially misleading; and [iii] that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 130-31 (S.D.N.Y. 2021).

purchase of traditional consumer goods"). Plaintiffs' Amended Complaint is shot-through with allegations of having purchased GYEN as an investment, not for consumption or use, and Plaintiffs therefore are not entitled to relief under Section 349. *See* AC ¶¶ 8 (alleging that Defendants "deceived investors regarding the nature of the asset"); 18-19 (alleging that purchases of GYEN involve an "investment of money"); 65-67 (Plaintiffs "believed . . . that [they were] putting [their] money in a stable financial tool"). Where "[p]laintiffs are investors who were seeking income, investment growth, and the preservation of capital – not consumers who were purchasing traditional goods or services," their claims must be dismissed. *Evergreen*, 423 F. Supp. 2d at 264-65; *see also Tether*, 576 F. Supp. 3d at 131 n.54 (dismissing claim "because [p]laintiffs clearly argue that they *invested* in cryptocommodities and were injured when their *investments* decreased in value") (emphasis in original).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

Dated: October 6, 2022

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Heather S. Nyong'o*
Heather S. Nyong'o (SBN 222202)
hnyongo@cgsh.com
650 California Street Suite 2000
San Francisco, CA 94108

Nowell Bamberger (Admitted *Pro Hac Vice*)
Nicole Tatz (Admitted *Pro Hac Vice*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037

Samuel Levander (Admitted *Pro Hac Vice*)
One Liberty Plaza
New York, NY 10006

Attorneys for Defendant
GMO-Z.COM TRUST COMPANY, INC.