**Cleary Gottlieb Steen & Hamilton LLP**
Heather S. Nyong'o (SBN 222202)
hnyongo@cgsh.com
Nowell Bamberger (Admitted *Pro Hac Vice*)
Samuel Levander (Admitted *Pro Hac Vice*)
Nicole Tatz (Admitted *Pro Hac Vice*)

650 California Street Suite 2000
San Francisco, CA 94108

[*additional addresses on signature page*]

Attorneys for Defendant
GMO-Z.COM TRUST
COMPANY, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

Kenneth Donovan, et al.,

Plaintiffs,

v.

GMO-Z.com Trust Company, Inc. et al.,

Defendants.

Case No. 3:22-cv-02826-TLT

**DEFENDANT GMO-Z.COM TRUST COMPANY, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Date: January 10, 2023
Time: 2:00pm
Courtroom: Courtroom 9
Before: Hon. Trina L. Thompson

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on January 10, 2023, at 2:00pm, or at such other date as may be agreed upon or ordered, at the courtroom of the Honorable Trina L. Thompson, Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant GMO-Z.COM TRUST COMPANY, INC. ("GMO Trust") will and hereby does move the Court for an Order (a) compelling arbitration of any claims against GMO Trust by the Coinbase Subclass, and (b) staying any remaining claims that are not compelled to arbitration pending the resolution of arbitration. GMO Trust does not waive any Rule 12(b)(2) or 12(b)(6) defenses to these or any related actions by not asserting such defenses in this Motion.

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the arguments of counsel, and all other matters properly considered by the Court.

Dated: October 6, 2022

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*<u>/s/ Heather S. Nyong'o</u>*
Heather S. Nyong'o (SBN 222202)
hnyongo@cgsh.com
650 California Street Suite 2000
San Francisco, CA 94108

Nowell Bamberger (Admitted *Pro Hac Vice*)
Nicole Tatz (Admitted *Pro Hac Vice*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037

Samuel Levander (Admitted *Pro Hac Vice*)
One Liberty Plaza, New York NY 10006

Attorneys for Defendant
GMO-Z.COM TRUST COMPANY, INC.

## STATEMENT OF ISSUES

The Court must decide whether to (1) compel arbitration of Plaintiffs' claims against GMO Trust,[1] and (2) stay any remaining claims that are not compelled to arbitration pending the resolution of arbitration.

## PRELIMINARY STATEMENT

For the reasons described in Defendant GMO Trust's Motion to Dismiss, ECF No. 57, the Amended Complaint, ECF No. 46 ("AC"), should be dismissed in full, as Plaintiffs have not plausibly alleged any claim against GMO Trust. In the alternative, the Court should compel arbitration of any claims against GMO Trust by the Coinbase Subclass,[2] and stay any remaining claims that are not compelled to arbitration pending the resolution of arbitration.

As Coinbase explains in its Motion to Compel Arbitration, ECF No. 51, members of the Coinbase Subclass entered into user agreements with Defendant Coinbase that require them to arbitrate their claims with Coinbase. While GMO Trust is not a party to these user agreements, this dispute arises out of transactions as to which Plaintiffs agreed to arbitrate any dispute, and involves allegations of interdependent misconduct among GMO Trust and Coinbase. In such circumstances, the doctrine of equitable estoppel precludes Plaintiffs from effectively avoiding their agreement to arbitrate their dispute by impleading additional parties who – by virtue of their relationship to the transaction – are not in contractual privity. [3] Plaintiffs are equitably estopped from avoiding arbitration here for two reasons: *First*, courts compel arbitration of claims against non-signatories under a reliance theory where a litigant – such as Plaintiffs here – defines a class by reference to a contract with an arbitration clause. *Second*, where Plaintiffs allege that a

---

[1] Capitalized terms not otherwise defined here shall have the meaning given to them in GMO Trust's Motion to Dismiss. ECF No. 57.

[2] Plaintiffs define the Coinbase Subclass as "[a]ll members of the Class whose transactions of GYEN were conducted through Coinbase." AC ¶ 75; *see also id.* at ¶ 74 (defining the "Class" as "[a]ll persons who purchased or acquired GYEN in the United States or its territories at a time when the GYEN was unpegged from the Japanese yen, and lost money thereby").

