Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
**Erickson Kramer Osborne LLP**
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KENNETH DONOVAN, HUSSIEN KASSFY, and JOHN BRAMBL, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GMO-Z.COM TRUST COMPANY, INC.; COINBASE GLOBAL, INC. and COINBASE, INC.,<br><br>Defendants. | Case No.: 3:22-cv-02826-TLT<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT GMO-Z.COM TRUST COMPANY, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS<br><br>Date: January 10, 2023<br>Time: 2:00 p.m.<br>Dept. Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

## TABLE OF CONTENTS

I. Introduction ..... 1
II. Factual Background ..... 2
III. Legal Standards ..... 4
IV. Argument ..... 5
A. GMO Trust Cannot Enforce the Coinbase Arbitration Provision ..... 5
1. Plaintiffs' Claims Against GMO Trust Do Not Rely on the User Agreement ..... 5
2. Plaintiffs Do Not Allege Any Interdependent Misconduct Founded in the User Agreement's Contractual Obligations ..... 8
B. A Stay Is Inappropriate ..... 10
1. GMO Trust Fails to Show Hardship If the Case Goes Forward ..... 10
2. Judicial Efficiency Weighs in Favor of Proceeding With the Case ..... 11
3. Plaintiffs, Especially Plaintiff Donovan, Will Be Prejudiced If the Case Is Stayed ..... 13
V. Conclusion ..... 14

## TABLE OF AUTHORITIES

**Cases**

*Ambercroft Trading Ltd. v. Biddy*, 2020 WL 1820599 (N.D. Cal. Apr. 10, 2020) ... 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ... 4

*Ballard v. Corinthian Colleges, Inc.*, 2006 WL 2380668 (W.D. Wash. Aug. 16, 2006) ... 12

*Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993) ... 7

*Brown v. Gen. Steel Domestic Sales, LLC*, 2008 WL 2128057 (C.D. Cal. May 19, 2008) ... 9

*California Crane School, Inc. v. Google LLC*, 2022 WL 3348425 (N.D. Cal. Aug. 12, 2022) ... 10, 12, 13

*Cesca Therapeutics Inc. v. SynGen Inc.*, 2017 WL 1174062 (E.D. Cal. Mar. 30, 2017) ... 11

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, 2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ... 5, 6, 8

*Chen v. Bank of Am., N.A.*, 2020 WL 4561658 (C.D. Cal. Mar. 31, 2020) ... 13

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ... 10

*Congdon v. Uber Techs., Inc.*, 226 F.Supp.3d 983 (N.D. Cal. 2016) ... 11, 12, 13

*DeMartini v. Johns*, 693 Fed.Appx. 534 (9th Cir. 2017) ... 10, 11

*Fujian Pac. Elec. Co. v. Bechtel Power Corp.*, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004) ... 6

*Glob. Live Events v. Ja-Tail Enterprises, LLC*, 2014 WL 1830998 (C.D. Cal. May 8, 2014) ... 12

*Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009) ... 5, 9

*Hansen v. KPMG, LLP*, 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005) ... 9

*Hawkins v. KPMG LLP*, 423 F.Supp.2d 1038 (N.D. Cal. 2006) ... 7

*In re Apple & AT&TM Antitrust Litig.*, 826 F.Supp.2d 1168 (N.D. Cal. 2011) ... 7

*In re Apple iPhone 3G Prod. Liab. Litig.*,
859 F. Supp. 2d 1084 (N.D. Cal. 2012)....7

*In re Henson*,
869 F.3d 1052 (9th Cir. 2017)....4, 5

*In re Ring LLC Privacy Litig.*,
2021 WL 4557222 (C.D. Cal. Sept. 3, 2021)....11

*Jurosky v. BMW of N. Am., LLC*,
2020 WL 1024899 (S.D. Cal. Feb. 27, 2020)....7

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013)....4, 5, 6

*Landis v. North American Co.*,
299 U.S. 248 (1936)....10, 11

*Means v. Ultimate Elec Inc.*,
2012 WL 2339504 (E.D. Cal. June 19, 2012)....10

*Mohamed v. Uber Technologies Inc.*,
115 F. Supp. 3d 1024 (N.D. Cal. 2015)....11

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013)....5

*Pestarino v. Ford Motor Co.*,
2020 WL 3187370 (N.D. Cal. June 15, 2020)....6

*RB Prods., Inc. v. Ryze Cap., LLC*,
2019 WL 5722205 (D. Nev. Nov. 4, 2019)....12

*Roderick v. Mazzetti & Assocs., Inc.*,
2004 WL 2554453 (N.D. Cal. Nov. 9, 2004)....12

