MEREDITH R. DEARBORN (SBN 268312)
mdearborn@paulweiss.com
RANDALL SCOTT LUSKEY (SBN 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: 628-432-5100
Facsimile: 628-232-3101

KRISTINA A. BUNTING (NY SBN 5510847; *pro hac vice*)
kbunting@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3503
Facsimile: 212-757-3990

Attorneys for Defendants
COINBASE GLOBAL, INC. and COINBASE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

KENNETH DONOVAN, HUSSEIN KASSFY, and JOHN BRAMBL, individually and on behalf of others similarly situated,

Plaintiffs,

vs.

GMO-Z.COM TRUST COMPANY, INC.; COINBASE GLOBAL, INC.; and COINBASE, INC.,

Defendants.

Case No. 3:22-cv-02826-TLT

**DEFENDANTS COINBASE GLOBAL, INC.'S AND COINBASE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: January 10, 2023
Time: 2:00 p.m.
Dept.: Courtroom 9, 19th Floor
Judge: Hon. Trina L. Thompson

## TABLE OF CONTENTS

I. PLAINTIFFS' ARGUMENTS MUST BE RESOLVED BY THE ARBITRATOR ......... 2

A. The Parties Clearly and Unmistakably Delegated All Threshold Questions of Arbitrability—Including Plaintiffs' Arguments—to the Arbitrator. .................. 3

B. Plaintiffs Have Not Shown That the Delegation Clause Is Unconscionable. ......... 7

1. The Delegation Clause Is the Product of Fair Dealing. .............................. 7

2. The Delegation Clause Does Not "Shock the Conscience." ....................... 8

II. PLAINTIFFS' ARGUMENTS DO NOT FIT WITHIN THEIR MANUFACTURED "EXCEPTIONS" TO THE DELEGATION CLAUSE .................. 10

III. THE ARBITRATION CLAUSE IS ENFORCEABLE .................................................... 12

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036 (N.D. Cal. July 22, 2022) .......... 9

*Alkutkar v. Bumble, Inc.*, 2022 WL 4112360 (N.D. Cal. Sept. 8, 2022) .......... 9

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 11

*Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (Cal. 2016) .......... 12

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .......... *passim*

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) .......... 12, 14

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013) .......... 8

*Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758 (Cal. Ct. App. 1989) .......... 7, 8

*Diaz v. Intuit, Inc.*, 2017 WL 4355075 (N.D. Cal. Sept. 29, 2017) .......... 3

*Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005 (S.D. Cal. 2017) .......... 8

*Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084 (Cal. Ct. App. 2021) .......... 7

*Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019) .......... 5

*Han v. Synergy Homecare Franchising, LLC*, 2017 WL 446881 (N.D. Cal. Feb. 2, 2017) .......... 6

*Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019) .......... 3

*J.P. ex rel. R.P. v. Educ. Testing Servs.*, 2020 WL 10693044 (C.D. Cal. Oct. 30, 2020) .......... 10

*Kairy v. Supershuttle Int'l, Inc.*,
2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) .......... 14

*Kilgore v. KeyBank, Nat'l Ass'n*,
718 F.3d 1052 (9th Cir. 2013) .......... 11

*Lopez v. Bartlett Care Center, LLC.*,
39 Cal. App. 5th 311 (Cal. Ct. App. 2019) .......... 10

*MacClelland v. Cellco P'ship*,
2022 WL 2390997 (N.D. Cal. July 1, 2022) .......... 13

*Mahmoud v. Coinbase, Inc.*,
Case No. CGC-22-600607 (Cal. Sup. Ct. Oct. 19, 2022) .......... 9

*McGrath v. DoorDash, Inc.*,
2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) .......... 14

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
144 F. Supp. 3d 1069 (N.D. Cal. 2015) .......... 6

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) .......... 4

*Oracle Am., Inc. v. Myriad Group A.G.*,
724 F.3d 1069 (9th Cir. 2013) .......... 3, 5, 6

*Pinela v. Neiman Marcus Grp., Inc.*,
238 Cal. App. 4th 227 (Cal. Ct. App. 2015) .......... 6

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) .......... 7

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 3

*Sanchez v. Valencia Holding Co. LLC*,
61 Cal. 4th 899 (Cal. 2015) .......... 8

*Saravia v. Dynamex, Inc.*,
310 F.R.D. 412 (N.D. Cal. 2015) .......... 8

*Serpa v. Cal. Sur. Investigations, Inc.*,
215 Cal. App. 4th 695 (Cal. Ct. App. 2013) .......... 13

*SteppeChange LLC v. VEON Ltd.*,
354 F. Supp. 3d 1033 (N.D. Cal. 2018) .......... 4, 5

*Storms v. Paychex, Inc.*,
2022 WL 2160414 (C.D. Cal. Jan. 14, 2022) .......... 14

*Sultan v. Coinbase, Inc.*,
354 F. Supp. 3d 156 (E.D.N.Y. 2019) .......... 9

*Tarverdiyeva v. Coinbase Global, Inc.*,
2021 WL 4527960 (M.D. Fla. Sept. 8, 2021) .......... 9

