**Cleary Gottlieb Steen & Hamilton LLP**
Heather S. Nyong'o (SBN 222202)
hnyongo@cgsh.com
Nowell Bamberger (Admitted *Pro Hac Vice*)
Samuel Levander (Admitted *Pro Hac Vice*)
Nicole Tatz (Admitted *Pro Hac Vice*)

650 California Street Suite 2000
San Francisco, CA 94108

[*additional addresses on signature page*]

Attorneys for Defendant
GMO-Z.COM TRUST
COMPANY, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

Kenneth Donovan, et al.,

Plaintiffs,

v.

GMO-Z.com Trust Company, Inc. et al.,

Defendants.

Case No. 3:22-cv-02826-TLT

**DEFENDANT GMO-Z.COM TRUST COMPANY, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Date: January 10, 2023
Time: 2:00pm
Courtroom: Courtroom 9
Before: Hon. Trina L. Thompson

# TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. GMO Trust Is Entitled To Compel Plaintiff Members Of The Coinbase Subclass To Arbitrate Their Claims. | 2 |
| A. Plaintiffs' Claims Against GMO Trust Rely On The Coinbase User Agreement. | 2 |
| B. Plaintiffs Allege Substantially Interdependent Conduct By Signatory Coinbase And Non-Signatory GMO Trust. | 6 |
| II. A Stay Will Prevent Piecemeal Litigation Across Multiple Forums And Conserve Judicial Resources. | 8 |
| A. A Stay Would Occasion No Irreparable Injury to Plaintiffs. | 9 |
| B. GMO Trust Would Face Significant Hardship If Forced To Litigate Similar Claims Across Two Different Fora | 11 |
| C. Judicial Efficiency Weighs In Favor Of Granting A Stay | 13 |
| CONCLUSION | 15 |

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Bao v. Page*,
No. 19-CV-00314-JSW, 2020 WL 1671556 (N.D. Cal. Feb. 5, 2020)................. 13

*Boucher v. All. Title Co.*,
25 Cal. Rptr. 3d 440 (Cal. Ct. App. 2005) ........................................................ 3

*Cesca Therapeutics Inc. v. SynGen Inc.*,
No. 2:14-cv-2085-TLN-KN, 2017 WL 1174062 (E.D. Cal. Mar. 30, 2017)........ 12

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*,
No. 8:19-cv-00642-JLS-JDE, 2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ........... 2, 7

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962)........................................................................ 8, 9, 11, 13

*Cohen v. Carreon*,
94 F. Supp. 2d 1112 (D. Or. 2000) ........................................................ 12

*CopyTele, Inc. v. AU Optronics Corp.*,
No. C-13-0380 EMC, 2013 WL 3458162 (N.D. Cal. July 9, 2013)..................... 11

*Erceg v. LendingClub Corp.*,
475 F. Supp. 3d 1071 (N.D. Cal. 2020) ........................................................ 9, 10

*Farber v. JPMorgan Chase Bank N.A.*,
No. 12-cv-2367-GPC-BGS, 2014 U.S. Dist. LEXIS 80530 (S.D. Cal. June 11, 2014) ........................................................................................ 9

*Forsyth v. HP Inc.*,
No. 5:16-cv-04775-EJD, 2018 WL 732722 (N.D. Cal. Feb. 6, 2018).................. 9, 11

*Fujian Pacific Electric Co. v. Bechtel Power Corp.*,
No. C-04-3126-MHP, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004) ................. 3

*Gabriella v. Recology Inc.*,
No. 21-CV-08460-HSG, 2022 WL 6271866 (N.D. Cal. Sept. 9, 2022)............... 14

*Garcia v. Stonehenge, Ltd.*,
No. C-97-4368-VRW, 1998 WL 118177 (N.D. Cal. Mar. 2, 1998)..................... 8

*Ginorio v. State Farm Mut. Auto. Ins.*,
No. 2:07-cv-01403-MCE-DAD, 2007 WL 2492400 (E.D. Cal. Aug. 30, 2007).. 11

*Grundstrom v. Wilco Life Ins. Co.*,
No. 20-cv-03445-MMC, 2020 WL 6873645 (N.D. Cal. Oct. 13, 2020) ............. 12

*In re A2P SMS Antitrust Litig.*,
972 F. Supp. 2d 465 (S.D.N.Y. 2013)............................................................. 5

*In re Apple & AT & TM Antitrust Litig.*,
826 F. Supp. 2d 1168 (N.D. Cal. 2011) ........................................................... 4

*In re Apple iPhone 3G Prods. Liab. Litig.*,
859 F. Supp. 2d 1084 (N.D. Cal. 2012) ........................................................... 4, 5

*In re Pac. Fertility Ctr. Litig.*,
814 F. App'x 206 (9th Cir. 2020) ..................................................................... 2

*In re Ring LLC Priv. Litig.*,
No. CV-19-10899-MWF, 2021 WL 4557222 (C.D. Cal. Sept. 3, 2021)............. 10

*Johnson v. Five Points Ctr.*,LLC,
No. 18-CV-05551-JSC, 2019 WL 3503045 (N.D. Cal. Aug. 1, 2019)................ 13

