United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENNETH DONOVAN, et al.,

Plaintiffs,

v.

COINBASE GLOBAL, INC., et al.,

Defendants.

Case No. 22-cv-02826-TLT

**ORDER REGARDING MOTIONS TO COMPEL ARBITRATION**

Re: ECF No. 51, 59

Before the Court is defendants Coinbase Global, Inc. and Coinbase, Inc.'s (collectively "Coinbase") motion to compel arbitration and to stay the action filed by plaintiffs Kenneth Donovan, Hussien Kassfy, and John Brambl. Coinbase's Mot. to Compel ("Coinbase's Mot."), ECF No. 51. Defendant GMO Trust Company, Inc. ("GMO") filed a separate motion to compel arbitration and stay proceedings. GMO's Mot. to Compel ("GMO's Mot."), ECF No. 59.

In its discretion, the Court finds this motion suitable for determination without oral argument. Civ. L.R. 7-1(b). Having carefully considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court **GRANTS** Coinbase's motion to compel arbitration (ECF No. 51) and **DENIES** GMO's motion to compel arbitration (ECF No. 59). Accordingly, the hearings scheduled for January 10, 2023, are **VACATED**.

## I. BACKGROUND

Coinbase operates a currency exchange, which allows users to buy and trade various forms of cryptocurrency. Coinbase's Mot. 2; Decl. of Suellen Black ("Black Decl.") ¶ 3, ECF No. 54. Cryptocurrency is a decentralized, digital representation of value secured through cryptography. Currency exchange platforms like Coinbase facilitate investment by allowing account holders to

United States District Court
Northern District of California

store their cryptocurrency in digital wallets. Coinbase's Mot. 2; Black Decl. ¶ 2. To use its "services and make cryptocurrency transactions, prospective users are first required to create an account and accept the Coinbase User Agreement." Coinbase's Mot. 2; Black Decl. ¶¶ 5, 7.

Plaintiffs Hussien Kassfy and John Brambl (the "Coinbase Plaintiffs") [1] are investors in digital assets and are customers of Coinbase. Pl. ['s] Opp'n to Coinbase's Mot. ("Opp'n") 2, ECF No. 68. The Coinbase Plaintiffs allege that since they "created their accounts, the User Agreement has been unilaterally modified more than 20 times." Opp'n 2; Decl. of Julie C. Erickson ("Erickson Decl.") ¶ 2, ECF No. 68-1. The Coinbase Plaintiffs claim that an updated user agreement was implemented in January 2022 (the "User Agreement") and that "[u]nless and until the Coinbase Plaintiffs accepted the updated User Agreement, they could not login to, view, or access their Coinbase accounts, even though they held property in those accounts." Opp'n 2; *see also* Decl. of Hamzah Zia ("Zia Decl.") ¶ 6, Exs. G-H, ECF No. 55.

The User Agreement contains an arbitration agreement. Coinbase's Mot. 4; Black Decl., Ex. F, Appendix 5. Specifically, section 1.1 of the arbitration agreement states:

> "Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any product sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a 'Dispute') will be resolved by binding arbitration, rather than in court . . . ." *Id.* at § 1.1.

The Coinbase Plaintiffs do not dispute that they agreed to the User Agreement, nor do they contest that that it contains an arbitration and a delegation clause. *See* Opp'n 2; *see also* Coinbase's Mot. 1-2. Instead, the Coinbase Plaintiffs claim that the Court should deny Coinbase's motion to compel arbitration because, (1) the arbitration provision in the User Agreement is unconscionable and thus unenforceable, and (2) the delegation clause is inapplicable and unconscionable. *See* Opp'n 2-22.

[1] Plaintiff Kenneth Donovan does not allege any claims against Coinbase.

