UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH DONOVAN, HUSSIEN KASSFY, and JOHN BRAMBL, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

GMO-Z.COM TRUST COMPANY, INC,

Defendant.

No. 1:23-cv-08431-AT
Hon. Analisa Torres

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF GMO-Z.COM TRUST COMPANY, INC.'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........................................ iii

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 3

ARGUMENT ........................................ 9

I. PLAINTIFFS' FEDERAL SECURITIES CLAIM FAILS BECAUSE GYEN IS NOT A SECURITY AND GMO TRUST DID NOT SELL ANY GYEN TO PLAINTIFFS........................................ 10

A. Plaintiffs Fail To Adequately Allege That GYEN Is A Security. ........................................ 10

1. Plaintiffs Fail To Allege An Investment Of Money Subject To The Risk Of Loss. ........................................ 11

2. Plaintiffs Did Not Purchase GYEN With A Reasonable Expectation Of Profits Derived From The Efforts Of GMO Trust........................................ 12

B. Plaintiffs' Section 12 Claim Fails Because Plaintiffs Did Not Purchase GYEN From GMO Trust........................................ 14

II. PLAINTIFFS' STATE LAW CLAIMS FAIL FOR LACK OF SUBJECT MATTER JURISDICTION AND ON THEIR ELEMENTS........................................ 19

A. The Court Lacks Subject Matter Jurisdiction Over This Action Upon Dismissal Of The Securities Act Claim........................................ 19

B. Plaintiffs' California Claims Do Not Meet The 9(b) Heightened Pleading Standard........................................ 19

C. Plaintiffs Do Not Adequately Allege Reliance........................................ 20

D. The State Law Claims Are Inapplicable To Securities Transactions. ........................................ 21

E. GMO Trust Is Not Alleged To Have Made Any Materially Misleading Misrepresentations Or Omissions. ........................................ 23

**Page**

F. Plaintiffs Fail To Allege Causation................................................ 25

CONCLUSION........................................................................................................ 26

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Airbag Control Units Prods. Liab. Litig.*,
601 F. Supp. 3d 625 (C.D. Cal. 2022) .......... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......... 9

*Bowen v. Ziasun Techs. Inc.*,
116 Cal. App. 4th 777 (Cal. Ct. App. 2004) .......... 21

*Brass v. American Film Tech., Inc.*,
987 F.2d 142 (2d Cir. 1993).......... 7

*Capri v. Murphy*,
856 F.2d 473 (2d Cir. 1988).......... 15, 16, 17

*Daniel v. Mondelez Int'l, Inc.*,
287 F. Supp. 3d 177 (S.D.N.Y. 2018).......... 23

*DeAngelis v. Corzine*,
17 F. Supp. 3d 270 (S.D.N.Y. 2014).......... 21

*Ellison v. American Image Motor Co., Inc.*,
36 F. Supp. 2d 628 (S.D.N.Y. 1999).......... 10

*F.W. Webb v. State Bank & Tr. Co.*,
2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) .......... 16

*Fesseha v. TD Waterhouse Inv. Servs., Inc.*,
747 N.Y.S. 2d 676 (2002) .......... 22

*Forsberg v. Always Consulting Inc.*,
2008 WL 5449003 (S.D.N.Y. Dec. 31, 2008) .......... 10

**Page(s)**

*Gamm v. Sanderson Farms, Inc.*,
944 F.3d 455 (2d Cir. 2019)....................................................................................3

*Garnett v. RLX Tech., Inc.*,
632 F. Supp. 3d 574 (S.D.N.Y. 2022)....................................................................16

*Goldberg v. Manhattan Ford Lincoln-Mercury, Inc.*,
429 N.Y.S. 2d 318 (N.Y. Sup. Ct. 1985) ..............................................................22

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y. 2d 314 (N.Y. Ct. App. 2002)....................................................................22

*Gray v. Seaboard Secs., Inc.*,
14 A.D. 3d 852 (3d Dep't 2005) ............................................................................21

*Griffin v. PaineWebber, Inc.*,
2001 WL 740764 (S.D.N.Y. June 29, 2001) .........................................................18

*Grossman v. GEICO Cas. Co.*,
2022 WL 1656593 (2d Cir. May 25, 2022) ...........................................................20

*Gudgel v. Clorox Co.*,
514 F. Supp. 3d 1177 (N.D. Cal. 2021) .................................................................23

*Hector v. Wiens*,
533 F.2d 429 (9th Cir. 1976) ..................................................................................11

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (Cal. Ct. App. 2011) ........................................................23

*Holsworth v. BProtocol Found.*,
2021 WL 706549 (S.D.N.Y. Feb. 22, 2021)....................................................16, 17

*In re Chembio Diagnostics, Inc. Secs. Litig.*,
586 F. Supp. 3d 199 (E.D.N.Y. 2022) .....................................................................3

*In re Longfin Corp. Secs. Class Action Litig.*,
2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019)........................................................10

*In re Merrill Lynch Ltd. P'ships Litig.*,
154 F.3d 56 (2d Cir. 1998)......................................................................................19

*In re Orion Secs. Litig.*,
2009 WL 2601952 (S.D.N.Y. Aug. 20, 2009) ........................................................15

**Page(s)**

*In re Tether & Bifinex Crypto Asset Litig.*,
576 F. Supp. 3d 55 (S.D.N.Y. 2021)........................................................................ 21

*Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Daniel*,
439 U.S. 551 (1979)........................................................................................... 11

*Kennard v. Lamb Weston Holdings*,
2019 WL 1586022 (N.D. Cal. Apr. 12, 2019) ........................................................ 24

*Kommer v. Bayer Consumer Health*,
252 F. Supp. 3d 304 (S.D.N.Y. 2017)........................................................ 23, 24, 26

*Levitt v. J.P. Morgan Secs., Inc.*,
9 F. Supp. 3d 259 (E.D.N.Y. 2014) ........................................................................ 15

*Lozada v. TaskUs, Inc.*,
2024 WL 68571 (S.D.N.Y. Jan. 5, 2024) ................................................................ 17

*Lugones v. Pete and Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020)..................................................................... 20

*M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*,
852 F. Supp. 2d 324 (W.D.N.Y. 2012) .................................................................... 21

*Marine Bank v. Weaver*,
455 U.S. 551 (1982)...................................................................................... 11, 14

*Miller v. Wells Fargo Bank NA*,
994 F. Supp. 2d 542 (S.D.N.Y. 2014)..................................................................... 25

*Noa v. Key Futures, Inc.*,
638 F.2d 77 (9th Cir. 1980) .................................................................................. 14

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
11 N.Y.3d 105 (N.Y. Ct. App. 2008)....................................................................... 22

*People ex rel. Spitzer v. Direct Revenue, LLC*,
862 N.Y.S. 2d 816 (2008)....................................................................................... 21

*Perry v. Mary Ann Liebert, Inc.*,
2018 WL 2561029 (S.D.N.Y. June 4, 2018) ............................................................. 7

*Pew v. Cardarelli*,
2009 WL 3165759 (N.D.N.Y. Sept. 29, 2009) .................................................... 21-22

**Page(s)**


*Pinter v. Dahl*,
486 U.S. 622 (1988) .......... 15, 17–18

*Prickett v. New York Life Ins. Co.*,
896 F. Supp. 2d 236 (S.D.N.Y. 2012) .......... 21

