UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH DONOVAN, HUSSIEN KASSFY, and JOHN BRAMBL, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

GMO-Z.COM TRUST COMPANY, INC.,

Defendant.

No. 1:23-cv-08431-AT
Hon. Analisa Torres

**ORAL ARGUMENT REQUESTED**

**GMO-Z.COM TRUST COMPANY, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. Plaintiffs' Section 12 Claim Fails | 2 |
| A. Plaintiffs Do Not Adequately Allege That They Purchased Securities. | 2 |
| B. Plaintiffs Fail To Adequately Allege That GMO Trust Is A Statutory Seller | 8 |
| II. Plaintiffs' State Law Claims Fail As A Matter Of Law | 10 |
| A. Plaintiffs' New York Claims Fail As A Matter Of Law | 10 |
| B. Plaintiffs' California Claims Fail As A Matter Of Law | 14 |
| C. Plaintiffs Fail To Plead Subject Matter Jurisdiction Over The State Law Claims Upon Dismissal Of The Federal Claims | 15 |
| III. The Complaint Should Be Dismissed With Prejudice | 15 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airbag Control Units Prods. Liab. Litig.*,
601 F. Supp. 3d 625 (C.D. Cal. 2022) .......... 15

*Balestra v. ATBCoin LLC*,
380 F. Supp. 3d 340 (S.D.N.Y. 2019) .......... 6

*Banco Espanol de Credito v. Sec. Pac. Nat. Bank*,
763 F. Supp. 36 (S.D.N.Y. 1991) .......... 7

*Barron v. Helbiz Inc.*,
2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023) .......... 11

*Capri v. Murphy*,
856 F.2d 473 (2d Cir. 1988) .......... 8, 10

*Clean Coal Techs., Inc. v. Leidos, Inc.*,
377 F. Supp. 3d 303 (S.D.N.Y. 2019) .......... 5

*Daniel v. Mondelez Int'l, Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) .......... 12

*DeAngelis v. Corzine*,
17 F. Supp. 3d 270 (S.D.N.Y. 2014) .......... 11

*Derbaremdiker v. Applebee's Intern., Inc.*,
2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) .......... 12

*Dimond v. Darden Rests., Inc.*,
2014 WL 3377105 (S.D.N.Y. July 9, 2014) .......... 13

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
2023 WL 3570017 (S.D.N.Y. May 18, 2023) .......... 11

*Ellison v. Am. Image Motor Co.*
36 F. Supp. 2d 628 (S.D.N.Y. 1999) .......... 8

*Friel v. Dapper Labs*,
657 F. Supp. 3d 422 (S.D.N.Y. 2023) .......... 6

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
756 F.2d 230 (2d Cir. 1985) .......... 7

*Gordon v. Target Corp.*,
2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) .......... 14

*Harris v. Pfizer Inc.*,
586 F. Supp. 3d 231 (S.D.N.Y. 2022) .......... 13

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
37 N.Y.3d 169 (2021) .......... 11

*Holsworth v. BProtocol Found.*,
2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) .......... 9

*In re Tether & Bitfinex Crypto Asset Litig.*,
576 F. Supp. 3d 55 (S.D.N.Y. 2021) .......... 11

*In re Vivendi Universal, S.A.*,
381 F. Supp. 2d 158 (S.D.N.Y. 2003) .......... 10

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991) .......... 5

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x 5 (2d Cir. 2012) .......... 14

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020) .......... 14

*Marine Bank v. Weaver*,
455 U.S. 551 (1982) .......... 3, 7

*Miramontes v. Ralph Lauren Corp.*,
2023 WL 3293424 (S.D.N.Y. May 5, 2023) .......... 14

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .......... 15

*Owen v. Elastos Foundation*,
2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021) .......... 10

*Pearl v. Coinbase Global, Inc.*,
2024 WL 3416505 (N.D. Cal. July 15, 2024)........................................................ 14

*Pinter v. Dahl*,
486 U.S. 622 (1988)........................................................................................ 9

*Revak v. SEC Realty Corp.*,
18 F.3d 81 (2d Cir. 1994)................................................................................ 5

*SEC v. Binance*,
2024 WL 3225974 (D.D.C. June 28, 2024)........................................................ *passim*

*SEC v. Coinbase, Inc.*,
2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024)...................................................... 5

*SEC v. Ripple Labs Inc.*,
682 F. Supp. 3d 308 (S.D.N.Y. 2023)............................................................... 2, 3

