**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENNETH DONOVAN, HUSSIEN KASSFY, and JOHN BRAMBL individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GMO-Z.COM TRUST COMPANY, INC.,<br><br>Defendant. | Case No. 1:23-cv-08431-SDA<br><br>Honorable Stewart D. Aaron |

**DECLARATION OF ELIZABETH A. KRAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1. I am a founding partner at the law firm of Erickson Kramer Osborne LLP ("EKO"), counsel of record for Plaintiffs Kenneth Donovan and Hussien Kassfy (collectively, "Plaintiffs"[1]). Plaintiffs are also represented by the law firm Berman Tabacco. I respectfully submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Motion"). I make the following declaration based on my own personal knowledge, unless otherwise indicated. If called upon to testify, I could and would competently affirm as follows.

2. On May 13, 2022, Plaintiffs Donovan and Kassfy, through my firm, jointly filed a class action complaint in the United States District Court for the Northern District of California, captioned as *Donovan, et al. v. GMO-Z.com Trust Co., Inc., et al.*, Case No. 3:22-CV-02826-TLT (N.D. Cal.), against defendant GMO-Z.com Trust Company, Inc. ("GMOT" or "Defendant") and former co-defendants Coinbase Global, Inc. and Coinbase Inc. (collectively, "Coinbase") on behalf of themselves and a putative class of those similarly situated.

3. In July 2022, Plaintiffs, along with Non-Settling Plaintiff John Brambl ("Brambl"), successfully moved for appointment as lead plaintiffs (and EKO as lead counsel) pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B), (*id.*, ECF Nos. 33, 43, 45) and filed an amended complaint on August 25, 2022, to formally name Brambl as an additional plaintiff.[2]

4. On October 6, 2022, GMOT and Coinbase each filed motions to dismiss and motions to compel arbitration and Plaintiffs opposed. Upon the filing of these motions, all

---

[1] All capitalized terms referenced in this declaration have the same meaning ascribed to them in the Stipulation and Agreement of Settlement, attached hereto as Exhibit 1.

[2] Brambl is not a resident of New York or California and is not a party to the present settlement. He entered a separate individual settlement on December 11, 2025, which does not affect the class action settlement proposed here.

discovery was automatically stayed pursuant to the PSLRA.

5. On January 6, 2023, the Northern District of California district court denied GMOT's motion to compel arbitration. It ruled that Coinbase's arbitration agreement contained a valid delegation clause and enforced Coinbase's arbitration agreement, compelling Plaintiffs Kassfy and Brambl to arbitrate their defenses to the enforcement of Coinbase's arbitration agreement. It otherwise stayed the litigation, including the litigation of claims against GMOT. Pursuant to that ruling, my firm spent the next nine months actively engaged in initiating arbitral proceedings against Coinbase and litigating the arbitrability issue on behalf of Plaintiffs Kassfy and Brambl.

6. During this time, the parties simultaneously conferred regarding Plaintiffs' claims against GMOT, as the district court had found that those claims were not subject to arbitration. The parties eventually reached agreement and filed a joint stipulation seeking an order severing and transferring the claims against GMOT to the United States District Court for the Southern District of New York. The district court ordered the severance of claims against GMOT and transferred the case from the Northern District of California to the Southern District of New York, where the case was assigned to the Hon. Analisa Torres.

7. Following the transfer of the case to this District, the parties agreed upon terms of a joint stipulation to lift the stay and enter a stipulated schedule relating to the filing of Plaintiffs' proposed second amended complaint and a briefing schedule on a related motion to dismiss. After the Court entered a corresponding order, counsel met and conferred throughout March 2024 regarding the proposed amended complaint. GMOT initially objected to the filing of the proposed second amended complaint, indicating Plaintiffs would need to seek leave of court. However, after further meet and confer efforts, GMOT consented to the filing of the second

amended complaint in early April 2024.

8. On April 8, 2024, Plaintiffs filed their Second Amended Complaint against GMOT, asserting claims under Sections 5 and 12 of the Securities Act, Sections 349 and 350 of New York's GBL ("New York Claims"), and California's UCL and FAL ("the California Claims"). ECF 109 ("SAC"). On May 23, 2024, GMOT moved to dismiss the SAC in its entirety, and Plaintiffs opposed. ECF 113, 117. On February 17, 2025, the Court granted in part and denied in part GMOT's motion, dismissing Plaintiffs' Securities Act claims and allowing the New York Claims and the California Claims to proceed. *Id.*

9. Prior to initiating this action, my firm and Berman Tabacco conducted a significant investigation that included: (i) a review and analysis of press releases and other public statements by and about the GYEN, GMOT, and crypto exchanges including Coinbase and Binance; (ii) a review and analysis of media reports about the GYEN, GMOT, Coinbase, and Binance; (iii) other publicly disclosed reports and information about the GYEN, including publicly available GYEN pricing, trade volume, and transaction data; and (iv) consultation with consulting experts. Plaintiffs' counsel also conducted interviews with more than 50 GYEN investors who claimed losses caused by the GYEN de-peg.

