**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KENNETH DONOVAN and HUSSIEN KASSFY, individually and on behalf of others similarly situated,

Plaintiffs,

v.

GMO-Z.COM TRUST COMPANY, INC.,

Defendant.

Case No. 1:23-cv-08431-SDA

Honorable Stewart D. Aaron

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## INTRODUCTION

Before the Court is a proposed Stipulation and Agreement of Settlement between Plaintiffs and Defendant GMO-Z.com Trust Company, Inc. ("GMOT" or "Defendant") (hereinafter "Settlement"). If approved, the Settlement will provide a substantial, immediate, and concrete benefit of $6,750,000 in cash to the Settlement Class—New York and California residents who purchased Defendant's GYEN cryptocurrency stablecoin during the Settlement Class Period when its price was "de-pegged" from the Japanese Yen—and will permit the Parties to avoid the significant risks, uncertainties, and expenses inherent in continuing complex class action litigation. As detailed in the concurrently filed Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Class Counsel Declaration"), Plaintiffs achieved this Settlement through sustained, diligent efforts over more than three years of hard-fought litigation, informed by a comprehensive understanding of the strengths and weaknesses of the claims and defenses in this action. Based on their extensive experience, careful evaluation of the facts and applicable law, and recognition of both the substantial recovery provided under the Settlement and the risks attendant to further litigation, Class Counsel believes that the proposed Settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23 and constitutes a meaningful result for the Settlement Class.

On January 6, 2026, this Court granted preliminary approval of the Settlement. The Court found, on a preliminary basis, that the Settlement should be approved as (a) the result of serious, extensive arm's length and non-collusive negotiations, (b) falling within a range of reasonableness warranting final approval, (c) having no obvious deficiencies, and (d) warranting distribution of Notice of the Settlement to Settlement Class Members in the manner specified in the Settlement

Agreement. Preliminary Approval Order, ECF 165 at 2-6.[1] Since that time, the Claims Administrator successfully distributed the Notice. While the opt out and objection period does not close until April 30, 2026, as of the date of this filing, no Settlement Class member has opted out of or objected to the Settlement. *See* Declaration of Julie Meichsner of Simpluris, Inc. in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement (hereinafter "Meichsner Decl."), ¶¶ 20-22.

Accordingly, Plaintiffs respectfully request the Court grant final approval of the Settlement and proposed Plan of Allocation and finally certify the Settlement Class for settlement purposes.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

GYEN is a purported "stablecoin" issued by Defendant and marketed as being pegged 1:1 to the Japanese yen, trading globally on "partner" cryptocurrency exchanges including Binance and Coinbase. Plaintiffs allege they purchased GYEN in reliance on GMOT's representations regarding its stability and investment utility. However, when GYEN began trading on Coinbase in November 2021, it quickly lost its peg, surged to over seven times the yen's value due to low liquidity, and then collapsed back to parity within days, causing investors who purchased at inflated prices to suffer losses of up to 80 percent.

On May 13, 2022, Plaintiffs filed a class action complaint in the United States District Court for the Northern District of California, captioned as *Donovan, et al. v. GMO-Z.com Trust Co., Inc., et al.*, No. 3:22-CV-02826-TLT (N.D. Cal.), against GMOT and former co-defendants Coinbase Global, Inc. and Coinbase Inc. (collectively, "Coinbase"), alleging violations of, *inter alia*, Section 349 of the New York General Business Law ("GBL"), California's Unfair

[1] The Court issued an amended Preliminary Approval Order on January 14, 2026 in order to modify the claim deadline to June 5, 2026 and reschedule the Final Approval Hearing to May 27, 2026. *See* ECF 172.

[2] The factual and procedural background of this case was outlined in connection with Plaintiffs' Motion for Preliminary Approval, ECF 160 at 2-6. For ease of reference, Plaintiffs briefly recount that history here.

Competition Law ("UCL"), Sections 5 and 12 of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), 77e(c), and 77l(a)(1) (the "Securities Act"), and multiple common law claims. ECF 2.

In July 2022, Plaintiffs and former plaintiff John Brambl[3] successfully moved for appointment as lead plaintiffs (and Erickson Kramer Osborne LLP as lead counsel) pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B), (ECF 33, 43, 45) and filed an amended complaint on August 25, 2022 (ECF 46).

On October 6, 2022, GMOT and Coinbase each filed motions to dismiss and motions to compel arbitration. *See* Class Counsel Decl., ¶ 7. Pursuant to the automatic discovery stay provisions of the PSLRA, discovery in the action was stayed pending the resolution of the motions to dismiss. *Id*. Plaintiffs opposed those motions and later sought leave to amend to add claims under California consumer protection statutes. *Id.* at ¶¶ 7-8; ECF 64. On January 6, 2023, the court compelled arbitration as to Coinbase, denied the motion as to GMOT, and stayed the action pending arbitration. ECF 78.

Because Plaintiffs' claims against GMOT were not subject to arbitration, Plaintiffs and GMOT stipulated to sever and transfer those claims to the Southern District of New York. Class Counsel Decl., ¶ 10. The Northern District of California granted the transfer order on July 13, 2023, and, on September 25, 2023, the action was transferred to this District and assigned to the Honorable Analisa Torres. *Id*.

In January 2024, Judge Torres lifted the stay (ECF 103), and, on April 8, 2024, Plaintiffs filed their Second Amended Complaint against GMOT, asserting claims under Sections 5 and 12 of the Securities Act, Sections 349 and 350 of New York's GBL ("New York Claims"), and

[3] Former plaintiff John Brambl, who is not a resident of California or New York and thus not part of the Settlement Class, settled with GMOT individually and dismissed his claims. ECF 174.