[3] As discussed in GMO Trust's Motion to Dismiss, this lack of privity requires dismissal of the federal securities claims against GMO Trust because it was not a "statutory seller." ECF No. 57 at 10-13.

signatory and non-signatory engaged in substantially interdependent misconduct – such as the overlapping claims, alleged misstatements, and alleged concerted conduct between the Defendants here – courts routinely compel arbitration as to both parties in order to resolve claims in the most efficient manner. During the pendency of any arbitration, the Court should stay any claims that remain in this Court to conserve judicial resources, eliminate duplicative and burdensome proceedings, and avoid risking inconsistent determinations of common issues of law and fact.[4]

## ARGUMENT

### I. Plaintiff Members Of The Coinbase Subclass Agreed To Final and Binding Arbitration Pursuant To A Valid And Enforceable Agreement

For the reasons articulated in Coinbase's Motion to Compel Arbitration, *see* ECF No. 51, Plaintiffs and Coinbase mutually assented to the valid and enforceable arbitration clause contained within the Coinbase User Agreement.[5]

### II. The Doctrine Of Equitable Estoppel Entitles GMO Trust To Compel Plaintiff Members Of The Coinbase Subclass To Arbitrate Their Claims

The Court should compel arbitration of Plaintiffs' claims against GMO Trust under the doctrine of equitable estoppel. Although GMO Trust is not a signatory to the arbitration agreement between Plaintiffs and Coinbase, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 111 Cal. Rptr. 3d 876, 886, 896 (Cal. Ct. App. 2010) (quoting *Boucher v. All. Title Co.*, 25 Cal. Rptr. 3d 440, 446-47 (Cal. Ct. App. 2005)) (granting non-signatory's motion to compel arbitration, finding that all claims relating to license agreement, including both tort and contract claims, were "intimately

---

[4] GMO Trust refers the Court to GMO Trust's Motion to Dismiss, ECF No. 57 at 3-9, and Coinbase's Motion to Compel Arbitration, ECF No. 51 at 2-5, for a statement of the facts relevant to this motion.

[5] *See* ECF No. 54-6, Coinbase User Agreement.

intertwined with the subject contract containing the arbitration agreement"); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract.") (quoting 21 R. Lord, Williston on Contracts § 57:19 (4th ed. 2001)); *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.") (collecting cases).

Non-signatories may invoke arbitration agreements under the doctrine of equitable estoppel under two circumstances – "reliance" and "substantial interdependence," *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, No. 8:19-cv-00642-JLS-JDE, 2020 WL 620294, at *5-8 (C.D. Cal. Jan. 9, 2020) – both of which are applicable here.

### A. Plaintiffs Rely Upon The Coinbase User Agreement In Asserting Their Coinbase Subclass Claims Against GMO Trust

*First*, a non-signatory may compel arbitration "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract." *Id.* at *5. To determine whether a plaintiff's "claim is founded on or intimately connected with the [] contract" containing the arbitration agreement, courts will "examine the facts of the operative complaint." *Felisilda v. FCA US LLC*, 266 Cal. Rptr. 3d 640, 647 (Cal. Ct. App. 2020), *review denied* (Nov. 24, 2020). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Fujian Pac. Elec. Co. v. Bechtel Power Corp.*, No. C 04–3126 MHP, 2004 WL 2645974, at *5 (N.D. Cal. Nov. 19, 2004). "By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." *Boucher v. All. Title Co.*, 25 Cal. Rptr. 3d 440, 446 (Cal. Ct. App. 2005).

Plaintiffs rely upon the Coinbase User Agreement in asserting their claims against GMO Trust by requesting that a subclass seeking relief against GMO Trust be defined by transactions of

GYEN through the Coinbase platform. *See* AC ¶ 75 ("Plaintiffs seek certification of the following subclass: Coinbase Subclass: All members of the Class whose transactions of GYEN were conducted through Coinbase."). Coinbase users are required to accept the Coinbase User Agreement when they create a Coinbase account. *See* ECF No. 51 at 2. Plaintiffs' proposed Coinbase Subclass is thus defined to include members of the Class who entered into a User Agreement with Coinbase. And, as Coinbase explains in its Motion to Compel Arbitration, the Coinbase User Agreement contains an arbitration provision. *Id.* at 4-5.

Courts in this Circuit have recognized that defining a class or subclass on the basis of the agreement that contains an arbitration clause constitutes "reliance" on that agreement. *See In re Apple & AT & TM Antitrust Litig.*, 826 F.Supp.2d 1168, 1178-79 (N.D. Cal. 2011) (granting non-signatory Apple's motion to compel arbitration in antitrust suit against Apple and ATTM based on equitable estoppel where plaintiffs defined a single unified class as all persons who had purchased an Apple iPhone and entered into service agreements with ATTM); *In re Apple iPhone 3G Prod. Liab. Litig.*, 859 F. Supp. 2d 1084, 1096 (N.D. Cal. 2012) (granting non-signatory manufacturer's motion to compel arbitration where "Plaintiffs repeatedly requested that the Court certify a single unified class of '[a]ll persons in the United States of America . . . who purchased an iPhone 3G *and entered into an ATTM 3G service plan* between July 11, 2008 and the present'") (emphasis in original). Plaintiffs "should not be allowed to claim the benefit of the contract and simultaneously avoid its burdens." *Larson v. Speetjens*, No. C 05–3176 SBA, 2006 WL 2567873, at *4 (N.D. Cal. Sept. 5, 2006).