*Roth v. Jaguar Land Rover N. Am., LLC*,
2017 WL 10545074 (C.D. Cal. Dec. 4, 2017)....7

*Schulz v. BMW of North America, LLC*,
472 F.Supp.3d 632 (N.D. Cal. 2020)....6

*Sharp Corp. v. Hisense USA Corp.*,
2017 WL 6017897 (N.D. Cal. Dec. 5, 2017)....12

*STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*,
2019 WL 2417625 (C.D. Cal. Feb. 15, 2019)....9

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
46 F. App'x 412 (9th Cir. 2002)....10

*Vincent v. BMW of N. Am., LLC*,
2019 WL 8013093 (C.D. Cal. Nov. 26, 2019)....6

**Statement of Issues to Be Decided**

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs ask the Court to rule on the following issues:

1. Whether Defendant GMO-z.com Trust Company, Inc.'s motion to compel arbitration should be denied;

2. Whether Defendant GMO-z.com Trust Company, Inc.'s alternative motion to stay proceedings should be denied.

## I. INTRODUCTION

In its motion to compel arbitration, GMO Trust attempts with little earnest effort to enforce the arbitration clause in the User Agreement that exists between Coinbase and Coinbase users. GMO Trust woefully fails to establish either of the two "limited circumstances" under which the doctrine of equitable estoppel permits non-signatories to enforce an arbitration agreement to which they are not a party. Plaintiffs' claims against GMO Trust do not rely on the contract's terms, and Plaintiffs do not allege the Coinbase and GMO Trust engaged in substantial concerted misconduct that is intertwined with the contractual obligations of the agreement. Revealing the thinness of the doctrine's application here, GMO Trust provides next to no explanation or analysis of its theory. It instead summarily contends that, because Plaintiffs seek to certify a subclass comprised of class members who transacted via Coinbase, and because Coinbase users have to agree to the User Agreement, the User Agreement is somehow fundamental to Plaintiffs' claims <u>against GMO Trust</u>. This position fails at every turn. The subclass definition, like the rest of Plaintiffs' complaint, does not even mention the User Agreement, let alone "rely" on its terms. Moreover, the subclass only asserts claims against Coinbase—it does not allege any claims against GMO Trust. GMO Trust similarly fails to cite <u>any</u> allegations of substantial interdependent misconduct between it and Coinbase and certainly none that is "intertwined with" the contractual obligations under the User Agreement. The motion to compel arbitration should be denied.

GMO Trust alternatively seeks to stay all claims against it pending resolution of any arbitrable claims against Coinbase. This equally frivolous request should also be denied. First, GMO Trust fails to show any potential hardship it would suffer if forced to proceed with litigation. Second, no judicial efficiencies would be gained by a stay because, regardless of the outcome of Plaintiffs' claims against Coinbase, their claims against GMO Trust will inevitably proceed in litigation. The scope of Plaintiffs' claims and the putative class on whose behalf they are asserted are both different as to both defendants, and, where there is overlap, the claims are premised on different theories of liability and distinct facts. Moreover, an arbitrator's findings of fact and law as to Coinbase would not be binding on the Court and thus will have no impact on the litigation of the GMO Trust claims. This is particularly true as to Plaintiff Donovan, who alleges no claims

against Coinbase. Judicial efficiency therefore weighs strongly in favor of Plaintiffs' claims against GMO Trust moving forward. Finally, Plaintiffs (especially Plaintiff Donovan) will be prejudiced by the delay caused by a stay. The Court should deny this request as well.

## II. FACTUAL BACKGROUND

GYEN, a cryptocurrency developed and issued by Defendant GMOZ.COM TRUST COMPANY, INC. ("GMO Trust"), was designed to be a "stablecoin," holding a permanent one-to-one peg with the Japanese yen. Dkt. 46, ¶¶ 33-36. Both GMO Trust and the cryptocurrency exchange on which GYEN was traded, operated by Defendants COINBASE GLOBAL, INC. and COINBASE, INC. (collectively, "Coinbase"), independently represented that the GYEN would dependably maintain its one-to-one peg. *Id*. at ¶ 58. Both knew, however, that the GYEN's peg was likely to break, as it had in the past. *Id*. at ¶¶ 56-57. When GYEN was introduced on the Coinbase exchange, it broke from the peg spectacularly, rising over 200 percent in value. *Id*. at ¶¶ 3, 46. Making matters worse, Coinbase suspended GYEN trading while the asset was unpegged, preventing customers from selling the asset as was plummeting back to the value of the yen. *Id*. at ¶¶ 49-51. Investors whose orders were filled while the asset was untethered from its peg lost as much as 80 percent of their investments. *Id*. at ¶ 48.