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016).......... 15

*Vargas v. Delivery Outsourcing, LLC*,
2016 WL 946112 (N.D. Cal. March 14, 2016) .......... 6

**Other Authorities**

J. Maria Glover, *Mass Arbitration*, 74 STAN. L. REV. 1283 (2022).......... 14

Coinbase's Motion must be granted because the parties agreed to arbitrate not only the claims in Plaintiffs' Complaint (pursuant to the Coinbase User Agreement's "Arbitration Clause") ***but also*** all threshold disputes about the enforceability of the Arbitration Clause (pursuant to the "Delegation Clause" within the Arbitration Clause).

Plaintiffs do not contest that they agreed to Coinbase's 2022 User Agreement or that their claims are within the scope of the Arbitration Clause. Instead, Plaintiffs spend the vast majority of their Opposition arguing that the Arbitration Clause is unconscionable and unenforceable. Plaintiffs' unconscionability arguments, which amount to meritless criticisms of an industry-standard Arbitration Clause, have all been expressly delegated to an arbitrator to resolve through the parties' Delegation Clause. The Court's analysis must therefore begin and end with the Delegation Clause. As long as the ***Delegation Clause*** is enforceable—and it is—the Court must send the Plaintiffs' litany of quibbles with the Arbitration Clause to arbitration. Only if the Court determines that the Delegation Clause is not enforceable can it consider and reject Plaintiffs' mistaken views about the enforceability of the Arbitration Clause.

Plaintiffs cannot escape the Delegation Clause. They wrongly claim their arguments fall within purported "exceptions" to the Delegation Clause and therefore must be resolved by this Court. There are no such exceptions. Plaintiffs misread four categories of "Disputes" that are carved out from the ***Arbitration Clause*** and call them exceptions to the ***Delegation Clause***. But under the Delegation Clause, the arbitrator decides all threshold questions of arbitrability—including all questions about whether a Dispute is arbitrable under the Arbitration Clause—"without limitation."

Even if there were limitations or exceptions to the Delegation Clause (and there are not), none of Plaintiffs' arguments fit within them. Plaintiffs are asking this Court to hold that the entire Arbitration Clause is unenforceable. But under Plaintiffs' incorrect reading, only narrow categories of Disputes pertaining to, *e.g.*, the enforceability of one small piece of the Arbitration Clause (the class action waiver), or ancillary issues (the payment of arbitration fees) are excepted from the Delegation Clause. None of Plaintiffs' four purported exceptions to the Delegation Clause is broad enough to cover the ultimate question of whether the Arbitration Clause is unconscionable and unenforceable in its entirety.

Plaintiffs alternatively argue that the Delegation Clause is unconscionable and thus unenforceable. That argument also fails. There is no procedural unconscionability here. Plaintiffs were fairly apprised of the 2022 User Agreement update and were free to reject it and trade their cryptocurrency assets elsewhere if they did not wish to agree to arbitration. Nor is the Delegation Clause substantively unconscionable. Plaintiffs do not explain why the specific provisions of the Delegation Clause are unfairly one-sided. Instead, they identify a hodgepodge of ***other provisions*** within the Arbitration Clause or User Agreement that supposedly unfairly favor Coinbase and thus render the Delegation Clause unfair as well. Such bootstrapping is not allowed. Where arguments are not specifically directed to the delegation provision, but instead to the arbitration agreement as a whole, the court must enforce the delegation provision. *Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015). Plaintiffs offer no reason why the Delegation Clause, specifically, is unfairly one-sided, and there is none. Finding this Delegation Clause unconscionable because of provisions elsewhere in the Arbitration Clause and broader User Agreement is irreconcilable with *Brennan*'s command that delegation provisions must be judged on their own merits, and would call into question the enforceability of commonplace, bilateral delegation provisions in arbitration agreements throughout the country. There is no basis for such a radical step.

Finally, even if the Court could decide whether the Arbitration Clause is unconscionable (and it cannot, as a matter of law, because of the Delegation Clause), the Court must nevertheless grant Coinbase's Motion. Plaintiffs concede that their claims fall within the Arbitration Clause's scope. And the Arbitration Clause is not unconscionable. Nothing in the Arbitration Clause unfairly favors Coinbase, let alone to a degree that would "shock the conscience," as the law requires before a Court can disregard it.

For all of these reasons, this Court must compel arbitration.

## I. PLAINTIFFS' ARGUMENTS MUST BE RESOLVED BY THE ARBITRATOR

Coinbase's Motion must be granted because whether the Arbitration Clause is enforceable is a question that the parties clearly and unmistakably delegated to the arbitrator. Contrary to the suggestion in Plaintiffs' Opposition, the first question this Court must decide is whether the parties' Delegation Clause—standing alone—is enforceable. It is.