*Johnson v. Starbucks Corp.*,
No. 18-CV-06842-KAW, 2019 WL 3220273 (N.D. Cal. July 17, 2019)............ 9

*Kater v. Churchill Downs Inc.*,
No. C15-612RBL, 2019 WL 3944323 (W.D. Wash. Aug. 21, 2019) ................. 8

*Lamar Co., LLC v. Cont'l Cas. Co.*,
No. CV-05-320-AAM, 2007 WL 81876 (E.D. Wash. Jan. 8, 2007) ................... 9, 11

*Larsen v. City of Los Angeles*,
No. CV-12-04392 GAF (AJWx), 2012 WL 12887557 (C.D. Cal. Aug. 3, 2012) 14

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979)............................................................................. 13

*Mohamed v. Uber Techs. Inc.,*
115 F. Supp. 3d 1024 (N.D. Cal. 2015) ............................................................ 12

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983)............................................................................................. 8

*Moss v. BMO Harris Bank, N.A.*, 24 F. Supp. 3d 281 (E.D.N.Y 2014), *aff'd sub nom. Moss v. First Premier Bank*, 835 F.3d 260 (2d Cir. 2016) ........ 4-5

*Overland Storage, Inc. v. Spectra Logic Corp.*, Nos. 12-CV-1597-JLS (BLM), 2012 WL 12850201 (S.D. Cal. Dec. 11, 2012) .. 11

*Peri Formwork Sys., Inc. v. Los Angeles Cmty. Coll. Dist.*, No. 2:22-cv-00273-MCS-JC, 2022 WL 2189639 (C.D. Cal. Mar. 18, 2022) ...... 8

*Robledo v. Randstad US, L.P.*, No. 17-CV-01003-BLF, 2017 WL 4934205 (N.D. Cal. Nov. 1, 2017)................ 12

*STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, No. 2:18-cv-01269-JLS-JCG, 2019 WL 2417625 (C.D. Cal. Feb. 15, 2019) ...... 7

*Sunlight Prod. Techs. v. MPOWERD*, No. CV-15-126-MWF (JEM), 2015 WL 12655479 (C.D. Cal. Sept. 17, 2015) .. 14

*U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422 (9th Cir. 1985)........ 8, 14

*United States v. Howen*, No. 1-21-CV-00106-DAD-SAB, 2022 WL 1004832 (E.D. Cal. Apr. 4, 2022) ... 12

*Vance v. Google LLC*, No. 5:20-cv-04696-BLF, 2021 WL 534363 (N.D. Cal. Feb. 12, 2021) .............. 8, 10, 13

*Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204 (C.D. Cal. 2020)........ 7

*Winig v. Cingular Wireless LLC*, No. C-06-4297 MMC, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006).................. 10

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint, ECF No. 46 (the "AC"), is premised on allegations of interdependent conduct between Defendant GMO Trust[1] and Defendant Coinbase in the sale of the cryptocurrency GYEN on trading platforms such as the one operated by Coinbase. Five of the six claims against GMO Trust are also asserted against Coinbase, often on the basis of identical allegations. The sole exception is a claim under New York's General Business Law ("NYGBL") that names only GMO Trust because it – unlike Coinbase – is located and incorporated in New York and subject to New York law.

If the Court compels the claims against Coinbase to arbitration (and it should), it should also compel the claims against GMO Trust arising from the same transactions and events to be resolved in the same arbitral forum. Alternatively, the Court should stay the remaining claims against GMO Trust pending resolution of the crux of the Plaintiffs' claims in arbitration – an approach that will promote judicial efficiency and potentially streamline the issues left for resolution in this case and the parties to the case. This is particularly the case if, in the Court's view, there is an arguable dispute as to whether the claims at issue in this case actually are subject to arbitration but that issue has been delegated to the arbitrator. In that scenario, it would make little sense for some claims in this forum to proceed before, at least, an arbitrator has determined which claims should proceed in arbitration.

For the reasons set forth in GMO Trust's Motion to Compel Arbitration, ECF No. 59 ("Mot."), and further below, the Court should grant GMO Trust's motion to compel arbitration of the Coinbase Subclass' claims against GMO Trust and exercise its discretion to stay any remaining non-arbitrable claims. Those Plaintiffs' claims against GMO Trust should go to arbitration for two reasons: *First,* Plaintiffs' claims against both Coinbase and GMO Trust arise from purchases of GYEN on Coinbase – the secondary trading platform on which they alleged the relevant price displacement occurred – and Plaintiffs do not dispute that these transactions were conducted pursuant to and therefore in reliance on the Coinbase User Agreement that governed

[1] Capitalized terms not otherwise defined here shall have the meaning given to them in GMO Trust's Motion to Dismiss. ECF No. 57.

those transactions. *Second*, Plaintiffs allege that GMO Trust and Coinbase engaged in interdependent conduct that is bound up with the Coinbase User Agreement. In the alternative, should the Court deny GMO Trust's motion, the Court should stay all remaining claims against GMO Trust pending Plaintiffs' arbitration with Coinbase.