Coinbase argues that because the User Agreement "expressly delegates 'gateway' arbitration questions to the arbitrator—including questions about the enforceability, scope, and interpretation of the arbitration agreement itself—this Court need not evaluate the agreement's validity or whether its arbitration clause encompasses [the Coinbase] Plaintiffs' claims against Coinbase." Coinbase's Mot. 5, 7; *see also* Black Decl., Ex. F, Appendix 5, § 1.6.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq*. Under the FAA, a district court determines, (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

"To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

"[A]rbitration is fundamentally a matter of contract." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). "[G]ateway issues of arbitrability presumptively are reserved for the court." *Id.* at 987. Even though judicial resolution, not arbitration, is the presumptive forum for disputes about arbitrability, "parties may agree to delegate them to the arbitrator." *Id.* "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

///



United States District Court
Northern District of California

United States District Court
Northern District of California

## III. DISCUSSION

As discussed above, the Coinbase Plaintiffs do not dispute they agreed to User Agreement, nor do they contest that that it contains an arbitration and a delegation clause. Thus, the question before the Court is whether there is clear and unmistakable evidence that the parties delegated arbitrability questions to the arbitrator. Since arbitrability must be determined first, the Court does not reach the issue of whether the arbitration agreement as a whole is unconscionable.

### A. The Delegation Clause Is Clear and Unmistakable

Here, the User Agreement contains a delegation clause that delegates questions of arbitrability to the arbitrator:

> The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . ..

Coinbase's Mot. 5; Black Decl., Ex. F, Appendix 5, § 1.6. A delegation clause, which is "an agreement to arbitrate threshold issues concerning the arbitration agreement," constitutes clear and unmistakable evidence of an intent to delegate. *Momot*, 652 F.3d at 988 (*quoting Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

In addition, the User Agreement incorporates the American Arbitration Association ("AAA") rules. *See* Coinbase's Mot. 10; Black Decl., Ex. F, Appendix 5, § 1.4. The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." Coinbase's Mot. 10. Incorporation of arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("[I]ncorporation of the American Arbitration Association's arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

When arbitrability is clearly and unmistakably delegated to the arbitrator, a court must enforce that delegation "in the absence of some other generally applicable contract defense, such

as fraud, duress, or unconscionability." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). Therefore, unless the Court finds that the delegation clause is unconscionable, as Coinbase Plaintiffs contend, or "in the absence of some other generally applicable contract defense, such as fraud [or] duress," the Court must enforce the delegation clause. *Id.* The party resisting arbitration bears the burden of demonstrating unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246–47 (2012).

**B. Unconscionability**

A party seeking to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (*citing Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000)). However, "[a] sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 178 (2015). When evaluating procedural unconscionability, courts focus on oppression or surprise that results from unequal bargaining power. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013). When evaluating substantive unconscionability, courts are more concerned with overly harsh or one-sided results. *Id.* The Court will address whether the delegation clause in the User Agreement is procedurally and substantively unconscionable.

**1. Procedural Unconscionability**

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). The analysis for procedural unconscionability "begins with an inquiry into whether the contract is one of adhesion." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (*quoting Armendariz*, 24 Cal. 4th at 113) (internal quotation marks omitted).

Generally, a contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227,

242 (2015) (quotation omitted). Where a contract is adhesive, the question shifts to "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO*, 8 Cal. 5th at 126.

Here, the Coinbase Plaintiffs argue that the delegation clause was presented as a contract of adhesion, "presenting terms in inconspicuous font, buried in lengthy text." Opp'n 23. The Coinbase Plaintiffs also allege that "[t]he delegation clause in the [User Agreement] introduced significant changes compared to the prior version. Yet these self-serving amendments were not called out in the User Agreement or the pop-up box requiring user consent." *Id.*

Coinbase contends that when the User Agreement "went live, existing Coinbase users were routed to a landing page when logging into their accounts that presented the terms of the updated Agreement. The landing page announced that Coinbase was 'updating our User Agreement,' and prompted the user to '[r]eview [the] terms.' [U]sers were directed to 'review and accept [the] updated terms and conditions to continue using [their] Coinbase account." Coinbase's Mot. 2 (internal citations omitted). Thus, according to Coinbase, "[the Coinbase] Plaintiffs were fairly apprised of the User Agreement update and were free to reject it and trade their cryptocurrency assets elsewhere if they did not wish to agree to arbitration." Def. [s'] Reply to Opp'n 2 ("Reply"), ECF No. 72. Specifically, Coinbase argues that "[t]he **very same screen** on which Coinbase Plaintiffs agreed to the updated User Agreement included a hyperlink to a Coinbase help page which explained that any user who chose 'not to accept these [forthcoming] changes' could 'close [their] account' and that Coinbase would 'help [them] move [their] funds off the platform.' Reply 7 (emphasis in original); *see also Mohamed*, 848 F.3d at 1211 (explaining that in the Ninth Circuit, "an arbitration agreement is not adhesive if there is an opportunity to opt out of it").