*Revak v. SEC Realty Corp.*,
18 F.3d 81 (2d Cir. 1994) .......... 11

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) .......... 9

*Ryder Intern. Corp. v. First Am. Nat. Bank*,
943 F.2d 1521 (11th Cir. 1991) .......... 18

*SEC v. Belmont-Reid*,
794 F.2d 1388 (9th Cir. 1986) .......... 14

*SEC v. Edwards*,
540 U.S. 389 (2004) .......... 12

*SEC v. Glenn W. Turner Enters., Inc.*,
474 F.2d 476 (9th Cir. 1973) .......... 13

*SEC v. Ripple Labs, Inc.*,
2023 WL 4507900 (S.D.N.Y. July 13, 2023) .......... 13, 14

*SEC v. Terraform Labs Pte. Ltd.*,
2023 WL 4858299 (S.D.N.Y. July 31, 2023) .......... 11, 12

*SEC v. W.J. Howey Co.*,
328 U.S. 293 (1946) .......... 10, 11

*Shain v. Duff & Phelps Credit Rating Co.*,
915 F. Supp. 575 (S.D.N.Y. 1996) .......... 16

*Spinner Corp. v. Princeville Dev. Corp.*,
849 F.2d 388 (9th Cir. 1988) .......... 22

*Steed Fin. LDC v. Nomura Secs. Intern., Inc.*,
2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) .......... 16

*Stewart v. Kodiak Cakes LLC*,
537 F. Supp. 3d 1103 (S.D. Cal. 2021) .......... 24, 26

**Page(s)**

*Suero v. NFL*,
2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) .......... 24, 25

*Tarpon Bay Partners LLC v. Zerez Holdings Corp.*,
79 F.4th 206 (2d Cir. 2023) .......... 22

*Underwood v. Coinbase Glob., Inc.*,
654 F. Supp. 3d 224 (S.D.N.Y. 2023).......... 17, 18

*United Hous. Found. v. Forman*,
421 U.S. 837 (1975).......... 12, 13

*United States v. Eisenberg*,
Case No. 1:23-cr-10 (S.D.N.Y. Apr. 13, 2024) .......... 12

*Williams v. Apple*,
449 F. Supp. 3d 892 (N.D. Cal. 2020) .......... 20

*Youngers v. Virtus Inv. Partners Inc.*,
195 F. Supp. 3d 499 (S.D.N.Y. 2016).......... 16, 17

*Yumul v. Smart Balance Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......... 20

*Zakinov v. Ripple Labs, Inc.*,
2020 WL 922815 (N.D. Cal. Feb. 26, 2020) .......... 10, 19, 21

**Rules and Statutes**

15 U.S.C. § 77l.......... *passim*

Fed. R. Civ. P. 9(b) .......... 10, 20

Fed. R. Civ. P. 12(b)(1).......... 19

Fed. R. Civ. P. 12(b)(6).......... 19

Cal. Bus. & Prof. Code § 17200 .......... 19, 21

Cal. Bus. & Prof. Code § 17500 .......... 19, 21

N.Y. Gen. Bus. L. § 349 .......... *passim*

N.Y. Gen. Bus. L. § 350 .......... *passim*

## INTRODUCTION

This is a case about Plaintiffs' purchases of GYEN, a stablecoin designed to maintain 1:1 parity with the Japanese Yen ("JPY"). Every GYEN is backed by one JPY held on deposit by GYEN's issuer, Defendant GMO-Z.com Trust Company, Inc. ("GMO Trust") – an entity that is licensed, regulated and supervised by the New York Department of Financial Services to conduct this very business. Token holders can buy one GYEN from GMO Trust for one JPY and redeem one GYEN for one JPY through GMO Trust at any time. No purchaser of GYEN can or should reasonably expect to profit based on any future increase in the value of GYEN because GYEN is not intended to appreciate relative to the JPY.

In May 2021, one of the largest cryptocurrency platforms in the world, Binance, listed GYEN for sale on its platform. In November 2021, another large cryptocurrency platform, Coinbase, listed GYEN for sale on its platform. Soon after listing on each platform, the price of GYEN *on that particular platform* (but not generally in the market) became temporarily displaced from the JPY because the supply of GYEN *on that platform* was outstripped by sudden demand for it on that platform. This temporary displacement resulted in the price at which one could convert U.S. dollars ("USD") into GYEN on that platform being momentarily higher than the USD/JPY exchange rate at the time. However, Plaintiffs do not allege that they ever purchased or sold GYEN below the USD/JPY currency exchange rate. In any event, during each of these momentary displacements, GYEN continued to be backed by a 1:1 deposit of JPY held by GMO Trust, and GMO Trust continued to both sell and redeem GYEN directly to the market at parity.

Plaintiffs allege that they purchased GYEN on Coinbase or Binance from sellers *other than* GMO Trust during the short periods when GYEN's price on a particular platform was displaced from parity with the JPY. They further allege that they suffered a loss when the price of GYEN returned to parity.

Plaintiffs' entire theory of this case is hopelessly at odds with itself. Despite having purchased their GYEN at a price that was displaced from 1:1 parity with JPY, Plaintiffs contend that GMO Trust somehow misled them into believing that such a break in parity was impossible. Nobody who purchased GYEN at a price that exceeded 1:1 parity with the JPY could have been misled into believing that such a break in parity was impossible. Any purchaser who relied on GMO Trust's alleged statements that the GYEN was designed to maintain parity with the JPY should have expected the price of GYEN to quickly return to pre-displacement levels.

This core defect in Plaintiffs' pleading permeates Plaintiffs' claims, which should be dismissed for several reasons.

*First*, GYEN is not a security as a matter of law. Under the Supreme Court's *Howey* test, securities require purchasers to have a reasonable expectation of profits based on the efforts of others. Plaintiffs here could not have a reasonable expectation of profits given that the GYEN was purchasable and redeemable for one JPY from GMO Trust at all times. And any unreasonable expectation of profits could not have been based on the efforts of GMO Trust.

*Second*, even if GYEN were a security, Section 12 of the Securities Act of 1933 affords a private right of action *only* against "statutory sellers" – that is, those who directly sold the security to Plaintiffs or who directly and actively urged Plaintiffs to purchase the security. Plaintiffs fail to plead that either event occurred here.

*Third*, Plaintiffs fail to satisfy the most basic elements of their state law claims. Having characterized their entire case as an investment in securities, Plaintiffs are not permitted to invoke New York and California consumer protection statutes because those statutes do not apply to securities transactions. Plaintiffs' state law claims also fail because Plaintiffs do not adequately allege which supposed material misstatements actually caused their purported losses.

Accordingly, Plaintiffs' claims should be dismissed without leave to replead due to the fundamental defects in their claims.