*SEC v. Terraform Labs Pte. Ltd.*,
684 F. Supp. 3d 170 (S.D.N.Y. 2023)............................................................... 3-4, 5

*SEC v. W.J. Howey Co.*,
328 U.S. 293 (1946)........................................................................................ 4

*Shain v. Duff & Phelps Credit Rating Co.*,
915 F. Supp. 575 (S.D.N.Y. 1996).................................................................... 9

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)............................................................................ 15-16

*Tarpon Bay Partners LLC v. Zerez Holdings Corp.*,
79 F.4th 206 (2d Cir. 2023)............................................................................. 11

*Underwood v. Coinbase Glob.*,
654 F. Supp. 3d 224 (S.D.N.Y. 2023)............................................................... 9

*Youngers v. Virtus Inv. Partners Inc.*,
195 F. Supp. 3d 499 (S.D.N.Y. 2016)............................................................... 8, 9

*Zakinov v. Ripple Labs, Inc.*,
2020 WL 922815 (N.D. Cal. Feb. 26, 2020)...................................................... 10

**Rules and Statutes**

15 U.S.C. § 77l.................................................................................................... 2, 8, 9

N.Y.G.B.L. § 349.................................................................................................... 10, 11, 14

N.Y.G.B.L. § 350.................................................................................................... 10, 11, 12, 14

Fed. R. Civ. P. 9(b).................................................................................................... 8

## PRELIMINARY STATEMENT

As explained in GMO Trust's Motion to Dismiss ("MTD"), Plaintiffs' entire theory of this case is hopelessly at odds with itself. Plaintiffs contend that they expected profits based on GMO Trust's efforts when they purchased GYEN, but simultaneously argue that GMO Trust misled them into believing that the price of GYEN would remain stable. Plaintiffs also argue, despite having purchased their GYEN on secondary-market trading platforms at prices that were plainly and openly displaced from 1:1 parity with the JPY, that GMO Trust somehow misled them into believing that such a break in parity on those third-party platforms was impossible. Nobody who bought GYEN when it was at parity with the JPY lost money, and at all relevant times GMO Trust itself has always sold and redeemed GYEN at parity with the JPY. The crux of Plaintiffs' complaint is that when they purchased from or sold GYEN to *other people* in the *secondary market*, they transacted at prices above the price of JPY—despite GMO Trust not controlling or participating in those transactions.

Each claim in the SAC fails on its elements. Plaintiffs concede that purchases of a stablecoin like GYEN standing alone are not investment contracts, which is fatal to their federal securities claims. Plaintiffs try to muddy the waters by arguing that their purchases of GYEN were investment contracts based on other hypothetical transactions that they could have (but did not actually) use their GYEN to enter into. But Supreme Court and Second Circuit precedent holds that the question of whether transactions constitute investment contracts must focus on the specific transactions alleged. The question is not whether Plaintiffs could have used their GYEN in connection with investment contracts entered into with others, but whether by purchasing GYEN they entered into an investment contract with GMO Trust. They did not. Plaintiffs' concession that GMO Trust itself did not sell to or directly solicit Plaintiffs' purchases makes clear under

controlling authority that GMO Trust is not a statutory seller under Section 12 of the Securities Act.

Plaintiffs' state law consumer protection claims fare no better. These claims are premised on the argument that GMO Trust somehow misled Plaintiffs into thinking that GYEN would remain at dislocated prices that temporarily existed on certain third-party platforms unaffiliated with GMO Trust. But Plaintiffs identify no statement ever made by GMO Trust about such third-party transactions. Rather, what they point to are statements in which GMO Trust said that Plaintiffs could purchase and redeem their GYEN at parity directly from GMO Trust—which Plaintiffs do not allege was ever false (and was in fact true). Plaintiffs' pleadings make clear that they purchased GYEN on third-party platforms at a time when it was readily apparent that their prices were dislocated. Therefore, no reasonable purchaser would have believed GYEN to be at parity on those platforms. Plaintiffs' state law claims fail for several additional reasons, including because the SAC fails to allege "consumer-oriented" conduct and causation.