10. On April 3, 2025, the parties exchanged Fed. R. Civ. P. 26(a)(1) initial disclosures. On April 18, 2025, Plaintiffs served their first set of Rule 34 requests for production of documents. On April 30, 2025, Defendant served its first set of Rule 34 requests for production of documents, followed by its first set of Rule 33 interrogatories on May 30, 2025. On July 30, 2025, Defendant served its second set of Rule 34 requests and Rule 33 interrogatories. The parties met and conferred at length and in good faith on responses and productions.

11. In July and August 2025, GMOT initially produced preliminary sets of documents. After ongoing meet-and-confer discussions, in early September 2025, GMOT produced approximately 3,000 additional pages.

12. Plaintiffs also conducted third-party discovery, issuing subpoenas in April 2025 to non-party exchanges seeking transaction data related to the litigation. Coinbase, the primary exchange for all GYEN transactions, initially refused to produce any documents, resulting in extended meet and confer efforts that appeared to be headed toward discovery motion practice. In August and September 2025, Coinbase eventually agreed to produce (and did produce) data documenting all GYEN transactions on that platform for the period before and after GYEN de-pegged in 2021 (November 10, 2021 through December 16, 2021). We consulted with expert consultants experienced in securities and cryptocurrency litigation to analyze the Coinbase data, as well as other publicly available blockchain transaction data, informing Plaintiffs' position on damages and in future settlement negotiations.

13. On September 10, 2025, pursuant to the Court's July 9, 2025 order (ECF 142), the parties participated in a settlement conference before Magistrate Judge Hon. Stewart D. Aaron. Prior to the settlement conference, the parties prepared and submitted mediation statements detailing their respective positions. Plaintiffs provided a settlement demand to GMOT based on the information gained to that point through investigations, discovery, and expert consultations.

14. While the action did not settle at the settlement conference, over the next several weeks the parties continued shuttle negotiations with Judge Aaron's oversight. In October 2025, the parties ultimately agreed on terms to resolve the case for $6,750,000, subject to approval by the Court. On October 2, 2025, to facilitate Rule 23 approval and with the consent of the parties, the case was reassigned to Judge Aaron. On October 10, 2025, the parties executed a term sheet

setting forth the principal terms of the proposed settlement documented herein.

15. Attached hereto as **Exhibit 1** is a true and correct copy of the proposed Stipulation and Agreement of Settlement (the "Stipulation and Agreement" or "S.A."). The Stipulation includes the following exhibits:

a. Exhibit A: Notice of Proposed Class Action Settlement (one version of the long form notice, two versions of the short form notice, and mockups of the publication notice) (collectively, "Notice")

b. Exhibit B: Proof of Claim and Release Form ("Claim Form")

c. Exhibit C: Proposed Preliminary Approval Order

d. Exhibit D: Proposed Final Approval Order

Other than a standard confidential supplemental agreement that provides that, if Settlement Class Members opt out of the Settlement beyond a certain threshold, Defendants have the option to terminate the Stipulation, no other agreements were made in connection with the proposed Settlement that impact relief to the class.

16. Plaintiffs worked with a damages consultant to develop an equitable plan to allocate the funds available to class members under the Settlement. Attached hereto as **Exhibit 2** is a true and correct copy of the Plan of Allocation that Plaintiffs propose. The Plan of Allocation proposes calculating a "Recognized Loss" estimate for each purchase of de-pegged GYEN by taking the difference between the price a Settlement Class Member paid for GYEN and the comparable Japanese yen/U.S. dollar exchange rate on the particular day of the Settlement Class Period. For a Settlement Class Member to have had a Recognized Loss under the Plan of Allocation, they must have purchased GYEN at a price that was greater than the then-current exchange rate and have a net loss on any subsequent sale. *See* Ex. 2. Each Authorized Claimant

shall receive a *pro rata* share of the Net Settlement Fund to the extent such Authorized Claimant would receive $10.00 or more. Thus, I am informed and believe that the Plan of Allocation provides an equitable and reasonable method for calculating an Authorized Claimant's Recognized Loss and distributing the Net Settlement Fund among Authorized Claimants who suffered economic losses as a result of purchasing GYEN when it was not pegged to the Japanese yen.