Sections 17200 and 17500 of California's UCL and False Advertising Laws ("the California Claims"). ECF 109 ("SAC"). On May 23, 2024, GMOT moved to dismiss the SAC in its entirety, and Plaintiffs opposed. ECF 113, 117. On February 17, 2025, the Court granted in part and denied in part GMOT's motion, dismissing Plaintiffs' Securities Act claims and allowing the New York Claims and the California Claims to proceed. ECF 121. On March 20, 2025, the Court set a schedule with a fact discovery deadline of September 18, 2025. ECF 127. Shortly thereafter, the Parties commenced fact and class discovery. Class Counsel Decl., ¶ 14. In addition to pursuing discovery from GMOT, Plaintiffs served subpoenas on Coinbase, the principal exchange on which GYEN traded. *Id.* at ¶ 16.

On September 10, 2025, pursuant to the Court's July 9, 2025 order (ECF 142), Class Counsel and GMOT's counsel engaged in a settlement conference before the Honorable Stewart D. Aaron. Class Counsel Decl., ¶ 17. While the action did not settle at the settlement conference, over the next several weeks the parties continued shuttle negotiations with Judge Aaron's assistance. *Id.* at ¶ 18. The parties ultimately agreed on terms to resolve the case in October 2025. *Id*. To facilitate Rule 23 approval, and with the consent of the parties, the case was reassigned to Judge Aaron on October 2, 2025. ECF 139. On October 10, 2025, the parties executed a term sheet setting forth the principal terms of the Settlement. Class Counsel Decl., ¶ 18. A settlement agreement was agreed to and signed on December 30, 2025. *Id.*

On December 30, 2025, Plaintiffs moved for preliminary approval of the Settlement and the Plan of Allocation. ECF 159 & 160. On January 6, 2026, the Court granted preliminary approval of the Settlement. ECF 165. The Court specifically found the Settlement "fall[s] within a range of reasonableness warranting final approval," has "no obvious deficiencies," and was "the result of serious, extensive arm's-length and non-collusive negotiations." *Id.* at 3. The Court also

provisionally certified the Settlement Class for settlement purposes, finding all requirements of Rule 23(a) and (b)(3) satisfied. *Id.* at 2-3. The Court appointed Simpluris, Inc. ("Simpluris") as Claims Administrator, approved the form and content of the Notice, and ordered that Notice be disseminated to the Settlement Class in accordance with the proposed notice program. *Id.* at 4-6. Finally, the Court set a final approval hearing for May 27, 2026. *Id.* at 3-4; ECF 172 at 4.[4] Plaintiffs' Motion for Attorney's Fees, Litigation Expenses, and Service Awards (the "Fee Motion") is being filed contemporaneously with this motion.

**OVERVIEW OF SETTLEMENT TERMS**

In granting preliminary approval of the Settlement, the Court provisionally certified the following Settlement Class:

> All persons who purchased or acquired GYEN in New York or California at a time when the GYEN was unpegged from the Japanese yen between December 29, 2020 and October 10, 2025, inclusive, and lost money thereby.

ECF 165 at 2. Based on the information provided by the Claims Administrator, there are approximately 33,000 known Settlement Class Members as of the date of this filing. Meichsner Decl., ¶ 7.

**A. Monetary Relief**

Under the proposed Settlement, GMOT will pay $6,750,000. ECF 161-1, Stipulation and Agreement of Settlement ("S.A."), § 1.40. This fund will be used to compensate Settlement Class Members, as well as to pay for the cost of notice and settlement administration, attorneys' fees and expenses, and Service Awards. S.A. § 6. After accounting for all Court-approved deductions for any attorneys' fees and costs, administrative expenses, and Service Awards, the Net Settlement Fund will be distributed to Settlement Class Members in accordance with the Plan of Allocation.

---

[4] The final approval hearing was originally scheduled for May 5, 2026 (ECF 165 at 3-4) but later continued to May 27, 2026 in an amended preliminary approval order (ECF 172 at 4).

Class Counsel worked with a damages consultant to develop a fair and efficient plan to allocate the funds available to Settlement Class Members under the Settlement. Class Counsel Decl., ¶ 22. Under the Plan of Allocation, each Settlement Class Member will be entitled to receive a payment derived from their "Recognized Loss Amount." *Id.*, Ex. 1, Plan of Allocation, ¶ 3. Recognized Loss Amounts are determined by calculating the difference between the price each Settlement Class Member paid for the GYEN they purchased in U.S. dollars and the actual U.S. dollar/JPY exchange rate. *Id*. at ¶ 6. Settlement Class Members who transacted on Coinbase were provided with their Recognized Loss Amounts (to the extent losses were contained within Coinbase's data) in notices that were emailed to them. *See* Meichsner Decl., Ex. B, Email Notices. If a Settlement Class Member sold their GYEN for a price above the U.S. dollar/JPY exchange rate, their Recognized Loss Amount is reduced accordingly. Class Counsel Decl., Ex. 1, ¶ 6. If the Settlement becomes effective, the Claims Administrator will determine each Settlement Class Member's *pro rata* share of the Settlement Fund based on their Recognized Loss Amount. *Id.* at ¶ 8. No distributions will be made to Settlement Class Members whose *pro rata* share is less than $10.00. *Id.* Any *de minimis* amount remaining in the Settlement Fund after payments are distributed will, with Court approval, be directed to an appropriate *cy pres* beneficiary. S.A. § 6.9.