**B. Plaintiffs Allege Substantially Interdependent Conduct By Signatory Coinbase And Non-Signatory GMO Trust**

*Second*, a non-signatory may compel arbitration "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Chartwell Staffing*, 2020 WL 620294, at *5. "It is appropriate to compel arbitration where . . . the 'lawsuit against [the] non-signator[y] is inherently

bound up with [the] claims against [the] signatory,' and compelling arbitration is necessary 'to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration.'" *Brown v. Gen. Steel Domestic Sales, LLC*, No. CV 08–00779 MMM (SHx), 2008 WL 2128057, at *7 (C.D. Cal. May 19, 2008) (citation omitted); *see also Hansen v. KPMG, LLP*, No. CV 04–10525–GLT (MANx), 2005 WL 6051705, at *3 (C.D. Cal. Mar. 29, 2005) (granting non-signatory's motion to compel arbitration where the plaintiff's complaint "describe[d] the non-signatory Defendants as one team involved in a single course of misconduct").

Plaintiffs here allege "substantially interdependent and concerted misconduct" by GMO Trust and Coinbase, "founded in or intimately connected with" the Coinbase User Agreement. *Chartwell Staffing*, 2020 WL 620294, at *5.[6] Plaintiffs plead "a single scheme to achieve a single aim," *STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, No. 2:18-cv-01269-JLS-JCG, 2019 WL 2417625, at *6 (C.D. Cal. Feb. 15, 2019), alleging "GMO Trust's partnership with Coinbase allowed GMO Trust to issue GYEN tokens to more investors and generated commissions for GMO Trust and Coinbase to share." AC ¶ 4; *see also* AC ¶¶ 6 (alleging "Coinbase mimicked GMO Trust's" purportedly false statements), 8, 55, 57, 58 (alleging "Coinbase parroted the claims of GMO Trust"). Further, Plaintiffs' allegations of concerted misconduct are "intimately connected" to the Coinbase User Agreement given that the Coinbase Subclass's claims all relate to their trading on Coinbase. *See* AC ¶¶ 4, 75.

The Court should therefore order the Plaintiff members of the Coinbase Subclass to arbitrate all of their claims—as against both signatory Coinbase and non-signatory GMO Trust.

---

[6] GMO Trust disputes both the factual assertions and legal sufficiency of Plaintiffs' claims, including for the reasons articulated in the Motion to Dismiss. *See* ECF No. 57.

### III. The Court Should Exercise Its Discretion To Stay Any Claims That Are Not Compelled To Arbitration

If the Court compels arbitration of claims by members of the Coinbase Subclass, it should stay any remaining claims against GMO Trust.[7] "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Supreme Court has recommended that "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983). When granting a discretionary stay, the court should weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including "[i] the possible damage which may result from the granting of a stay, [ii] the hardship or inequity which a party may suffer in being required to go forward, and [iii] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc.*, 300 F.2d at 268.

The only possible damage that may occur to Plaintiffs here would be the potential delay of the litigation proceedings. However, granting a stay would only pause proceedings for a reasonable time, and would not cause any undue delay. "The purpose of arbitration is to have a simple, quick and efficient method to resolve controversies." *Molecular Analytical Sys.*, 111 Cal. Rptr. 3d at 884-85. The Coinbase User Agreement provides that "arbitration will be administered by the American Arbitration Association ('AAA'), in accordance with the Consumer Arbitration Rules (the 'AAA Rules')." ECF No. 54-6, Coinbase User Agreement at Appendix 5, § 1.4. The AAA Rules are designed to facilitate efficient resolution of disputes. Specifically, the AAA Rules provide that once a claimant files the initial demand for arbitration, the respondent must

---

[7] If the Court denies GMO Trust's Motion to Compel Arbitration, but grants Coinbase's Motion to Compel Arbitration, *see* ECF No. 51, the Court should stay all claims against GMO Trust pending the arbitration between Coinbase and Plaintiffs for the reasons articulated in this section.

submit a written response within 14 calendar days,[8] followed by a period of document disclosure and briefing. The AAA Rules additionally provide that following a final hearing on the merits, the final "award shall be issued promptly by the arbitrator . . . , no later than 30 calendar days from the date the hearing is closed."[9]

The time it would take to complete such an arbitration would be short relative to the time expected to complete discovery, class certification proceedings, summary judgment, and trial in this complex case. *See Forsyth v. HP Inc.*, No. 5:16-cv-04775-EJD, 2018 WL 732722, at *7 (N.D. Cal. Feb. 6, 2018) (finding that the possible delay would be small "[c]ompared to the total amount of time that it will take to adjudicate this complex case in full"). And Plaintiffs would face "no damage or hardship . . . as the case is still in its early stages." *Farber v. JPMorgan Chase Bank N.A.*, No. 12-cv-2367-GPC-BGS, 2014 U.S. Dist. LEXIS 80530, at *3 (S.D. Cal. June 11, 2014).