Plaintiffs Kenneth Donovan and Hussien Kassfy were investors who lost money when GYEN's peg broke. Dkt. 46, ¶¶ 65-66. They filed their original complaint against all Defendants in May 2022. Dkt 2. They filed the operative First Amended Complaint ("complaint") on August 25, 2022, adding John Brambl as a third named Plaintiff. Dkt. 46, ¶ 67.

The case is brought on behalf of a putative class defined as: "All persons who purchased or acquired GYEN in the United States or its territories at a time when the GYEN was unpegged from the Japanese yen, and lost money thereby." Dkt. 46, ¶ 74. The complaint also seeks to certify a Coinbase Subclass consisting of "All members of the Class whose transactions of GYEN were conducted through Coinbase." *Id.* at ¶ 75. The complaint asserts nine causes of action, five of which are alleged against only one defendant while the other four are asserted against both:

1 – Negligence as to GMO Trust on behalf of the Class;

2 – Negligence as to Coinbase on behalf of the Coinbase Subclass;

3 – Negligence Per Se as to GMO Trust on behalf of the Class and Coinbase on behalf of the Coinbase Subclass;

4 – Negligent Misrepresentation as to GMO Trust on behalf of the Class and Coinbase on behalf of the Coinbase Subclass;

5 – Conversion as to Coinbase on behalf of the Coinbase Subclass;

6 – Violation of the New York General Business Law § 349 as to GMO Trust on behalf of the Class;

7 – Violations of the California Unfair Competition Law as to Coinbase on behalf of the Coinbase Subclass;

8 – Violation of § 5 and § 12(a)(1) of the Securities Act as to GMO Trust on behalf of the Class and Coinbase on behalf of the Coinbase Subclass;

9 – Violation of § 12(a)(2) of the Securities Act as to GMO Trust on behalf of the Class and Coinbase on behalf of the Coinbase Subclass.

*See* Dkt. 46.

All claims against GMO Trust are brought on behalf of the putative Class at large. Only the claims against Coinbase are alleged on behalf of the Coinbase Subclass. None of the claims are alleged against GMO Trust and Coinbase jointly. The four claims asserted against both Defendants are premised on different theories of liability, which are based on different acts of alleged misconduct.

GMO Trust's alleged liability arises out of its failure to design, maintain, and test the GYEN token prior to introducing it to the market to ensure its value would remain stable and pegged to the Japanese yen, ensure GMO Trust carried a sufficient supply of minted GYEN to meet demand for the asset, ensure GMO Trust kept adequate collateralized fiat in custody with a third-party trustee, implement processes that would detect if the GYEN became unpegged from the Japanese yen, timely act upon warnings and alerts regarding the GYEN becoming unpegged, and ensure the truthfulness of its statements made to potential investors as to the nature and characteristics of GYEN. Dkt. 46, ¶¶ 30-39, 45-48, 55-59, 84-92, 107, 158-159. None of these claims implicate Coinbase or depend on facts involving Coinbase. Similarly, Plaintiffs' theories of liability against Coinbase (generally relating to its own omissions and violations of securities laws) are independent of GMO Trust. *See* Dkt. 46, ¶¶ 40-51, 93-103, 160-161; *see also id.* at ¶¶ 107-108 (alleging different theories of liability and facts as to how Defendants violated Section 5

of the FTC Act); ¶ 121 (alleging different bases for special relationship between Plaintiffs and Defendants); ¶ 123 (alleging different bases for Defendants' knowledge that Plaintiffs were likely to rely on their misrepresentations); ¶ 81 (identifying common questions of law and fact as to GMO Trust distinct from those relating to Coinbase).

Coinbase users are required to agree to the Coinbase User Agreement when they create a Coinbase account. This User Agreement contains an arbitration clause that purports to extend to disputes between the user and Coinbase only. *See* Dkt. 54, Decl. of Suellen Black in Support of Coinbase's Mot. to Compel Arbitration, Mot. to Dismiss & Req. for Judicial Notice, Ex. F (2022 Coinbase User Agreement), Appx. 5, ¶¶ 1.1-1.3. GMO Trust is not a signatory to or in any way implicated by the Coinbase User Agreement.

GMO Trust now moves to compel arbitration against the Coinbase Subclass on the basis of the Coinbase User Agreement. As the Coinbase Subclass has not yet been certified, GMO Trust's motion to compel arbitration is limited to Plaintiffs Kassfy and Brambl (Plaintiff Donovan is not a member of the Coinbase Subclass). In the event the Court denies that request, GMO Trust asks the Court to stay all claims against it pending resolution of any arbitration against Coinbase.