### A. The Parties Clearly and Unmistakably Delegated All Threshold Questions of Arbitrability—Including Plaintiffs' Arguments—to the Arbitrator.

Delegation provisions are antecedent arbitration agreements that courts must enforce as long as the parties clearly and unmistakably intended to delegate questions of arbitrability. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69–70 n.1 (2010); *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Brennan*, 796 F.3d at 1132. The parties did so here in two ways.

First, the parties agreed that any arbitration would be administered according to AAA Rules. ECF No. 54 ("Black Decl."), Ex. F, Appendix 5, § 1.4. "Virtually every circuit to have considered the issue"—including the Ninth Circuit—"has determined" that incorporation of the AAA Rules is "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Brennan*, 796 F.3d at 1130; *see also Diaz v. Intuit, Inc.*, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29, 2017) (collecting cases).

Second, the parties included within their Arbitration Clause Section 1.6, which states:

> The arbitrator shall have exclusive authority to resolve any Dispute, ***including, <u>without limitation</u>, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement***, except for the following: (1) all Disputes arising out of or relating to the Section entitled "Waiver of Class and Other Non-Individualized Relief," including any claim that all or part of [that Section] is unenforceable, illegal, void or voidable, or that such Section . . . has been breached, shall be decided by a court of competent jurisdiction and not by an arbitrator; (2) except as expressly contemplated in the subsection entitled "Batch Arbitration," all Disputes about the payment of arbitration fees shall be decided only by a court of competent jurisdiction and not by an arbitrator; (3) all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator; and (4) all Disputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator.

Black Decl., Ex. F, Appendix 5, § 1.6 (emphasis added). The Ninth Circuit has repeatedly held that language like the emphasized text in Section 1.6 above is clear and unmistakable evidence

that the parties intended to delegate arbitrability. *See, e.g.*, *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (clause granting arbitrator authority over "validity or application of any of the provisions of" arbitration agreement was clear and unmistakable).

Read together, the parties' incorporation of the AAA Rules and Section 1.6 make unmistakable that the parties delegated arbitrability. Plaintiffs' argument that the Arbitration Clause is unconscionable in its entirety, ECF No. 68 ("Opp.") at 2–17, falls squarely within that delegation, because the parties expressly agreed, consistent with AAA Rules, to delegate questions regarding the "enforceability . . . of the Arbitration Agreement" to the arbitrator. This is not a close question.

Plaintiffs argue that the Court can ignore the Delegation Clause and decide whether the Arbitration Clause is enforceable because (1) their unconscionability challenges fall within the categories of Disputes carved out from the Arbitration Clause in Section 1.6, *see* Opp. at 18–19; or (2) because those same carveouts will "confuse average consumers" and conflict with the AAA Rules, Opp. at 20–23. Both arguments fail because there are no "exceptions" to the Delegation Clause and, even if such "exceptions" existed, Plaintiffs' arguments do not fall within them.

The parties agreed that "Disputes" would be "resolved by binding arbitration, rather than in court." Black Decl., Ex. F, Appendix 5, § 1.1. Section 1.6 explains that "Disputes" include "without limitation" disputes about "the enforceability, revocability, scope, or validity of the Arbitration Agreement"—that is, small "d" disputes about threshold questions of arbitrability. *Id.*, § 1.6. The second part of Section 1.6 then identifies four types of "Disputes" that a court, rather than an arbitrator, must ultimately decide.

Plaintiffs argue that the four categories of Disputes carved out from the Arbitration Clause are also carveouts from the Delegation Clause. Opp. at 19. That argument fails because it conflates the question of ***whether*** a "Dispute" is within the scope of arbitration with ***who*** decides that threshold question of arbitrability. "Numerous courts in this circuit have found that ***<u>despite a carveout</u>, the question of arbitrability, <u>even on the subject of what has been carved out</u>, must be decided by the arbitrator***." *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018) (collecting cases) (emphasis added). This case is no different. Section 1.6 identifies four categories of "Disputes" that a court, rather than an arbitrator, must decide. But ***all*** threshold

determinations of arbitrability (including whether any of the carveouts in Section 1.6 apply) are delegated to the arbitrator "without limitation." The fact that the Arbitration Clause excludes some big "D" Disputes from its scope ***does not*** undermine the parties' agreement to delegate all small "d" disputes about arbitrability, including the scope of the Arbitration Clause, to the arbitrator.