## ARGUMENT

### I. GMO Trust Is Entitled To Compel Plaintiff Members Of The Coinbase Subclass To Arbitrate Their Claims.

The Court should compel arbitration of the Coinbase Subclass' claims against GMO Trust under the doctrine of equitable estoppel. Non-signatories may invoke the doctrine of equitable estoppel under two circumstances – "reliance" and "substantial interdependence," *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, Case No. 8:19-cv-00642-JLS-JDE, 2020 WL 620294, at *5-8 (C.D. Cal. Jan. 9, 2020) – both of which are applicable here.

#### A. Plaintiffs' Claims Against GMO Trust Rely On The Coinbase User Agreement.

Plaintiffs argue that the reliance prong is inapplicable here because (i) the Complaint does not reference the Coinbase User Agreement, (ii) the Coinbase Subclass does not assert claims against GMO Trust, and (iii) Plaintiffs' claims against GMO Trust do not rely on the terms of the Coinbase User Agreement. All three arguments are unavailing.

*First*, Plaintiffs cite no case that supports their argument that a complaint must explicitly reference an agreement with an arbitration clause for the reliance element to be satisfied. *See* Plaintiffs' Opposition to GMO Trust's Motion to Compel Arbitration, ECF No. 67 ("Opp.") at 5.[2] In fact, Ninth Circuit law forecloses such a requirement. *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020) (granting non-signatories' motion to compel arbitration "[e]ven though Plaintiffs do not mention the [contract containing the arbitration clause]" because the

[2] In the sole case cited by Plaintiffs – *Chartwell*, 2020 WL 620294, at *5 – the court granted defendants' motion to compel arbitration based in part on a reliance theory. The court held that the relevant query was whether plaintiffs' claims were "founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause," not whether that agreement was explicitly referenced in the complaint. *Id.* at *7.

claims against non-signatories "are founded in and inextricably intertwined with the terms and obligations" of the contract).

*Second*, Plaintiffs mischaracterize their own Complaint by arguing that the Coinbase Subclass does not assert any claims against GMO Trust. Opp. at 5-6. But the Complaint makes clear that every member of the Coinbase Subclass – including named Plaintiffs Kassfy and Brambl – is a putative member of the class asserting claims against GMO Trust. *See, e.g.*, AC ¶ 75. And the Plaintiffs again cite no case law that lends support to the novel theory that a party can escape arbitration where only certain plaintiffs rely on an agreement with an arbitration clause. Plaintiffs cite only to *Fujian Pacific Electric Co. v. Bechtel Power Corp.*, No. C-04-3126-MHP, 2004 WL 2645974, at *5 (N.D. Cal. Nov. 19, 2004), a case with a single plaintiff where the court granted defendant's motion to compel on an equitable estoppel theory because plaintiff's claims directly related to contracts with arbitration clauses. *Id.* at *7.

*Third*, Plaintiffs mischaracterize the law and record to argue that their claims do not rely on the Coinbase User Agreement. Opp. at 6-8. Plaintiffs' claims against GMO Trust are subject to arbitration because Plaintiffs "rely on the terms of the written agreement [containing the arbitration clause] in asserting its claims against" it. *Fujian Pac.*, 2004 WL 2645974, at *5 (citation omitted); *see also Boucher v. All. Title Co.*, 25 Cal. Rptr. 3d 440, 446 (Cal. Ct. App. 2005) ("By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement."). Specifically, the Coinbase Subclass Plaintiffs rely upon the Coinbase User Agreement in asserting their claims against GMO Trust by requesting that a subclass asserting claims against GMO Trust be defined by reference to their transactions of GYEN on the Coinbase platform. *See* AC ¶ 75 ("Plaintiffs seek certification of the following subclass: Coinbase Subclass: All members of the Class whose transactions of GYEN were conducted through Coinbase.").[3] As GMO Trust set out in its Motion to Compel, courts in this

[3] Coinbase users are required to accept the Coinbase User Agreement when they create a Coinbase account. *See* Coinbase's Motion to Compel Arbitration, ECF No. 51 at 2. Plaintiffs'

Circuit have recognized that defining a class or subclass on the basis of an agreement that contains an arbitration clause constitutes "reliance" on that agreement. *See* Mot. at 3-4 (discussing *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1178-79 (N.D. Cal. 2011) and *In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084, 1096 (N.D. Cal. 2012) (the "*Apple*" cases)).

In their opposition, Plaintiffs wrongly contend the *Apple* cases (cited above) "do not support such a proposition" and are "wholly inapposite." Opp. at 7. *First*, Plaintiffs contend that the claims in the *Apple* cases "were brought on behalf of a single class" and therefore "the contract-specific class actually asserted claims against the non-signatory defendant (Apple)." *Id.* But the Class as a whole asserts claims against GMO Trust, and all of the Coinbase Subclass members are members of the Class – so they assert claims against GMO Trust too. *See* AC ¶ 75. And the *Apple* cases lend no support to Plaintiffs' argument that the "contract-specific class" must assert a claim against the non-signatory defendant – there was no "contract-specific class" in these cases.