To determine whether a contract of adhesion is oppressive and therefore procedurally unconscionable, California courts consider several factors, including: (1) the relative bargaining power and sophistication of the parties, (2) the complaining parties' access to reasonable market alternatives, and (3) the degree to which an offending provision of a contract is "buried in a lengthy . . . agreement." *Shierkatz Rllp v. Square, Inc.*, Case No. 21-cv-08689-HSG, 2015 WL 9258082, *9 (N.D. Cal. Dec. 17, 2015).

United States District Court
Northern District of California

Here, after balancing these factors, the Court finds a minimal degree of procedural unconscionability arising from the adhesive nature of the delegation clause. "While the relative bargaining power between the parties favors [Coinbase] and the…User Agreement was presented on a take-it-or-leave-it basis, nothing in the record suggests that Coinbase was [the] only option for cryptocurrency services. And while [the Coinbase] Plaintiff[s] argue that Coinbase's 'self-serving amendments were not called out in the User Agreement or the pop-up box requiring user consent," the [delegation] provision in the… User Agreement is clearly labeled ['Authority of the Arbitrator'] in bold print."[2] *Alfia v. Coinbase Glob., Inc.*, No. 21-CV-08689-HSG, 2022 WL 3205036, at *4 (N.D. Cal. July 22, 2022); Black Decl., Ex. F, Appendix 5, § 1.6.

**2. Substantive Unconscionability**

Substantive unconscionability focuses on the terms of the agreement and whether those are so "overly harsh" or "one-sided" as to "shock the conscience." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). "Although California courts have characterized substantive unconscionability in various ways, all of these formulations point to the central idea that unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Tompkins*, 840 F.3d at 1023 (citations and internal quotations omitted).

The Coinbase Plaintiffs argue that the delegation clause is substantively unconscionable because of the several exceptions to the delegation clause, which "strip the delegation clause of mutuality." Opp'n 24. For example, the Coinbase Plaintiffs claim that "[e]xception 2 for disputes regarding the payment of fees also only serves to benefit Coinbase as it is the one with the lion's share of the financial obligation in arbitration." *Id.* The Coinbase Plaintiffs further argue that "[o]ther terms <u>as applied to the delegation clause</u> render it unconscionable by impeding [the Coinbase] Plaintiffs' ability to arbitrate the threshold issue of whether the arbitration agreement as a whole is unconscionable," and the "attorneys' fees provisions, especially the right to recover fees if successful in compelling arbitration, also apply with one-sided harshness to the delegation

[2] *See* footnote one. Plaintiff Kenneth Donovan does not allege any claims against Coinbase.

clause." *Id.* (emphasis in original).

Coinbase argues that there are no such exceptions to the delegation clause, and "[Coinbase] Plaintiffs misread four categories of 'Disputes' that are carved out from the Arbitration Clause and call them exceptions to the Delegation Clause." Reply 1. Coinbase further contends that Coinbase Plaintiffs fail to explain "why the specific provisions of the delegation clause are unfairly one-sided." *Id.* at 2. "Instead, they identify a hodgepodge of ***other provisions*** within the Arbitration Clause or User Agreement that supposedly unfairly favor Coinbase and thus render the Delegation Clause unfair as well." *Id.* (emphasis in original). And, according to Coinbase, "[w]here arguments are not specifically directed to the delegation provision, but instead to the arbitration agreement as a whole, the court must enforce the delegation provision." *Id.*

The Court agrees with Coinbase and finds that the Coinbase Plaintiffs have not met their burden of demonstrating substantive unconscionability. The delegation clause itself is not substantively unconscionable based on the Coinbase Plaintiffs' interpretation. The Coinbase Plaintiffs have not shown that the delegation clause itself, and not the arbitration agreement as a whole, imposes unfair terms and shocks the conscience. "The standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015).