**BACKGROUND**

GMO Internet Group, based in Tokyo, Japan, is one of the world's largest internet services conglomerates. Second Amended Class Action Complaint ("SAC") ¶ 23.[1] GMO Internet Group owns or operates over 100 companies across the globe, including some of the most prominent financial services businesses in Japan, such as GMO Click Securities (the world's largest online foreign exchange trading platform), GMO Payment Gateway (the largest payment gateway business in Japan), and GMO Aozora Net Bank (a bank regulated by the Japanese Financial Services Authority). *Id.*; GMO-Z.com Trust Company, Inc., *WhitePaper* (Jan. 14, 2021), Declaration of Nowell Bamberger ("Bamberger Decl."), Exhibit 1 (the "GYEN White Paper") at 3.[2]

GMO Trust is a wholly-owned subsidiary of GMO Internet Group founded in 2020. SAC ¶¶ 22, 41. GMO Trust is incorporated in New York, with its only office located in New York City. *Id.* ¶ 22. On December 29, 2020, the New York Department of Financial Services granted GMO Trust a charter to operate as a limited purpose trust company under New York's Virtual Currency Law. *Id.* ¶ 41. GMO Trust was the seventh company to be granted this charter, and the first

[1] GMO Trust's statement of facts is drawn from the SAC and documents of which the Court may take judicial notice on a motion to dismiss. GMO Trust does not admit the truth of the allegations in the SAC.

[2] The January 2021, September 2021, and August 2022 versions of the GYEN White Paper are quoted extensively in and therefore incorporated by reference in the SAC. *E.g.*, SAC ¶¶ 31–32, 47; *see Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019); *In re Chembio Diagnostics, Inc. Secs. Litig.*, 586 F. Supp. 3d 199, 216 (E.D.N.Y. 2022) (on a motion to dismiss, considering documents that have been "significantly quoted in the Complaint [because they] have been incorporated by reference"). The Court therefore may consider these documents in resolving the Motion to Dismiss. *See* Bamberger Decl. Exs. 1-3.

company chartered by NYDFS to issue a stablecoin pegged to the JPY, known as the GYEN. *Id.* ¶¶ 41–42.

Stablecoins are digital assets that are intended to maintain a value equal to a fiat currency or other reference asset – most commonly the U.S. dollar. *Id.* ¶ 38. Issuers of many stablecoins – including GMO Trust – maintain the value of stablecoins by holding in reserve an equal amount of the underlying reference asset. *Id.* ¶ 39. Many stablecoins – including the GYEN – are redeemable at par (*i.e.*, one GYEN for one JPY) upon request. *Id*. Various stablecoins are backed by different types of reserve assets. Some stablecoin issuers, such as GMO Trust, hold an equal amount of fiat currency in reserve, such that each GYEN in circulation can be redeemed for a JPY held by GMO Trust. *Id.*; GYEN White Paper at 4–5. For such stablecoins, including the GYEN, the token itself is thus nothing more than a proxy or tradable receipt for actual currency – JPY held by GMO Trust.

In January 2021, GMO Trust published the GYEN White Paper, which provides background information on stablecoins, GMO Internet Group, and GMO Trust, as well as a summary of the oversight, features, and technology of GYEN. SAC ¶ 11; GYEN White Paper. The GYEN White Paper explains that the GYEN could reduce the high fees and slow speeds involved in traditional foreign currency trading when traders use GYEN as an equivalent to the JPY in their currency trading strategies. SAC ¶ 47; *id.* ¶¶ 64–65 (quoting GYEN White Paper at 7). The GYEN White Paper also lists potential use cases for GYEN, including as a means of payment, a substitute for riskier unregulated stablecoins, a money transfer solution, and a store of value. GYEN White Paper at 7–8.

Individuals or entities can acquire GYEN in two ways: (i) by purchasing directly from GMO Trust through its official purchase and redemption processes, or (ii) by purchasing from

third parties on the secondary market, including on third-party digital asset trading platforms, such as Coinbase and Binance. *Id.* at 5–6; SAC ¶¶ 49–50. The GYEN White Paper explains that holders of GYEN "can always redeem 1 GYEN for 1 JPY . . . directly with GMO Trust." *Id.* ¶ 51; GYEN White Paper at 5. In the alternative, the GYEN White Paper explains that holders can trade GYEN for "other digital assets on exchanges that list the stablecoins." SAC ¶ 51; GYEN White Paper at 5. GMO Trust does not have control over private transactions conducted by third parties, including transfers that occur on exchanges. And the GYEN White Paper does not make any representations about the price or volatility of GYEN when traded on third party exchanges.

Plaintiffs allege that GMO Trust made the following misrepresentations:

- GMO Trust stated in its White Paper that "GYEN anchors its value to the price of the Japanese Yen [. . .] [P]egged 1-to-1 with fiat currency, we can virtually eliminate volatility, while still benefitting from the advantages of digital assets, such as high transaction speeds matched with low costs." SAC ¶ 47; GYEN White Paper at 4.
- GMO Trust also "distributed promotional videos on LinkedIn and YouTube," which stated that "GYEN is the first stablecoin pegged 1:1 to the Japanese YEN and is fully regulated by the New York Department of Financial Services (NYDFS)." SAC ¶ 48.
- GMO Trust's website's referred to GMO Trust as "The World's First Regulated JPY-Pegged Stablecoin Issuer." *Id.* ¶ 49.
- GMO Trust's website's FAQ page stated that "the exchange rate for GYEN/JPY . . . will always be 1:1 through GMO-Z.com Trust Company's official Purchase/Redemption process." *Id.*
- GMO Trust's website also contained a "carousel of linked articles," with titles such as "New York Regulator Licenses GMO Internet to Issue the First JPY-Pegged Stablecoin"

and "Japanese Internet Giant Licensed to Issue First JPY-Pegged Stablecoin in New York." *Id.*

- Finally, GMO Trust's website "posted several 'independent accountant report' documents from May 2021 through April 2022 stating GYEN is 'the world's first regulated Japanese yen-pegged stablecoin,' and is 'pegged 1:1 to the Japanese yen.'" *Id.*

GMO Trust launched the initial sale of GYEN on March 1, 2021. *Id.* ¶ 44. GYEN was sold both directly by GMO Trust and on third-party digital asset exchanges. *Id.*; *see also id.* ¶¶ 71–85. On May 12, 2021, the GYEN was listed for trading on Binance, the largest digital asset platform in the world. *Id*. ¶¶ 96–98. The GYEN allegedly "immediately came untethered from the yen and rose sharply in value." *Id*. ¶ 99. Shortly thereafter, Binance halted trading of the GYEN on its platform. *Id*. On November 16, 2021, the GYEN was listed for trading on Coinbase, the largest digital asset platform in the United States. *Id.* ¶¶ 105–06. The GYEN-USD exchange rate on Coinbase allegedly "[a]lmost immediately . . . rose" to more than seven times the JPY-USD exchange rate. *Id.* ¶ 106. While the JPY-USD exchange rate remained stable at or below $0.0087, the GYEN-USD exchange rate on Coinbase allegedly rose to "an all-time high" of either $0.34 or $5,353.87. *Id.* Plaintiffs do not allege that the GYEN-USD exchange rate on Coinbase ever sunk below the JPY-USD exchange rate. *See id*. (displaying Yahoo! Finance chart that shows a spike in the price of GYEN in November 2021 followed by a return to parity). By November 19, 2021, the GYEN-USD exchange rate on Coinbase had returned to parity with the JPY-USD exchange rate. *Id.* ¶ 108. At some point, Coinbase "restrict[ed] its customers' ability to trade GYEN." *Id.* ¶ 109. At 4:00pm on November 19, 2021, after the return to parity, Coinbase "suspended all GYEN trading activity." *Id*.