## ARGUMENT

### I. PLAINTIFFS' SECTION 12 CLAIM FAILS.

#### A. Plaintiffs Do Not Adequately Allege That They Purchased Securities.

Plaintiffs' first fundamental error is asserting that GYEN itself is an "investment contract." Opp. at 6. Courts have consistently held that digital assets such as GYEN are not themselves investment contracts. *SEC v. Ripple Labs Inc.*, 682 F. Supp. 3d 308, 324 (S.D.N.Y. 2023) ("XRP, as a digital token, is not in and of itself a contract, transaction, or scheme that embodies the *Howey* requirements of an investment contract."); *SEC v. Binance*, 2024 WL 3225974, at *10 (D.D.C. June 28, 2024) ("The Court finds it necessary to distinguish between the digital coins themselves and the offers to sell them."). Rather, the court must analyze the specific transactions that form the basis for Plaintiffs' alleged relief, and determine whether those transactions meet the

requirements for an "investment contract" under the *Howey* test. *Marine Bank v. Weaver*, 455 U.S. 551, 560 n.11 (1982) ("Each transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole."); *Binance*, 2024 WL 3225974, at *20 (focusing on the "particular transaction" and engaging in separate analysis of initial sales by the issuer, later sales by the issuer, and secondary market sales by third parties); *Ripple*, 682 F. Supp. 3d at 324 ("The Court shall separately analyze and evaluate each category of transaction.").

Plaintiffs try to move the goalposts by arguing that the required focus on Plaintiffs' specific transactions introduces an improper "subjective" test. *See* Opp. at 11–13. Not so. The *Howey* test is objective, but it must focus on the reasonable expectations of purchasers engaged in the specific transactions alleged in the complaint. In *Ripple*, this court recognized that *Howey* did not require "a search for the precise motivation of each individual participant," but examined the reasonable expectations of different groups of specific purchasers based on the specific characteristics of their transactions. 682 F. Supp. 3d at 329 ("*[W]ith respect to Programmatic Sales*, Ripple did not make any promises or offers because Ripple did not know who was buying the XRP, and the purchasers did not know who was selling it." (emphasis added)).

Framing the inquiry properly, Plaintiffs cannot plead that the transactions actually at issue in this case—their purchases of GYEN stablecoin tokens—satisfy the *Howey* test:

***Expectation Of Profits.*** No reasonable purchaser could have expected profits from purchases of a stablecoin like GYEN. Plaintiffs do not contest this point, and therefore concede that stablecoin transactions standing alone do not give rise to an expectation of profits. *Binance*, 2024 WL 3225974, at *24 (finding no reasonable expectation of profits "when the alleged defining feature of the 'stablecoin' was that its value would remain constant"); *SEC v. Terraform Labs Pte.*

*Ltd.*, 684 F. Supp. 3d 170, 194 (S.D.N.Y. 2023) ("[W]here a stablecoin is designed exclusively to maintain a one-to-one peg with another asset, there is no reasonable basis for expecting that the tokens . . . would generate profits through a common enterprise."). This concession is decisive here because the only relevant transactions that form the basis of alleged liability are Plaintiffs' purchases of stablecoins. *See, e.g.*, SAC ¶¶ 19–21.

Unable to dispute that premise, Plaintiffs instead suggest that they expected profits from two types of hypothetical transactions that they do not allege having entered into and that are not at issue in this case: (1) yield available to *other* purchasers on *different* exchanges and (2) "strategic currency management" activities like hedging. Opp. 9–11. Both arguments fail.

*First*, Plaintiffs' allegations that other platforms might have paid yield for the deposit of GYEN on those platforms do not point to a plausibly alleged investment contract here. *See supra* at I.A. For one, Plaintiffs nowhere allege that *they* entered into such transactions. Further, just as the nursery that sells orange trees does not become the issuer of an investment contract even if those trees are planted as part of an investment scheme, *see SEC v. W.J. Howey Co.*, 328 U.S. 293, 295–301 (1946), GMO Trust as the seller of a stablecoin was not a party to any subsequent transaction purchasers of those coins entered into with third parties.

The recent *Binance* decision illustrates why Plaintiffs' yield theory does not work. In *Binance*, the defendant was a digital asset trading platform that issued the stablecoin BUSD. 2024 WL 3225974, at *24–25. The defendant sold BUSD on its own trading platform and allegedly "marketed BUSD's profit-earning potential," including by offering yield to purchasers who kept their BUSD on the platform. *Id.* at *25. However, as *Howey* requires, the court assessed these yield programs independently from the alleged securities transactions, which were purchases of the stablecoin BUSD. *Id.* Because the complaint did not allege "that any or all of these individual

programs available to BUSD purchasers satisfies the criteria of an investment contract," they did not transmute the initial purchase of the stablecoin itself into an investment contract. *Id.*[1] Similarly here, plaintiffs do not allege that the yield programs were themselves investment contracts.