17. Plaintiffs also worked with a damages consultant to assess potential damages in this case. To do so, we obtained data files from Coinbase in response to subpoenas containing tens of millions of data points, including all GYEN transaction times and prices from November 10 to December 16, 2021, during which a key GYEN de-pegging event occurred on Coinbase. The calculation involved comparing the GYEN prices in Coinbase's transaction records to the Japanese yen/U.S. dollar exchange rate and pinpointing Settlement Class Members' transactions that occurred off the 1:1 peg. Subsequent GYEN transactions for off-peg purchasers were then tracked to determine which accounts suffered losses caused by the de-peg. From that limited data set, Plaintiffs, in consultation with the damages consultant, identified thousands of California and New York accounts that incurred aggregate losses of approximately $31 million.[3]

18. Some number of GYEN transactions at issue in this litigation may have occurred on de-centralized exchanges. Cryptocurrency transactions on de-centralized cryptocurrency exchanges are, by their nature, impossible to track. Thus, the complete universe of GYEN transactions by New York and California investors (besides Coinbase investors) is unknowable at this time. Nevertheless, it is my understanding based on publicly available information

[3] Plaintiffs expressly reserve the right to amend this estimate after further review and analysis, if necessary

regarding GYEN trading and communications with Defendant's counsel and counsel for Coinbase, that the estimated $31 million in losses described above represents a reasonable estimate of the Settlement Class's total recoverable damages in this case. This is based on, among other things, the indications that: (a) over 80 percent of all GYEN trades *ever* occurred during the period from November 10 to December 16, 2021;[4] (b) GMOT was not party to any over-the-counter transactions for GYEN where it was de-pegged from the Japanese yen; and (c) there were only two other exchanges, Liquid and INX, where GYEN was traded at the time of the 2021 de-peg and, combined, these two exchanges accounted for less than 0.1% of Coinbase's daily trading volume (with New York residents unable to trade on that platform at relevant times). Thus, it is my understanding that a substantial majority of GYEN trades at issue in this litigation occurred on the Coinbase exchange in November-December 2021, and the information captured in Coinbase's data set form that period represents a similarly large majority of the total losses at issue in this litigation. Therefore, the $31 million in estimated damages likely represents a substantial portion of the total damages recoverable by the Settlement Class in this case.

19. Plaintiffs have subpoenaed additional data from Coinbase covering the class period, including Settlement Class Member trade data and contact information. I anticipate that the Claims Administrator will use this data to identify all Settlement Class Members who were Coinbase customers. For these individuals, direct notice will be provided via email to the email addresses maintained by Coinbase. Some investors traded outside of the centralized exchanges and their contact information and transaction data is presently unknown. The Claims Administrator has proposed a comprehensive notice program, described in its own declaration,

---

[4] Historical pricing data can be downloaded and analyzed using Coingecko's historical data tool, available at https://www.coingecko.com/en/coins/gyen. Data collected from this tool shows that over 82% of all GYEN trades since January 2021 occurred in the window from November 10 to December 16, 2021.

filed herewith, to make a best effort to reach those investors.

20. Plaintiffs Donovan and Kassfy, and Non-Settling Plaintiff Brambl have adequately represented the Settlement Class. At the outset of litigation, they signed written acknowledgements of their duties as class representatives, and each of them has sought to fulfill those duties throughout the course of this case. Among other things, Plaintiffs and Non-Settling Plaintiff Brambl invested substantial time in investigating, developing, and assisting counsel in drafting the allegations and causes of action set forth in the complaint. All three have reviewed the allegations in all versions of the complaint, provided information and documents to counsel to assist in the investigation and prosecution of the action, made themselves available answer questions from counsel and to stay informed on the status of the action, and conferred with counsel regarding the potential strengths and weaknesses of the claims asserted in this action and the potential risks and rewards of the Settlement compared to pursuing further litigation. On May 26, 2022, following the filing of the initial complaint, Plaintiff Donovan was interviewed by a national news publication regarding the case, further demonstrating his commitment to vigorously prosecute this action. See James Fanelli, Crypto Industry Sees Surge in Lawsuits as Investor Losses Pile Up, THE WALL STREET JOURNAL (June 1, 2022).

21. Plaintiffs (excluding Brambl) fall within the proposed Settlement Class and are not aware of any conflicts between themselves and any other class members. Nor do they have any unique claims beyond those that they share with the other class members. Thus, it is my belief that they are adequate and typical class representatives and that they have diligently pursued this action on behalf of the class.