**B. Release of Claims**

In exchange for the relief provided by the Settlement, the Settlement Class Members will release GMOT and affiliated persons and entities (*see* S.A. § 1.12) from all claims that were or could have been asserted in the SAC as well as claims that could in the future be asserted "that both arise out of or relate to any of the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the [SAC] and that relate, in any way, to the purchase, acquisition, holding, sale, or disposition of GYEN during the Class Period." S.A. § 1.37. The release also includes claims which Plaintiffs or any other Settlement Class

Members do not know or suspect to exist in their favor at the time of the release of such claims, which, if known, might have affected their decisions with respect to this Settlement. *Id.* at § 1.49.

### C. Attorney's Fees, Litigation Expenses, and Notice and Administration Costs

Consistent with the Settlement and Court's Preliminary Approval Order, Class Counsel's Fee Motion is being filed contemporaneously with this Motion, providing 14 days before the deadline for objections. *See* ECF 165 at 12. As detailed in the accompanying Fee Motion and as stated in the Notice, Class Counsel seeks a fee award of $2,250,000, or approximately one-third of the Settlement Amount, and reimbursement of litigation expenses in the amount of $86,296.51, which is below the amount specified in the Notice. *See* Meichsner Decl., Ex. C. Class Counsel also seeks service awards of $7,500 each for Plaintiffs Donovan and Kassfy as well as former plaintiff Brambl. *Id*. Denial of any of these awards does not prevent the Settlement from becoming effective, nor shall it be grounds for termination of the Settlement. S.A. § 7.

## CLASS NOTICE AND SETTLEMENT CLASS MEMBERS' REACTION TO THE SETTLEMENT

In accordance with the Court's Preliminary Approval Order, on January 12, 2026, counsel for former defendant Coinbase provided the Claims Administrator with data regarding GYEN transactions carried out on Coinbase during the relevant period. Meichsner Decl., ¶ 6. This dataset captures the vast majority of all GYEN transactions at issue in this litigation. Class Counsel Decl., ¶ 26.[5] The data included the names, account numbers, and email addresses for the approximately 55,000 individuals and entities who conducted GYEN transactions on Coinbase during the Settlement Class Period. Meichsner Decl., ¶ 6. Simpluris applied the criteria outlined in the Plan of Allocation to calculate a preliminary Recognized Loss Amount for each unique account. *Id.* at

[5] As GMOT was not party to any over-the-counter transactions involving GYEN when it was de-pegged from the Japanese yen, it does not possess any records that capture relevant transactions or identify Settlement Class Members. *See* Class Counsel Decl., ¶ 26.

¶ 7. This process resulted in identifying 33,836 individuals and entities with a Recognized Loss Amount greater than zero. *Id*. Simpluris then worked with the data to ensure it was in proper format for distributing the Notice via email, including validating email addresses. *Id.* This process resulted in identifying 32,949 valid email addresses among the 33,836 records with a preliminary Recognized Loss Amount of greater than zero. *Id.*

On February 5, 2026, Simpluris sent copies of the Email Notice to the 32,949 valid email addresses. Meichsner Decl., ¶ 8. The email campaign was highly effective. Only 447 emails (approximately 1.3%) were returned as undeliverable. In other words, Simpluris successfully distributed Notice to over 96% of known Settlement Class Members. *Id.*[6]

Notice of the Settlement was also provided through a variety of digital means including:

(1) a press release disseminated via PR Newswire's Global Crypto Basic Newsline, a web-only distribution channel targeting cryptocurrency and blockchain-focused media outlets across the United States as well as other countries, Meichsner Decl., ¶ 10(d);

(2) paid social media advertising and search advertising disseminated via Meta platforms (Facebook, Instagram), X (formerly Twitter), and Google searches directed to users whose demographics and online behaviors are similar to known class members, *id.* at ¶ 10(a)-(c); and

(3) a digital, non-fungible token ("NFT") "airdrop" form of notice sent directly to the cryptocurrency "wallets" of known GYEN investors, *id.* ¶¶ 12-16. This NFT notice was successfully delivered to 33,634 associated wallet addresses. *Id.* at ¶ 16.

---

[6] On January 16, 2026, the Claims Administrator also sent the notices and documents required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the appropriate federal and state officials. *See* Meichsner Decl., ¶ 3 & Ex. A.

In addition to a toll-free telephone line and dedicated email inbox established for this Settlement, *see* Meichsner Decl., ¶¶ 18-19, the Claims Administrator also established a Settlement Website, which hosts the Settlement Agreement, Notices, and relevant case documents, including the operative Complaint and a copy of all Court orders related to the Settlement, *id.* at ¶ 17. To date, the Settlement Website has had 12,315 page views and 6,281 unique visitors. *Id.*

The Settlement Website also features an online portal through which individuals can submit claim forms and other relevant information. For the vast majority of known Settlement Class Members, no claim form or other information is required to be eligible to receive a settlement payment. For those who transacted on Coinbase with a Recognized Loss Amount of less than $10,000 (over 98% of known Settlement Class Members, *see* Meichsner Decl., ¶ 24), the Claims Administrator will calculate their *pro rata* share of the Settlement Fund based on their reported Recognized Loss Amount and issue payment automatically.[7] Class Counsel Decl., ¶ 22 & Ex. 1, Plan of Allocation, ¶ 8; *see also* ECF 162 at ¶¶ 9, 24. These Settlement Class Members may submit documentation supporting a Recognized Loss Amount greater than the amount calculated by the Claims Administrator but are not required to. Class Counsel Decl., Ex. 1, ¶ 12; Meichsner Decl., ¶ 24; ECF 162 at ¶ 18. All Settlement Class Members are also able to provide other relevant information through the online portal such as updated contact information and their preferred method of payment. Meichsner Decl., ¶ 26; ECF 162 at ¶ 9.