Both Plaintiffs and GMO Trust "would ostensibly benefit from such a stay" given that they will not need to "expend unnecessary resources on duplicative litigation that will involve nearly identical evidence to prove overlapping claims." *RB Prods., Inc. v. Ryze Cap., LLC*, No. 3:19-cv-00105-MMD-WGC, 2019 WL 5722205, at *3 (D. Nev. Nov. 4, 2019). Any litigation and arbitration will involve the same claims, legal issues, and factual disputes, and would require overlapping fact and expert discovery and depositions. *See Roderick v. Mazzetti & Assocs., Inc.*, No. C 04–2436 MHP, 2004 WL 2554453, at *12 (N.D. Cal. Nov. 9, 2004) (staying adjudication of non-arbitrable claims pending the outcome of arbitration based on efficiencies given overlapping factual issues); *Ballard v. Corinthian Colleges, Inc.*, No. C06-5256 FDB, 2006 WL 2380668, at *2-3 (W.D. Wash. Aug. 16, 2006) (granting stay as to non-arbitrable claims where "the claims asserted in the complaint are brought by Plaintiffs jointly and are grounded in identical facts and legal theories" and "[s]imultaneous prosecution of the claims in arbitration and this litigation would clearly be a waste of judicial resources"); *Ginorio v. State Farm Mut. Auto.*

---

[8] *See* AM. ARB. ASS'N, Consumer Arbitration Rules R-2(a)(3)(c) (2014), https://www.adr.org/sites/default/files/Consumer%20Rules.pdf.

[9] *See id.* at R-42.

*Ins.*, No. 2:07-cv-01403-MCE-DAD, 2007 WL 2492400, at *3 (E.D. Cal. Aug. 30, 2007) (granting motion to stay pending arbitration, noting that should litigation continue, "both the Court and the litigants may unnecessarily expend time and resources determining factual matters that stand to be clarified through arbitration").

"Courts generally grant motions to stay where the plaintiff's claims against a non-signatory defendant are intertwined with their arbitrable claims against another defendant," and the Court should follow this well-tread path here. *Kater v. Churchill Downs Inc.*, No. C15-612RBL, 2019 WL 3944323, at *2 (W.D. Wash. Aug. 21, 2019); *see also Ambercroft Trading Ltd. v. Biddy*, No. 19-CV-06810-LHK, 2020 WL 1820599, at *7-8 (N.D. Cal. Apr. 10, 2020) (granting motion to compel non-arbitrable claims where continuing litigation "would necessarily overlap with questions to be decided by the arbitrator"); *Sharp Corp. v. Hisense USA Corp.*, No. 17-cv-03341-YGR, 2017 WL 6017897, at *5 (N.D. Cal. Dec. 5, 2017) (granting motion to stay non-arbitrable claims where "[t]he claims against the defendants here all arise from the identical conduct, and are intertwined").

Finally, a stay pending arbitration would promote "the orderly course of justice." *CMAX, Inc.*, 300 F.2d at 268. In this case, "staying the lawsuit pending the arbitration will help clarify what claims and issues will remain for the Court to decide." *Ambercroft Trading Ltd.*, 2020 WL 1820599, at *7 (explaining that "it would waste judicial resources for the Court to have proceeded on two separate tracks with respect to the same claims" and the same alleged conduct and therefore "a stay will advance 'the orderly course of justice'").

**CONCLUSION**

Defendant GMO Trust therefore respectfully requests that the Court compel arbitration of claims by the Coinbase Subclass against GMO Trust, and stay any remaining non-arbitrable claims.

Dated: October 6, 2022

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Heather S. Nyong'o*

Heather S. Nyong'o (SBN 222202)
hnyongo@cgsh.com
650 California Street Suite 2000
San Francisco, CA 94108

Nowell Bamberger (Admitted *Pro Hac Vice*)
Nicole Tatz (Admitted *Pro Hac Vice*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037

Samuel Levander (Admitted *Pro Hac Vice*)
One Liberty Plaza
New York, NY 10006

Attorneys for Defendant
GMO-Z.COM TRUST COMPANY, INC.