## III. LEGAL STANDARDS

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Generally, a party may not enforce an arbitration agreement to which it is not a signatory. Under California law, non-signatories are permitted to invoke arbitration agreements in two "limited circumstances" under the doctrine of equitable estoppel. *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017). These limited circumstances, known as the "*Goldman* circumstances," were adopted by the Ninth Circuit in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013). They are as follows:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Id*. at 1128-29 (citing *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219, 221 (2009)).

"The theory behind equitable estoppel is that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *In re Henson*, 869 F.3d at 1060 (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013)).

## IV. <u>ARGUMENT</u>

### A. GMO Trust Cannot Enforce the Coinbase Arbitration Provision

Neither *Goldman* circumstance applies here to allow GMO Trust to enforce Coinbase's arbitration provision for its own benefit.

#### 1. *Plaintiffs' Claims Against GMO Trust Do Not Rely on the User Agreement*

The first *Goldman* circumstance ("reliance") contemplates two situations. It can apply either when "a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory," or when "the claims are intimately founded in and intertwined with the underlying contract." *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, 2020 WL 620294, at *5 (C.D. Cal. Jan. 9, 2020). GMO Trust fails to qualify for this *Goldman* circumstance for three reasons.

First, as explained in *Chartwell,* "[t]he first [*Goldman*] circumstance requires more than 'merely making reference to an agreement with an arbitration clause.'" 2020 WL 620294, at *5 (quoting *Goldman*, 173 Cal. App. 4th at 218). Here, the complaint does not even reference the Coinbase User Agreement. Despite GMO Trust's tortured attempt to inject a reference to the agreement into the Coinbase Subclass definition, it makes no such reference. *See* Dkt. 46, ¶ 75 (defining Coinbase Subclass as "[a]ll members of the Class whose transactions of GYEN were conducted through Coinbase").

Second, even if the Coinbase Subclass definition did refer to the User Agreement, the Coinbase Subclass does not assert claims against GMO Trust. The reliance circumstance from *Goldman* is met only where the signatory (Plaintiffs) must rely on the terms of the written agreement in asserting its claims "*against the non-signatory*" (GMO Trust). *Fujian Pac. Elec. Co.*

*v. Bechtel Power Corp*., 2004 WL 2645974, at *5 (N.D. Cal. Nov. 19, 2004) (emphasis in original). Here, all claims against GMO Trust are alleged on behalf of the Class at large. The Coinbase Subclass only asserts claims against Coinbase.

Third, in light of the above two points, it necessarily follows that Plaintiffs' claims against GMO Trust do not rely on and are not "intimately founded in and intertwined with" the terms of the Coinbase User Agreement. Again, the only part of the complaint GMO Trust cites as "rely[ing]" on the User Agreement is the Coinbase Subclass definition. Mot. at 3-4.

Plaintiffs and the Class assert claims against GMO Trust for negligence, negligent misrepresentation, and statutory violations of the New York General Business Law § 349 and the Securities Act. None of these claims rely on or have anything to do with Coinbase's actions or the Coinbase User Agreement. Plaintiffs do not allege any breach of the User Agreement and none of their claims seek to impose liability on GMO Trust based on the contents of the Coinbase User Agreement. Indeed, as GMO Trust is not a party to the Coinbase User Agreement, it has no duties or obligations under its terms. This distinguishes this case from *Chartwell* and *Fujian*, relied on by GMO Trust, where the plaintiffs' claims were directly related to the underlying contract. *See Chartwell*, 2020 WL 620294, at *6 (in alleging trade secret misappropriation claim, plaintiff cited and relied on terms of employment agreement to show knowledge element); *Fujian*, 2004 WL 2645974, at *6 (plaintiff's claim against guarantor-parent corporation was premised solely on the failure of its wholly-owned subsidiaries to fulfill their obligations under the contracts containing the arbitration clause).