Plaintiffs' tortured alternative reading of Section 1.6 makes no sense. Under their reading, the words "without limitation" in Section 1.6 have no meaning. Why would the parties agree that an arbitrator should decide arbitrability questions "without limitation," but then impose four specific limits on the arbitrator's authority do so? Plaintiffs offer no cogent explanation. Courts interpret contracts to give effect to every provision, not to render contract language meaningless, as Plaintiffs ask the Court to do here. *See, e.g.*, *Flores v. Barr*, 934 F.3d 910, 915 (9th Cir. 2019) ("Courts interpreting the language of contracts should give effect to every provision, and an interpretation which renders part of the instrument to be surplusage should be avoided." (quotation marks omitted)). The only possible reading of Section 1.6 is that all threshold disputes over arbitrability are "without limitation" for the arbitrator to decide—including disputes about the scope and applicability of the four carveouts in Section 1.6. That reading also aligns with the parties' incorporation of the AAA Rules and cases addressing this same issue. *See SteppeChange LLC*, 354 F. Supp. 3d at 1044. As Plaintiffs note, Opp. at 22, the AAA Rules require all questions of arbitrability to be resolved by the arbitrator—just as the parties agreed in Section 1.6. Only by *misreading* Section 1.6 as Plaintiffs suggest is there any conceivable conflict between the parties' agreement and the AAA Rules. Plaintiffs cannot manufacture a conflict where none exists by reading words out of the parties' agreement.

The Ninth Circuit has rejected the very arguments Plaintiffs make here. In *Oracle* and *Brennan*, the parties' arbitration agreements incorporated by reference arbitration forum rules, which the court found to be clear and unmistakable evidence of the parties' intent to delegate arbitrability. *Oracle*, 724 F.3d at 1074–75; *Brennan*, 796 F.3d at 1131 (AAA Rules). The parties resisting arbitration nevertheless argued that the court could determine questions of unconscionability because both agreements carved out certain claims from the scope of arbitration. The Ninth Circuit disagreed. Such an argument, the *Oracle* court explained, "conflates the ***scope***

of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of ***who*** decides arbitrability." *Oracle*, 724 F. 3d at 1076 (emphasis added). And the *Brennan* court held that allowing a court to decide unconscionability would "directly contradict" the parties' otherwise clear and unmistakable delegation. *Brennan*, 796 F.3d at 1131.

The same is true here. Whether a dispute is within one of the four categories of excepted "Disputes" enumerated in Section 1.6 is a question of arbitrability that the parties have unmistakably delegated to the arbitrator "without limitation." That capacious delegation of arbitrability remains clear and unmistakable, and is therefore enforceable, even if certain categories of "Disputes" are otherwise carved out from arbitration altogether.[1] Plaintiffs' construction would "directly contradict" that delegation, as in *Brennan*, by improperly conflating the scope and applicability of Section 1.6's carveouts with the question of who decides arbitrability, as in *Oracle*.

*Han v. Synergy Homecare Franchising, LLC*, 2017 WL 446881, at *6 (N.D. Cal. Feb. 2, 2017), cited by Plaintiffs, does not hold otherwise. In that case, the carveouts from arbitration and from the delegation provision occupied a single sentence, rendering the scope and applicability of the carveout unclear. *Id.* at *6. Not so here. Section 1.6 speaks to the authority of the arbitrator and reaffirms that the arbitrator shall have the exclusive authority to resolve all Disputes, including any disagreements about the meaning, scope, or enforceability of the Arbitration Clause. Section 1.6 then goes on to identify certain narrow categories of Disputes that an arbitrator may not decide. But unlike in *Han*, the parties' agreement does not conflate the "Disputes" carved out from Section 1.6 with "disputes" about the enforceability, revocability, scope, or validity of the Arbitration Agreements. Instead, the categories of carved-out Disputes are set off by a colon and separated by

[1] Plaintiffs' cited cases do not compel a different conclusion. In *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069 (N.D. Cal. 2015), the court held that language similar to the Coinbase delegation clause was clear and unmistakable. *Id.* at 1076 ("any provision of th[e] [a]greement" or "the validity of th[e] [a]greement or any other agreement between the parties, or any provision thereof"). And *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 240 (Cal. Ct. App. 2015), and *Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *6 (N.D. Cal. March 14, 2016), are inapposite because the agreements in those cases included conflicting terms stating that an arbitrator would decide enforceability questions, but elsewhere providing that a court could determine enforceability. Plaintiffs point to no analogous conflict here, and there is none.

semicolons, making clear that each constitutes a separate category of "Dispute." All "disputes" about arbitrability are, however, left for the arbitrator.

**B. Plaintiffs Have Not Shown That the Delegation Clause Is Unconscionable.**

The only remaining question the Court needs to decide is whether Plaintiffs have carried their burden to show that the Delegation Clause is unconscionable. They have not.

Under California law, parties seeking to invalidate a contract on unconscionability grounds must demonstrate that the contract is "both procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). The two forms of unconscionability work as a "sliding scale," such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citation omitted).

*1. The Delegation Clause Is the Product of Fair Dealing.*

Plaintiffs argue that the Delegation Clause is procedurally unconscionable because it is included in a contract of adhesion that made substantial changes to the prior version of the User Agreement. They also claim that the 2022 User Agreement update put Plaintiffs to the unconscionable choice of agreeing to Coinbase's terms or losing access to their assets. Not so.