*Second*, Plaintiffs contend that the class definitions in the *Apple* cases were "premised <u>expressly</u> on class members having entered into a service contract" containing the arbitration clause. Opp. at 7 (emphasis in original). But the *Apple* cases did not turn on this issue, and courts that have considered this argument have rejected it. In *Moss v. BMO Harris Bank, N.A.*, even though the prospective class did not "expressly" identify the relevant contractual agreements in the class definition,[4] the court found that the doctrine of equitable estoppel applied and the signatory's claims "ar[o]se from the same subject matter" as the contractual agreements "in no small part because the putative class '[wa]s premised upon the relationships entered into through the . . . Agreement and is a status only conferred to those who have assented to the terms of that

---

proposed Coinbase Subclass is thus defined to include members of the Class who entered into a User Agreement with Coinbase, which contains an arbitration provision. *Id.* at 4-5.

[4] *Moss*, 24 F. Supp. 3d at 283 (defining class as "[a]ll natural persons within the state of New York whose accounts were debited via an ACH entry originated by either BMO Harris Bank, N.A., First Premier Bank, or Bay Cities Bank as an ODFI on behalf of an Illegal Online Payday Lender in repayment of a loan which was illegal under New York law").

agreement.'" 24 F. Supp. 3d 281, 289 (E.D.N.Y. 2014), *aff'd sub nom. Moss v. First Premier Bank*, 835 F.3d 260 (2d Cir. 2016) (citation omitted); *see also In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 477 (S.D.N.Y. 2013) (explaining that where putative class was defined as "a status only conferred to those who have assented to the terms of that agreement[,]" "[t]hese factual allegations, alone, indicate that the claims premised upon these same facts 'arise from the subject matter'" of the contract containing the arbitration clause) (citation omitted).

*Third*, Plaintiffs contend that in the *Apple* cases, unlike this case, the "crux of plaintiffs' allegations relied on the AT&T service contracts." Opp. at 7. But the same is true here. Plaintiffs' complaint alleges that GMO Trust misrepresented that the GYEN would remain equal in value to the JPY when "first made available for purchase on third-party exchanges." AC ¶ 37. In *In re Apple iPhone 3G Prods. Liab. Litig.*, plaintiff subscribers brought suit against AT&T Mobile ("ATTM"), the service provider for cellular service, and the iPhone manufacturer Apple. 859 F. Supp. 2d at 1094–95. The court accepted Apple's argument that plaintiffs' "core allegation" was that "the 3G network could not accommodate iPhone 3G users, and that [p]laintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network." *Id.* at 1093-94. Here, Plaintiffs' "core allegation" is that there was an "insufficient supply of minted GYEN to meet demand" specifically on third-party exchange platforms such as Coinbase,[5] and plaintiffs were "deceived" into purchasing GYEN.[6] The "crux" of these Plaintiffs' allegations thus relies on the Coinbase User Agreement.

Additionally, Plaintiffs assert that their claims against "GMO Trust for negligence, negligent misrepresentation, and statutory violations" do not "rely on or have anything to do with Coinbase's actions or the Coinbase User Agreement." Opp. at 6. Not so. Unlike the "string of automobile warranty cases" to which Plaintiffs inaptly attempt to analogize, *see* Opp. at 6-7, Plaintiffs' claims are premised upon alleged misrepresentations,[7] and nearly every single alleged

[5] *See, e.g.*, AC ¶¶ 2-7, 37, 39, 45-54, 56-57, 85.
[6] *See, e.g.*, AC ¶¶ 8-9, 37-39, 58-59.
[7] *See, e.g.,* AC ¶ 94(f) (negligence); ¶ 116-18 (negligent misrepresentation); ¶ 134 (violation of NYGBL § 349); ¶¶ 168, 172-173 (violation of § 12(a)(2) of the Securities Act).

misrepresentation or omission is expressly tied to Plaintiffs' own trading on third-party trading platforms.[8] And the only third-party trading platform mentioned in the AC is Coinbase. The AC does not contain a single reference to any other means of purchase.

### B. Plaintiffs Allege Substantially Interdependent Conduct By Signatory Coinbase And Non-Signatory GMO Trust.

Plaintiffs' opposition contends that GMO Trust "fails to cite any allegations of substantially interdependent misconduct between it and Coinbase." Opp. at 1 (emphasis in original). To the contrary, GMO Trust identified at least six separate allegations of substantial interdependent misconduct asserted by Plaintiffs in the AC:

- ¶ 4 (alleging "GMO Trust's partnership with Coinbase allowed GMO Trust to issue GYEN tokens to more investors and generated commissions for GMO Trust and Coinbase to share").
- ¶ 5 (alleging "Coinbase mimicked GMO Trust's claims").
- ¶ 8 (alleging GMO Trust and Coinbase "both contributed to the debacle as both deceived investors regarding the nature of the asset").
- ¶ 55 (alleging investors "found both GMO Trust and Coinbase unresponsive and indifferent").
- ¶ 57 (alleging "[t]he CEO of GMO Trust directly discussed the event with investors and potential exchange partners, including Coinbase").
- ¶ 58 (alleging "Coinbase parroted the claims of GMO Trust").