In sum, the delegation provision is not substantively unconscionable. Therefore, the delegation provision is enforceable, and the Court finds that the Coinbase Plaintiffs' challenges to arbitrability have been delegated to the arbitrator.

## IV. GMO'S MOTION TO COMPEL ARBITRATION

Defendant GMO filed a separate motion to compel arbitration and stay proceedings and argues that the claims brought against GMO by the Coinbase Plaintiffs and plaintiff Kenneth Donavan (collectively, "All Plaintiffs") are bound to the Coinbase arbitration agreement under the doctrine of equitable estoppel. *See* GMO Mot. 1. All Plaintiffs argue that the court should deny GMO's motion to compel arbitration because the doctrine of equitable estoppel does not apply. Pl. ['s] Opp'n to GMO's Mot. 1, ECF No. 67.

An individual who is a nonsignatory to an arbitration agreement may compel a signatory plaintiff into arbitration if allowed by state contract law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1130 n.5 (9th Cir. 2013). In California, a nonsignatory may compel arbitration under the doctrine of equitable estoppel where a plaintiff's claims against the non-signatory are "based on the same facts and are inherently inseparable" to those against a signatory. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (*quoting Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (Cal. Ct. App. 2003)).

In *Kramer*, the plaintiffs were owners of Toyota Prius cars that were purchased from Toyota dealerships. When they purchased their cars, they did so on credit by entering into purchase agreements with the dealerships which contained arbitration provisions. The plaintiffs filed a class action against Toyota (not the dealerships), asserting that they experienced defects in their anti-lock brake systems. *Id.* at 1124. In response, Toyota argued, among other things, that the action should be compelled to arbitration. The district court denied the motion to compel arbitration and "found that Toyota, as a nonsignatory to the Purchase Agreements between Plaintiffs and Dealerships, could not compel arbitration, and equitable estoppel did not require arbitration." *Id.* at 1125-26.

The Ninth Circuit held that "the arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability. While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships." *Id.*at *1127*; *see also id.* at 1128 ("[T]he arbitration clause is limited to claims between 'you and us'—i.e. Plaintiffs and the Dealerships"); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("The arbitration agreement is premised on a disagreement between Wells Fargo and the borrower. In the absence of such a disagreement, the arbitration provision does not apply. Thus, any disagreement between the borrower and a third party, such as [the defendant], is simply not within the scope of the arbitration agreement…").

///

Here, the User Agreement contains clear-cut language showing an intent to arbitrate disputes between the signatories only. Specifically, section 1.1 of the arbitration agreement states:

> "Subject to the terms of this Arbitration Agreement, **you and Coinbase** agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any product sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a 'Dispute') will be resolved by binding arbitration, rather than in court . . . ." *Id.* at § 1.1.

Black Decl., Ex. F, Appendix 5. The bolded language indicates the arbitration obligation is binding between All Plaintiffs and **Coinbase**. The agreement does not state that the obligations and rights thereunder extend to a nonsignatory. At the very least, there is ambiguity as to whether All Plaintiffs agreed to arbitrate arbitrability with a nonsignatory. *Kramer* requires that there be clear and unmistakable evidence that a signatory agreed to arbitrate arbitrability with a nonsignatory. *See Kramer*, 705 F.3d at 1127.

As such, GMO's motion to compel arbitration is **DENIED**. However, in its discretion to enter a stay under its inherent authority, the Court stays all proceedings pending resolution of the Coinbase arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (When a court compels arbitration, as "a matter of its discretion to control its docket," it may stay litigation among non-arbitrating parties pending the outcome of arbitrable claims or a parallel arbitration.); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

## V. CONCLUSION

For the above reasons, the Court **GRANTS** Coinbase's motion to compel arbitration (ECF No. 51) and **DENIES** GMO's motion to compel arbitration (ECF No. 59). The Coinbase Plaintiffs and Coinbase are ordered to submit their claims to arbitration as provided by their agreement. 9 U.S.C. § 4. This action is stayed pending the Coinbase arbitration proceedings. The parties shall file joint status reports every 120 days apprising the Court of the status of Coinbase arbitration proceedings, with the first report due May 12, 2023.

**IT IS SO ORDERED.**

Dated: January 6, 2023

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California