Plaintiffs allege that they expected the GYEN to maintain a stable price. *Id.* ¶¶ 3, 7. Plaintiffs also allege that they lost money from buying GYEN at different and varying prices in private, third party transactions on exchanges when the GYEN-USD exchange rate exceeded the JPY-USD exchange rate, and selling GYEN on exchanges at a lower price. *Id.* ¶¶ 19–21. Plaintiffs do not allege that they purchased or redeemed GYEN directly from GMO Trust or that GMO Trust was a party to any of those secondary-market transactions. Plaintiffs do not allege that they expected the price of GYEN to increase. Plaintiffs do not and cannot allege that the exchange rate for GYEN/JPY through GMO Trust's official purchase or redemption processes ever deviated from 1:1 through GMO Trust's official purchase or redemption processes. And Plaintiffs do not and cannot allege that GMO Trust ever advertised that any purchaser would have the right to redeem GYEN for whatever price they had paid for it.

Plaintiff Kenneth Donovan, a resident of New York, allegedly entered into several GYEN transactions on May 12, 2021 when the GYEN-USD exchange rate on a third-party exchange exceeded the JPY-USD exchange rate. On information and belief, Donovan's May 2021 transactions occurred on another major cryptocurrency exchange, Binance. *Id.* ¶¶ 99–100; ECF No. 46-1 (alleging dislocated GYEN purchases on May 12, 2021, which correspond to the alleged dislocation on Binance).[3] Donovan bought 115,546 GYEN at a price of $0.728, and took advantage of the displacement and made a quick profit when the GYEN-USD exchange rate continued to increase, selling 34,886 GYEN at a price of $0.847. ECF No. 46-1. Donovan then

[3] The Court may consider ECF Nos. 46-1, 46-3, and 50 because they were attached to an earlier version of the operative complaint. *See Perry v. Mary Ann Liebert, Inc.*, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018) (on motion to dismiss third amended complaint, considering document attached to original complaint). The Court may also consider these documents for the separate reason that they were "in plaintiffs' possession" and were "relied [upon] in bringing suit." *Brass v. American Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

bought more GYEN as the exchange rate began to decline – predictably returning to parity with the JPY-USD exchange rate – later that day. *Id.* Donovan sold his remaining GYEN at a loss on September 7, 2021, after the GYEN-USD exchange rate on the third-party exchange had returned to parity with the JPY-USD exchange rate. *Id.* Donovan does not allege that he made any GYEN transactions in November 2021 nor any purchases on Coinbase. *Id.* Donovan does not allege that he bought any GYEN directly from GMO Trust (had he done so, it would have been at 1:1 parity). *Id.* Donovan alleges that he paid more than $335,000 to purchase GYEN and that the GYEN he purchased lost more than 90% of its value within hours. SAC ¶ 19.

Plaintiff Hussien Kassfy, a resident of California, allegedly made 33 purchases of GYEN on Coinbase between November 17 and November 19, 2021, when the GYEN-USD exchange rate on Coinbase exceeded the JPY-USD exchange rate. ECF No. 50 at 2–3. On November 17, Kassfy sold 1,737,284 GYEN for a quick profit, and then continued purchasing GYEN as the exchange rate began to decline – to move back toward parity with the JPY-USD exchange rate. *Id.* Kassfy sold his remaining GYEN at a loss in December 2021 after the GYEN-USD exchange rate had returned to parity with the JPY-USD exchange rate. *Id.* Kassfy does not allege that he bought any GYEN directly from GMO Trust. *Id.* Kassfy alleges that he paid approximately $113,000 to order GYEN through Coinbase, and that the coins he purchased lost more than 70% of their value within hours. *Id.*; SAC ¶ 20. Both Donovan and Kassfy allegedly did not know that "at the time [their] order[s] [were] placed, the GYEN's value was not pegged to the Japanese yen." SAC ¶¶ 19–20.

Plaintiff John Brambl, a resident of New Mexico, allegedly purchased 5,831,534 GYEN on Coinbase on November 16 and 17, 2021 at prices ranging from $0.030 to $0.042, when the GYEN-USD exchange rate on Coinbase exceeded the JPY-USD exchange rate. ECF No. 46-3. Brambl sold his GYEN at a loss at a price of $0.010 on November 18, 2021. *Id.* Brambl then

purchased 5,117,795 more GYEN at a price of $0.011 on November 19, 2021, which he subsequently sold at a price of $0.009 on December 11, 2021. *Id.* Brambl does not allege that he bought any GYEN directly from GMO Trust. *Id.* Brambl alleges that he paid approximately $175,000 to order GYEN through Coinbase, and that the coins he purchased lost more than 66% of their value soon after his order was filled. *Id.*; SAC ¶ 21.

Plaintiffs allege that as a result of their purchases of GYEN, they suffered economic loss and loss of property. SAC ¶¶ 19–21, 124, 162, 172. Plaintiffs assert claims on behalf of themselves and on behalf of a putative class of others purportedly similarly situated against GMO Trust for violations of Sections 5 and 12(a)(1) of the Securities Act of 1933 (the "Securities Act"), New York General Business Law Sections 349 and 350, and violations of California Business and Professions Code Sections 17200 and 17500. SAC ¶¶ 125–72.

## ARGUMENT

Plaintiffs have the burden to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To do so, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To the extent that Plaintiffs' claims are premised on fraud or deception, as their claims under Section 12 of the Securities Act and Cal. Bus. Prof. Code §§ 17200 and 17500 are, they are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (Rule 9(b) applies to claims under Sections 11 and 12 of the Securities Act insofar as they sounded in fraud); *Ellison v. American Image Motor Co., Inc.*, 36 F. Supp. 2d 628 (S.D.N.Y. 1999) (Rule 9(b) applies to Section 12(a)(1) claims where

they sound in fraud); *In re Longfin Corp. Secs. Class Action Litig.*, 2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019) (similar); *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815 at *22–23 (N.D. Cal. Feb. 26, 2020) (Rule 9(b) applies to Cal. Bus. Prof. Code §§ 17200 and 17500 where the action was based on fraud); SAC ¶¶ 121, 138, 155, 158.

## I. PLAINTIFFS' FEDERAL SECURITIES CLAIM FAILS BECAUSE GYEN IS NOT A SECURITY AND GMO TRUST DID NOT SELL ANY GYEN TO PLAINTIFFS.

The core of Plaintiffs' lawsuit is a claim under Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77l (Claim I). Section 12(a)(1) provides a narrow private right of action for purchasers of securities against issuers who sell unregistered securities. 15 U.S.C. § 77l. The claim requires that (a) the instrument sold is actually a "security" within the meaning of the federal securities laws, and (b) the person asserting the claim "purchas[ed] such security from" the defendant. *Id.* Neither condition is satisfied here.[4]

### A. Plaintiffs fail to adequately allege that GYEN is a security.

Plaintiffs allege that GYEN is a security because it purportedly meets the definition of an "investment contract" under Section 2 of the Securities Act. SAC ¶ 56. The Supreme Court has defined an "investment contract" as "a contract, transaction, or scheme whereby a person invests [their] money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946). The Second Circuit has distilled this definition into a three-element test: "(i) an investment of money (ii) in a common enterprise (iii) with profits to be derived solely from the efforts of others." *Revak v. SEC Realty*

---

4 Plaintiffs cite both Sections 5 and 12(a)(1) in the First Cause of Action. SAC ¶ 125. To the extent Plaintiffs are asserting a Section 5 claim, that claim must be dismissed because there is no private right of action under Section 5. *See, e.g.*, *Forsberg v. Always Consulting Inc.*, 2008 WL 5449003, at *2 (S.D.N.Y. Dec. 31, 2008) ("Although Section 5 does not provide for a private right of action, claims brought pursuant to Section 5 have been construed as claims arising under Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l, which does provide for a private right of action.").