Plaintiffs cite to *Coinbase* and *Terraform*, Opp. at 10, but those cases undercut their theory. *Terraform* makes clear that standalone stablecoin transactions are *not* investment contracts, and the stablecoins in that case conferred rights to purchase other digital assets that were "yield-bearing investments whose value would grow in line with the Terraform blockchain ecosystem." 684 F. Supp. 3d at 194. And in *Coinbase*, which did not include any allegations related to stablecoins, the SEC alleged that Coinbase's yield-bearing staking program itself constituted an unregistered securities offering, not that its existence transformed a separate digital asset purchase into an investment contract. *SEC v. Coinbase, Inc.*, 2024 WL 1304037, at *32 (S.D.N.Y. Mar. 27, 2024).

Plaintiffs try to further obfuscate this point by suggesting that GYEN can be an investment contract based on the existence of an "ecosystem." Opp. at 12 (citing *Terraform* and *Coinbase*). But Plaintiffs do not allege anywhere in the SAC that GYEN was part of any such "ecosystem," and they cannot constructively amend their deficient pleadings by means of their Opposition.[2] In any event, this "ecosystem" theory conflicts with binding Second Circuit case law holding that "collateral agreements" do not form the basis of an expectation of profits. *Revak v. SEC Realty*

---

[1] The *Binance* court also held that plaintiff had not plausibly alleged that defendant sold BUSD as an investment contract because of a failure to plead the "common enterprise" element of *Howey* because plaintiff did not allege that holders of BUSD would share in any returns defendant earned on pooled assets. 2024 WL 3225974, at *25. This reasoning in *Binance* provides an independent ground on which this court could dismiss. *See, e.g.*, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

[2] *See, e.g.*, *Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019) ("It is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

*Corp.*, 18 F.3d 81, 89 (2d Cir. 1994) (rejecting this argument where "the purchase of . . . [the] condominium was [not] in any way conditioned upon participation in a rental arrangement."). And *Binance* rejected this exact argument because the complaint did not allege how the "ecosystem made BUSD more profitable when the alleged defining feature of the 'stablecoin' was that its value would remain constant." 2024 WL 3225974, at *24.

*Second*, Plaintiffs' "strategic currency management" argument does not show an expectation of profits because any profits obtained by hedging or arbitrage would be derived from the efforts of the person engaged in these trading strategies, not the efforts of GMO Trust, and would not arise from the transactions that form the basis of Plaintiffs' complaint. Opp. at 10–11. Plaintiffs try to argue that any profits from "strategic currency management" would rely on GMO Trust's "managerial efforts to ensure that GYEN remained pegged to the JPY." *Id.* at 11. But any such profits would arise from a subsequent hedging or arbitrage transaction, not Plaintiffs' purchases of GYEN from GMO Trust. And GMO Trust's alleged efforts to ensure that GYEN remained stable definitionally could not have created profits for Plaintiffs.

Plaintiffs' efforts to distinguish *Key Futures* and *Belmont-Reid* also fall flat. Plaintiffs argue that both cases involved assets which "derive their value solely from independent economic factors," and argue that the "value" of GYEN is managed by GMO Trust. Opp. at 11. But here, as in *Key Futures* and *Belmont-Reid*, any hedging or arbitrage profits would come from market forces and traders' efforts and skill to accurately predict the movement of those market forces. Neither *Balestra v. ATBCoin LLC*, 380 F. Supp. 3d 340, 357 (S.D.N.Y. 2019), nor *Friel v. Dapper Labs*, 657 F. Supp. 3d 422, 448 (S.D.N.Y. 2023), is on point—both cases involved allegations that the issuers of the relevant digital assets (cryptocurrency offered in an ICO and NFTs, respectively)

engaged in efforts to increase the value of those assets, not stablecoins whose issuers allegedly engaged in efforts to maintain price stability.

***Investment of Money***. Unable to plead a "risk of loss" as required for the investment of money prong of the *Howey* test, *see* MTD at 11 (citing *Marine Bank v. Weaver*, 455 U.S. 551, 558–59 (1982)), Plaintiffs instead brush off "risk of loss" as a "non-existent requirement." Opp. at 7. This argument has been squarely foreclosed by binding precedent. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 239 (2d Cir. 1985) ("In *Marine Bank v. Weaver*, the Supreme Court added a further limiting requirement to the *Howey* test: for an instrument to be a security the investor must risk loss.").