22. Erickson Kramer Osborne LLP and co-counsel at Berman Tabacco have and will continue to adequately represent the Class in this case if approved by the Court. Both firms have

decades of experience in the management and litigation of complex nationwide class actions, including cases on behalf of investors arising from financial fraud and violations of the federal securities laws and cases involving cryptocurrency and stablecoins specifically. Erickson Kramer Osborne LLP and Berman Tabacco have also successfully prosecuted class and collective actions involving consumer protection, workers' rights, sexual abuse, and privacy. As disclosed in the Long Form Notice, Plaintiffs will seek attorneys' fees of approximately one-third of the settlement amount (or $2,250,000) plus expenses of no more than $110,000 through a separate motion that will be supported by documentation of hours, rates, and expenses. Plaintiffs also intend to seek service awards of $7,500 each for Plaintiffs and Non-Settling Plaintiff Brambl. Attached hereto as **Exhibit 3** is a true and correct copy of the firm resume for Erickson Kramer Osborne LLP. Attached hereto as **Exhibit 4** is a true and correct copy of the firm resume for Berman Tabacco.

23. At the time the Settlement was reached, there were significant risks facing Plaintiffs with respect to establishing both liability and damages, as well as risks with respect to class certification. In agreeing to settle this Action, Plaintiffs and Plaintiffs' Counsel weighed, among other things, the substantial and certain cash benefit to the Settlement Class against (i) the difficulties involved in proving elements such as materiality, falsity, and damages; (ii) GMOT's likely challenges to class certification and the delays involved in the inevitable appeals of class certification; (iii) the fact that, even if Plaintiffs prevailed at summary judgment and trial, any monetary recovery could have been less than the Settlement Amount and the delays that would follow even a favorable judgment including appeals. Plaintiffs and Plaintiffs' counsel also considered the numerous defenses asserted by GMOT on the merits. GMOT has already argued, for example, that Plaintiffs cannot show they actually relied on statements made by

GMOT, that GMOT made no material misrepresentations or omissions, and that there was no causal link between the GMOT's statements or omissions and Plaintiffs' harm. GMOT has denied, and continues to deny, each and every claim and factual inference asserted by Plaintiffs in the SAC.

24. While Plaintiffs believe they would be able to prove all elements of their claims, success was far from guaranteed. Indeed, GMOT had already been successful in dismissing Plaintiffs' Securities Act claims. Additionally, to prove its claims and establish compensable damages, Plaintiff would need to rely extensively on expert witnesses on damages. If the trier of fact were to find Defendant's experts more credible, this could negatively affect Plaintiffs' claims. Moreover, if the trier of fact were persuaded by GMOT's defenses, this could potentially reduce the total compensable pool of damages substantially.

25. Plaintiffs secured the Settlement due to their vigorous efforts over the course of over three-plus years of hard-fought litigation. Because of these efforts undertaken, Plaintiffs and Lead Counsel have a deep understanding of the evidence in this action. My firm and Berman Tabacco have carefully evaluated the merits of the case and the proposed Settlement. We believe that the case was strong and that there was significant evidence to support successfully prosecuting the claims. We recognize, however, that Defendants would strenuously challenge the allegations and proof regarding each element of the causes of action, as well as class certification and damages and other equitable remedies.

26. Based on their extensive experience, we understand the risks of litigation and the fact that, even where a plaintiff's case appears strong, there is no guarantee of a plaintiffs' verdict, and that resolution through verdict and appeal can take years and is speculative. As such, both Plaintiffs and we believe that the Settlement is fair, reasonable, and adequate; and in the

best interest of the Settlement Class; and should be approved by the Court.

27. Plaintiffs have retained an experienced Claims Administrator, Simpluris, to provide Notice to the Settlement Class. *See* Declaration of Julie Meichsner of Simpluris, filed herewith.

I declare under penalty of perjury under the laws of United States that the foregoing is true and correct. This document was executed in Oakland, California on December 30, 2025.

Dated: December 30, 2025

By: */s/ Elizabeth A. Kramer*
Elizabeth A. Kramer

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of December 2025, the foregoing **DECLARATION OF ELIZABETH A. KRAMER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** as filed and served using the CM/ECF system, which will serve as notification of such filings on all counsel of record.

*/s/ Elizabeth A. Kramer*

Elizabeth A. Kramer
ERICKSON KRAMER OSBORNE LLP
959 Natoma St.
San Francisco, CA 94103
Phone: 415-635-0631
Fax: 415-599-8088
elizabeth@eko.law