Known Settlement Class Members with Recognized Loss Amounts of $10,000 or more must verify their transaction information through a short confirmation procedure via the online portal or by use of a Claim Form. Class Counsel Decl., Ex. 1, Plan of Allocation, ¶ 9; Meichsner Decl., ¶ 25; *see also* ECF 162 at ¶¶ 10-11, 20, 22 (such verification requirements are industry-

---

[7] These automatic payments are subject to a $10 minimum threshold. Class Counsel Decl., Ex. 1, ¶ 8.

standard in cryptocurrency cases to ensure underlying transaction information is complete and accurate and to prevent fraud). This group is very small, comprising just 1.3% of the known Settlement Class. *See* Meichsner Decl., ¶ 25. And though the claim period remains open until June 5, 2026, to date, the participation rate among this group is already over 5%, and it is expected to continue to increase. *Id*. Those who have not yet verified their transactions have been sent two reminder emails and will receive at least two more before the claim deadline. *Id.* at ¶ 9.

Lastly, the online portal serves as a vehicle through which individuals not captured by the Coinbase dataset may self-identify as members of the Settlement Class. ECF 162 at ¶ 19. The Claims Administrator has received 20 such submissions, which it is currently analyzing for validity. Meichsner Decl., ¶ 27. The Claims Administrator will report on the results of this process as well as the final claims numbers in advance of the Final Approval Hearing. *Id*. at ¶¶ 23, 27.

The above-described results demonstrate a highly successful notice campaign and a settlement participation rate of over 98% among known Settlement Class Members. *See* Meichsner Decl., ¶¶ 7-9, 24-25.

Finally, the reaction of Settlement Class Members has been overwhelmingly positive. While the opt out and objection period does not expire until April 30, 2026, as of the date of this filing (April 17, 2026), there have been *zero* requests for exclusion and *zero* objections from Settlement Class Members. Meichsner Decl., ¶¶ 20-22.

**THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT**

To approve a settlement under Rule 23(e)(2), the Court must consider four factors: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). Courts in the Second Circuit also traditionally consider the overlapping and complimentary "*Grinnell* Factors" as part

of their review: "(1) the complexity, expense[,] and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (internal citations omitted); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 117 (2d Cir. 2005), *superseded by rule as stated in Moses v. New York Times Company*, 79 F.4th 235, 243 (2d Cir. 2023) (applying the *Grinnell* Factors post-*Goldberger*). The relevant Rule 23(e) and *Grinnell* factors overwhelmingly favor final approval of the Settlement in this case.

### A. Plaintiffs and Their Counsel Have Adequately Represented the Class [Rule 23(e)(2)(A) & *Grinnell* Factor #3]

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (quoting Fed. R. Civ. P. 23(e)(2)(A)).

Here, Plaintiffs have adequately represented the Settlement Class. Each of them has recognized their duties as class representatives and sought to fulfill those duties throughout the course of this case. *See* Class Counsel Decl., ¶¶ 46-48. As further detailed in the accompanying Fee Motion, Plaintiffs and Brambl reviewed the allegations in all versions of the complaint, provided information and documents to counsel to assist in the investigation and prosecution of the action, and made themselves available to answer questions from counsel and to stay informed on the status of the action. *Id*. Plaintiffs also conferred with Class Counsel regarding the potential

strengths and weaknesses of the claims asserted in this action and the potential risks and rewards of the Settlement compared to pursuing further litigation. *Id.* Plaintiffs are therefore adequate class representatives who have diligently pursued this action on behalf of the Settlement Class.

Class Counsel are also more than adequate. The attorneys from Erickson Kramer Osborne LLP and Berman Tabacco have decades of experience in the management and litigation of complex nationwide class actions, including cases on behalf of consumers and investors arising from financial fraud and violations of consumer protection laws as well as cases involving cryptocurrency and stablecoins specifically. *See* Class Counsel Decl. ¶ 32; ECF 161-3 & 161-4 (Class Counsel's firm resumes).

"[T]he stage of the proceedings and the amount of discovery completed" are also pertinent to the Court's review. *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016) (citation omitted). Indeed, one of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims such that counsel has sufficient information to make informed decisions at the bargaining table. *See* Fed. R. Civ. P. 23(e)(2)(A) Adv. Comm. Note; *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02-CV-5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) ("whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement" is relevant to settlement approval).

Here, Class Counsel were well-informed during settlement negotiations due to their knowledge of the merits and potential weaknesses of Plaintiffs' claims, honed through years of litigation and informed by extensive experience. By the time this action settled, Class Counsel had already: (1) undertaken an extensive investigation of the factual and legal bases for Plaintiffs'

claims prior to commencing the action; (2) drafted a detailed complaint (ECF 1) and subsequently drafted two amended complaints (ECF 46 & 109); (3) responded to three different motions to dismiss (ECF 52, 57 & 115) and two motions to compel arbitration (ECF 51 & 59); (4) propounded discovery requests and met and conferred with GMOT regarding discovery; (5) analyzed over 3,000 pages of documents produced by GMOT; (6) analyzed files produced by Coinbase containing tens of millions of data points; (7) produced hundreds of pages of documents; and (8) engaged damages consultant experts, who analyzed millions of GYEN transactions found in publicly available blockchain data and files produced by Coinbase. Class Counsel Decl., ¶¶ 5-16.

Through those efforts and events, Class Counsel were well apprised of the strengths and weaknesses of Plaintiffs' claims and secured a settlement providing Settlement Class Members with meaningful relief. *Id*. at ¶ 19. This work further demonstrates that the Settlement Class has been adequately represented and favors settlement. *See generally Kemp-DeLisser*, 2016 WL 6542707, at *8 ("Although formal discovery had yet to occur at the time the parties engaged in settlement negotiations, Class Counsel conducted extensive investigation into the facts, circumstances, and legal issues associated with this case before agreeing to the Settlement.").