This situation is more akin to a string of automobile warranty cases, where vehicle makers tried (unsuccessfully) to enforce arbitration clauses in purchase agreements between the buyer and the dealership. *See Vincent v. BMW of N. Am., LLC*, 2019 WL 8013093, at *7-8 (C.D. Cal. Nov. 26, 2019) (denying BMW's motion to compel arbitration finding that the plaintiff's claims did not rely on the terms of the sale contract, only the fact that he purchased the vehicle, and concluding that such circumstances were insufficient to give rise to equitable estoppel under *Kramer*, 705 F.3d 1122); *see also Pestarino v. Ford Motor Co.*, 2020 WL 3187370, at *4 (N.D. Cal. June 15, 2020); *Schulz v. BMW of North America, LLC*, 472 F.Supp.3d 632, 640 (N.D. Cal. 2020); *Jurosky v. BMW*

*of N. Am., LLC*, 2020 WL 1024899, at *4 (S.D. Cal. Feb. 27, 2020); *Roth v. Jaguar Land Rover N. Am., LLC*, 2017 WL 10545074, at *4 (C.D. Cal. Dec. 4, 2017). Similarly, in *Hawkins v. KPMG LLP*, 423 F.Supp.2d 1038 (N.D. Cal. 2006), the plaintiff claimed that non-signatory defendant KPMG had fraudulently sold him an illegal tax shelter. KPMG argued that the plaintiff could not have participated in the subject tax shelter without executing the contract containing the arbitration clause and therefore the complaint "presupposed the existence of the contract." *Id.* at 1050-51. The court denied KPMG's motion to compel arbitration, reasoning that the claim depended only on the sale of the tax shelter as a whole; it did not rely on the contents of the contract for its success. *Id.*

The circumstances here are even less compelling than those in *Hawkins* and the car warranty cases, because the Coinbase User Agreement is completely irrelevant to Plaintiffs' claims against GMO Trust. *Hawkins*, 423 F.Supp.2d at 1049; *see also Britton v. Co-op Banking Group*, 4 F.3d 742, 747 (9th Cir. 1993) (denying arbitration where relevant acts charged against non-signatory defendant did not seek to impose liability from the contract).

GMO Trust also cites two antitrust cases as holding that the "reliance" circumstance is met where a class is defined on the basis of the contract containing the arbitration agreement. Mot. at 4 (citing *In re Apple & AT&TM Antitrust Litig.*, 826 F.Supp.2d 1168, 1178-79 (N.D. Cal. 2011) ["*In re Apple & AT&TM*"] and *In re Apple iPhone 3G Prod. Liab. Litig.*, 859 F. Supp. 2d 1084, 1096 (N.D. Cal. 2012) ["*In re Apple iPhone 3G*"]). These cases do not support such a proposition and, in any event, are wholly inapposite. Unlike the present case, the claims in the *Apple* cases were brought on behalf of a single class, the definition of which was premised <u>expressly</u> on class members having entered into a service contract with AT&T (which contained an arbitration clause); the contract-specific class actually asserted claims against the non-signatory defendant (Apple); and the crux of the plaintiffs' allegations relied on the AT&T service contracts. *See In re Apple iPhone 3G*, 859 F. Supp. 2d at 1093-94, 1096-97; *In re Apple & AT&TM*, 826 F.Supp.2d at 1178.

Here, as shown above, the Coinbase Subclass is not premised on the fact that members agreed to the User Agreement, the Subclass does not assert claims against GMO Trust, Plaintiffs' allegations and claims against GMO Trust are wholly independent of the User Agreement, and

Plaintiffs in no way claim any "benefits" of the User Agreement. The reliance circumstance of equitable estoppel does not apply here.

2. *Plaintiffs Do Not Allege Any Interdependent Misconduct Founded in the User Agreement's Contractual Obligations*

The second *Goldman* circumstance applies where two elements are met. The first element requires "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory." *Chartwell*, 2020 WL 620294, at *5. The second requires that "the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Id.*

As shown above, none of Plaintiffs' allegations against GMO Trust are "founded in or intimately connected with" the Coinbase User Agreement. *See* Sec. IV.A.1., *supra*. This is the beginning and the end of the analysis as to the second *Goldman* circumstance, because, even if Plaintiffs did allege interdependent and concerted misconduct between GMO Trust and Coinbase (which they do not), those allegations are not "founded in and intertwined with" the obligations of the Coinbase User Agreement.

Grasping at straws, GMO Trust attempts to cite something in Plaintiffs' complaint that shows interdependent conduct. Mot. at 5. But paragraphs 5,[1] 55, 57, and 58 do not allege any interdependent and concerted misconduct whatsoever. *See* Dkt. 46, ¶ 55 (alleging defendants were both unresponsive and indifferent to customer inquiries about November 2021 GYEN incident), ¶ 57 (alleging defendants were both aware of May 2021 incident), ¶¶ 5 & 58 (alleging misrepresentations and omissions committed by each defendant). And paragraph 8 actually undermines GMO Trust's position that Plaintiffs alleged a "single scheme to achieve a single aim," as it alleges that each defendant pointed the finger at the other in the wake of the November 2021 de-pegging. *Id.* at ¶ 8; *see also id.* at ¶ 54 (GMO Trust laid blame on Coinbase).