"There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices." *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1096 (Cal. Ct. App. 2021). Plaintiffs claim in affidavits submitted in support of their Opposition that they believed they had no choice because they were required to agree to Coinbase's terms or risk losing access to their cryptocurrency assets altogether. That is incorrect. The ***very same screen*** on which Plaintiffs agreed to the updated User Agreement included a hyperlink to a Coinbase help page which explained that any user who chose "not to accept these [forthcoming] changes" could "close [their] account" and that Coinbase would "help [them] move [their] funds off the platform." Supplemental Declaration of Hamzah Zia ¶¶ 4–6 & Ex. K; Supplemental Declaration of Suellen Black ¶ 4. Plaintiffs' *post hoc* assertions are also irrelevant. The question is whether a "complaining party ha[s] ***reasonably available***" alternatives. *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 768, 772 (Cal. Ct. App. 1989)

(emphasis added). Plaintiffs admit that Coinbase is not the only cryptocurrency exchange, and that cryptocurrency can be used without an exchange at all. *See* ECF No. 46 ¶¶ 11, 42. Because Plaintiffs had alternatives to Coinbase, there was no procedural unconscionability. *Dean Witter*, 211 Cal. App. 3d at 772 (no procedural unconscionability where other financial institutions offered competing investment vehicles).

Nor, contrary to Plaintiffs' assertions, were the terms of the Arbitration Clause and Delegation Clause inconspicuous or unfairly presented. Opp. at 3–4. The very first page of the User Agreement explains in all-caps, bold text that Appendix 5 "**INCLUDES AN AGREEMENT TO ARBITRATE**" and urges users to "**READ . . . CAREFULLY**." And "**APPENDIX 5: ARBITRATION AGREEMENT**" is clearly labeled and easy to identify. Black Decl., Ex. F. Plaintiffs' own exhibit shows that the subsections of the Arbitration Clause are drafted in legible font. ECF No. 68-2, Appendix 5. Coinbase's Arbitration Clause is not presented in "extremely small" font as in *Esquer v. Education Management Corp.*, 292 F. Supp. 3d 1005, 1015 (S.D. Cal. 2017), cited by Plaintiffs. What's more, in *Esquer*, the court found that "a party is not under an obligation to highlight an arbitration agreement, including the delegation clause, nor is it required to specifically call that clause to a plaintiff's attention." *Id.* (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (Cal. 2015)). Despite being under no obligation to highlight the updated Arbitration Clause, Coinbase did just that.

Plaintiffs' assent to the 2022 User Agreement is nothing like *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 420–21 (N.D. Cal. 2015), cited by Plaintiffs, Opp. at 24. In that case, the employer provided an employee who spoke limited English a form arbitration agreement drafted in English and "tersely instructed [him] to sign" with limited time for review. *Saravia*, 310 F.R.D at 420. In contrast, Plaintiffs were free to review the updated terms on their own devices in their own time. If they did not wish to accept those terms, Coinbase provided Plaintiffs with a readily accessible help page explaining how Plaintiffs could move their assets elsewhere. No unfair trap was sprung.

*2. The Delegation Clause Does Not "Shock the Conscience."*

A contract is substantively unconscionable only when it is so unjustifiably one-sided that it "shocks the conscience." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 923 (9th Cir. 2013). This

is an extremely high bar. To invalidate the Delegation Clause, Plaintiffs must show the Delegation Clause is shockingly unfair for reasons "specific to the delegation provision" standing alone. *Brennan*, 796 F.3d at 1133. Arguments about the unconscionability of the Arbitration Clause as a whole are for the arbitrator. *Id.*

Plaintiffs vaguely suggest that the Delegation Clause is unconscionable because it lacks mutuality. Opp. at 24. Specifically, Plaintiffs claim that certain of the purported "exceptions" from Section 1.6 unilaterally favor Coinbase. *Id.* But, as discussed above, the categories of "Disputes" enumerated in Section 1.6 are ***not*** "exceptions" to the Delegation Clause. *Supra* at 4–7. The Delegation Clause requires all threshold arbitrability disputes to be decided by an arbitrator on a bilateral basis, period. *Supra* at 4–5. Plaintiffs point the Court to the *Bielski* decision, which stands alone against many other cases from around the country that have enforced versions of Coinbase arbitration agreements. *See, e.g.*, *Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036, at *1 (N.D. Cal. July 22, 2022) (compelling arbitration); *Tarverdiyeva v. Coinbase Global, Inc.*, 2021 WL 4527960, at *1 (M.D. Fla. Sept. 8, 2021) (same); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 158 (E.D.N.Y. 2019) (same). But *Bielski* is inapposite, as Coinbase explained in its Motion, because it did not analyze the Delegation Clause in the 2022 Coinbase User Agreement. Mot. at 12–13. The one court that has addressed the 2022 Coinbase User Agreement, however, had little difficulty compelling arbitration. *Mahmoud v. Coinbase, Inc.*, Case No. CGC-22-600607 (Cal. Sup. Ct. Oct. 19, 2022) (ECF No. 63-1, Exhibit A). The bottom line is that nothing in Plaintiffs' challenges to the Delegation Clause itself show that the Delegation Clause is shockingly one-sided.