*See* Mot. at 5. Plaintiffs have no response to five of these six paragraphs. As to the sixth, Plaintiffs assert that the allegation that GMO Trust and Coinbase "each insinuat[ed] that the other

---

8 *See* AC ¶ 37 (contending that GMO Trust omitted from its disclosures: "the value of GYEN was subject to fluctuations completely independent of the Japanese yen *when traded on third-party exchange platforms*";"[a]n insufficient supply of minted GYEN to meet demand for the asset subjected to asset to low liquidity, *particularly when it was first made available for purchase on third-party exchanges*"; "[w]hen the asset's low liquidity coincided with a period of high demand, such as *when it was initially promoted and introduced on a third-party exchange*, its value was prone to rise relative to the Japanese yen such that it became 'unpegged'") (emphasis added).

was responsible for the collapse," AC ¶ 8, "undermines GMO Trust's position that Plaintiffs alleged a 'single scheme to achieve a single aim,'" Opp. at 8. Plaintiffs selectively omit the following sentence of the AC, which alleges interdependent conduct: "In truth, *both* contributed to the debacle as *both* deceived investors regarding the nature" of the GYEN. AC ¶ 8 (emphasis added).

Moreover, this prong does not require allegations of substantial *identical* conduct, it requires allegations of substantial *interdependent* conduct. *See, e.g., STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, Case No. 2:18-cv-01269-JLS-JCG, 2019 WL 2417625, at *6 (C.D. Cal. Feb. 15, 2019) (granting motion to compel arbitration where the alleged actions of non-signatory defendant Dong Yin in furtherance of the conspiracy, lying and playing a shell game, were not identical to those of signatory defendant Bronzelink, entering into the shareholder agreement); *Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1217 (C.D. Cal. 2020) (granting unopposed motion to compel arbitration where plaintiff had alleged "collusive behavior by Defendants," and where claims against the plaintiff's direct manager were "inextricably intertwined with the" arbitrable claims against the employer, even though only the supervisor actually sexually harassed plaintiff, and not the signatory employer).

Here, the "substantially interdependent misconduct" alleged by Plaintiffs is "inextricably bound up with" the Coinbase User Agreement. The interdependent misconduct prong "casts a wider net by allowing a non-signatory defendant to invoke equitable estoppel where the claims against it are 'inextricably bound up with[ ] the terms or duties of the agreement containing the arbitration clause,' *even if they do not flow directly from the plaintiff's explicit assertion of contractual rights*." *Chartwell*, 2020 WL 620294, at *7 (emphasis added) (citation omitted). As Plaintiffs Kassfy, Hussein, and Donovan themselves take pains to explain, "This case centers on the sale of . . . the 'GYEN,' issued and sold by Defendant GMO Trust *and traded on cryptocurrency exchanges*, including the one operated by Defendant Coinbase." Plaintiffs' Motion for Appointment as Lead Plaintiffs, ECF No. 33 at 7 (emphasis added).

## II. A Stay Will Prevent Piecemeal Litigation Across Multiple Fora And Conserve Judicial Resources.

To the extent that the Court does not compel the claims against GMO Trust to arbitration, these claims should be stayed. Courts have considerable discretion to grant a motion to stay pending arbitration, *cf. CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962), and "[t]he primary consideration for a stay of non-arbitrable claims is judicial economy." *Peri Formwork Sys., Inc. v. Los Angeles Cmty. Coll. Dist.*, Case No. 2:22-cv-00273-MCS-JC, 2022 WL 2189639, at *3 (C.D. Cal. Mar. 18, 2022). "Courts generally grant motions to stay where the plaintiff's claims against a non-signatory defendant are intertwined with their arbitrable claims against another defendant." *Kater v. Churchill Downs Inc.*, Case No. C15-612RBL, 2019 WL 3944323, at *2 (W.D. Wash. Aug. 21, 2019). In such instances, "it would be unwise to resolve these claims in two different forums." *See Garcia v. Stonehenge, Ltd.*, No. C-97-4368-VRW, 1998 WL 118177, at *5 (N.D. Cal. Mar. 2, 1998); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("[I]t may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration."); *Vance v. Google LLC*, Case No. 5:20-cv-04696-BLF, 2021 WL 534363, at *6 (N.D. Cal. Feb. 12, 2021).

If the crux of the Plaintiffs' claims are compelled to arbitration pursuant to the parties' agreement, it only makes sense for that arbitration to be permitted to run its course before overlapping and interrelated claims against GMO Trust proceed in this Court. Contrary to Plaintiffs' suggestion that there should be a preference for litigation claims, Opp. at 10, the Ninth Circuit has explained that "it [is] up to the district judge to determine which of the two claims should be first handled" based on the court's own "prefer[ence]." *U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985). In exercising that discretion, courts are guided by three principles: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a

stay." *CMAX*, 300 F.2d at 268. Here, all three factors weigh in favor of granting a stay as to any claims against GMO Trust that are not compelled to arbitration.