*Corp.*, 18 F.3d 81, 87 (2d Cir. 1994). Stablecoins like the GYEN are not securities because reasonable purchasers understood that their value would remain stable rather than generate a profit. *See, e.g.*, *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 4858299, at *12 (S.D.N.Y. July 31, 2023) ("[W]here a stablecoin is designed exclusively to maintain a one-to-one peg with another asset, there is no reasonable basis for expecting that the tokens . . . would generate profits through a common enterprise."). Plaintiffs fail to adequately plead the first and third prongs of the *Howey* test, and therefore fail to plead that GYEN is a security.[5]

***1. Plaintiffs fail to allege an investment of money subject to the risk of loss.***

The investment of money prong of the *Howey* test requires a purchaser to risk loss. *Marine Bank v. Weaver*, 455 U.S. 551, 558–59 (1982); *see also Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976) ("[A]n 'investment of money' means . . . that the investor must commit his assets to the enterprise in such a manner as to subject himself to financial loss."). A purchaser of a stablecoin such as the GYEN does not "invest" in anything because there is no risk of loss. Because a purchaser of GYEN can redeem its original purchase price at any time by returning its GYEN to GMO Trust, SAC ¶ 51, that purchaser risks no loss, and Plaintiffs' purchases therefore meet no definition of "investment." *See Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Daniel*, 439 U.S. 551, 558 (1979) (defining "investment of money" as requiring that a purchaser "chose to give up a specific consideration in return for a separable financial interest with the characteristics of a security").

[5] GMO Trust does not concede that Plaintiffs can meet any of the prongs of the *Howey* test, but focuses on the first and third prongs because they are plainly not adequately pleaded in the SAC.

***2. Plaintiffs did not purchase GYEN with a reasonable expectation of profits derived from the efforts of GMO Trust.***

Purchasers of a security must have "a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Hous. Found. v. Forman*, 421 U.S. 837, 852 (1975). "Profits" means an "income or return, to include, for example, dividends, other periodic payments, or the increased value of the investment." *SEC v. Edwards*, 540 U.S. 389, 394 (2004); *see also Forman*, 421 U.S. at 852 ("By profits, the Court has meant either capital appreciation resulting from the development of the initial investment, or a participation in earnings resulting from the use of investors' funds.").

Plaintiffs do not plead that they reasonably expected the price of GYEN to increase. To the contrary, Plaintiffs plead that they expected the GYEN to maintain a stable price. *See* SAC ¶ 3 (GYEN was "marketed as a digital asset intended to maintain a stable value against . . . the Japanese yen."); SAC ¶ 7 ("Plaintiffs bought GYEN tokens with the expectation that Defendant's efforts [would] maintain the GYEN's 1-to-1 peg to the Japanese yen."). Purchasers of GYEN could only reasonably expect to purchase GYEN with one JPY and then redeem that GYEN for one JPY. *See* SAC ¶ 51 ("[GMO Trust] touted in the GYEN White Paper . . . that one could always redeem 1 GYEN for 1 JPY.") (quotations omitted and emphasis removed). This defining attribute of the GYEN stablecoin is fatal to Plaintiffs' claim that GYEN is a security. "[W]here a stablecoin is designed exclusively to maintain a one-to-one peg with another asset, there is no reasonable basis for expecting that the tokens . . . would generate profits through a common enterprise." *Terraform*, 2023 WL 4858299, at *12; *see also United States v. Eisenberg*, Case No. 1:23-cr-10 (S.D.N.Y. Apr. 13, 2024), ECF No. 145 (DOJ jury instruction stating that stablecoins are not securities under *Howey* because "holders . . . do not expect profits from the token because the token is advertised as 'maintain[ing] a value of one U.S. dollar'").

Plaintiffs also fail to allege any expectation of profit based on the efforts of GMO Trust. An investment contract requires "a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Forman*, 421 U.S. at 852. Those efforts must be "undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973). But as described above, GMO Trust made clear that its efforts were dedicated to maintaining a stable price for the GYEN. *See* SAC ¶¶ 3, 7, 51. Any purchaser who expected profit derived from the efforts of GMO Trust did not do so reasonably. *SEC v. Ripple Labs, Inc.*, 2023 WL 4507900, at *12 (S.D.N.Y. July 13, 2023) (explaining the expectation of profit "inquiry is an objective one"). For example, in *Ripple*, this court held that defendants' programmatic sales of XRP were not investment contracts because the purchasers "did not derive [any] expectation [of profit] from [the issuer's] efforts . . . as opposed to other factors, such as general cryptocurrency market trends." *Id.* Similarly here, any purchaser's unreasonable subjective expectation of profits would necessarily have been derived from factors other than the efforts of GMO Trust.

Recognizing that sales of a stablecoin such as the GYEN standing alone cannot give rise to an expectation of profits based on the efforts of others, Plaintiffs make two failed attempts to meet their pleading burden.

*First*, Plaintiffs speculate that purchasers of GYEN could use GYEN for arbitrage and hedging strategies, SAC ¶¶ 64–70, but fail to plausibly allege how that activity translates into an expectation of profits, much less *their* expectations of profits, and fail to suggest how *any*one's use of GYEN for this purpose would rely on the entrepreneurial efforts of GMO Trust. The sole factual allegation supporting this assertion is that GMO Trust entered into partnerships with cryptocurrency platforms. SAC ¶¶ 69–70. But any expectation of profits based on increased

liquidity or volume resulting from those alleged partnerships would be based on the efforts of the other market participants, not GMO Trust. *See Noa v. Key Futures, Inc.*, 638 F.2d 77, 78 (9th Cir. 1980) (per curium) (holding no investment contract where value of silver purchased from a silver dealer "depended upon the fluctuations of the silver market, not the managerial efforts of [the sellers]"); *SEC v. Belmont-Reid*, 794 F.2d 1388, 1391 (9th Cir. 1986) (no expectation of profits in gold coins because "profits to the coin buyer depended upon the fluctuations of the gold market, not the managerial efforts of [the coin seller]") (cleaned up).

*Second*, Plaintiffs allege that purchasers of GYEN had the opportunity to earn yield on third-party cryptocurrency platforms *other than Binance and Coinbase*. SAC ¶¶ 71–85. But those allegations are irrelevant to this case because *Plaintiffs* did not purchase GYEN on those platforms. The question here is whether *Plaintiffs' alleged transactions* involving GYEN are investment contracts. *See Ripple*, 2023 WL 4507900, at *8–12. This Court in *Ripple* held that the alleged sale of digital assets to programmatic purchasers were not investment contracts because "[e]ach transaction must be analyzed and evaluated on the basis of the content of the instruments in question." *Id.* (quoting *Marine Bank*, 455 U.S. at 560 n.11). Here, there are no allegations that Plaintiffs – who allege that they purchased on Binance and Coinbase –reasonably expected to earn any yield, let alone that they actually earned any such yield. *See* SAC ¶¶ 19–21 (alleging that Plaintiffs bought GYEN on the basis that the GYEN was pegged 1-to-1 to the JPY and not alleging that they bought to earn yield or actually earned yield).