Plaintiffs argue in the alternative that they were exposed to "risk of loss" because they in fact suffered losses buying GYEN on secondary market trading platforms. But the question is not whether Plaintiffs suffered a loss in the end, but whether when they purchased the GYEN tokens in the first place an objective purchaser would have understood they were subjecting themselves to a risk of loss. *See Banco Espanol de Credito v. Sec. Pac. Nat. Bank*, 763 F. Supp. 36, 44 (S.D.N.Y. 1991), *aff'd*, 973 F.2d 51 (2d Cir. 1992) (holding participations in bank loans that resulted in losses fail investment of money prong because purchasers only took on "ordinary commercial risks taken by everyday lenders and not the longer-term, more fundamental risk characteristic of the true investment"). Indeed, the plaintiffs in *Marine Bank* suffered a loss, but the Court nonetheless found that the FDIC-insured instrument at issue did not feature an inherent risk of loss, and therefore was not a security. 455 U.S. at 552–54, 558–59. By Plaintiffs' own allegations, a reasonable purchaser of GYEN tokens would have expected the price of those tokens to remain stable and thus neither expected appreciation nor risked losses. SAC ¶ 51.

### B. Plaintiffs Fail To Adequately Allege That GMO Trust Is A Statutory Seller.

Plaintiffs' Section 12 claim independently fails because they plead neither of the grounds to be a statutory seller.[3] Plaintiffs concede that they "d[id] not allege purchasing GYEN tokens directly from GMO Trust," and therefore that GMO Trust is not a direct seller. Opp. at 15. Plaintiffs argue only that GMO Trust acted as a "solicitor seller." *Id.* But Plaintiffs' solicitation allegations come up short as a matter of law because they do not allege GMO Trust's direct and active involvement in the solicitation of their purchases. *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (to qualify as a statutory seller, "plaintiffs must show that [defendant] actually solicited their investment"); *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 523 (S.D.N.Y. 2016) (plaintiff must plausibly allege that a defendant was a "direct and active participa[nt] in the solicitation of the immediate sale").

Plaintiffs concede that they had no direct or personal contact with GMO Trust prior to purchasing their GYEN tokens on third-party trading platforms. Opp. at 16; *see also id.* at 12 (GMO Trust's alleged soliciting statements "were not limited to a select group of GYEN investors"). Plaintiffs instead attempt to rely on general public statements by GMO Trust about GYEN that were not directed at Plaintiffs specifically. Opp. at 16–17 (arguing GMO Trust solicited Plaintiffs by disseminating the White Paper and making unspecified statements online); *see, e.g.*, SAC ¶¶ 51 (White Paper describing functionality and value proposition of the GYEN); 76 (retweet by GMO Trust's CEO about the availability of GYEN liquidity pools); 84 (retweet by GMO Trust's CEO "promoting" a trading platform Plaintiffs do not allege listed GYEN and "the

[3] Plaintiffs argue that Rule 9(b)'s heightened pleading standard does not apply here because their allegations do not contemplate fraudulent conduct. Opp. at 18. But that response blinks reality because the SAC alleges that GMO Trust "willful[ly] and knowing[ly]" "misled" purchasers. *See* SAC ¶¶ 53, 144; *see also Ellison v. Am. Image Motor Co.*, Inc., 36 F. Supp. 2d 628 (S.D.N.Y. 1999) (holding Section 12(a)(1) claim subject to Rule 9(b) based on fraud-like allegations in connection with other claims).

role of stablecoins" generally); 97 (GMO Trust announcing "partnership" with Binance). None of these statements urged Plaintiffs to buy tokens on third-party digital asset trading platforms.

Plaintiffs' attempts to rely on these general public statements would contravene the plain language of the Securities Act, which restricts the private right of action against a person "to the person purchasing such security from him." 15 U.S.C. § 77l(a); *see Pinter v. Dahl*, 486 U.S. 622, 642 (1988) ("[T]he language of § 12(1) [of the Securities Act] contemplates a buyer-seller relationship not unlike traditional contractual privity.").