**B. The Proposed Settlement Was Negotiated at Arm's Length [Rule 23(e)(2)(B)]**

A class action settlement "will enjoy a presumption of fairness" where the settlement "is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation[.]" *In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) (citation omitted); *see also Wal-Mart*, 396 F.3d at 116.

The Court has already found the Settlement is "the result of serious, extensive arm's-length and non-collusive negotiations." ECF 165 at 3. There is ample support for this finding.

The Settlement was reached after formal, non-collusive, arm's-length negotiations facilitated by the Honorable Stewart Aaron. Class Counsel Decl., ¶¶ 18-19. Prior to reaching the Settlement, the parties vigorously litigated this action for over three years and conducted thorough investigation and discovery. *Id.* at ¶¶ 5-16. The parties, therefore, had sufficient information about the case to assess the strengths and weaknesses of the claims and the adequacy of the Settlement. *Id.* at ¶ 19; *see also Kemp-DeLisser*, 2016 WL 6542707, at *8 (stage of proceedings and amount of discovery is relevant to judicial approval of class settlement).

Based on the knowledge obtained through discovery, formal and informal investigation, and their experience litigating consumer and securities class actions, Class Counsel believes that the Settlement is fair, reasonable, and adequate. Class Counsel Decl., ¶¶ 28-29. This assessment weighs in favor of approval. *See Clark v. Ecolab, Inc.*, No. 04-CIV-4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (courts "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation") (citation omitted). Further, the involvement of Judge Aaron in the parties' mediation efforts, and the extensive negotiations that took place over the course of several weeks following the settlement conference, support a finding that the Settlement is not the product of collusion. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 477, 482 (S.D.N.Y. 2015); *see also Henry v. Little Mint, Inc.*, No. 12-CV-3996 (CM), 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) ("If the settlement was achieved through experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (alterations in original) (citation omitted). This factor favors final approval.

### C. The Settlement Provides Adequate Relief to Class Members [Rule 23(e)(2)(C) and Grinnell Factors # 1, 4-9]

The Settlement's terms reflect an excellent result for Settlement Class Members, who will receive *pro rata* shares of over four million dollars. The relief offered by the Settlement is even more favorable when considered in light of the factors delineated in Rule 23(e)(2)(C): (i) the costs, risks, and delay of trial and appeal[8]; (ii) the effectiveness of the proposed distribution and claims process; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). The Court should again find that the Settlement "fall[s] within a range of reasonableness warranting final approval" and has "no obvious deficiencies." ECF 165 at 3.

#### *1) The Costs, Risks, and Delay Drawbacks Associated with Further Litigation Are Substantial [Rule 23(e)(2)(C)(i) & Grinnell Factors # 1, 4-6]*

In contrast to the benefits conferred by the Settlement, continued litigation would have carried significant costs, risks, and delay. *See In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816 (DLC), s2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting the "general risk inherent in litigating complex claims such as these to their conclusion."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (same), *aff'd sub nom.*, 117 F.3d 721 (2d Cir. 1997).

Absent settlement, GMOT would have advanced numerous defenses to the merits of Plaintiffs' claims. Based on arguments it has already advanced, GMOT would likely argue that Plaintiffs cannot show they actually relied on statements made about GYEN, that GMOT made no false or misleading statements or omissions, and that there was no causal link between GMOT's statements or omissions and Plaintiffs' harm. ECF 115 at 20-26. While Plaintiffs believe they would be able to prove misrepresentations and causation as required under any remaining claims, success

[8] This factor subsumes *Grinnell* factors #1, 4, 5 and 6. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019).

was far from guaranteed. *See* Class Counsel Decl., ¶¶ 23-24, 28-29. Indeed, GMOT had already successfully dismissed Plaintiffs' Securities Act claims. *See* ECF 121.

Additionally, while Plaintiffs are confident the Court would certify the proposed class, GMOT was certain to mount formidable defenses to class certification. Thus, the risk of achieving and maintaining class certification through trial and likely appeals was significant and weighs in favor of approval. *See Garland v. Cohen & Krassner*, No. 08-CV-4626, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011) (risks relating to class certification support settlement approval). The losing party would have undoubtedly sought interlocutory review by the Second Circuit, thus further extending the timeline of the litigation.

The risks of prevailing at trial on the merits are likewise considerable. A jury trial would turn on complex questions of proof, many of which would be the subject of dueling expert testimony, making the outcome of trial uncertain for both parties. Even if Plaintiffs prevailed at trial, they would face the delay and risk associated with potential appeals. *See* Class Counsel Decl., ¶¶ 23-24, 28-29. In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998). In contrast, the proposed resolution of this action provides significant, immediate, and certain monetary recovery for the Settlement Class.

***2) Defendant's ability to withstand a greater judgment [Grinnell Factor #7]***

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.'" *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (citation omitted); *see also In re Tronox Inc.*, No. 14-CV-5495 (KBF), 2014

WL 5825308, at *6 (S.D.N.Y. Nov. 10, 2014) ("The law does not require a defendant to completely empty its pockets before a settlement may be approved—indeed, if it did, it is hard to imagine why a defendant would ever settle a case."). Here, the financial obligation the Settlement imposes on GMOT is significant. That GMOT might be able to withstand a greater judgment does not undermine the reasonableness of the Settlement here.