In a single conclusory sentence, GMO Trust finally claims that the supposed allegations of concerted misconduct are "intimately connected" with the Coinbase User Agreement because the "Coinbase Subclass's claims all relate to their trading on Coinbase." *See* Mot. at 5, citing Dkt. 46,

---

[1] The motion cites "AC ¶ 6" but quotes paragraph 5. *See* Mot. at 5; Dkt. 46, ¶ 5.

¶¶ 4 & 75 (Coinbase Subclass definition). As discussed above, neither the definition of the Coinbase Subclass, nor the claims asserted by it, reference the User Agreement in any manner and are certainly not intimately connected with the contractual obligations thereunder. *See* Sec. IV.A.1. And paragraph 4's allegation that Defendants had a business relationship that allowed Coinbase to sell GYEN, has nothing to do with Coinbase's contractual obligations to Plaintiffs Kassfy and Brambl under the User Agreement.

These allegations clearly fall far short of what is required for a finding of substantial interdependence. *See Goldman*, 173 Cal.App. 4th at 223 ("mere allegations of collusive behavior between signatories and nonsignatories to a contract are not enough"). Unlike the cases cited by GMO Trust, Plaintiffs do not allege collusion or conspiracy—to the contrary, the complaint differentiates Plaintiffs' claims and theories of liability alleged against the different defendants and pleads unique facts and conduct specific to each one—and their claims against GMO Trust do not relate even indirectly to the Coinbase User Agreement. *Compare* Dkt. 46 *with Hansen v. KPMG, LLP*, 2005 WL 6051705, at *3, n. 6 (C.D. Cal. Mar. 29, 2005) (substantial interdependence where underlying theory was an "inter-related, cooperative course of misconduct" and plaintiff alleged defendants agreed and conspired to defraud him); *STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, 2019 WL 2417625, at *6 (C.D. Cal. Feb. 15, 2019) (substantial interdependence where civil conspiracy, fraud, and RICO claims stemmed from allegations of a concerted effort by defendants to wrest control of a satellite construction project from plaintiffs); *Brown v. Gen. Steel Domestic Sales, LLC*, 2008 WL 2128057, at *7-8, n. 47 (C.D. Cal. May 19, 2008) (substantial interdependence where all allegations were pleaded against defendants generally and did not plead any additional, individualized facts differentiating the claims against the different defendants).

Because neither *Goldman* circumstance is met, the Court should reject GMO Trust's half-hearted attempt to enforce the Coinbase User Agreement's arbitration agreement to its benefit and deny the motion to compel arbitration.[2]

---

[2] Additionally, Plaintiffs oppose GMO Trust's motion to compel for each independent reason explained in Plaintiffs' Opposition to Coinbase's Motion to Compel Arbitration, filed contemporaneously herewith. Plaintiffs will not restate all of those arguments here, but instead,

**B. A Stay Is Inappropriate**

Staying the claims of non-signatories to an arbitration agreement is not mandatory. The discretion to stay the claims of non-signatories pending arbitration rests with the Court, which must weigh the "competing interests which will be affected by the granting or refusal to grant a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) These competing interests include: "[i] the possible damage which may result from the granting of a stay, [ii] the hardship or inequity which a party may suffer in being required to go forward, and [iii] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. "The movant bears a heavy burden of showing necessity for a discretionary stay." *Means v. Ultimate Elec Inc*., 2012 WL 2339504, at *5 (E.D. Cal. June 19, 2012). Under Ninth Circuit law, "[t]he party who moves for a stay has the burden to 'make out a clear case of hardship or inequity in being required to go forward,' and the court must weigh the competing interests that will be affected by the granting of or refusal to grant the stay." *DeMartini v. Johns*, 693 Fed.Appx. 534, 538 (9th Cir. 2017) (quoting *Landis v. North American Co*., 299 U.S. 248, 255 (1936)). Finally, the Ninth Circuit has stated there is a preference for proceeding with non-arbitrable claims when feasible. *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc*., 46 F. App'x 412, 415 (9th Cir. 2002). "A court should accordingly stay 'only when doing so would serve some legitimate interest of the parties or the court.'" *California Crane School, Inc. v. Google LLC*, 2022 WL 3348425, at *5 (N.D. Cal. Aug. 12, 2022) (quoting *United Commc'ns Hub*, 46 F.App'x at 415).

Here, all considerations weigh in favor of allowing Plaintiffs' claims against GMO Trust to proceed without delay. GMO Trust's request to stay should be denied.