The remainder of Plaintiffs' arguments are not "specific to the delegation provision," as the law requires. *Brennan*, 796 F.3d at 1133. Plaintiffs argue that other "provisions . . . operate to render the delegation clause substantively unconscionable," or that separate provisions "as applied to the delegation clause" supposedly render the Delegation Clause unfair. Opp. at 24–25. Because those challenges are not "specific to the delegation provision" they are "for the arbitrator to decide." *Brennan*, 796 F.3d at 1133. *Alkutkar v. Bumble, Inc.*, cited by Plaintiffs, confirms as much. 2022 WL 4112360 at *8 (N.D. Cal. Sept. 8, 2022) ("[T]he court considers those [unconscionability] arguments as they specifically apply to the delegation provision."). And that case also confirms that

a delegation provision is "***not substantively unconscionable***" where, as here, it requires "any dispute" about arbitrability to be resolved by the arbitrator. *Id.* at *10 (emphasis added).

*J.P. ex rel. R.P. v. Educational Testing Services*, 2020 WL 10693044 (C.D. Cal. Oct. 30, 2020), cited by Plaintiffs, proves the point. The court there found a delegation clause in one arbitration agreement substantively unconscionable because it "require[d] Plaintiffs to arbitrate their potential claims, but [did] not require Defendants to arbitrate their potential claims." *Id.* at *10. But the same court found a separate delegation clause between the same parties valid and enforceable because it required "[a]ll disputes between" the parties to be arbitrated on a bilateral basis, with bilateral exceptions. *Id.* As in *J.P.*, the Delegation Clause here is also enforceable because it is bilateral: any dispute about arbitrability must be resolved by an arbitrator.[2]

Plaintiffs have provided no explanation, nor basis in the law, why a bilateral delegation clause applicable to threshold arbitrability questions on an equal basis is unfair—much less how it is so unfairly one-sided as to be unconscionable. Accordingly, all of the arguments raised in Plaintiffs' Opposition are for an arbitrator, not this Court, to decide.

## II. PLAINTIFFS' ARGUMENTS DO NOT FIT WITHIN THEIR MANUFACTURED "EXCEPTIONS" TO THE DELEGATION CLAUSE

Plaintiffs ask this Court to "refuse to enforce the arbitration agreement wholesale" because it is unconscionable. Opp. at 17. ***That*** specific question—the "wholesale" enforceability of the Arbitration Clause—is not carved out from Section 1.6. To the contrary, Section 1.6 provides that the arbitrator will have "exclusive authority to resolve" disputes "arising out of or related to" the "enforceability . . . of the Arbitration Clause." Black Decl., Ex. F, Appendix 5, § 1.6.

In any event, ***none*** of Plaintiffs' arguments fall within the scope of Section 1.6's carveouts:

- <u>Class Action Waiver</u>: Section 1.6 provides that disputes arising out of or related to the Class Action Waiver, including any claim that the Class Action Waiver is illegal or unenforceable, must be decided by a court. But Plaintiffs do not challenge the Class

[2] *Lopez v. Bartlett Care Center, LLC.*, 39 Cal. App. 5th 311 (Cal. Ct. App. 2019), cited by Plaintiffs, did not concern a delegation provision at all, and was also "clearly one-sided, benefitting only" the dominant party. *Id.* at 322. Again, that is not the case here—the Coinbase Delegation Clause is fully bilateral.

Action Waiver or claim that it is illegal or unenforceable in any way. Instead, Plaintiffs argue only that a ***separate provision***—the Batch Arbitration procedure described in Section 1.8—is unconscionable.[3] The Plaintiffs' smorgasbord of arguments about the unfairness of the Batch Arbitration procedure (including deposition limitations, favorable cost efficiency to Coinbase, and its mandatory nature) do not present a genuine dispute about the User Agreement's Class Action Waiver.

- Arbitration Fees: Section 1.6 provides that disputes about the payment of arbitration fees must be decided by a court, except as provided in Section 1.8. There exists no dispute about the payment of arbitration fees in this matter. Plaintiffs have not asked this Court to decide who should (hypothetically) pay certain arbitration fees.
- Conditions Precedent: Section 1.6 provides that disputes about whether either party has satisfied any condition precedent to arbitration must be decided by a court. Neither Coinbase's Motion nor Plaintiffs' Opposition raises any such dispute. Plaintiffs concede, and all parties agree, that Plaintiffs have not yet complied with any pre-arbitration complaint requirements.
- Applicable Version: Section 1.6 provides that a court must decide disputes about which version of the parties' arbitration agreement applies. All parties agree that the 2022 User Agreement (the last version that both Plaintiffs assented to before bringing this lawsuit) governs this dispute. Plaintiffs raise no such dispute; their Opposition relies on the same User Agreement and Arbitration Clause that Coinbase relied upon in its Motion.