**A. A Stay Would Occasion No Irreparable Injury to Plaintiffs.**

Plaintiffs do not and cannot demonstrate a "fair possibility that a stay of the district court proceeding will result in irreparable injury and a miscarriage of justice." *Id*. In their opposition, Plaintiffs contend that they would be prejudiced by a stay "as it would delay their ability to conduct discovery and bring about efficient prosecution of their claims against GMO Trust." Opp. at 13. They further claim that "[t]his hardship is particularly acute with respect to Plaintiff Donovan" who is "not a signatory to the Coinbase User Agreement and has no claims against Coinbase." *Id.* Both arguments are without merit.

*First*, mere possibility of delay does not constitute "damage" for purposes of the first factor. Courts routinely stay proceedings where plaintiffs' only asserted "damage" is potential delay. *See, e.g.*, *CMAX*, 300 F.2d at 268-69 (finding delay in obtaining relief insufficient to show irreparable injury or a miscarriage of justice); *Johnson v. Starbucks Corp.*, Case No. 18-CV-06842-KAW, 2019 WL 3220273, at *2 (N.D. Cal. July 17, 2019) ("Delay alone is typically insufficient where there is no showing of irreparable damage or injury."); *Lamar Co., LLC v. Cont'l Cas. Co.*, No. CV-05-320-AAM, 2007 WL 81876, at *3 (E.D. Wash. Jan. 8, 2007) (rejecting non-movant's argument that he would be "seriously prejudiced" if claims "were allowed to linger unresolved for months or years"); *Forsyth v. HP Inc.,* Case No. 5:16-cv-04775-EJD, 2018 WL 732722, at *7 (N.D. Cal. Feb. 6, 2018) (rejecting Plaintiffs' "time sensitivity concerns"); *Farber v. JPMorgan Chase Bank N.A.*, Case No. 12-cv-2367-GPC-BGS, 2014 U.S. Dist. LEXIS 80530, at *3 (S.D. Cal. June 11, 2014) (holding that plaintiffs would face "no damage or hardship . . . as the case is still in its early stages"); *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1076 (N.D. Cal. 2020) ("While a stay will cause some delay, that delay will not be unfairly prejudicial."). Plaintiffs acknowledge that "the case is in its earliest stages," Plaintiffs' Motion for Leave to Amend Complaint, ECF No. 64 at 3, and have sought "to defer further briefing on the motions to dismiss" so as to amend their complaint for a second time,

Order Regarding Briefing Schedule, ECF No. 65 at 1. Having waited more than six months after bringing this case to file their latest operative complaint, Plaintiffs cannot seriously contend that they would be prejudiced by whatever reasonable delay may follow if the Court grants a stay.

Plaintiffs' argument that "critical evidence could be lost if the proceedings are stayed" because of "employee turnover," Opp. at 14, is pure speculation. Courts routinely reject abstract concerns regarding the preservation of evidence based on the parties' assurances that evidence will be preserved. *See Winig v. Cingular Wireless LLC*, No. C-06-4297 MMC, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006) (assurance that defendant would agree to preserve evidence satisfactory to assuage speculative evidence preservation concerns); *Erceg*, 475 F. Supp. 3d at 1076 (litigation hold sufficient to preserve evidence); *Vance*, 2021 WL 534363, at *5 ("[defendant]'s assurances of evidence preservation are sufficient"). Even in *In re Ring LLC Priv. Litig.*, cited by Plaintiffs, the court rejected the very argument that Plaintiffs seek to advance here that "critical evidence could be lost if the proceedings are stayed" because the plaintiffs did "not point[] to any specific pieces of evidence that they risk losing as a result of the stay." Case No. CV-19-10899-MWF, 2021 WL 4557222, at *4 (C.D. Cal. Sept. 3, 2021). Here, Defendant GMO Trust is subject to an ongoing litigation hold and has represented to the Court that it "will treat all documents in [its] custody or control relevant to the allegations in the complaint as though they were subject to a continuing request for production under the Federal Rules of Civil Procedure." Joint Case Management Statement, ECF No. 60 at 8. Plaintiffs do not and cannot assert any specific concrete concern regarding GMO Trust's document preservation, and would not be prejudiced by a stay from raising any such concerns it may later have.

*Second*, Plaintiffs' contention that there is some additional prejudice to Plaintiff Donovan if the case is stayed is unpersuasive. Donovan has chosen to bring a claim purporting to represent a Class that is comprised in part of people who purchased GYEN on Coinbase and whose claims are subject to arbitration. *See* AC ¶ 73. That Donovan himself may be subject to unique defenses that may ultimately preclude him from representing the class he purports to sue for (or at least a large part of it) is irrelevant at this stage. Having brought his claims in a putative representative

capacity, Donovan cannot be heard to complain that doing so causes him inconvenience. Indeed, any impact on Donovan's ability to proceed with his own claim "is at least in part a problem of [the Plaintiffs'] own making: Plaintiffs voluntarily chose to bring this lawsuit as a mixed group—some who had signed an [agreement] agreeing to arbitration and some who had not." *Forsyth*, 2018 WL 732722, at *7. And notably, all three plaintiffs (including Donovan) argue elsewhere that "it would be beneficial to the case for all of them to proceed jointly." ECF No. 33 at 15.