### B. Plaintiffs' Section 12 Claim Fails Because Plaintiffs Did Not Purchase GYEN From GMO Trust.

All of the named Plaintiffs in this case purchased the GYEN at issue in the secondary

market – that is, from third parties – and *not* from GMO Trust.[6] None of the Plaintiffs allege that they purchased GYEN directly from GMO Trust. *See* SAC ¶¶ 19–21. The fact that Plaintiffs purchased from third parties rather than GMO Trust is not happenstance; it is integral to their claims.

The fact that Plaintiffs did not purchase GYEN from GMO Trust is fatal to their claim under Section 12 of the Securities Act because that Act only confers a private right of action on purchasers in the *primary* offering market – that is, with respect to an issuer of securities, "the person purchasing such security *from him*." 15 U.S.C. § 77l (emphasis added). Put differently, to be liable under Section 12 of the Securities Act, the defendant must be a "statutory seller." *Pinter v. Dahl*, 486 U.S. 622, 641–42 (1988); *see also Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988). The Supreme Court has narrowly defined statutory sellers as those who either (1) sell directly to the plaintiff, or (2) actively solicit the sale to the plaintiff to serve its own financial interests or those of the security owner. *Pinter*, 486 U.S. at 642. While the SEC has broad authority to bring claims under Section 5 of the Securities Act against any issuers of unregistered securities, the private right of action under Section 12 is considerably narrower and limited to those who buy from "statutory sellers." *See Levitt v. J.P. Morgan Secs., Inc.*, 9 F. Supp. 3d 259, 274 (E.D.N.Y. 2014).

Liability under the first prong is limited to "immediate sellers." *In re Orion Secs. Litig.*, 2009 WL 2601952, at *2 (S.D.N.Y. Aug. 20, 2009). Plaintiffs do not contend that GMO Trust sold "directly" to them, nor could they, given that each Plaintiff purchased in the secondary market. *Pinter*, 486 U.S. at 644 n.21 ("[R]emote purchasers are precluded from bringing actions against

---

[6] Plaintiffs Kassfy and Brambl's transactions took place on Coinbase. ECF Nos. 46-3 and 50. On information and belief, Plaintiff Donovan's May 2021 transactions occurred on Binance. ECF No. 46-1.

remote sellers" and "a buyer cannot recover against his seller's seller."); *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *2–*3 (S.D.N.Y. Feb. 22, 2021) (dismissing Section 12 claims where, among other things, plaintiffs purchased in the secondary market rather than as part of an issuer's initial offering); *Garnett v. RLX Tech., Inc.*, 632 F. Supp. 3d 574, 613–14 (S.D.N.Y. 2022) (dismissing Section 12 claims against issuer where Plaintiffs did not purchase from it directly); *Steed Fin. LDC v. Nomura Secs. Intern., Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) (dismissing Section 12 claims against issuer defendants where the issuers did not sell directly to plaintiffs).

To plead the second prong, a plaintiff must plausibly allege that a defendant was a "direct and active participa[nt] in the solicitation of the immediate sale." *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 523 (S.D.N.Y. 2016) (citation omitted); *see also Capri*, 856 F.2d at 478–79 (to qualify as a statutory seller, "plaintiffs must show that [defendant] *actually solicited* their investment" (emphasis added)). Moreover, "district court decisions in this circuit consistently have held that persons are not liable under § 12 for solicitation unless they directly or personally solicit the buyer." *Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 581 (S.D.N.Y. 1996) (collecting cases); *cf. F.W. Webb v. State Bank & Tr. Co.*, 2010 WL 3219284, at *16 (S.D.N.Y. Aug. 12, 2010) (finding no solicitation liability where alleged seller "did not have any direct contact with" purchasers).

Here, Plaintiffs allege no direct contact with GMO Trust prior to their purchases of GYEN on third-party exchange trading platforms. *See Holsworth*, 2021 WL 706549, at *3. Instead, Plaintiffs allege that GMO Trust solicited their purchases of GYEN "by their dissemination of the GYEN White Paper . . . and its advertising and marketing of GYEN on various platforms aimed directly at investors, including GMO Trust's website, LinkedIn, Twitter, YouTube, and through

an interview by CEO Nakamura on a website popular with retail investors." SAC ¶ 129. Even assuming the statements alleged in the SAC were solicitations, they fall well short of Plaintiffs' obligations under the law: GMO Trust's "marketing materials" and other statements about GYEN in the GYEN White Paper and on social media do not qualify as *direct* solicitation of any *particular* individual purchasers. *See Youngers*, 195 F. Supp. 3d at 522–23 (defendants who "made marketing materials available on 'their website and other channels'" were not "statutory sellers" under Section 12); *see also Lozada v. TaskUs, Inc.*, 2024 WL 68571, at *18 (S.D.N.Y. Jan. 5, 2024).

*Holsworth* is instructive. There, the court dismissed a Section 12 claim brought against a digital asset issuer and its officers because of the plaintiff's failure to adequately plead solicitation. 2021 WL 706549, at *1, *3. The plaintiff alleged that the defendants had "continuous[ly] and systematic[ally] market[ed] the" tokens, but the court rejected these allegations and instead held that the plaintiff's failure to allege that he "was directly contacted by Defendants" was fatal to his claim. *Id.* at *3; *see also Underwood v. Coinbase Glob., Inc.*, 654 F. Supp. 3d 224, 237–38 (S.D.N.Y. 2023) (dismissing Section 12 claims because plaintiff alleged only that defendant Coinbase had engaged in "marketing efforts, 'materials,' and services'" and not that Coinbase had "direct and active participation in the solicitation of the immediate sale"), *rev'd in part on other grounds sub nom. Oberlander v. Coinbase Glob., Inc.*, 2024 WL 1478773 (2d Cir. Apr. 5, 2024). The same is true here, and Plaintiffs' failure to allege direct contact in the solicitation of the immediate sale defeats the second prong of the statutory seller definition. *See Capri*, 856 F.2d at 478–79.

In any event, Plaintiffs' Section 12 claim also fails because the statements alleged in the SAC cannot reasonably be read to be "active solicitation[s] of *an offer to buy*." *See Pinter*, 486

U.S. at 645 (emphasis added).[7] Though Plaintiffs rely on a handful of statements that discuss a purchaser's ability to earn interest on GYEN or hedge it against the dollar, these statements of GYEN's "purported value proposition" are not solicitations. *See Underwood*, 654 F. Supp. 3d at 239. The remaining statements alleged in the SAC are, by and large, descriptions of the function of the GYEN or of GMO Trust's relationships with non-party cryptocurrency platforms rather than attempts to "urge or persuade" a purchaser "to buy" GYEN. *See Ryder Intern. Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1532–33 (11th Cir. 1991); *see, e.g.*, SAC ¶ 48 (quoting video posted to GMO Trust's LinkedIn and YouTube describing GYEN as "the first stablecoin pegged 1:1 to the Japanese YEN"); *id.* ¶ 50 (citing White Paper for the general statement that GMO Trust partners with unnamed cryptocurrency platforms to list GYEN); *id.* ¶ 76 (citing interview with Mr. Nakamura in which he is alleged merely to "discuss[]" GMO Trust's "partnership" with a cryptocurrency platform); *id.* ¶ 77 (alleging Mr. Nakamura retweeted a post that says only that GMO Trust partners with a cryptocurrency platform and that does not mention GYEN); *id.* ¶ 78 (quoting tweet from GMO Trust observing that "liquidity pools" had been created on cryptocurrency platforms); *id.* ¶ 84 (alleging that Mr. Nakamura retweeted a GMO Trust post "promoting" a cryptocurrency platform that Plaintiffs do not allege listed GYEN). These allegations are insufficient as a matter of law to establish solicitation, and the Court should dismiss the Section 12 claim.