Moreover, the Second Circuit has never held that solicitation can be pleaded through these types of mass internet communications. To the contrary, "district court decisions in this circuit consistently have held that persons are not liable under § 12 for solicitation unless they directly or personally solicit the buyer." *Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 581 (S.D.N.Y. 1996) (collecting cases); *see also Holsworth v. BProtocol Found.*, 2021 WL 706549, at *2–3 (S.D.N.Y. Feb. 22, 2021) (dismissing Section 12 claim because Plaintiff failed to allege that he "was directly contacted by Defendants"); *Underwood v. Coinbase Glob.*, 654 F. Supp. 3d 224, 237–38 (S.D.N.Y. 2023) (dismissing Section 12 claim where Plaintiff did not allege Defendant had "direct and active participation in the solicitation of the immediate sale"); *Youngers*, 195 F. Supp. 3d at 522–23 (defendants who merely "made marketing materials available on 'their website and other channels'" were not "statutory sellers"). General "marketing efforts" short of "direct and active participation in the solicitation of the immediate sale" cannot survive a motion to dismiss. *Underwood*, 654 F. Supp. 3d at 237–38.

Brushing aside decades of consistent Second Circuit authority as a "red herring," Opp. at 18, Plaintiffs rely instead on *Owen v. Elastos Foundation*, 2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021), where the alleged solicitation was far more direct and personal than alleged here. To

encourage secondary market sales, the defendants in *Owen* participated in "more than 15 events and speaking engagements in at least eight cities across the United States," 2021 WL 5868171, at *15, held multiple "meetup[s]" with potential investors during which they promoted their token, *id.* at *4, and made speeches directed at potential investors at multiple conferences, *id.* at *4.

The other cases cited by Plaintiffs similarly involved direct and personal solicitation of a kind that is not alleged here. *See Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (finding solicitation where seller's agent was in direct communication with plaintiff); *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 186–87 (S.D.N.Y. 2003) (defendant "regularly appeared before investors . . . to tout the financial vitality of" company); *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *1 (N.D. Cal. Feb. 26, 2020) (defendants "hosted conferences concerning XRP's use," among other things, to solicit purchases). This direct solicitation is absent from the SAC. Far from alleging that GMO Trust and its executives pitched the GYEN to specific purchasers, Plaintiffs allege only that GMO Trust's CEO participated in an interview on a "popular retail investor website," GMO Trust disseminated its White Paper online, and GMO Trust posted about the GYEN on its various social media accounts. *See* Opp. at 17; SAC ¶¶ 76, 129.

## II. PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW.

### A. Plaintiffs' New York Claims Fail As A Matter Of Law.

Plaintiffs' claims under New York GBL §§ 349–50 fail for a variety of reasons.

*First*, Plaintiffs framed their GBL Section 349 and 350 claims as relating to their alleged purchase of securities. *See* SAC ¶ 128. There is thus nothing "paradoxical" about GMO Trust pointing out that those claims, on their face, fail because GBL Sections 349 and 350 apply only to "consumer oriented" transactions, not the securities transactions that Plaintiffs plead.

Even if Plaintiffs conceded that they did not allege any securities transactions in GYEN, their GBL Section 349 and 350 claims would still fail because GBL Sections 349 and 350 also do

not apply to other types of non-consumer transactions such as those in commodities. *See DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 284 (S.D.N.Y. 2014) (holding GBL Sections 349 and 350 do not apply to commodities transactions).

As Plaintiffs do not contest, the GBL is modeled after the FTCA, and the Second Circuit has held that other state statutes modeled after the FTCA do not apply to securities or commodities transactions. *See Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 232–33 (2d Cir. 2023). Plaintiffs ignore this body of case law and instead argue that *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 176–77 (2021), which did not address securities or commodities transactions at all, is "controlling," Opp. at 20. But Plaintiffs concede that courts after *Himmelstein* have held that GBL Sections 349 and 350 do not apply to digital asset sales because such transactions are not consumer-oriented. *See Barron v. Helbiz Inc.*, 2023 WL 5672640, at *15 (S.D.N.Y. Sept. 1, 2023). The only other decision cited by Plaintiffs addressed financial *services*, not digital assets. *See Edmar Fin. Co., LLC v. Currenex, Inc.*, 2023 WL 3570017, at *20 (S.D.N.Y. May 18, 2023). And even if this Court were to expand the reach of GBL Sections 349 and 350 to include transactions in digital assets, these sections would only apply to consumers, not investors, in digital assets, *see In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 131 n.54 (S.D.N.Y. 2021), and the SAC makes clear that the putative class members allege to have purchased GYEN as investors, *see, e.g.*, SAC ¶ 7 ("Plaintiffs bought GYEN tokens with the expectation that Defendant's efforts to maintain the GYEN's 1-to-1 peg to the Japanese yen would allow it to realize profits on its GYEN investments.").