***3) The range of reasonableness of the Settlement Fund in light of both the best possible recovery [Grinnell Factor #8] and the attendant risks of litigation [Grinnell Factor #9]***

The Court has already found that the Settlement "fall[s] within a range of reasonableness warranting final approval" and has "no obvious deficiencies." ECF 165 at 3; *see also Yim v. Carey Limousine NY, Inc*., No. 14-CV-5883(WFK)(JO), 2016 WL 1389598, at *4 (E.D.N.Y. Apr. 7, 2016) (range of reasonableness factor is satisfied when there are no obvious doubts as to the adequacy of the settlement amount). The Court should reaffirm this finding, as the amount that Settlement Class Members will receive from this Settlement is fair and reasonable when compared to what they could reasonably expect to recover if they were to win a favorable trial verdict. *See* Class Counsel Decl., ¶ 27; *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987) (in evaluating the reasonableness of recovery, courts should analyze the amount of recovery "in light of the strengths and weaknesses of plaintiffs' case"—"not in comparison with the possible recovery in the best of all possible worlds").

Indeed, the reasonableness of settlement consideration here is demonstrated by a comparison to the likely bulk of any classwide recovery available at trial. Using data subpoenaed from Coinbase recording each GYEN transaction made in New York and California during the time of the massive November 2021 de-pegging event, Plaintiffs' consulting expert calculated investor losses for residents of those two states to be approximately $31 million. Class Counsel Decl., ¶ 25. While the full universe of GYEN transactions in New York and California is

unknowable (thus is the nature of cryptocurrency transactions), this sum likely represents the vast majority of potential damages in this case. *Id.* at ¶ 26. Thus, the recovery of $6.75 million here represents approximately 22% of likely class damages, a percentage recovery that compares favorably with settlements in the analogous context of securities class actions. *Id.* at ¶ 27, Ex. 2 (Cornerstone Report providing median 2025 recoveries in securities class actions). Moreover, as is true in any litigation, Plaintiffs would face significant obstacles, delays, and costs in obtaining any recovery whatsoever.

In Class Counsel's view, GMOT's payment of $6.75 million is an excellent result for the Settlement Class Members. *Id.* at ¶¶ 27-28; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (citation omitted). Given the risks, cost, and delay of further litigation, the Court should again find the proposed Settlement to be fair, adequate and reasonable.

### D. The Proposed Method of Distributing Relief to the Class Is Designed to Be Effective [Rule 23(e)(2)(C)(ii)]

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (4th ed. 2002). Here, none of the $6.75 million Settlement Fund will revert to GMOT. Instead, after Court-approved deductions for payment of notice and administration costs, attorney's fees, litigation expenses, and service awards, the entirety of the Net Settlement Fund will be disbursed to the Settlement Class Members in accordance with the Plan of Allocation. *See* S.A. § 6.9; Class Counsel Decl., Ex. 1, Plan of Allocation, ¶ 11. Numerous payment methods are available to Settlement Class Members, all of which will ensure effective distribution and delivery of settlement funds. *See* Meichsner Decl., Ex. C, Long Form Notice, ¶ 20

& Ex. D, Claim Form, § I.V., Payment Selection (payment methods include paper check, electronic check, PayPal, Venmo, Zelle, ACH, and wire transfer). Settlement Class Members are able to select their desired form of payment through the Claims Administrator. Meichsner Decl., ¶ 26.

If the sum of the Settlement payments made is ultimately less than the balance in the Net Settlement Fund (for example, due to uncashed checks), and the balance is large enough to feasibly distribute, a second distribution of *pro rata* payments will be made, or, if the amount is not feasible to distribute, Class Counsel will seek Court approval of an appropriate *cy pres* beneficiary. S.A. § 6.9; Class Counsel Decl., Ex. 1, Plan of Allocation, ¶ 11. No monies will revert to GMOT. *Id.* This method of distribution is fair, effective, and efficient.

**E. The Settlement Imposes a Reasonable Limitation on Attorneys' Fees**

The Settlement terms relating to attorney's fees and expenses are also fair and reasonable. The Settlement does not require the award of a specific amount of attorney's fees and is not conditioned on the award of any such fees, which will be reserved to the Court in its discretion upon consideration of the application by Class Counsel. *See* S.A., § 7.6. As fully detailed in the accompanying Fee Motion, Class Counsel is seeking a fee award equal to one-third of the fund created by their efforts, or $2,250,000, which is well within the benchmark range and in line with what is routinely awarded in this Circuit. *Kohari v. MetLife Grp., Inc.*, No. 21-CV-6146 (KHP), 2025 WL 100898, at *11 (S.D.N.Y. Jan. 15, 2025).

**F. There Are No Undisclosed Side Agreements**

Rule 23(2)(2)(C)(iv) requires that the parties identify any side agreements. Other than a standard agreement allowing for GMOT to terminate the Settlement if a certain level of exclusions occurs (*See* S.A., § 8.3), no other agreements were made in connection with the Settlement that impact relief to the Settlement Class. Class Counsel Decl., ¶ 20. This factor therefore also weighs in favor of approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### G. The Proposed Settlement Treats Class Members Equitably

Finally, the Settlement treats Settlement Class Members equitably, as the same allocation formula is used to calculate settlement payments for all eligible individuals. As explained above, the Plan of Allocation accounts for each Settlement Class Member's individual facts by calculating individual payment amounts based on their actual losses. *See* Class Counsel Decl., Ex. 1, Plan of Allocation. This fair and reasonable distribution plan further supports approval of the Settlement.

### H. Class Members Support the Settlement [*Grinnell* Factor #2]

The positive response from the Settlement Class also supports final approval. To date, the Settlement has received unanimous approval from the Settlement Class, as zero Settlement Class Members have objected to or opted out of the Settlement. *See* Meichsner Decl., ¶¶ 20-22; *Wal-Mart Stores*, 396 F.3d at 118 (holding that "the absence of substantial opposition is indicative of class approval").