1. *GMO Trust Fails to Show Hardship If the Case Goes Forward*

GMO Trust's request for a stay fails first and foremost because it does not meet its burden to show a need for a stay. *DeMartini*, 693 Fed.Appx. at 538. Nowhere in its motion does GMO

---

respectfully incorporate them by reference in case the Court is inclined to reach those issues with respect to GMO Trust. There should, however, be no need for the Court to reach those issues with respect to GMO Trust, as equitable estoppel does not apply here.

Trust argue that a stay is necessary to avoid hardship. It only argues that a stay would benefit GMO Trust and Plaintiffs by avoiding duplicative litigation because any litigation and arbitration would involve the same claims, legal issues, and factual disputes and require overlapping discovery. This argument, which fails to identify a single overlapping claim, dispute, or issue or describe the would-be overlapping discovery, is as conclusory as it is baseless. Because Plaintiffs' theories of liability against GMO Trust are distinct from those alleged against Coinbase, an arbitration against Coinbase will involve different claims, issues, and disputes and, therefore, different discovery. Thus, GMO Trust and Plaintiffs will have to undergo discovery regardless of any arbitration. Moreover, courts across the board have concluded that incurring litigation expenses does not amount to a hardship warranting a stay. *See In re Ring LLC Privacy Litig*., 2021 WL 4557222, at *4 (C.D. Cal. Sept. 3, 2021); *Cesca Therapeutics Inc. v. SynGen Inc*., 2017 WL 1174062, at *4 (E.D. Cal. Mar. 30, 2017); *Mohamed v. Uber Technologies Inc.*, 115 F. Supp. 3d 1024, 1032-33 (N.D. Cal. 2015).

As GMO Trust fails to make out <u>any</u> case of hardship if the case goes forward, it has failed its burden and the motion to stay must be denied. *DeMartini*, 693 Fed.Appx. at 538; *Landis*, 299 U.S. at 255; *In re Ring LLC Privacy Litig*., 2021 WL 4557222, at *4-5 (denying motion to stay because defendant failed to meet burden of demonstrating hardship that would be suffered absent the requested stay); *Congdon v. Uber Techs., Inc.*, 226 F.Supp.3d 983, 991 n. 5 (N.D. Cal. 2016).

2. *Judicial Efficiency Weighs in Favor of Proceeding With the Case*

Because the Parties will need to litigate the non-arbitrable claims against GMO Trust irrespective of the outcome of a potential arbitration against Coinbase, no judicial efficiencies would result from a stay of those claims.

As discussed *supra*, Plaintiffs' claims against GMO Trust exist independently of Coinbase's alleged misconduct, are based on different theories of liability, and involve different legal issues and factual disputes. *See* Sec. II, Factual Background. Two claims are asserted against GMO Trust only. Three claims are asserted against Coinbase only. Only four of the nine claims are asserted against both Defendants but even those are alleged individually as to each Defendant based on unique facts. They are not "intertwined" such that proceeding with this litigation would

qualify as a waste of judicial resources. *Congdon*, 226 F.Supp.3d at 991. This distinguishes this case from those GMO Trust cites in its motion. *See Ballard v. Corinthian Colleges, Inc*., 2006 WL 2380668, at *2-3 (W.D. Wash. Aug. 16, 2006) (stay granted where claims were brought by all plaintiffs jointly and were grounded in "identical facts and legal theories"); *Sharp Corp. v. Hisense USA Corp*., 2017 WL 6017897, at *5 (N.D. Cal. Dec. 5, 2017) (granting motion to stay non-arbitrable claims where "[t]he claims against the defendants here all arise from the identical conduct, and are intertwined"); *RB Prods., Inc. v. Ryze Cap., LLC*, 2019 WL 5722205, at *3 (D. Nev. Nov. 4, 2019) (stay granted where both arbitrable and non-arbitrable claims rested on a single joint venture agreement and the circumstances surrounding it); *Ambercroft Trading Ltd. v. Biddy*, 2020 WL 1820599, at *7-8 (N.D. Cal. Apr. 10, 2020) (stay granted where complaint alleged defendants jointly carried out a fraudulent scheme and defendant who successfully compelled arbitration was "at the center of the entire lawsuit"); *Roderick v. Mazzetti & Assocs., Inc*., 2004 WL 2554453, at *12 (N.D. Cal. Nov. 9, 2004) (stay warranted because aspect of non-arbitrable ERISA claim turned on legal interpretation of stock purchase agreement that was the subject of the arbitration).