In sum, none of the carveouts in Section 1.6 permit this Court, rather than an arbitrator, to decide whether the Arbitration Clause in its entirety is unenforceable, as Plaintiffs request. And none of Plaintiffs' arguments even fall within the Section 1.6 carveouts. The Court should disregard Plaintiffs' attempts to manufacture a loophole where none exists.

---

[3] The Class Action Waiver is separate from the Batch Arbitration provision. To the extent Plaintiffs intend to attack the validity of the former, that argument is a non-starter. The Supreme Court and the Ninth Circuit have held that class action waivers in arbitration agreements are not substantively unconscionable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc).

## III. THE ARBITRATION CLAUSE IS ENFORCEABLE

Because Plaintiffs have not carried their burden to show that the parties' Delegation Clause is unenforceable, the Court need not—indeed cannot—resolve Plaintiffs' hodgepodge of objections to the Arbitration Clause as a whole. But those arguments independently fail.

To carry their burden to show unconscionability, Plaintiffs must show that the Arbitration Clause "***standing alone***, is unenforceable—for reasons ***independent*** of any reasons the remainder of the contract might be invalid." *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) (emphasis added). Plaintiffs have not done so.

Plaintiffs argue the Arbitration Clause is procedurally unconscionable for the "same reasons" as the Delegation Clause. *See* Opp. at 23. That argument fails for the reasons discussed above. *Supra* at 7–8. And Plaintiffs' grab bag of arguments about the terms of the Arbitration Clause all fail to show substantive unconscionability.

***Mutuality***. Plaintiffs claim the Arbitration Clause is unfairly tilted in Coinbase's favor because multiple provisions of the User Agreement—all located outside the Arbitration Clause itself—permit Coinbase to take action against users who violate Coinbase's User Agreement without resorting to arbitration. Opp. at 4–6. Those arguments do not target the Arbitration Clause "standing alone," and fail for that reason. *See Bridge Fund*, 622 F.3d at 1000. Indeed, Plaintiffs concede that the only supposed imbalance in the scope of the Arbitration Clause itself (allowing both sides to bring intellectual property claims in court) is "insufficient to render the agreement unenforceable." Opp. at 5. In any case, California courts hold that "[a] contract can provide a margin of safety that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1250 (Cal. 2016). Coinbase has a legitimate commercial need to take certain immediate steps, including to block illegal transactions or to suspend or terminate user's accounts when users violate the User Agreement.

***Pre-Dispute Resolution Requirements***. Plaintiffs next argue the Arbitration Clause is substantively unconscionable because the Formal Complaint Process—another provision outside the Arbitration Clause—requires users to try to resolve disputes with Coinbase amicably before

filing any arbitration or small claims court action. Opp. at 6–8. Again, those arguments fail because they do not target the Arbitration Clause standing alone. They instead target provisions that apply before a user brings a claim in arbitration, small claims court, or in a court of general jurisdiction. Nothing about those requirements shows why arbitration is unfairly one-sided. In any event, "a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable in an agreement containing a mutual obligation to arbitrate." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (Cal. Ct. App. 2013).

***Batch Arbitration***. Plaintiffs complain that the "class action waiver as modified by the batch arbitration provision" is substantively unconscionable because of a supposed lack of clarity in the process. Opp. at 8–12. Not so. The Arbitration Clause explains that batch arbitration procedures will apply when 100 or more claims "of a substantially similar nature" are filed against Coinbase by the "same law firm, group of law firms, or organizations within a [30] day period," Black Decl., Ex. F, Appendix 5, § 1.8; that one arbitrator shall be appointed to each batch of 100 claims, *id.*; and that each batch will be resolved as a "single consolidated arbitration with one set of filing and administrative fees due per side per batch, one procedural calendar, one hearing (if any) . . ., and one final award." *Id.* And, to the extent Plaintiffs "disagree on the application of the Batch Arbitration process," then Coinbase will pay for an "arbitrator to determine the applicability of the Batch Arbitration process." *Id.* Plaintiffs do not explain how these straightforward procedural requirements "shock the conscience"—especially where, as here, any uncertainty about the process is resolved through arbitration at Coinbase's expense. And, unlike the cases cited by Plaintiffs, Coinbase's batch arbitration provision does not impose procedural limitations that restrict Plaintiffs' access to counsel, *MacClelland v. Cellco P'ship*, 2022 WL 2390997, at *13 (N.D. Cal. July 1, 2022) (counsel restricted to representing only one batch at a time), or delay a hearing on Plaintiffs' claims, *id.* at *11–13 (requiring one batch to be decided before next can be filed).

Plaintiffs' argument that the "discovery and confidentiality provisions" of batch arbitration "harm claimants and benefit Coinbase," Opp. at 11, also fails. Plaintiffs complain that confidentiality hurts individual claimants because they cannot share information about their claims against Coinbase, but cite no case holding that bilateral confidentiality rules in arbitration are

unconscionable for that reason. Here, the confidentiality requirements of arbitration are fair because they apply bilaterally to both "You and Coinbase." Black Decl., Ex. F, Appendix 5, § 1.4.