**B. GMO Trust Would Face Significant Hardship If Forced To Litigate Similar Claims Across Two Different For a.**

In contrast, it is clear that Defendants, including GMO Trust, would suffer "hardship or inequity… in being required to go forward." *CMAX*, 300 F.2d at 268.

*First*, and notably, "a party seeking a stay must show hardship only if the party opposing the stay first demonstrates that it is a fair possibility that the stay will cause it injury." *CopyTele, Inc. v. AU Optronics Corp.*, No. C-13-0380 EMC, 2013 WL 3458162, at *2 (N.D. Cal. July 9, 2013); *see also Overland Storage, Inc. v. Spectra Logic Corp.*, Case Nos. 12-CV-1597-JLS (BLM), 2012 WL 12850201, at *5 (S.D. Cal. Dec. 11, 2012) ("Defendants are only required to 'make out a clear case of hardship' if there is a 'fair possibility that the stay . . . will work damage to someone else.'"); *Lamar*, 2007 WL 81876, at *3 (because the court was not persuaded that there was a "fair possibility" the non-moving party would be harmed, "it [was] not necessary for Lamar or Continental to demonstrate a 'clear case of hardship or inequity'"). Plaintiffs have made no such showing here.

*Second*, as fully explained in its opening brief, permitting these claims to proceed would require GMO Trust to "expend unnecessary resources on duplicative litigation that will involve nearly identical evidence to prove overlapping claims." Mot. at 7-8 (citing *RB Prods., Inc. v. Ryze Cap., LLC*, No. 3:19-cv-00105-MMD-WGC, 2019 WL 5722205, at *3 (D. Nev. Nov. 4, 2019)); *see also Ginorio v. State Farm Mut. Auto. Ins.*, No. 2:07-cv-01403-MCE-DAD, 2007 WL 2492400, at *3 (E.D. Cal. Aug. 30, 2007) (granting motion to stay pending arbitration, noting that should litigation continue, "both the Court and the litigants may unnecessarily expend time and

resources determining factual matters that stand to be clarified through arbitration").[9] In particular, GMO Trust may incur unnecessary and burdensome discovery expenses should the claims continue in court.

*Third,* while Plaintiffs argue that "courts across the board have concluded that litigation expenses do not amount to a hardship warranting a stay," Opp. at 11, "'[w]hen the opponent does not adduce evidence that it will be harmed by a stay[,] ... courts have considered the moving party's burden in litigating the case to be a legitimate form of hardship.'" *Grundstrom v. Wilco Life Ins. Co.*, Case No. 20-cv-03445-MMC, 2020 WL 6873645, at *3 (N.D. Cal. Oct. 13, 2020) (citation omitted); *United States v. Howen*, No. 1-21-CV-00106-DAD-SAB, 2022 WL 1004832, at *4 (E.D. Cal. Apr. 4, 2022) (same). Moreover, all three cases Plaintiffs cite address the wrong standard, the more stringent "irreparable injury" factor for a stay pending an appeal, rather than the hardship factor for a stay pending arbitration. *See Robledo v. Randstad US, L.P.*, Case No. 17-CV-01003-BLF, 2017 WL 4934205, at *4 (N.D. Cal. Nov. 1, 2017) ("As this Court has recently clarified, whether to grant a stay pending an appeal in the same action is analyzed under a different legal standard than whether to grant a stay pending the resolution of a separate action that bears upon the case."); *see also* Opp. at 11 (citing *In re Ring LLC*, 2021 WL 4557222, at *4 (evaluating irreparable injury in context of stay pending appeal); *Cesca Therapeutics Inc. v. SynGen Inc.*, No. 2:14-cv-2085-TLN-KN, 2017 WL 1174062, at *4 (E.D. Cal. Mar. 30, 2017) (same); *Mohamed v. Uber Techs. Inc.*, 115 F. Supp. 3d 1024, 1032-33 (N.D. Cal. 2015) (same)). Courts applying the standard for a stay pending arbitration find that wasting litigants' resources is a valid hardship. *See, e.g., Cohen v. Carreon*, 94 F. Supp. 2d 1112, 1118–19 (D. Or. 2000) (noting that defendants' concern "that they would be required to waste time and money needlessly litigating the same substantive and procedural issues as they did in the California action" was valid, and relying on that conclusion in part in granting a stay).

---

[9] In their opposition, Plaintiffs respond that their "theories of liability against GMO Trust are distinct from those alleged against Coinbase," Opp. at 11, despite the fact that the majority of their claims are alleged against all Defendants and that they assert thirteen "questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members." *See* AC ¶ 81.

**C. Judicial Efficiency Weighs In Favor Of Granting A Stay.**

Judicial economy "is the primary basis courts consider when ruling on motions to stay." *Vance*, 2021 WL 534363, at *6. This factor focuses on "the orderly course of justice"; that is, whether granting a stay would "simplify[] or complicate[] issues, proof, and questions of law." *CMAX*, 300 F.2d at 268. Here, a stay would plainly simplify, rather than complicate, the central factual and legal issues in this case. *See* Mot. at 6-8.[10] Plaintiffs' three principal challenges to this factor fail by any measure.