[7] Plaintiffs' allegation that GMO Trust "offer[ed] purchasers incentives to buy through exchanges, such as 7 percent interest returns on GYEN deposits and rewards of up to 12% annual percentage yield" cannot establish solicitation with respect to Plaintiffs' purchases, because Plaintiffs do not allege that GMO Trust ever offered similar incentives to encourage purchases through Binance or Coinbase, the only two platforms at issue here. *See* SAC ¶ 71; *see Griffin v. PaineWebber, Inc.*, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) ("[Plaintiff] must allege . . . that [defendant] actively solicited investors *with respect to this transaction* . . ." (emphasis added)).

## II. PLAINTIFFS' STATE LAW CLAIMS FAIL FOR LACK OF SUBJECT MATTER JURISDICTION AND ON THEIR ELEMENTS.

Plaintiffs allege four state law claims: under New York law, claims for false advertising and for deceptive business practices, and under California law, claims for false advertising and for unfair competition. SAC ¶ 1; New York General Business Law ("N.Y. GBL") §§ 349 and 350; California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; California False Advertising Law, Cal. Bus. & Prof. Code § 17500. Plaintiffs' state law claims should be dismissed for lack of subject matter jurisdiction and because they are substantively deficient pursuant to Rules 12(b)(1) and 12(b)(6).

### A. The Court Lacks Subject Matter Jurisdiction Over This Action Upon Dismissal of the Securities Act Claim.

Plaintiffs assert that this Court has jurisdiction over the state law claims solely on the basis of supplemental jurisdiction. *See* SAC ¶ 14 (citing 28 U.S.C. § 1367). Because Plaintiffs' federal claim fails as a matter of law, this Court lacks subject matter jurisdiction over the remaining claims. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) ("This Court and the Supreme Court have held that when the federal claims are dismissed the state claims should be dismissed as well.") (quotations omitted).

### B. Plaintiffs' California Claims Do Not Meet the 9(b) Heightened Pleading Standard.

Plaintiffs' claims under Cal. Bus. & Prof. Code §§ 17200 and 17500 do not meet the heightened pleading standard under Fed. R. Civ. Proc. 9(b), as they must. *See Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *22–23 (N.D. Cal. Feb. 26, 2020). Plaintiffs do not allege what specific advertisements they saw and when and how they relied on those statements in making their GYEN purchase. Rather, the SAC makes only vague references to a "national marketing campaign" and "numerous and widespread public statements." *See, e.g.*, SAC ¶¶ 12, 42. The SAC

references the "white paper," videos on YouTube, LinkedIn and a website, *see, e.g.*, SAC ¶¶ 48, 64, but there is no well-pled allegation that Plaintiffs here read or viewed these materials. *See e.g.*, *Williams v. Apple*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020) (for claims under California's false advertising and unfair competition law, plaintiff must allege that he actually saw and relied on the alleged misrepresentations); *Yumul v. Smart Balance Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (unfair competition claims fail where plaintiff failed to allege when she saw or heard the particular representations upon which her claim was based).

**C. Plaintiffs Do Not Adequately Allege Reliance.**

All of Plaintiffs' state law claims require them to show that they actually *saw* and relied upon the allegedly misleading statements. *See Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 765 (C.D. Cal. 2022) (only statements relied upon by plaintiff are actionable under California's unfair competition and false advertising laws); *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020) (plaintiffs must allege that they saw the allegedly misleading statements before purchasing under N.Y. G.B.L. §§ 349 and 350); *Grossman v. GEICO Cas. Co.*, 2022 WL 1656593 at *3 (2d Cir. May 25, 2022). As a threshold matter, many of the alleged "misrepresentations" in the SAC occurred *after* the alleged injuries to Plaintiffs in November 2021, *see, e.g.*, SAC ¶¶ 76–85 (alleging misrepresentations in, *e.g.*, September 2022 and June 2023), necessarily foreclosing any argument that Plaintiffs relied on those misrepresentations for their 2021 purchases. Moreover, as described above, Plaintiffs do not adequately allege that they actually saw or relied on any of the purported misrepresentations.

**D. The State Law Claims are Inapplicable to Securities Transactions.**

All four of Plaintiffs' state law claims fail because the relevant statutes do not apply to securities transactions.

Both of Plaintiffs' California claims must be dismissed because California Business & Professions Code "§§ 17200 and 17500 do not extend to actions that relate to securities transactions." *Zakinov*, 2020 WL 922815 at *21–22; *Bowen v. Ziasun Techs. Inc.*, 116 Cal. App. 4th 777, 788 (Cal. Ct. App. 2004) ("Section 17200 does not apply to securities transactions."). Plaintiffs here allege that the transactions at issue, namely the purchase of GYEN cryptocurrency, were securities transactions. *See* SAC ¶¶ 54–95, 128.

For the New York claims, Plaintiffs are required to show that the alleged misconduct was "consumer-oriented," which securities transactions are not. *See Gray v. Seaboard Secs., Inc.*, 14 A.D. 3d 852 (3d Dep't 2005); *In re Tether & Bifinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 131 (S.D.N.Y. 2021).[8] As the court in *Gray* explained, securities are already highly regulated by specific federal and state laws and it is therefore doubtful that the legislature intended N.Y. GBL §§ 349 and 350 to apply to securities transactions. Other courts have adopted this same reasoning. *See, e.g.*, *Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236 (S.D.N.Y. 2012) (weight of authority supports conclusion that N.Y. GBL § 349 is unavailable for securities-related transactions); *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 284 (S.D.N.Y. 2014) (noting that it is questionable whether the New York legislature intended to give securities investors an added measure of protection beyond the federal securities acts); *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 341–42 (W.D.N.Y. 2012) (same); *Pew v. Cardarelli*, 2009 WL

---

[8] Plaintiffs also fail to allege that the transactions at issue took place in New York, as they must for claims under N.Y. GBL §§ 349 and 350. *See People ex rel. Spitzer v. Direct Revenue, LLC*, 862 N.Y.S. 2d 816 (2008).

3165759 at *5–6 (N.D.N.Y. Sept. 29, 2009) (same); *Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 747 N.Y.S. 2d 676, 682 (2002) (finding N.Y. GBL § 349 inapplicable to securities claims in part because it is already a highly regulated industry).