*Second*, Plaintiffs cannot plead any misrepresentation, which is the sole basis of their GBL claims. Plaintiffs assert that GMO Trust "misrepresent[ed] that GYEN was pegged to the JPY at

a 1-to-1 ratio, . . . omit[ted] that GYEN was not pegged to the JPY or that it could become unpegged from the JPY (particularly after the first depegging event), and . . . fail[ed] to fully disclose GYEN's nature, volatility, and risk." Opp. at 20. But as explained below, none of these purported misstatements would be misleading to the reasonable consumer. *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189 (E.D.N.Y. 2018) (New York GBL §§ 349 and 350 claims fail where no material misrepresentation is likely to mislead a reasonable consumer).

Plaintiffs assert the following alleged misrepresentations:

- ***"Defendant claims to back GYEN with a historically stable fiat currency and markets it as a stable asset that can 'virtually eliminate volatility.'" Opp. 20–21.*** But none of the cited statements by GMO Trust in paragraphs 4 and 47 of the SAC discuss historical stability. GMO Trust's qualified statement about eliminating volatility was consistent with the possibility of short-term price dislocations, and at no time was there a price dislocation for anyone buying or redeeming GYEN directly with GMO Trust. In any event, no purchaser could reasonably have been misled into believing that they were purchasing at a stable price when it was readily apparent that the price was dislocated. *See* MTD at 24–25.

- ***"GYEN could be purchased and redeemed on a 1-to-1 basis with the JPY, either directly from Defendant or by trading with other digital assets on exchanges listing stablecoins." Opp. 21.*** Plaintiffs fail to explain how this statement is misleading—Plaintiffs were able to redeem GYEN directly from GMO Trust on a 1-to-1 basis at all times. The terms of the GYEN sales—including the right to redeem any purchased GYEN directly with GMO Trust—were fully disclosed, and therefore cannot give rise to a claim. *See Derbaremdiker v. Applebee's Intern., Inc.*, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012) ("New York courts have dismissed claims for having failed to satisfy this element where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to the plaintiff.").

- ***"[GMO Trust] engag[ed] in a national marketing campaign touting GYEN as a 'stablecoin' that would remain pegged 1-to-1 with the JPY." Opp. at 21.*** The SAC makes clear that in this statement, GMO Trust was discussing the peg specifically in the context of direct purchases and redemptions from GMO Trust, which was accurate at all times. *See* SAC ¶ 49 ("the exchange rate for GYEN/JPY . . . will always be 1:1 through GMO-Z.com Trust Company's official Purchase/Redemption process").

- ***"[O]ne could 'always redeem 1 GYEN for 1 JPY . . . directly with GMO Trust, or by trading with other digital assets on exchanges that list the stablecoins.'" Opp. at 21.*** This statement is also limited to direct purchases and redemptions from GMO Trust.

Unable to plead any false statements, Plaintiffs pivot to arguing that their theory is one about omissions, not misrepresentations. Opp. at 22. Plaintiffs argue that GMO Trust failed to tell Plaintiffs that GYEN might be sold by third parties at prices that differed from the 1:1 peg to JPY. But Plaintiffs presumably knew the prices at which they purchased, and the price of a foreign currency like JPY is readily ascertainable. Therefore, "Plaintiff has not alleged facts to demonstrate that he could not 'reasonably obtain'" the information claimed to be omitted. *Dimond v. Darden Rests., Inc.*, 2014 WL 3377105, at *13 (S.D.N.Y. July 9, 2014). Indeed, Plaintiffs purchased GYEN during periods of price volatility that any reasonable investor would know did not reflect the price of JPY. *See, e.g.*, ECF 46-2 (asserting two-day declines from $0.039 to $0.010, or a 74% drop). Moreover, Plaintiffs' assertion that GMO Trust "withheld from investors that GYEN was likely to break from its peg to the JPY" and "omit[ed] material facts that it was almost certain to break its peg," Opp. at 21–22, goes nowhere because predictions about future risks and uncertainties are not actionable as a matter of law. *See Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 244 (S.D.N.Y. 2022) (dismissing GBL Section 349 claim over omitted product contamination risk where there was a risk of defect but defendant did not have knowledge of actual defect).