### I. The Class Notice Program Was Reasonable and Effective

Under Rule 23(c)(2) and (e), class notice must be adequate in both content and distribution method. In the Second Circuit, this requires that the notice is reasonably calculated to apprise class members of the settlement and afford them the opportunity to object or opt out. The Notice program, as executed, satisfies due process and complies with Rule 23.

As ordered by the Court and described in detail in the Meichsner Declaration, Simpluris provided direct notice to over 32,500 Settlement Class Members who transacted in GYEN via Coinbase, which Class Counsel believes constitutes the vast majority of the Settlement Class. *See* Class Counsel Decl., ¶ 26. After receiving data from Coinbase containing transaction and contact information for those who transacted in GYEN via Coinbase during the relevant period, Simpluris used industry-standard processes to determine and verify email addresses. Simpluris then sent the Notice via email to those known Settlement Class Members with identified valid email addresses.

Meichsner Decl., ¶¶ 4-9; S.A., § 4.2. Notice was also directly provided through a highly successful NFT "airdrop" to potential Settlement Class Members' cryptocurrency wallets. Meichsner Decl., ¶¶ 12-16. This direct notice program was highly effective. *See id*. at ¶¶ 29-31*; see also supra* at pp. 7-10.

Simpluris also provided notice by publication through a press release and a targeted social media campaign. Meichsner Decl., ¶¶ 10-11. Simpluris personnel monitored the social media campaign to maximize efficiency and reach. *Id.* at ¶ 11. Based on the design of the notice campaign, Simpluris initially anticipated a delivery of 1.68 million impressions. *Id*. As delivered, the program far exceeded expectations, delivering a total of 3.84 million impressions. *Id.*

This manner of notice constitutes the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985). And the Notice itself also comports with due process as it included all necessary content and provided the opportunity to opt-out or object and explained the procedure for doing so. *See* ECF 165 at 6 (approving form and content of Notice); Meichsner Decl., Exs. B-D. Finally, Simpluris provided the notice required under the Class Action Fairness Act to the applicable federal and state authorities. Meichsner Decl., ¶ 3, Ex. A.

**THE COURT SHOULD REAFFIRM CERTIFICATION OF THE SETTLEMENT CLASS**

At the settlement approval stage, if "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Note. In granting preliminary approval, the Court found the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3). ECF 165 at 2-3. The Settlement Class continues to satisfy all requirements under Rule

23(a) and Rule 23(b)(3). As such, the Court should certify the Settlement Class for settlement purposes only.

### A. The Class Meets the Requirements of Rule 23(a)

#### *1) Numerosity*

The Settlement Class consists of over 33,000 identifiable individuals. Class Counsel Decl., ¶¶ 25-26; Meichsner Decl., ¶¶ 7 & 24. This makes "joinder of all members impracticable." Fed. R. Civ. P. 23(a)(1). *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); *see also* ECF 165 at 3 (numerosity met).

#### *2) Commonality*

"Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (citation omitted). Here, each Settlement Class Member's claims against GMOT arise from the same alleged conduct and practices by GMOT, namely that GMOT materially misrepresented the nature of GYEN and failed to take necessary steps to keep it pegged to the JPY. *See*, *e.g.*, ECF 109, SAC, ¶¶ 134-145, 153-163. Each of those contentions depend only on what GMOT knew, did, or refused or failed to do, and could be established (or not established) with generalized evidence applicable to the entire class. As such, this lawsuit raises numerous common questions, including: (1) whether GMOT's advertisements and statements regarding the nature of GYEN were false and misleading or omitted material facts; (2) whether GMOT's acts or practices were deceptive in violation of section 349 of the GBL; (3) whether GMOT's advertisements and statements regarding the GYEN violated the false advertising provisions of the GBL, N.Y. Gen. Bus. § 350; (4) whether GMOT's conduct violated the UCL; (5) whether GMOT's conduct violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (6) the proper form of equitable and injunctive relief; and (7) the proper calculation of monetary

relief. Questions such as these are routinely found to satisfy the commonality requirement in consumer protection and false advertising cases. *See* ECF 165 at 3 (finding common questions of law and fact); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y 2014) (common questions included whether defendant's alleged misrepresentations about its olive oil product were false or constituted negligent misrepresentations and whether defendant's conduct violated section 349 of the GBL and other states' consumer fraud laws).

***3) Typicality***

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citation omitted). "Consumers of the same product, exposed to the same marketing and packaging, will have almost entirely the same claims with at most 'minor variations' in the facts surrounding their purchase of the products." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 400 (S.D.N.Y. 2016) (citation omitted).

Here, as the Court previously found, typicality is satisfied, as Plaintiffs' claims are typical of those of other class members. ECF 165 at 3. Plaintiffs' claims are based on GMOT's deceptive practices, representations, and omissions regarding the nature of GYEN that are precisely the same practices, representations, and omissions that give rise to the claims of other Settlement Class Members, and all Settlement Class Members are asserting claims based on the same legal theory. *See generally* SAC. Plaintiffs do not have any unique claims against GMOT beyond those shared with the Settlement Class. Class Counsel Decl., ¶ 49. Their claims are, therefore, typical. *See Price v. L'Oreal USA, Inc.*, No. 17-CV-614 (LGS), 2018 WL 3869896, at *4 (S.D.N.Y. Aug. 15, 2018)

(typicality met where plaintiffs were exposed to "the same marketing . . . as every other consumer who purchased the [p]roducts"); *Ebin v. Kangadis Food Inc*., 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (plaintiff purchasers of mislabeled olive oil products were typical of other potential class members despite any differences relating to their individual purchasing decisions).