Additionally, to the extent overlapping claims or issues exist, this still does not warrant a stay because the arbitrator's decision would not be binding on the Court and therefore litigation of the non-arbitrable claims is inevitable. The analysis in *California Crane School, Inc. v. Google LLC*, *supra*, is instructive. There, notwithstanding identical antitrust and conspiracy claims against both Apple and Google arising out of the same underlying facts and a risk of inconsistent rulings, the court denied non-signatory Apple's motion to stay pending arbitration against Google because there was no contention that an arbitrator's findings of fact or law in an arbitration against Google would be binding on the court. *California Crane*, 2022 WL 3348425 at *5. Absent such a preclusive effect, the court concluded that the plaintiff and Apple would need to eventually litigate the remaining non-arbitrable claims irrespective of what happens in the arbitration and therefore proceeding with the lawsuit would not waste judicial resources. *Id*; *see also Glob. Live Events v. Ja-Tail Enterprises, LLC*, 2014 WL 1830998, at *6 (C.D. Cal. May 8, 2014) ("Inconsistent verdicts are possible whether the trial precedes the arbitration or vice-versa, and can be avoided

only if the second forum gives preclusive effect to the judgment of the first forum."); *Chen v. Bank of Am., N.A.*, 2020 WL 4561658, at *3 (C.D. Cal. Mar. 31, 2020) (despite some overlap of claims, court denied motion to stay pending resolution of arbitration where litigation against non-signatory defendant would have to go forward regardless of the outcome in arbitration since the arbitration is not binding on the Court and thus would not necessarily impact the outcome of the non-arbitrable claims); *Congdon*, 226 F. Supp. 3d at 991 (defendant "has not presented the Court with any authority indicating that the decision of the arbitrators...would in some way bind the Court").

The same holds true here, as GMO Trust does not contend that the arbitrator's findings of fact or law would be binding on the Court. Thus, "staying the non-arbitrable claims would only serve to needlessly delay their resolution." *California Crane*, 2022 WL 3348425, at *5; *see also Congdon*, 226 F.Supp.3d at 991 (the possibility that parallel proceedings covering related disputes could produce inconsistent results does not necessitate granting a stay).

In sum, GMO Trust bears separate liability for its own wrongful acts or omissions that resulted in Plaintiffs' and the Class's loss. As the resolution of the Coinbase Subclass's claims against Coinbase will not obviate the necessity of litigating the larger Class's (different) claims against GMO Trust, judicial efficiency weighs in favor of the case proceeding. *Chen*, 2020 WL 4561658 at *3 ("[G]iven that the parties will need to litigate the non-arbitrable claims irrespective of the arbitration outcome, proceeding with this litigation would not qualify as a waste of judicial resources.").

3. *Plaintiffs, Especially Plaintiff Donovan, Will Be Prejudiced If the Case Is Stayed*

Finally, staying Plaintiffs' claims against GMO Trust would prejudice Plaintiffs as it would delay their ability to conduct discovery and bring about efficient prosecution of their claims against GMO Trust. This hardship is particularly acute with respect to Plaintiff Donovan who, unlike Plaintiffs Kassfy and Bramble, is not a signatory to the Coinbase User Agreement and has no claims against Coinbase. *See Congdon*, 226 F.Supp.3d at 991 (stays are less appropriate when another plaintiff did not agree to arbitrate since arbitrator's decision as to one plaintiff would not be binding on a court overseeing a different plaintiff's claim).

A stay may also prejudice Plaintiffs and the putative Class because critical evidence could be lost if the proceedings are stayed. Plaintiffs anticipate developing key evidence in the form of witness testimony from employees of GMO Trust who were involved in creating the GYEN technology and who are most likely to understand and be able to explain why the one-to-one peg to the yen failed. As alleged in the complaint, amidst the November 2021 GYEN incident, Coinbase was placing blame on GMO Trust, while GMO Trust pointed the finger at Coinbase. *See* Dkt. 46, ¶¶ 52-54. It is therefore likely that GMO Trust employees evaluating the situation in real time are likely to have relevant evidence. Employee turnover is an inevitable reality at any company. Plaintiffs face being prejudiced by losing out on this key evidence should those employees no longer work for GMO Trust after a stay is lifted. As there is no good reason to stay the case, the Court should deny GMO Trust's motion.

## V. CONCLUSION

For all the reasons stated herein, the Court should deny GMO Trust's motion to compel arbitration and request to stay.

Dated November 17, 2022.

Erickson Kramer Osborne, LLP

/s/ Julie C. Erickson

Julie C. Erickson
Elizabeth A. Kramer
Kevin M. Osborne
Attorneys for Plaintiffs Kenneth Donovan, Hussien Kassfy, and John Brambl