Finally, Plaintiffs' assertion that Coinbase "stands to benefit from far greater cost savings" from batch arbitration, Opp. at 11–12, does not render the Arbitration Clause unconscionable. Coordinated proceedings reduce the "illegitimate, *in terrorem* settlement pressure" imposed by the threat of exorbitant fees. *See* J. Maria Glover, *Mass Arbitration*, 74 STAN. L. REV. 1283, 1349–50 (2022). And just as importantly, the batching provisions also benefit claimants. For example, they reduce the cost to claimants because only "one set of filing and administrative fees due per side per batch" is required. Black Decl., Ex. F, Appendix 5, § 1.8. Indeed, while batch arbitration provisions are new, at least one court has already opined that such provisions "appear fair." *McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *10–11 (N.D. Cal. Nov. 5, 2020). Plaintiffs cite no case holding a batching provision like Coinbase's unconscionable.

***Limitation of Remedies***. Plaintiffs argue the User Agreement's Limitation of Liability provision is unconscionable because it limits Plaintiffs' ability to recover punitive damages, or statutory damages available under the CLRA and other state consumer protection laws, such as attorneys' fees and costs for the prevailing party. Opp. at 12–14. The Limitation of Liability provision is separate from the Arbitration Clause. It therefore cannot be the basis for invalidating the Arbitration Clause. *Bridge Fund*, 622 F.3d at 1000; *see also Kairy v. Supershuttle Int'l*, *Inc.*, 2012 WL 4343220, at *9 (N.D. Cal. Sept. 20, 2012) (validity of damages cap not specifically part of the arbitration clause must be determined in the process of arbitration). But even if it were appropriate to consider the enforceability of the Limitation of Liability, that provision specifically states that it "MAY NOT APPLY" in jurisdictions that do not allow the exclusion of certain damages. Black Decl., Ex. F, § 8.2. Limitations clauses that acknowledge the effect of state law, as Coinbase's does here, are not unconscionable. *See Storms v. Paychex, Inc.*, 2022 WL 2160414, at *15 (C.D. Cal. Jan. 14, 2022). That provision also does not apply in cases involving fraud or willful violations of the law. Black Decl., Ex. F, § 8.2.

***Attorneys' Fees Provisions***. Plaintiffs argue that multiple provisions relating to attorneys' fees render the Arbitration Clause unconscionable. Plaintiffs first argue it is unconscionable for

each party to bear its own attorneys' fees and costs in arbitration, as provided in the Arbitration Clause, because that language "strips Plaintiffs of their statutory right to prevailing attorneys' fees and costs under the CLRA." Opp. at 14. But the language Plaintiffs cite does not say that an arbitrator is prohibited from awarding fees and costs that are otherwise provided as a form of statutory damages. And, to the extent that the Arbitration Clause incorporates the Limitation of Liability provision, those limitations are not unconscionable for the reasons discussed above.

Plaintiffs next argue that it is unconscionable to allow the prevailing party to recover its attorneys' fees and costs incurred in litigating a motion to compel arbitration or litigating a dispute over whether conditions precedent to arbitration have been satisfied. Opp. at 15. But bilateral prevailing-party clauses are not unconscionable under California law. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1025 (9th Cir. 2016). And the provisions at issue here are expressly bilateral. One applies if either "***you or Coinbase*** need to invoke the authority of a court . . . to compel arbitration." Black Decl., Ex. F, Appendix 5, § 1.7 (emphasis added). The other applies to the "prevailing party in ***any*** court action relating to whether ***either party*** has satisfied any condition precedent to arbitration." *Id.* (emphasis added). Whether one party tends to bring more of these types of challenges than the other is irrelevant. As long as the prevailing party's right to recover attorneys' fees is reciprocal, as here, such provisions are not unconscionable. *Tompkins*, 840 F.3d at 1025.

***Claims Under $25,000***. Plaintiffs' final argument is that the entire Arbitration Clause is unconscionable because claims under $25,000 do not receive a hearing. Opp. at 15. Plaintiffs cite no case that stands for the proposition that parties are prohibited from deciding, on a bilateral basis, to resolve lower-value claims at lower costs, and Coinbase is aware of none.

In sum, Plaintiffs' scattershot attack on the Arbitration Clause fails because it relies heavily, and impermissibly, on terms outside the Arbitration Clause itself and because not one of the provisions Plaintiffs challenge—including those within the Arbitration Clause—is unconscionable standing alone. Lumping them together does not make the Arbitration Clause so unfair as to "shock the conscience," as the law requires for a finding of unconscionability.

## CONCLUSION

For the foregoing reasons, Coinbase's Motion should be granted.

Dated: December 15, 2022

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: /s/ *Randall S. Luskey*
Randall S. Luskey
Meredith R. Dearborn

Attorneys for Defendants
COINBASE GLOBAL, INC. AND COINBASE, INC.