*First*, Plaintiffs' repeated refrain that their claims against GMO Trust "are based on different theories of liability, and involve different legal issues and factual disputes," Opp. at 11, falls flat. Plaintiffs' claims against GMO Trust and Coinbase substantially overlap and allege several common issues of law and fact. *See supra* at 6-7.

As a practical matter, any parallel litigation and arbitration will likely require overlapping fact and expert discovery and depositions. For example, the parties might seek to introduce cryptocurrency market and trading experts to testify in both the litigation and arbitration. Additionally, as Plaintiffs allege that their "harm" was "compounded" by the action of Coinbase "restricting its customers' ability to trade GYEN" and "suspending all trading," AC ¶¶ 7, 49, should litigation and arbitration advance in parallel, there is a risk of double recovery.

*Second*, Plaintiffs' argument that rulings in arbitration will not be preclusive in future litigation, *see* Opp. at 12, is misdirected and irrelevant. Even if rulings in arbitration do not give rise to issue preclusion when the same issue arises in federal litigation, binding arbitration will resolve the rights and obligations of the parties who are parties to the arbitration. The fact of that

[10] Plaintiffs attempt to draw the Court's attention away from these efficiencies by highlighting their belated decision to bring additional claims that they contend are not subject to arbitration. *See* Plaintiffs' Opp. to Coinbase's Motion to Compel Arbitration, ECF No. 68 at 12-14. However, Plaintiffs are simply wrong that the presence of additional non-arbitrable claims requires a court to bisect the various proceedings on parallel tracks. Rather, courts routinely stay proceedings involving additional non-arbitrable claims. *See, e.g., Bao v. Page*, No. 19-CV-00314-JSW, 2020 WL 1671556, at *2 (N.D. Cal. Feb. 5, 2020) (staying federal action in favor of parallel state proceeding despite federal securities claims being exclusively brought in stayed federal proceedings); *Johnson v. Five Points Ctr.*, LLC, No. 18-CV-05551-JSC, 2019 WL 3503045, at *1 (N.D. Cal. Aug. 1, 2019) (staying action on efficiency grounds despite action containing additional claims not at issue in parallel proceeding).

resolution – *e.g.*, that Coinbase is or is not ordered to compensate Plaintiffs and how much – may well bear on Plaintiffs' ability to show injury and other issues relevant to this litigation. In any event, the Ninth Circuit has recognized that a stay in favor of parallel proceedings is often appropriate even if those proceedings would not be preclusive. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (explaining the rule permitting a trial court to stay an action pending resolution of independent proceedings applies regardless of "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court"); *Larsen v. City of Los Angeles*, No. CV-12-04392 GAF (AJWx), 2012 WL 12887557, at *11 (C.D. Cal. Aug. 3, 2012) ("[E]ven if the other proceedings do not control the outcome in the action before the court, a stay may be appropriate.") (citation omitted); *Sunlight Prod. Techs. v. MPOWERD*, Case No. CV-15-126-MWF (JEM), 2015 WL 12655479, at *6 (C.D. Cal. Sept. 17, 2015) ("[T]he district court has discretion to stay proceedings even when the outcome of the arbitration is not necessarily controlling of the action before the court.").

*Third*, Plaintiffs' assertion that "litigation of the non-arbitrable claims is inevitable," Opp. at 12, misses the point entirely. The question before this Court is not whether arbitration will obviate the need for litigation by eliminating all outstanding issues; rather, the fundamental question is whether giving arbitration a chance to proceed first advances future litigation. *See U.S. for Use & Benefit of Newton,* 750 F.2d at 1427 ("[I]t [is] up to the district judge to determine which of the two claims should be *first* handled") (emphasis added). The answer to that question is clearly "yes." In addition to addressing the common legal issues presented by Plaintiffs' own complaint, arbitration may potentially help streamline the case, narrow the issues ultimately left for this Court to decide, or point the way to a resolution without court intervention. *See Gabriella v. Recology Inc.*, No. 21-CV-08460-HSG, 2022 WL 6271866, at *5 (N.D. Cal. Sept. 9, 2022) (staying non-arbitrable claim because "allowing the arbitration to proceed first could streamline the case and ultimately conserve the parties' and Court's resources").

As all three factors weigh in favor of granting a stay, the Court should exercise its discretion to stay any claims against GMO Trust not compelled to arbitration.

**CONCLUSION**

For the foregoing reasons, Defendant GMO Trust requests that the Court compel arbitration of the claims by the Coinbase Subclass against GMO Trust, and stay any remaining non-arbitrable claims.

Dated: December 15, 2022

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Heather S. Nyong'o*
Heather S. Nyong'o (SBN 222202)
hnyongo@cgsh.com
650 California Street Suite 2000
San Francisco, CA 94108

Nowell Bamberger (Admitted *Pro Hac Vice*)
Nicole Tatz (Admitted *Pro Hac Vice*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037

Samuel Levander (Admitted *Pro Hac Vice*)
One Liberty Plaza
New York, NY 10006

Attorneys for Defendant
GMO-Z.COM TRUST COMPANY, INC.