In addition, NY GBL §§ 349 and 350 were modeled on the Federal Trade Commission Act (FTCA) and should be interpreted in light of that regime. *See, e.g.*, *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 120 (N.Y. Ct. App. 2008) (N.Y. GBL §§ 349 and 350 are a "mini-FTC act"); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y. 2d 314, 325 (N.Y. Ct. App. 2002) (N.Y. GBL § 350 borrows substantive standards from FTCA); *Goldberg v. Manhattan Ford Lincoln-Mercury, Inc.*, 429 N.Y.S. 2d 318, 321 (N.Y. Sup. Ct. 1985) (noting that N.Y. GBL §§ 349 and 350 are intended to parallel the FTCA and that legislature intended to adopt "identical requirements" to the FTCA). Because the FTCA does not apply to securities transactions, neither should NY GBL §§ 349 and 350. *See, e.g.*, *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 391 (9th Cir. 1988) (noting that the FTCA has not been applied in a securities context since the 1920s and finding that Hawaii's "baby FTCA act" does not apply to claims arising from securities transactions). Indeed the Second Circuit recently affirmed dismissal of claims under Connecticut's unfair trade practices statute (similar to New York's GBL § 349) for exactly this reason. *See Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 232–33 (2d Cir. 2023) (holding that Connecticut unfair trade practices statute (CUTPA) did not apply to securities transaction because CUTPA was to be interpreted in light of the FTCA which does not regulate deceptive conduct in transactions that otherwise fall under the comprehensive regulatory umbrella of the SEC). Comprehensive regulatory systems already exist for securities and commodities

transactions. The conduct alleged here is not the type that N.Y. GBL §§ 349 and 350 was intended to regulate.

### E. GMO Trust Is Not Alleged To Have Made Any Materially Misleading Misrepresentations Or Omissions.

Even if Plaintiffs had alleged consumer-oriented conduct, they have not alleged that GMO Trust made any misrepresentations or omissions that would mislead a reasonable consumer. This too forecloses all four of plaintiffs' claims under New York and California law. *See Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1187 (N.D. Cal. 2021) (California false advertising and unfair competition claims fail where no misrepresentation); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (Cal. Ct. App. 2011) (California false advertising and unfair competition claims fail where nothing likely to mislead reasonable consumer); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189 (S.D.N.Y. 2018) (New York GBL §§ 349 and 350 claims fail where no material misrepresentation likely to mislead reasonable consumer).

At the outset, GMO Trust did not make any misrepresentations. GMO Trust's statements about GYEN's potential use cases, that the GYEN was intended to be pegged 1-to-1 with fiat currency, and that each GYEN is always redeemable for 1 JPY are true, and Plaintiffs cannot plead otherwise. Such statements do not imply that no third party would ever *sell* GYEN for more than the price of 1 JPY. GMO Trust did not advertise that any purchaser would have the right to redeem GYEN at any time for whatever price they had paid for it. *See* SAC ¶ 53.

In any event, under both New York and California law, for a statement or omission to be materially misleading, a plaintiff must allege that the challenged conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances. *See Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310–311 (S.D.N.Y. 2017), *aff'd sub nom. Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43 (2d Cir. 2018); *Stewart v. Kodiak*

*Cakes LLC*, 537 F. Supp. 3d 1103, 1137–38 (S.D. Cal. 2021). It is not enough that an individual plaintiff was confused or injured. Rather, the inquiry is objective and may be resolved as a matter of law on a motion to dismiss. *Kommer*, 252 F. Supp. 3d at 311.

Indeed, courts have dismissed such claims where, for example, a plaintiff alleged he was misled that pre-packaged orthotic inserts were actually custom-fit based on an in-store kiosk recommendation or where a plaintiff alleged she was misled about the number of sweet potato fries in a bag that was more than 50% empty space. *See Kommer*, 252 F. Supp. 3d at 313; *Kennard v. Lamb Weston Holdings*, 2019 WL 1586022 at *5 (N.D. Cal. Apr. 12, 2019); *see also Suero v. NFL*, 2022 WL 17985657 at *10–12 (S.D.N.Y. Dec. 16, 2022) (a reasonable person would not be misled by the name and logos to believe that the New York Giants played in New York City, rather than New Jersey, particularly when that person physically attended the game in New Jersey). Likewise, Plaintiffs here fail to allege that anything GMO Trust did would have been misleading to a reasonable person acting objectively reasonably under the circumstances.

Plaintiffs allege that they would not have purchased GYEN or would not have purchased GYEN at the price they did if they had known it was not pegged 1:1 to the JPY. *See* SAC ¶¶ 143, 161. But this information was obvious at the time of their purchase and "[a]ssuming a reasonable consumer might ignore the evidence plainly before him attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable." *Kommer*, 252 F. Supp. 3d at 311–12. The same was true in *Suero* where plaintiffs alleged that the name and logos of the New York Giants and MetLife Stadium materially misled the public into believing the team played in New York City, but the plaintiff's injury stemmed from their physical attendance at these games. A reasonable person would "necessarily realize – before stepping on the train at Penn Station or driving through the Lincoln Tunnel – that he was, in fact, heading to New Jersey." *Suero*, 2022

WL 17985657, at *12. Plaintiffs here, at the time they purchased the GYEN for greater than the price of 1 JPY, are like the football fan driving through the Lincoln Tunnel and then complaining that they were misled to believe the game was in New York City.

As described above, a reasonable consumer would not understand GMO Trust to have promised that the GYEN would *never* be sold by anyone at a higher price than 1:1, rather than that it was always *redeemable* at 1:1. But even if they had, a reasonable consumer acting reasonably under these circumstances would have realized that the GYEN was trading above the value at which it was redeemable at the time of the purchase. Plaintiffs' actions represent either willful blindness of facts that were plainly available to them or a "daredevil" attempt to "amass [a] fortune[ ] overnight", SAC ¶ 38, by betting that the fluctuations would continue. Either way, plaintiffs fail to allege that GMO Trust's conduct was likely to mislead a reasonable person acting reasonably under the circumstances.

The key in *Kommer*, *Kennard*, *Suero*, and other similar cases is that the relevant information was plainly available to the plaintiff and thus a reasonable person acting reasonably under the circumstances would not have been misled to believe in a reality that contradicted the readily apparent facts before them. The same is true here. There is nothing hidden about the price plaintiffs chose to pay for GYEN and how that compared, at the time they paid it, to the USD/JPY exchange rate and GMO Trust's statements that the GYEN would always be redeemable for 1 JPY. Plaintiffs fail to allege anything materially misleading to a reasonable actor.

**F. Plaintiffs Fail to Allege Causation.**

Finally, Plaintiffs fail to allege that any misstatements or omissions by defendants caused their injuries. *See, e.g.*, *Miller v. Wells Fargo Bank NA*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) (N.Y. G.B.L. § 349 claim failed where plaintiff did not plead how defendants' actions caused them

to pay more than they should have for a product). As described above, the SAC alleges that the GYEN was intended to be pegged 1:1 with the JPY. The price that Plaintiffs paid for the GYEN at the time of purchase and the exchange rate between the JPY and the dollar were readily available public information. Plaintiffs fail to show how any alleged misrepresentation by defendants caused them to overpay for the GYEN. *See also Kommer*, 252 F. Supp 3d at 311 (causation element not met for N.Y. G.B.L. §§ 349 and 350 claims where plaintiff could have learned the truth for himself but instead ignored evidence plainly before him); *Stewart*, 537 F. Supp. 3d at 1135–36 (plaintiff must allege misrepresentation was immediate cause of injury to sustain California false advertising or unfair competition claim).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice.

Dated: May 23, 2024

Respectfully submitted,

*/s/ Nowell D. Bamberger*

Heather S. Nyong'o (admitted *pro hac vice*)
(hnyongo@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
650 California Street Suite 2000
San Francisco, CA 94108
T: 415-796-4480

Nowell D. Bamberger (admitted *pro hac vice*)
(nbamberger@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
T: 202-974-1752

Samuel Levander
(slevander@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2951

*Attorneys for Defendant GMO-Z.com Trust Company, Inc.*