*Third*, Plaintiffs do not meaningfully dispute that any purported false statements were not the cause of their injuries or that they relied on any purported misrepresentations. Their only response is to point to conclusory allegations in the SAC that they bought "as a result of" GMO Trust's representations. Opp. at 22–23. But that is plainly not sufficient: "Plaintiffs must allege that they saw the misleading statements of which they complain before they purchased." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020); *Gordon v. Target Corp.*, 2022 WL 836773, at *13 (S.D.N.Y. Mar. 18, 2022) (dismissing GBL Section 349 and 350

claims where plaintiff "failed to allege that she relied on any representations made on the Product's label in purchasing the Product").

*Finally*, Plaintiffs fail to plead that any of their transactions occurred in New York and thus their GBL claims fail the New York-nexus requirement. *See Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8 & n.1 (2d Cir. 2012) (holding location of *transaction*, not parties, is determinative and dismissing GBL claims for failure to allege "intrastate transactions in New York"). Plaintiffs allege that they entered into transactions on the digital platforms Coinbase and Binance, but fail to plead that those are intrastate transactions in New York. *See Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *5 (S.D.N.Y. May 5, 2023) (failure to plead nexus "dooms" GBL claim).

### B. Plaintiffs' California Claims Fail As A Matter Of Law.

Plaintiffs' UCL and FAL claims suffer from the same facial defect as their GBL claims because Plaintiffs plead them as securities-based, not consumer-oriented, claims. *See* MTD at 21. Plaintiffs' California claims also fail on their elements. The recent decision in *Pearl v. Coinbase Global, Inc.*, 2024 WL 3416505, at *4 (N.D. Cal. July 15, 2024), dismissing UCL and FAL claims is directly on point.[4] In *Pearl*, plaintiffs alleged that the defendant platform misrepresented the volatility of a stablecoin. The court held that plaintiffs failed to plead any affirmative misrepresentations because the context made clear that it did not guarantee a safe investment. *See id*. Similarly, any allegations that GYEN maintained parity with the JPY were not misleading in the context of GMO Trust's discussion of direct purchases and redemptions. *See Moore v. Trader*

[4] *Pearl* was decided after GMO Trust submitted the Motion, and before Plaintiffs submitted their Opposition. The same counsel that represents Plaintiffs here also represented plaintiffs in *Pearl*, so they were on notice of the decision when they filed the Opposition.

*Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (noting court may look to "other information readily available to the consumer that could easily resolve" ambiguity in allegedly misleading statements).

Plaintiffs are also incorrect that they have adequately pleaded reliance, which is a required element. *See Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 765 (C.D. Cal. 2022). Plaintiffs point out conclusory allegations that Plaintiffs purchased as a result of GMO Trust's statements, but fail to explain how that is plausible, let alone reasonable. As a threshold matter, many of the alleged "misrepresentations" in the SAC occurred *after* the alleged injuries to Plaintiffs in November 2021, *see, e.g.*, SAC ¶¶ 76–85 (alleging misrepresentations in, *e.g.*, September 2022 and June 2023), necessarily foreclosing any argument that Plaintiffs relied on those misrepresentations for their 2021 purchases. And to the extent Plaintiffs were aware of statements about volatility prior to purchasing, Plaintiffs knew or should have known that the price of GYEN was dislocated from the price of JPY at the time of purchase.

### C. Plaintiffs Fail To Plead Subject Matter Jurisdiction Over The State Law Claims Upon Dismissal Of The Federal Claims.

Plaintiffs do not contest that supplemental jurisdiction is the only basis for jurisdiction over the state law claims asserted in the SAC. *See* Opp. at 27–28. Instead, Plaintiffs argue only that jurisdiction is proper under CAFA, which was concededly not pleaded in the SAC. *See* Opp. at 28 (asking the court to amend the SAC's jurisdictional allegations *sua sponte*). Plaintiffs may not cure this pleading failure in their opposition to the motion to dismiss.

## III. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs have already had three opportunities to plead claims against GMO Trust; they should not be given a fourth opportunity more than two years after their initial complaint. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) (district court did not abuse discretion dismissing complaint with prejudice where plaintiff had one prior opportunity to amend).

Dated: August 21, 2024

Respectfully submitted,

*/s/ Nowell D. Bamberger*

Heather S. Nyong'o (admitted *pro hac vice*)
(hnyongo@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
650 California Street Suite 2000
San Francisco, CA 94108
T: 415-796-4480

Nowell D. Bamberger (admitted *pro hac vice*)
(nbamberger@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
T: 202-974-1752

Samuel Levander
(slevander@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2951

*Attorneys for Defendant GMO-Z.com Trust Company, Inc.*