***4) Adequacy of Representation***

Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirement is met. *Shahriar v. Smith & Wollensky Restaurant Group*, 659 F.3d 234, 253 (2d Cir. 2011). Plaintiffs have demonstrated their commitment to prosecuting this action for over three years, dedicating significant time supervising the litigation, reviewing and approving the complaints, responding to written discovery requests, producing documents relating to their claims, and working with counsel. Class Counsel Decl., ¶¶ 46-47. Moreover, nothing in the record suggests that Plaintiffs' interests are antagonistic to those of absent class members. *Id.* at ¶ 49. This supports Plaintiffs' adequacy. *Price*, 2018 WL 3869896, at *4; *see also* ECF 165 at 3 (finding adequacy met). Plaintiffs have also retained experienced counsel to vigorously prosecute the class's claims. *Id.* Class Counsel have decades of experience representing plaintiffs in complex class action litigation, including in cases involving violations of consumer protection laws and investment losses. Class Counsel Decl., ¶ 32; *see also* ECF 161, Kramer Decl. in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ¶ 22; ECF 161-3 & 161-4 (Class Counsel's firm resumes). They have demonstrated the qualifications, experience, and expertise to adequately represent the class.

**B. The Class Meets the Requirements of Rule 23(b)(3)**

***1) Predominance***

The predominance requirement is satisfied when class members' claims can be proven predominantly using common, class-wide evidence rather than evidence that varies from class

member to class member. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Here, each Settlement Class Member's claims under the GBL and/or UCL/FAL arise from the same representations, omissions, and practices by GMOT with respect to GYEN. The similarity of the elements of Plaintiffs' New York claims and California claims readily supports a finding of predominance. *See* ECF 165 at 3 (finding predominance requirement satisfied). Sections 349 and 350 of the GBL, the UCL, and the FAL all use an objective standard whereby deceptive acts and representations are defined as those likely to mislead a reasonable consumer acting reasonably under the circumstances. *See Goldemberg*, 317 F.R.D. at 388-90 (describing elements of sections 349 and 350 of GBL and noting they are "identical"); *Price*, 2018 WL 3869896, at * 6 (describing elements UCL and FAL and collecting cases). As such, the Settlement Class's claims depend on generalized and objective evidence of GMOT's representations and practices with respect to GYEN and whether they were likely to mislead a reasonable consumer. Cases involving similar consumer protection claims under New York and California law have routinely been found to satisfy the predominance requirement. *See, e.g.*, *Goldemberg*, 317 F.R.D. at 388-90 (certifying claims under GBL §§ 349-350, UCL, and FAL) *Price*, 2018 WL 3869896, at *6 (same); *In re Amla Litig.*, 282 F.Supp.3d 751, 768 (S.D.N.Y. 2017) (certifying claims under section 349 of the GBL); *Ebin*, 297 F.R.D. at 568 (finding common issues regarding the deceptive nature of defendant's representations predominated claims under the GBL § 349 and other states' consumer protection laws). Predominance is satisfied.

***2) Superiority***

Superiority is satisfied for many of the same reasons predominance is met. *See* ECF 165 at 3. Because common issues predominate over individual ones, Settlement Class Members do not have a strong interest in pursuing individual actions. Additionally, because of the difficulty and expense of litigating on an individual basis and due to the relatively low individual damages

involved, it is highly unlikely that many members of the Settlement Class would bring individual lawsuits. *See* Class Counsel Decl., ¶ 25; *Price*, 2018 WL 3869896, at *11; *see also Ebin*, 297 F.R.D. at 567 ("[T]he class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit."); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (same).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully move this Court for an order granting this Motion, entering the [Proposed] Order Approving Plan of Allocation, and entering judgment consistent with the [Proposed] Final Judgment Approving Class Action Settlement.

Respectfully submitted,

Dated: April 16, 2026

ERICKSON KRAMER OSBORNE LLP

By: */s/ Elizabeth A. Kramer*
Elizabeth A. Kramer

Julie C. Erickson (*pro hac vice*)
Elizabeth A. Kramer (*pro hac vice*)
Kevin M. Osborne (*pro hac vice*)
959 Natoma St.
San Francisco, CA 94103
Telephone: 415-635-0631
julie@eko.law
elizabeth@eko.law
kevin@eko.law

Daniel E. Barenbaum (*pro hac vice*)
BERMAN TABACCO
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: 415-433-3200
dbarenbaum@bermantabacco.com

Steven J. Buttacavoli (*pro hac vice*)
Christina L. G. Fitzgerald (*pro hac vice*)
BERMAN TABACCO
One Liberty Square
Boston, MA 02109
Telephone: 617-542-8300
sbuttacavoli@bermantabacco.com
cfitzgerald@bermantabacco.com

*Class Counsel*

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION**

I hereby certify that the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement complies with this District's rules on word count limitations. S.D.N.Y. Civ. L.R. 7.1(c). The word count of this memorandum, exclusive of the caption, index, table of contents, table of authorities, signature blocks, and any required certificates, is: 8,217. In calculating this word count, I relied on the word-processing program used to prepare this document.

By: *\/s/ Elizabeth A. Kramer*
Elizabeth A. Kramer

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April 2026, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** was filed and served using the CM/ECF system, which will serve as notification of such filings on all counsel of record.

/s/ *Elizabeth A. Kramer*
Elizabeth A. Kramer
ERICKSON KRAMER OSBORNE LLP
959 Natoma St.
San Francisco, CA 94103
Phone: 415-635-0631
Fax: 415-599-8088
elizabeth@eko.law